IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| ROGER DEAN GILLISPIE, | ) No. 3:13-cv-416 |
| | ) |
| Plaintiff, | ) Hon. Thomas M. Rose, J. |
| | ) Hon. Michael R. Merz, Mag. |
| v. | ) |
| | ) |
| MIAMI TOWNSHIP, ET AL., | ) **PLAINTIFF'S RESPONSE IN** |
| | ) **OPPOSITION TO** |
| Defendants. | ) **DEFENDANT WOLFE'S** |
| | ) **MOTION TO DISMISS** |

Now Comes Plaintiff, by and through his attorneys, in Opposition to

Defendant Richard Wolfe's Motion to Dismiss. Plaintiff offers the attached

Memorandum in opposition to Defendant Wolfe's Motion to Dismiss.

RESPECTFULLY SUBMITTED,

_____

*One of Plaintiff's Attorneys*

Michele L. Berry (0018939)
THE LAW OFFICE OF MICHELE BERRY, LLC
114 East 8th Street
Cincinnati, OH 45202
Tel: 513.919.5315
Fax: 513.376.8752
mberry@mberrylaw.com

Michael Kanovitz
David B. Owens
LOEVY & LOEVY
312 N. May St. Suite 100
Chicago, IL 60607
(312) 243-5900
david@loevy.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION ................................................................................................... 1

I.    FACTUAL ALLEGATIONS ............................................................................ 2

    A.    Plaintiff's Wrongful Conviction ................................................................ 2

    B.    The Complaint Alleges That Defendant Wolfe Acted Under Color of Law, Owing to the Fact that He Conspired With Township Officers and Was Either Still An Officer or Acted On the Basis of His Relationships as a Retired Officer ...................................................................... 6

    C.    The Complaint Alleges Detective Moore, Defendant Wolfe, and Other Defendants Conspired to Violate Plaintiff's Rights ............................... 7

II.    LEGAL STANDARD ................................................................................... 10

III.    ARGUMENT ................................................................................................ 10

    A.    The Complaint Plausibly and Sufficiently Alleges Defendant Wolfe Acted Under Color of Law ...................................................................... 10

    B.    The Complaint's Allegations of Conspiracy Are Sufficient ...................... 19

    C.    The Complaint Sufficiently Alleges Defendant Wolfe's Liability for Suppressing Exculpatory Material ............................................................ 21

    D.    The Complaint States An Actionable Unduly Suggestive Identification Due Process Claim .................................................................................. 24

    E.    Count III States An Actionable Due Process Claim Against Defendant Wolfe For Fabricating Evidence ............................................................. 26

    F.    Count VI States An Actionable Malicious Prosecution Claim Against Defendant Wolfe .................................................................................... 29

    G.    Count V States an Actionable Due Process Claim For Destruction of Evidence Against Defendant Wolfe ......................................................... 29

    H.    Plaintiff's State-Law Claims Are Not Time Barred ................................ 29

CONCLUSION ...................................................................................................... 31

# TABLE OF AUTHORIES

## CASES

*Alahverdian v. Ohio*, 2013 WL 1964009
(May 10, 2013, S.D. Ohio) (Merz, Mag.).................................................................. 11, 19

*Antonio v. Moore,* 274 Fed. App'x. 131 (4th Cir. 2006)............................................. 25

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).................................................................... 12

*Barkovic v. Hogan*, 505 F. App'x 496 (6th Cir. 2012) ................................................ 11

*Bassett v. NCAA*, 528 F.3d 426 (6th Cir.2008) ..................................................... 11, 13

*Biro v. Hartman Funeral* Home, 107 Ohio App.3d 508 ............................................ 30

*Brady v. Maryland*, 373 U.S. 83 (1963) ........................................................ 21, 22, 23

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................ 12

*Briscoe v. LaHue*, 460 U.S. 325 (1982).................................................................... 28

*Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812 (6th Cir. 2010)......................... 30

*Cooper v. Parrish*, 203 F.3d 937 (6th Cir.2 000) ..................................................... 13

*D'Ambrosio v. Marino*, 2014 WL 1243792 (6th Cir. Mar. 27, 2014) ................... 23, 24

*Deir v. Lake County*, 2014 WL 49570 (Feb. 6, 2014) ................................................ 31

*Eckmeyer v. Brimfield Township Board of Trustees*,
2006 WL 1644377 (N.D. Ohio. June 12, 2006) ........................................................ 19

*Feltmeier v. Feltmeier*, 207 Ill.2d 263 (2003) ........................................................... 33

*Francis v. Cleveland*, 78 Ohio App.3d 593 (Ohio App. 8 Dist. 2002) ........................ 30

*Giglio v. United States*, 405 U.S. 150 (1972) ............................................................ 21

*Goodloe v. City and County of Denver*, 2007 WL 2697605
(D. Colo. Sept. 11, 2007) ................................................................................... 24, 25

*Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006)...................... 23, 25, 27, 28

iii

*Grove Press, Inc. v. Angleton*, 649 F.2d 121 (2d. Cir. 1981) ................................. 20, 21

*Hamilton v. Best Buy*, 2002 WL 242542 (Ohio App. 2 Dist. Feb. 15, 2002) ............. 30

*Hensley v. Carey*, 818 F.2d 646 (7th Cir. 1987) .......................................... 24

*Hooks v. Hooks*, 771 F.2d 935 (6th Cir. 1985)..................................................... 13, 20

*Hutsell v. Sayre*, 5 F.3d 996 (6th Cir. 1993) ................................................ 24

*Jackson v. Schultz*, 429 F.3d 586 (6th Cir. 2005) ....................................... 10

*Johnson v. Rollins*, 2006 WL 2546807 (E.D. Mo. Aug. 31, 2006).............................. 25

*Jones v. City of Chicago*, 856 F.2d 985 (7th Cir. 1988) (Posner, J.)........................... 26

*Jones v. Swank*, 2012 WL 4107981 (S.D. Ohio. Sept. 19, 2012) ................................ 30

*Kyles v. Whitley*, 514 U.S. 419 (1995)........................................................... 21

*Lee v. Norwalk*, 2011 WL 4007786, at *2 (N.D. Ohio Aug. 25, 2011) ...................... 31

*Lightborne Publishing, Inc. v. Citizens for Community Values*,
2009 WL 778241 (S.D. Ohio Mar. 20, 2009) (Spiegel, J.).......................................... 19

*Memphis, Tennessee Area Local, American Postal Workers Union,
AFL-CIO v. City of Memphis*, 361 F.3d 898 (6th Cir. 2004).................... 12, 13, 14, 18

*Moldowan v. City of Warrant*, 578 F.3d 351 (6th Cir. 2009).......................... 21, 22, 24

*Monfort Supply Co. v. Hamilton County Bd. of Zoning Appeals*,
2006 WL 3703686 (S.D. Ohio. Dec. 13, 2006) ............................................... 18

*Ortega v. U.S. Immigration & Customs Enforcement*,
737 F.3d 435 (6th Cir. 2013)...................................................................... 10

*Pace v. City of Des Moines*, 201 F.3d 1050 (8th Cir.2000)......................................... 24

*Proffitt v. Ridgway*, 279 F.3d 503 (7th Cir. 2002) ..................................... 20

*Quinones v. Szorc*, 771 F.2d 289 (7th Cir. 1985) ........................................ 14

*Ransaw v. Lucas*, 2013 WL 6179418 (N.D. Ohio Nov. 25, 2013) ......................... 27, 28

iv

*Spadafore v. Gardner*, 330 F.3d 849 (6th Cir.2003) .................................................. 16

*Spurlock v. Satterfield*, 167 F.3d 995 (1999) ........................................................ 27, 28

*Stemler v. City of Florence*, 126 F.3d 856 (6th Cir. 1997) ................................... 27, 28

*Stovall v. Denno*, 388 U.S. 293 (1967)................................................................. 26

*United States v. Bagley*, 473 U.S. 667 (1976) ........................................................ 21

*United States v. Classic*, 313 U.S. 299 (1941)....................................................... 11

*United States v. Frost*, 914 F.2d 756 (6th Cir. 1990).............................................. 20

*United States v. Lochmondy*, 890 F.2d 817 (6th Cir. 1989) ..................................... 28

*West v. Atkins*, 487 U.S. 42 (1988) ................................................................. 11, 12

*Wilkerson v. Warner,* 545 F. App'x 413 (6th Cir. 2013)....................................... 14, 18

*Williams v. Duke Energy International, Inc.*, 681 F.3d 788 (6th Cir. 2012)............. 10

*Wray v. Johnson*, 202 F.3d 515 (2nd Cir.2000)....................................................... 24

*Youngblood v. West Virginia*, 547 U.S. 867 (2006) .................................................. 21

## STATUTES & RULES

42 U.S.C. § 1983........................................................................................*passim*

O.R.C. § 2305.09 ......................................................................................... 30

O.R.C. § 2305.11 .......................................................................................... 30

Federal Rule of Civil Procedure 8 ................................................................ 10

## OTHER AUTHORITIES

WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE:
CIVIL 2d § 1356 at 294 (1990).............................................................. 12, 19

## MEMORANDUM

## INTRODUCTION

Roger Dean Gillispie spent nearly 20 years incarcerated for several rapes he did not commit. An innocent man, Mr. Gillispie's wrongful conviction was only able to be secured through egregious violations of his constitutional rights; where, among other things, individuals suppressed and destroyed exculpatory evidence, attempted to cover-up the suppression and destruction of that evidence, and even fabricated evidence falsely implicating Mr. Gillispie. Now, as the Plaintiff in this action, Mr. Gillispie seeks redress for these wrongs.

Plaintiff's First Amended Complaint ("Complaint") alleges that Defendant Richard "Rick" Wolfe played a central role in violating Mr. Gillispie's rights, and that Defendant Wolfe therefore bears responsibility for Mr. Gillispie being wrongfully convicted of crimes he did not commit. Before the Court is Defendant Wolfe's Motion to Dismiss ("Motion"), which seeks dismissal on the basis that the Complaint fails to state a claim against Mr. Wolfe because Defendant Wolfe: only provided a "tip" to the Miami Township Police; that he "merely" "furnished information" to the police; and that Plaintiff's legal claims are "unsupported by any specific factual allegations." Dkt. 47, at 1-2.

This Motion might hold more weight if these statements accurately characterized the Complaint. However, they do not. Instead, the Motion proceeds on the faulty premise that Defendant Wolfe may simply ignore many of the factual allegations in the Complaint. At this stage, he may not. When considered in its entirety, the Complaint describes in more-than-sufficient detail the prominent role

1

Plaintiff alleges Defendant Wolfe played in violating his rights. The Complaint describes how Defendant Wolfe was central to Mr. Gillispie's being falsely implicated in the rapes and plausibly alleges that Defendant Wolfe entered an agreement (a conspiracy) with other Defendants—both in Miami Township (the Township") and at General Motors ("GM")—to wrongfully convict Mr. Gillispie In accordance with that agreement, the Complaint plausibly alleges, Defendant Wolfe was central to the unconstitutional and malicious prosecution of Mr. Gillispie, including but not limited to the decision to suppress and later destroy exculpatory evidence that would have enabled Mr. Gillispie to demonstrate his innocence.

The Motion should be denied.

## I.    FACTUAL ALLEGATIONS

### A. Plaintiff's Wrongful Conviction

Mr. Gillispie was wrongfully convicted of serious crimes that he absolutely did not commit. Dkt. 18, at ¶1. Tragically, Mr. Gillispie's wrongful incarceration was no accident; he was instead framed by the coordinated efforts of police officers working for Miami Township (the Defendant Officers), employees of General Motors (the GM Defendants), and others. *Id.*

In August of 1988, two twin sisters reported being sexually assaulted near the Dayton. *Id.* at ¶¶18-22. After hearing about the assault of the twins, another woman reported being assaulted in similar fashion. *Id.* at ¶¶23-24. All three victims provided a description of the perpetrator that "significantly contradicted Mr. Gillispie's features." *Id.* at ¶24; *see id.* at ¶¶ 21-22. Two veteran officers in the

2

Miami Township Police Department (the "Department")—Sergeant-Detective Steven Fritz, and Detective-Corporal Gary Bailey—were assigned to investigate the rape of the twins. *Id*. at ¶¶. In the course of their investigation, these detectives created reports, discussed the case, and recorded other steps of their investigation, all of which confirmed that Mr. Gillispie did not commit the rapes. *Id*. at ¶¶ 25, 28.

At the time of the rapes, Mr. Gillispie had no criminal history, was a positive contributor to his community, and was an employee of General Motors in Dayton, Ohio. *Id*. at ¶16. Mr. Gillispie was employed at GM from 1985 to the spring of 1990. *Id*.

At GM, Mr. Gillispie worked for Defendant Wolfe—a high-ranking supervisor in the Dayton Area. *Id*. at ¶29-30. Defendant Wolfe like others at GM, did not like Mr. Gillispie and, on account of this animus, eventually terminated Mr. Gillispie. *Id*. at ¶ 32. To further an agreement to harass Mr. Gillispie, the GM Defendants decided to falsely accuse Mr. Gillispie of the rapes. *Id*. at ¶29-30. Owing to his prior or ongoing employment as an officer, Defendant Wolfe had many connections in the Department—including the Chief of Police at the time of the rapes. *Id*. at ¶32.

Along with terminating Mr. Gillispie, in light of Defendant Wolfe's employment and connections with the Department, Defendant Wolfe and another individual from GM went to the police station to attempt to implicate Mr. Gillispie in the rapes well after they occurred. *Id*. at ¶33-34. In so doing, they met with Fritz and Bailey, along with other higher ranking police officers in the Department, and attempted to implicate Mr. Gillispie in the rapes by bringing a copy of his GM

identification badge to the police station and falsely claiming that employees at GM had seen a composite generated regarding the rapes and thought it looked like Mr. Gillispie. *Id*. at ¶¶34-35.

Supplemental reports regarding the meeting between Defendant Wolfe, another individual from GM, and several officers from the Department were prepared and placed in the case file. *Id*. at ¶¶37-38. Detectives Fritz and Bailey conducted an extensive investigation and concluded that Mr. Gillispie should be excluded as a suspect for the rapes. *Id*. at ¶¶ 37-41, 63. The reports, among other things, included exculpatory information, information related to alternative suspects, and documented the investigative steps that were taken. *Id*. at ¶29-30.)

In June of 1990, almost 2 years after they happened, Defendant Moore was assigned to investigate the rape of the twins. *Id*. at¶43. Around that same time, Defendants Moore and Wolfe entered an agreement—a conspiracy—and set out to frame Mr. Gillispie for the sexual assault of the twins by fabricating evidence, withholding and destroying other evidence, fabricating evidence, undermining Mr. Gillispie's ability to present a defense, and by providing false and misleading testimony at trial. *Id*. at ¶45.

Among other things, and to further the conspiracy to frame Mr. Gillispie, Defendant Wolfe returned to the police station with a number of GM identification cards, including Mr. Gillispie's, in order make it appear that Defendant Wolfe's role in implicating Mr. Gillispie was innocent and to conceal the fact that Mr. Wolfe, and

another GM defendant, had previously brought only a single photograph to the Department. *Id*. at ¶¶47-48.

Acting pursuant to their conspiracy to frame Mr. Gillispie, the co-conspirators removed and destroyed the reports prepared by Fritz and Bailey. *Id*. at 48. Doing so furthered the conspiracy because these reports included exculpatory information and revealed the fact that the investigation had not actually began when Defendants Wolfe and Moore met at the police station. *Id*. at ¶¶ 48-51.

But, even this was not enough. Thereafter, Defendants used unduly suggestive identification procedures and pressure to taint and manipulate witnesses so that they would identify Mr. Gillispie in photo arrays and eventually at trial; they told lies; produced fabricated witness statements; and even destroyed evidence related to Mr. Gillispie's alibi. *Id*. at ¶¶52-61, 67-71. The conspiracy between Defendant Moore, Defendant Wolfe, and many others was a success: they, through numerous violations of his constitutional rights, were able to twice secure the wrongful conviction of Roger Dean Gillispie's for rapes he did not commit. *Id*. at ¶¶ 1, 66, & 71-72.

But, again, even this was not enough. Instead, even after Mr. Gillispie was convicted, Defendants have strived to keep Mr. Gillispie behind bars by repeating their lies and misrepresentations in an effort to further conceal the misconduct that led to Mr. Gillispe's wrongful conviction. *Id*. at ¶73.

**B. The Complaint Alleges That Defendant Wolfe Acted Under Color of Law, Owing To the Fact That He Conspired With Township Officers Was Either An Active Township Officer or Acted On the Basis of His Status as a Retired Officer**

As to those counts which require a state actor, Defendant Wolfe was acting under color of law, and was therefore a state actor, capable of violating the underlying constitutional or state-law tort. *Id.* at ¶¶ 77-79,84-86, 91-93, 98-100, 105 & 108, 112-114.

In addition, and more specifically, the Complaint also alleges that at "all times relevant" Defendant Wolfe was not only employed by Defendant GM and was a policy maker for the company, but that "Defendant Wolfe was also a part-time, auxiliary police officer for" Miami Township Police Department (the "Department"), and that at "all times relevant, Defendant Wolfe maintained relationships with officers in the Department." *Id.* at ¶13. To that end, the Complaint alleges that, in addition to being a high-ranking supervisor at GM, *id.* at ¶29, Defendant Wolfe was hired to that post "due to his connections and continuing and/or prior experience as a part-time police officer for the Township." *Id.* at ¶31. Further, the Complaint alleges that Defendant Wolfe had a relationship with the Defendant Officers, and that he "worked for and had continuing connections with the Township's Police Chief in 1988—James E. Moore, Defendant Moore's father." *Id.* at ¶33.

The Complaint next makes clear that Defendant Wolfe's actions with respect to Plaintiff were not benign, and that, with the other GM defendants, harbored malice against Mr. Gillispie, *id.* at ¶32. On the basis of that malice, Defendant Wolfe agreed to target Mr. Gillispie, and "in furtherance of the agreement to harass

6

Mr. Gillispie and as a way to prevent him from taking action following his termination," the GM Defendants—including Defendant Wolfe—chose to use defendant Wolfe's connections and prior and/or "ongoing employment with the Department to implicate Mr. Gillispie in the rapes." *Id.* at ¶ 33. To this end, the Complaint alleges, Defendant Wolfe used his connections at the Department to arrange a meeting with officers from the Department"; that Defendant Wolfe went to the police station with a picture of Mr. Gillispie's work identification badge; and that several high-ranking police officers attended a meeting at which Defendant Wolfe implicated Plaintiff. This meeting was arranged "[b]ecause of Wolfe's stature in the department as an active or prior auxiliary police officer" in the Department. In that meeting, Defendant Wolfe, with another, attempted to direct the investigation of the rapes toward Mr. Gillispie by falsely claiming they had seen a composite they thought looked like Gillispie. *Id.* at 35.

### C. The Complaint Alleges Detective Moore, Defendant Wolfe, and Other Defendants Conspired to Violate Plaintiff's Rights

The Detectives in this meeting would later investigate Defendant Wolfe's allegations, but find them unsubstantiated and exclude Mr. Gillispie as a suspect. Defendant Wolfe was undeterred, however. The case file created by the original detectives was later destroyed. *Id.* at ¶50.

Thereafter, Defendant Moore (and co-conspirators Defendants Angel, Scothorn, and Wilson) enters the picture. The Complaint alleges that "Defendants Moore and Wolfe set out to Frame Mr. Gillispie for the sexual assault of the twins," and that "[t]ogether, through numerous conversations, they fabricated evidence,

7

withheld and destroyed evidence, unlawfully undermined Mr. Gillispie's defense, and ultimately provide false and misleading testimony at Mr. Gillispie's criminal trials." *Id.* at ¶45.

In so doing, Defendants Wolfe and Moore took steps to suppress and hide evidence from the prior investigation, which could have undermined their efforts. For one, Defendant Wolfe brought multiple GM identification badges, including Mr. Gillispie's, to the police station to "make it appear as if this was the first time Mr. Gillispie had been named by Defendant Wolfe or anyone at GM as the perpetrator of the rapes." *Id.* at ¶48.  Bringing multiple photographs was also done to conceal the fact that Defendant Wolfe had previously brought a single picture of Plaintiff to the police station when he met with other Defendants, including the Township's Chief of Police. *Id.*

The Complaint also plausibly alleges that, to further conceal their efforts to suppress the prior meeting and identification of Mr. Gillispie as the perpetrator, Defendant Wolfe, Defendant Moore, and others, created fake evidence that would provide an apparently innocent reason why Mr. Wolfe had returned to the police station. They did this by bringing back the earlier about seeing a "composite" up at GM, even years after the crimes. *See id.* at ¶¶45-48. To that end, Defendant Moore actually took copies of a composite to GM, a fact that Defendant Wolfe has previously admitted. *Id.* at ¶46.

In addition, in furtherance of their goal to frame Mr. Gillispie and hide the prior investigation, the Complaint alleges that "as part of their conspiracy with the

GM Defendants, the Defendant Officers removed from the case file supplemental reports authored by Bailey and approved by Fritz [that] included exculpatory evidence for Mr. Gillispie." *Id.* at ¶49. "Among other things, these reports documented: the initial meeting with Defendant Wolfe and other Defendants described above; Detective Bailey and Sergeant Fritz's investigation of Mr. Gillispie; the pant size of the perpetrator called in by one of the twins; and myriad other reasons Mr. Gillispie was eliminated as a suspect." *Id.* These reports were later destroyed. *Id.* at ¶57.

With the evidence destroyed, the Complaint plausibly alleges how the conspirators sought to effectuate an arrest of Mr. Gillispie, though they knew they had no probable cause, by using procedures designed to obtain tainted and possibly coerced identifications, *id.* at ¶¶ 52-54, all of which were pursuant to "a corrupt, sham 'investigation' that was designed to frame Mr. Gillispie." *Id.* at ¶56.

The next phase of the conspiracy included securing the conviction of Mr. Gillispie. To this end, and in furtherance of his agreement with Defendant Moore and other co-conspirators, Defendant Wolfe "served as a prosecuting witness and provided false and misleading testimony to the jury" by lying about (1) when the investigation began, (2) how Mr. Gillispie became a suspect, (3) the number of meetings between himself and other Defendants, and (4) the animus he and others carried against Mr. Gillispie. *Id.* at ¶65.

9

## II.     Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  The "pleading standard Rule 8 announces does not require 'detailed factual allegations,'" only "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, as Rule 8 provides, "the complaint need not set out the facts in detail," *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 799 (6th Cir. 2012), and a complaint may only be dismissed "'if it is clear that no violation of a clearly established constitutional right could be found under any set of facts that could be proven consistent with the allegations or pleadings.'" *Ortega v. U.S. Immigration & Customs Enforcement*, 737 F.3d 435 (6th Cir. 2013) (quoting *Jackson v. Schultz*, 429 F.3d 586, 589 (6th Cir. 2005)).

In reviewing a motion to dismiss, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir.2008).

## III.    ARGUMENT

### A. The Complaint Plausibly and Sufficiently Alleges Defendant Wolfe Acted Under Color of Law

Defendant Wolfe's first argument for dismissal—that Defendant Wolfe was not acting under color of law—must fail.

10

It is axiomatic, of course, that § 1983 imposes liability upon individuals when they have violated someone's constitutional rights while "acting under color of state law." *West v. Atkins*, 487 U.S. 42 (1988). Misuse of power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken under color of state law." *United States v. Classic*, 313 U.S. 299, 326 (1941); *see also Barkovic v. Hogan*, 5050 F. App'x 496 (6th Cir. 2012). The Complaint satisfies this standard.

### 1. *The Complaint Alleges that Defendant Wolfe Was A State Actor*

The Complaint alleges that Defendant Wolfe was acting under color of law for any Count where state action is required for liability. *See* (Dkt. 18, at ¶¶ 77-79 (Count I); *id.* at ¶¶84-86 (Count II); *id.* at ¶¶ 91-93 (Count III); *id.* at 98-100 (Count IV); *id.* at ¶¶ 105, 107-08 (Count V); *id.* at ¶¶ 112-14 (Count VI); *id.* at 118-19 (Count VII)).

Nonetheless, the Motion argues that Defendant Wolfe was not a state actor or acting under color of law. In essence, then, the Motion contests, as false, the allegations in the Complaint. Contesting the allegations of the Complaint is not a basis for dismissal under 12(b)(6), and this Court's review of a 12(b)(6) motion is not a procedure for resolving questions about disputed facts. *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir.2008). Thus, because Plaintiff's allegations must be accepted as true, *Bassett*, 528 F.3d at 430, the Court cannot now dismiss the complaint on the basis that the allegations are false. *Cf. Alahverdian v. Ohio*, 2013 WL 1964009, at *9 (May 10, 2013, S.D. Ohio) (explaining that "'[t]he purpose of a motion under Rule

11

12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or merits of the case.'" (quoting WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE: CIVIL 2d § 1356 at 294 (1990)).

> ### 2. *The Complaint Alleges That, At Relevant Times, Defendant Wolfe Was Acting as a Police Officer Employed by the Township*

"State employment is generally sufficient to render the defendant a state actor ... [A] defendant in a § 1983 suits acts under color of state law when he abuses the position given to him by the State." *Atkins*, 487 U.S. at 50. As such, "generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Id.*

Here, the Complaint alleges in the alternative that Defendant Wolfe, at all times relevant, was an auxiliary police officer for the Department or had retired from this position. *See, e.g.*, Dkt. 18, at ¶¶ 13, 31, 33, & 34. It is undisputed that if Mr. Wolfe was an officer in the department the sorts of actions he took— investigating crimes with other police officers, identifying "suspects," creating photo line-ups, etc.—should be considered state action. Though there may be some question about whether these actions were "off-duty" or "on-duty," that distinction is not outcome determinative. Rather, the allegations limned in the Complaint are sufficient to demonstrate color of law for present purposes, and dismissal would be inappropriate at this juncture. *See, e.g.*, *Memphis, Tennessee Area Local, American Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 903 (6th Cir. 2004) (noting that where, on the facts plead and inferences taken in the Plaintiff's

12

favor, the "line separating color of law becomes blurred, if not altogether indistinguishable," the complaint sufficiently pleads that that the off-duty officers were acting under color of law) (hereinafter "*Memphis Postal Workers*").

Thus, Defendant Wolfe's argument that the Complaint does not allege facts demonstrating that Mr. Wolfe, himself, "is not a state actor" Dkt., 47, at 8, is inconsistent with the way that the Complaint has been pleaded, and certainly contrary to making all reasonable inferences in Plaintiff's favor.[1]

### 3. The Complaint Alleges Defendant Wolfe Was Engaged in Joint Action—A Conspiracy—With Other Township Officers

Even assuming (without conceding) that Defendant Wolfe was, at relevant times, no longer employed with the Department, the Complaint still sufficiently pleads that Defendant Wolfe acted under color of law because "[p]rivate persons jointly engaged with state officials in a deprivation of civil rights are acting under color of law for purposes of § 1983." *Hooks v. Hooks*, 771 F.2d 935, 943 (6th Cir. 1985). That is, "[p]rivate persons may be held liable under § 1983 if they willfully participate in joint action with state agents." *Memphis Postal Workers*, 361 F.3d at 905 (citation omitted); *see also Cooper v. Parrish*, 203 F.3d 937, 952 n. 2 (6th Cir. 2000) ("If a private party has conspired with state officials to violate constitutional

---

[1] Tellingly, Miami Township's Answer does not substantively deny the Complaint's allegations in Paragraphs 13, 31, 33, & 34 alleging that Defendant Wolfe worked for the Department. Instead, the Township has denied the allegations solely "for lack of knowledge sufficient to form a belief as to the truth therein." (Dkt. 36, at ¶¶ 5, 8). Though the Township's Answer does not, itself, alleviate Plaintiff's obligation to present a factually sufficient complaint, this response is persuasive evidence that Mr. Wolfe's relationship to the Department is a subject of discovery, rather than a basis for dismissal.

rights, then that party qualifies as a state actor and may be held liable pursuant to § 1983 ..."); *Wilkerson v. Warner,* 545 F. App'x 413, 421 (6th Cir. 2013).

*Hooks* is the leading Sixth Circuit case on the issue. *See Memphis Postal Workers,* 361 F.3d at 905 (relying on *Hooks*); *Wilkerson,* 505 F. App'x at 421 (same). Under *Hooks*:

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

771 F.2d at 943-44.

Plaintiff acknowledges that "conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Spadafore v. Gardner,* 330 F.3d 849, 854 (6th Cir. 2003). The Complaint more than adequately satisfies this standard, especially given the fact that Defendants, not Plaintiff, are the ones with first-hand knowledge of the conspiracy. *Quinones v. Szorc*, 771 F.2d 289, 291 (7th Cir. 1985) ("The very nature of a conspiracy obscures most, if not all, information about the alleged conspirators' agreement; circumstantial evidence of the conspiracy, particularly regarding the overt acts performed in furtherance of the conspiracy, is all that is ordinarily obtainable before discovery and trial. This is particularly true where, as here, much of the information regarding. . . the formation of the conspiracy [is] in the hands of the defendant.").

14

Such allegations include:

- That, in 1989 or 1990, Defendant Moore met with Defendants Angel and Scothorn in an attempt to implicate Mr. Gillispie in the rapes and that he "used his connections" at the Department to do so. Dkt. 18, at ¶ 33.

- That, after Defendant Moore had been assigned to the investigation, Defendant Wolfe, with Defendant Moore, "set out to frame Mr. Gillispie for the sexual assault of the twins." *Id.* at ¶ 45.

- That, these efforts to "frame" Mr. Gillispie" took place "through numerous conversations" and actions whereby, "together," Defendants Moore and Wolfe "fabricated evidence, withheld and destroyed evidence, unlawfully undermined Mr. Gillispie's defense, and provided false and misleading testimony at Mr. Gillispie's trials." *Id.*

- That, contrary to the notion a composite had merely been hanging up at GM, Defendant Wolfe admits that Defendant Moore provided him with a copy or copies of one or several composite images. *Id.* at ¶46.

- That, in an effort to make it appear like Defendant Wolfe had not previously come to the police station implicating Plaintiff when he spoke with Defendant Moore, Defendant Wolfe again returned to the Department with several (rather than one) GM identification cards, again including Plaintiff's. *Id.* at ¶ 48.

15

- That, complementary to his admission that Moore "provided him" with copies of the composite, *id.* at ¶46, Defendant Wolfe brought multiple photographs to "make it appear" as if he was acting "without Moore's assistance and that this was the first time Defendant Gillispie had been named by Defendant Wolfe or anyone at GM as the perpetrator of the rapes." *Id.* at ¶¶47-48.

- That, Defendant Wolfe's arrival with multiple photos was "also an attempt to make the GM Defendants role in [identifying] Mr. Gillispie appear innocent," though it was not, and to conceal the fact that Defendant Wolfe had previously brought a single image of Mr. Gillispie to the department. *Id.* at ¶48.

- That, as part of the conspiracy between Defendant Wolfe and other Defendant Officers, exculpatory evidence was destroyed to prevent Mr. Gillispie from using that evidence in his defense. *Id.* at ¶49-51.

- That, in furtherance of his conspiracy with Defendant Wolfe, Defendant Moore, created unduly suggestive line-ups, and obtained faulty identifications, implicating Mr. Gillispie. *Id.* at ¶¶52-54.

In addition to these specific factual allegations, so there can be no doubt as to the basis for the finding that Defendant Wolfe was acting "under color of law" or in a conspiracy with the other defendants, the Complaint *specifically alleges* that Defendant Wolfe (as one of the "GM Defendants") was part of a conspiracy with the Township's officers (the "Officer Defendants"). These additional factual

16

allegations—which should be sufficient on their own to survive a motion to dismiss—include four additional relevant paragraphs.

- First, "throughout the course of the corrupt, sham 'investigation' that was designed to frame Mr. Gillispie, the Defendant Officers and GM Defendants conspired to secure Mr. Gillispie's conviction. *Id.* at ¶¶56. This paragraph specifically alleges several overt acts—concealing, destroying, or taking actions designed to cause the destruction of, evidence; and by pressuring and manipulating witnesses. *Id.*

- Second, the Complaint makes clear that the Defendant Officers and GM Defendants "further conspired" to make it appear as if the investigation of Mr. Gillispie began when Moore took over the case, not years earlier when other detectives had investigated, and eliminated, Mr. Gillispie as a suspect." *Id.* at ¶62.

- Third, to conceal the prior investigation further, as part of the conspiracy, the conspirators agreed to withhold the police reports created in the prior investigation. *Id.* at ¶63-64.

- Fourth, and finally, the complaint alleges that the conspiracy continued at trial when Defendant Wolfe, among others served as a prosecuting witness and provided false and misleading testimony to the jury. *Id.* at ¶65.

In light of these comprehensive allegations, Defendant Wolfe's Motion is simply wrong when it asserts that there "is no specific factual allegation that Mr.

17

Wolfe has ever done anything other than furnish information to the police and testify at Mr. Gillispie's trials." Mot., Dkt. 47, at 9. The allegations detailed above, which must be presumed as true at this juncture, demonstrate otherwise.

        4. *None of the "State Action" Tests Applies Here*

        The Motion draws the Court's attention to three tests used to determine whether "private conduct may be fairly attributable to state action" under § 1983—the public function test, the state compulsion test, and the symbolic relationship or nexus test. Dkt., 47, at 9-10. At this juncture, however, these tests have absolutely no bearing on the issue of whether Defendant Wolfe acted under color of law because "[a]pplication of these tests to the conduct of a private entity … is relevant only in cases in which there are no allegations of cooperation or concerted action between state and private actors." *Memphis Postal Workers*, 361 F.3d at 905; *Wilkerson*, 545 F. App'x at 421 n.2; *see also Monfort Supply Co. v. Hamilton County Bd. of Zoning Appeals*, 2006 WL 3703686, at *3 (S.D. Ohio. Dec. 13, 2006) (Watson, J.) (explaining that "the application of these tests to the conduct of a private entity is relevant only in cases in which there are no allegations of cooperation or concerted action between state and private actors").

        Regardless, to the extent the Court believes these tests may have bearing at this stage, Plaintiff dismissal would still be inappropriate. Instead, in light of the detailed interactions alleged between Defendant Wolfe and other Township Officers, it would be premature to dismiss the Complaint on this ground because, a number of those facts and the inferences flowing from them, if proven, could satisfy any of

the three tests cited in the Motion. Thus, the only way to rule against Plaintiff, at this juncture, would be for this Court to resolve factual allegations Defendant Wolfe apparently contests *against* Plaintiff.. But, as the Court is well aware, doing so would be improper. *See Alahverdian*, 2013 WL 1964009, at *9 (quoting WRIGHT & MILLER, *supra*).

*     *     *

The Complaint adequately alleges that Defendant Wolfe, if he was not a state agent himself, chose to "willfully participate in joint action with state agents," making him liable under § 1983. *Memphis Postal Workers*, 361 F.3d at 905. As such, the case law is clear that dismissal would be improper. *See, e.g.*, *Lightborne Publishing, Inc. v. Citizens for Community Values*, 2009 WL 778241 (S.D. Ohio Mar. 20, 2009) (Spiegel, J.); (denying motion to dismiss where plaintiff alleged "that the private party Defendants acted jointly with state officials in … actions which Plaintiff claims violated its First Amendment rights," and concluding that plaintiff had "sufficiently alleged concerted action between the state and private actors"); *Eckmeyer v. Brimfield Township Board of Trustees*, 2006 WL 1644377, at *4-5 (N.D. Ohio. June 12, 2006) (denying motion to dismiss where Plaintiff plead conspiracy with state actors but did not plead facts sufficient to satisfy any other test).

## B. The Complaint's Allegations of Conspiracy Are Sufficient

As a basis for dismissing Counts I (Suppression of Exculpatory Material), II (Suggestive Identification), III (Fabricated Evidence), IV (Malicious Prosecution), and V (Malicious Prosecution), Defendant Wolfe argues that he cannot be liable for

19

these claims because Plaintiff's allegations of conspiracy are insufficient. Defendant Wolfe even states that the Complaint "does not identify how or when a conspiracy took place between public and private actors or what facts support the conclusion that there was a conspiracy at all." Dkt. 47, at 14.

However, as amply demonstrated above, and incorporated here, this argument ignores and therefore mischaracterizes the allegations made in the Complaint. The Complaint, in beyond-sufficient detail, describes the conspiracy that took place between Defendant Wolfe, Defendant Moore, and the remainder of the GM and Officer Defendants. For the same reasons that Defendant Wolfe's actions were under cover of law for the purposes of § 1983, he is also properly liable for these actions even if he was not directly involved because they furthered his agreement with other defendants to falsely implicate and convict Mr. Gillispie for crimes he did not commit.

Put differently, because it is well established that a co-conspirator is liable for actions of their co-conspirators in furtherance of that conspiracy, *Hooks*, 771 F.2d at 943-44, Defendant Wolfe can be liable as such. *See also United States v. Frost*, 914 F.2d 756, 762 (6th Cir. 1990) (noting that "each member of a conspiracy becomes responsible for acts in furtherance of the conspiracy committed by his co-conspirators"); *cf. Proffitt v. Ridgway*, 279 F.3d 503, 507 (7th Cir. 2002) (noting that, "in civil as in criminal law" a conspirator is liable "for the wrongful acts of the other conspirators committed within the scope of the conspiracy."); *Grove Press, Inc. v. Angleton*, 649 F.2d 121, 122 (2d. Cir. 1981) ("A conspiracy is alleged for the purpose

20

of showing that a wrong was committed jointly by the conspirators and that, because of their common purpose and interest, the acts of one may be imputed to the others.").

In short, because Plaintiff's factual allegations of conspiracy are detailed and specific, and not whatsoever "vague" or "conclusory," Defendant Wolfe may be liable as a co-conspirator. This argument, raised numerous times, therefore fails, and provides no basis for dismissal of any of Plaintiff's counts.

### C. The Complaint Sufficiently Alleges Wolfe's Liability For Suppressing Exculpatory Material

It is well established that, under *Brady v. Maryland* and its progeny, the prosecution's suppression of evidence favorable to the defense violates due process where that evidence is material either to guilt or to punishment regardless of the good faith or bad faith of the prosecution. 373 U.S. 83 (1963); *Youngblood v. West Virginia*, 547 U.S. 867 (2006) (*per curiam*); *Giglio v. United States*, 405 U.S. 150 (1972). Due Process requires disclosure of impeachment evidence as well as exculpatory evidence, *United States v. Bagley*, 473 U.S. 667 (1976).

Due process likewise requires disclosure of evidence "known only to police investigators and not the prosecutor." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). Indeed, the Sixth Circuit has explained that *Brady*'s ultimate concern for ensuring that criminal defendants receive a fundamentally fair trial, "demands that *Brady*'s protections also extend to actions of other law enforcement officers such as investigating officers." *Moldowan v. City of Warrant*, 578 F.3d 351, 378 (6th Cir. 2009). "In other words, because the police are just as much an arm of the state as

21

the prosecutor, the police inflict the same constitutional injury when they hide, conceal, destroy, withhold, or even fail to disclose materially exculpatory information." *Id.* at 379.

Here, despite this clearly established law, *see id.* at 381-82 (concluding police officer's *Brady* duties are clearly established), Defendant Wolfe has Moved to dismiss this Count on the grounds that (1) the complaint does not describe what evidence Mr. Wolfe is alleged to have destroyed or suppressed or how he did so, and (2) that Mr. Wolfe had no duty to provide exculpatory evidence to either the prosecution or the defense.

These arguments simply ignore the allegations made in the Complaint. First, the Complaint alleges that, among other things, Mr. Wolfe was actually directly involved in suppressing the supplementary reports containing exculpatory information in order to make it appear as if the prior detectives had never done work on the case and eliminated Mr. Gillispie as a suspect. *See* Dkt. 18, at ¶¶ 45, 49-51, 56, & 63-64.

More important, the Motion proceeds on the erroneous legal premise that Defendant Wolfe can be liable only for actions of which he was a direct participant. Not so. Instead, as described above, Mr. Wolfe was a co-conspirator with Defendant Moore and others Defendants, and can therefore be liable for those actions. On this Count, that includes suppressing: interview tapes of witnesses that contained exculpatory information, *id.* at ¶57-58; camping registration cards that were exculpatory and helpful to Mr. Gillispie's alibi, *id.* at ¶60; and other forensic

22

evidence obtained from the crime scene. *Id.* at ¶¶ 66-71. Thus, as summarized in paragraph 77 of the Complaint, Mr. Wolfe can be liable because "The Defendant Officers, GM Defendants, and County Defendants, acting individually and in conspiracy with each other, destroyed, failed to disclose, and otherwise withheld and/or suppress exculpatory information and material from the prosecution and, thus, from Plaintiff. *Id.* at ¶77.

For related reasons, the second argument—that Defendant Wolfe had no obligation to turn over evidence—similarly misses the mark. To start, as *Moldowan* emphasized, police officers do have a clearly-established constitutional duty to turn over evidence, 578 F.3d at 376-89, and the Complaint alleges that Mr. Wolfe may have been a police officer. Nonetheless, even if Mr. Wolfe were not a Township officer, the actions of his co-conspirators in destroying evidence are sufficient to state a § 1983 *Brady* claim against the Defendant Officers that, via civil conspiracy, Defendant Wolfe may be liable for. *See also, e.g.*, *Gregory v. City of Louisville*, 444 F.3d 725, 744-45 (6th Cir. 2006) (conspirator forensic analyst liable for *Brady* and fabrication of evidence claims).[2]

---

[2] To the extent the Motion relies upon *D'Ambrosio v. Marino*, 2014 WL 1243792 (6th Cir. Mar. 27, 2014), as a basis for dismissing Mr. Gillispie's complaint, such reliance is misplaced. *D'Ambrosio* held that a plaintiff's allegation that a police officer was "privy to" several pieces of evidence that he "failed to disclose" was insufficient to state an actionable *Brady* claim under § 1983. 2014 WL 1243792, at *9-10. In reaching this conclusion, the Court emphasized that the complaint did not allege that the detective "withheld any of this information from the prosecutor, that the prosecutor was ignorant of any of this evidence, or anything other than that [the detective] failed to disclose this evidence to the [defendant] himself." *Id.* at * 9. *D'Ambrosio,* especially when read in light of *Moldowan*, therefore stands only for the proposition that a police officer does not have a personal obligation to furnish evidence that he is "privy to" directly to the defense.

### D. The Complaint States An Actionable Unduly Suggestive Identification Due Process Claim Against Defendant Wolfe

Count II of the Complaint is a due process claim, and Plaintiff does not seek redress merely because certain "prophylactic" procedures were not followed. Instead, Mr. Gillispie, then a criminal suspect, had a clearly established "constitutional right to be free from identification procedures so unnecessarily suggestive and conducive to irreparable mistaken identification' that the identification's use violates due process of law." *Gregory v. City of Louisville*, 444 F.3d 725, 476 (6th Cir. 2006) (quoting *Stovall v. Denno*, 388 U.S. 293, 302 (1967)). The Sixth Circuit, like other courts, has recognized that such a claim is actionable under § 1983 where the Plaintiff's a fair trial has been violated in a prior criminal proceeding where tainted identifications were introduced or used taint evidence presented at trial. *Id; Hutsell v. Sayre*, 5 F.3d 996 (6th Cir. 1993). Other courts have reached the same conclusion. *See, e.g.*, *Pace v. City of Des Moines*, 201 F.3d 1050, 1055 (8th Cir.2000) ("In the context of unduly suggestive arrays, only a violation of the core right—the right to a fair trial—is actionable under § 1983."); *Wray v. Johnson*, 202 F.3d 515, 524 (2nd Cir.2000); *Hensley v. Carey*, 818 F.2d 646 (7th Cir. 1987); *Goodloe v. City and County of Denver*, 2007 WL 2697605, at *11 (D. Colo

---

Count I of Mr. Gillispie's Complaint makes a significantly different claim. Here, unlike *D'Ambrosio*, Mr. Gillispie alleges that the defendants deliberately withheld and suppressed exculpatory information from prosecution and thereby the defense, Dkt. 18, at ¶77, that the defendants suppressed this exculpatory information from both the defense and the prosecution by removing it from the case file, *id.* at ¶¶ 49, 63, and that these defendants *knew* the suppressed evidence included exculpatory evidence, *id.* at ¶63. Thus, as *D'Ambrosio* anticipates, Mr. Gillispie's complaint has stated a claim because he has plead facts alleging that the defendants "failed to carry out [their] '*Brady*-derived responsibility to turn over potentially exculpatory evidence to the prosecutor's office.'" *D'Ambrosio*, 2014 WL 1243792, at *9 (quoting *Maldowan*, 578 F.3d at 381).

Sept. 11, 2007); *Johnson v. Rollins*, 2006 WL 2546807, *6 (E.D. Mo. Aug. 31, 2006)
(collecting cases and noting that "[c]ourts have recognized allegations of suggestive
identification procedures as constitutional tort claims.").

Thus, as Plaintiff acknowledges, the "core right" implicated by the prohibition
on unduly suggestive identification procedures is the right to a fair trial, not to any
sort of procedure writ large. *Pace*, 201 F.3d at 1055. As such, a § 1983 claim alleging
an unduly suggestive procedure can proceed so long as the suggestive procedures
deprived the Plaintiff of a fair trial; that is, where the identifications were
introduced at a trial. *See Gregory*, 444 F.3d at 476 (explaining that because "an
unduly suggestive identification does not, in and of itself, violate constitutional
rights," the "the prosecution's use of the identification at trial is a necessary
intervening act for injury to occur and liability for any party to attach"); *Antonio v.
Moore,* 274 Fed. App'x. 131, 133, 136 (4th Cir. 2006) (noting viability of § 1983
suggestive identification claim generally, dismissing the claim where plaintiff had
plead guilty and, therefore, no identifications been obtained via unduly suggestive
procedures were presented at trial); *Goodloe*, 2007 WL 2697605, at *11("The
Plaintiff must also demonstrate that the impermissibly suggestive identification
procedure deprived him of the right to a fair trial.").

Defendant Wolfe is therefore correct in arguing that the fact a specific
procedure was not followed is not, by itself, actionable under § 1983. Dkt. 47, at 14-
15. That fact is irrelevant here, however. Instead, in this case, Plaintiff has stated
an actionable unduly suggestive identification procedures claim because his

Complaint alleges that his "core right" to a fair trial was violated when the tainted identifications were introduced at his trial. Specifically, on the basis of factual allegations demonstrating how the identifications were suggestively obtained, *see* (Dkt. 18, at ¶¶52-54), the Complaint alleges:

> 84. Defendants Moore and Wilson, acting individually and in conspiracy with each other [and the] GM Defendants, used improper and suggestive procedures to cause Plaintiff to be misidentified as the perpetrator. This misconduct tainted the pretrial identifications of Mr. Gillispie, *which were offered against him at trial, and the in-court identifications during his trial*.

> 85. As a result of these violations, Plaintiff was deprived of *his right to fair trial* and was falsely convicted for a crime of which he was innocent.

(Dkt. 18, at ¶¶84-85 (emphasis added).[3]

The plain language of the complaint makes clear that the tainted identifications were "offered against" Plaintiff at trial and that they deprived him of his "right to a fair trial." The Complaint, therefore, states an actionable unduly suggestive identification claim and should not be dismissed.

## E. Count III States An Actionable Due Process Claim Against Defendant Wolfe For the Fabricating Evidence

Count III involves another due process claim: that Defendant Wolfe, acting in conspiracy with Defendant Moore and other defendants "fabricated evidence,

---

[3] As explained above, and incorporated here, it is irrelevant that the Complaint does not allege Mr. Wolfe himself, directly conducted any of the manipulation that lead to the suggestive identifications and that Detective Moore was the primary actor. Instead, because the Complaint sets forth the specific allegations regarding this civil conspiracy to violate Plaintiff's rights, and these actions were taken in furtherance of that conspiracy, Defendant Wolfe can be liable for these wrongs as well. *Cf. Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988) (Posner, J.) ("In a tort case such as this (a section 1983 constitutional-tort case is still a tort case …), the function of conspiracy doctrine is merely to yoke particular individuals to the specific torts charged in the complaint.").

including without limitation, false police reports, fabricated statements attributed to witnesses, and their own fabricated testimony offered at trials." Dkt, 18, ¶91. Defendant Wolfe does not argue that the fabrication of evidence is not an actionable claim under § 1983, as it most certainly is. *See Gregory*, 444 F.3d at 739-40; *Spurlock v. Satterfield*, 167 F.3d 995, (1999); *Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997); *Ransaw v. Lucas*, 2013 WL 6179418, at *6 (N.D. Ohio Nov. 25, 2013).

Rather, Defendant Wolfe seeks dismissal of this count, apparently on three bases. First, that the Complaint fails to allege what evidence Defendant Wolfe is supposed to have fabricated; second, that he is entitled to absolute immunity for his testimony, even if fabricated, at Plaintiff's trial; and, third, that Plaintiff's allegations of conspiracy are inadequate. Each of argument fails.

The first and third arguments really involve the same error repeated throughout the Motion and can therefore be considered, and rejected, together. Count III alleges that, in addition to his co-conspirators and *without limitation*, police reports, statements attributed to witnesses, and his own testimony was fabricated. Dkt., 18 at ¶91; *see also id.* at ¶¶45, 62, & 65. The Complaint also includes factual allegations of fabrication related to lies about the composite from the rapes being at the GM plant, *id.* at ¶¶ 35, 46, lies told to other witnesses, *id.* at ¶59, efforts designed to make it appear as if the investigation of Mr. Gillispie began with Moore, rather than Fritz and Bailey, *id.* at ¶¶62-63, and bringing GM identification cards to the police station, *id.* at ¶¶ 42 & 47-48. Defendant Wolfe's

27

Motion misses that he was personally involved in fabricating some of this evidence—like the identification cards and allegedly fabricated stories about the composites being up at GM that he admits Defendant Moore "gave" him. And, more important, the Motion ignores the detailed allegations of conspiracy that have been described throughout.

Finally, Defendant Wolfe's argument regarding testimonial immunity misses the thrust of Count III. Plaintiff concedes that a testifying witness is typically entitled to absolute immunity for their testimony. *Briscoe v. LaHue*, 460 U.S. 325, (1982). However, it is undisputed that the non-testimonial evidence that was fabricated is not subject to such immunity, *Gregory*, 444 F.3d at 739; *Spurlock*, 167 F.3d at 1002, which is what Count III alleges.

In addition, despite *Briscoe*, to prove a fabrication of evidence claim, a "plaintiff must prove that the defendants knowingly fabricated evidence *and* that there is a reasonable likelihood that the fabricated evidence affected the outcome of the prosecution." *Ransaw*, 2013 WL 6179418, at *7 (citing *Stemler*, 126 F.3d at 872) (emphasis added); *see also Gregory*, 444 F.3d at 744 n.8 (citing *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989)). Plaintiff's obligation to demonstrate that there is reasonable likelihood that the fabricated evidence affected the *outcome* of the prosecution—two trials where Mr. Gillispie was wrongfully convicted—is satisfied by alleging that the fabricated evidence was introduced at trial. Thus, the factual allegations regarding the fabricated evidence being introduced at trial, *e.g.* Dkt., 18, at ¶65, demonstrates the Complaint's sufficiency rather than any defect.

28

### F.  Count IV States An Actionable Malicious Prosecution Claim Against Defendant Wolfe

For Count IV, Defendant Wolfe's only asserted basis for dismissal is that he is a private actor and that as a private actor he cannot be liable because the Complaint alleges only that he "merely" furnished information to state officials, which is insufficient to demonstrate a conspiracy. Dkt. 47, at ¶17.

But, as explained above, this position disputes facts alleged in the Complaint, ignores a number of other facts alleged in the Complaint, and then simply mischaracterizes what Mr. Gillispie has plead regarding the breadth of the conspiracy involving Defendant Wolfe. Without a doubt, Count IV survives Defendant Wolfe's motion, and provides no basis for dismissal with prejudice.

### G.  Count V States an Actionable Due Process Claim For Destruction of Evidence Against Defendant Wolfe

Defendant Wolfe's motion to dismiss Count V can be disposed as quickly as, and on the same grounds as, Count IV: the argument improperly disputes facts alleged in the Complaint, simply ignores and refused to consider numerous factual allegations, and unfairly seeks to cabin and minimize the specific, detailed, and plausible conspiracy alleged in the Complaint.

### H.  Plaintiff's State-Law Claims Are Not Time Barred

Finally, Defendant Wolfe argues that Plaintiff's state-law claims of malicious prosecution and intentional infliction of emotional distress are barred by the applicable Ohio statute of limitations: one year for malicious prosecution, pursuant

29

to O.R.C. § 2305.11, and four years for intentional infliction of emotional distress, pursuant to O.R.C. § 2305.09. (Dkt. 47. at 19-20).

There are several problems with this argument. First, regarding malicious prosecution, it is clear that Mr. Gillispie's claim is well within any statute of limitations. In Ohio, "a cause of action for malicious prosecution accrues when the prosecution has terminated in the plaintiff's favor." *Hamilton v. Best Buy*, 2002 WL 242542, at *2 (Ohio App. 2 Dist. Feb. 15, 2002); *Francis v. Cleveland*, 78 Ohio App.3d 593 (Ohio App. 8 Dist. 2002); *Jones v. Swank*, 2012 WL 4107981, at *7 (S.D. Ohio. Sept. 19, 2012). As both this Court and other defendants are aware, though Mr. Gillispie's conviction has been overturned by two courts—one federal and one state—the criminal prosecution has not completely terminated. Dkt. 53, at 5.[4] Thus, because the statute of limitations has yet to begin running, it stands as no bar to Mr. Gillispie's action.

Second, for IIED, and related to the fact that Mr. Gillispie still faces bogus criminal charges as a result of the constitutional violations alleged in the Complaint, the statute of limitations is no bar here because the infliction of emotional distress—through these criminal charges, incarceration, and continuing prosecution—is not yet complete. A "cause of action for intentional infliction of emotional distress does not accrue until the tort is complete." *Biro v. Hartman Funeral* Home, 107 Ohio App.3d 508, 514. Here, as evidenced by the fact that the malicious prosecution claim has yet to accrue, as further evidenced by the fact that

---

[4] This Court may take judicial notice of these other court proceedings without converting a motion to dismiss into a motion for summary judgment. *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 817 (6th Cir. 2010).

Mr. Gillispie is still facing extreme harm related to the outrageous conducted described in the complaint, and consistent with the Complaint's allegations that Defendants have engaged in ongoing tortuous conduct, *see* Dkt. 18, at ¶¶ 72-73, it is clear that Plaintiff's distress is not "complete." Consequently, Mr. Gillispie's claim has not accrued because his malicious prosecution claim has not either. *See Deir v. Lake County*, 2014 WL 49570, at *3 (Feb. 6, 2014) (Boyko, J.) (explaining that, under Ohio law, "when the acts giving rise to the underlying intentional infliction claim would support another tort, it is the statute of limitations for the other tort that controls the claim for intentional infliction of emotional distress." (citing *Lee v. Norwalk*, 2011 WL 4007786, at *2 (N.D. Ohio Aug. 25, 2011)). Thus, because the harm of Defendants' IIED is not yet "complete" and the malicious prosecution claim has yet to accrue, the statute of limitations does not bar Mr. Gillispie's claims.

## CONCLUSION

Mr. Gillispie's wrongful conviction was a miscarriage of justice, but it was no accident. The Complaint alleges "sufficient factual matter" that, when "accepted as true … 'state[s] a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). Accordingly, because there is "more than a sheer possibility" that Defendant Wolfe "has acted unlawfully," *id.*, the Motion must be denied in its entirety.

RESPECTFULLY SUBMITTED,

_____

*One of Plaintiff's Attorneys*

31

Michele L. Berry (0018939)
THE LAW OFFICE OF MICHELE BERRY,
LLC
114 East 8th Street
Cincinnati, OH 45202
Tel: 513.919.5315
Fax: 513.376.8752
mberry@mberrylaw.com
*Counsel for Plaintiff*

Mike Kanovitz
David B. Owens
LOEVY & LOEVY
312 North May St., Suite 100
Chicago, IL 60607
(312) 243-5900

*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I, David B. Owens, an attorney, certify that I caused the foregoing Response in Opposition to Defendant Wolfe's Motion to Dismiss to be delivered, via the Court's electronic filing system, on all counsel of record on May 15, 2014.

_____