# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

ROGER DEAN GILLISPIE,

        Plaintiff,    :    Case No. 3:13-cv-416

                              District Judge Thomas M. Rose
- vs -                            Magistrate Judge Michael R. Merz

CITY OF MIAMI TOWNSHIP, et al.,

        Defendants.    :

## DECISION AND ORDER ON MOTION TO RECUSE

This case is before the Court on Motion to Recuse of Defendants Miami Township, Matthew Scott Moore, Tim Wilson, Thomas Angel, Marvin Scothorn, John DiPietro, and Stephen Gray (collectively the "Miami Township Defendants")(Doc. No. 49). The Motion was filed on May 1, 2014, pursuant to an Order setting that as a deadline for formal motions for disqualification, entered in response to correspondence from counsel for the Miami Township Defendants informally requesting that I "consider a voluntary recusal under 28 U.S.C. § 455." (Doc. No, 46, PageID 384.) No other parties have sought recusal and the Plaintiffs have filed a Response in Opposition (Doc. No. 57).

Motions to recuse are addressed in the first instance to the judge sought to be disqualified. *United States v. Studley,* 783 F.2d 934, 940 (9th Cir. 1986); *In re Drexel Burnham*

1

*Lambert, Inc.,* 861 F.2d 1307, 1312 (2nd Cir. 1988); *MacNeil v. Americold Corp.*, 735 F. Supp. 32, 36 (D. Mass. 1990)(specifically applying rule to United States magistrate judges).

When this case was filed, it was randomly assigned, as are all civil cases filed at Dayton, to both a district judge and a magistrate judge, in this case District Judge Thomas M. Rose and Magistrate Judge Michael J. Newman. The notation of an assignment "does not constitute a reference to the assigned Magistrate Judge for any purpose, but merely selects the Magistrate Judge to whom referrals in the case, if any, will be made."(See Dayton General Order 13-01 on the Court's website, www.ohsd.uscourts.gov.)

Shortly after the case was filed, the assignment was transferred to me (Doc. No. 5) and then referred for pre-trial case management by Judge Rose (Doc. No. 6). S. D. Ohio Civ. R. 3.1(b) provides:

> **(b) Related Cases.** An initiating party shall identify on the civil cover sheet or other form provided by the Clerk any previously filed case or cases in the District that the party knows or believes to be related. After the initial filing of a case, any party may call to the Court's attention any related case(s) by filing a notice of related case(s). For purposes of this Rule, civil cases may be deemed related by the Court if they:
>
> (1) Arise from the same or substantially identical transaction, happening, or event; or
>
> (2) Call for a determination of the same or substantially identical questions of law or fact; or
>
> (3) Would entail a substantial duplication of effort and expense by the Court and the parties if heard by different Judges; or
>
> (4) Seek relief that could result in a party's being subject to conflicting orders of this Court.

S. D. Ohio Civ. R. 3.1(c) provides that the related cases rule "is intended to provide for the orderly division of the business of the Court and does not grant any right to any litigant."

Plaintiff did not comply with S. D. Ohio Civ. R. 3.1(b); the "related cases" section of the civil cover sheet was left blank upon filing (Doc. No. 1-1, PageID 27). Nevertheless, it was apparent to the Court upon filing that this case was related, within the intendment of S. D. Ohio Civ. R. 3.1(b), to *Gillispie v. Timmerman-Cooper*, Case No. 3:09-cv-471 (the "Habeas Case"). The Habeas Case was brought by Gillispie under 28 U.S.C. § 2254 to collaterally attack his convictions for rape. This case arises from the same sequence of events which gave rise to the Habeas Case, many of the same questions of fact and law will be involved here, having the case heard by a different judge would entail "a substantial duplication of effort," and this case potentially involves conflicting orders under *Heck v. Humphrey*, 512 U.S. 477 (1994). Of course, this case could not be entirely transferred to me based on its relation to the Habeas Case because the parties have not unanimously consented to plenary magistrate judge jurisdiction under 28 U.S.C. § 636(c), but the transfer of assignment and reference for at least pre-trial management seemed to the Court to comport as much as possible with the related cases rule and rationale.

**Standard for Recusal**

The Miami Township Defendants seek recusal under 28 U.S.C. § 455(a) which provides "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

The standard applied in evaluating recusal motions is an objective one. "[W]hat matters is not the reality of bias or prejudice, but its appearance." *Liteky v. United States,* 510 U.S. 540, 548 (1994). A federal judicial officer must recuse himself or herself where "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned. This standard is not based 'on the subjective view of a party,'" no matter how strongly that subjective view is held. *United States v. Nelson*, 922 F.2d 311, 319 (6th Cir. 1990); *Hughes v. United States*, 899 F.2d 1495, 1501 (6th Cir. 1990); *Wheeler v. Southland Corp.*, 875 F.2d 1246, 1251 (6th Cir. 1989); *Browning v. Foltz*, 837 F.2d 276, 279 (6th Cir. 1988). Review is for abuse of discretion. *Wheeler*, 875 F.2d at 1251. As the moving defendants note, a judge's introspective estimate of his own ability to be impartial is not the standard. (Motion, Doc. No. 49, PageID 416, citing *Roberts v. Bailar,* 625 F.2d 125, 129 (6th Cir. 1980). The same case holds that where the question is close, the judge must recuse himself. *Id.*

§ 455(a) requires disqualification in any proceeding in which a judge's impartiality might reasonably be questioned. "This statute embodies the principle that 'to perform its high function in the best way justice must satisfy the appearance of justice.'" *Ligon v. City of New York (In re Reassignment of Cases)*, 736 F.3d 119, 123 (2nd Cir. 2013), quoting *In re Murchison*, 349 U.S. 133, 136 (1955).

The moving defendants also recognize that a disqualifying prejudice or bias must ordinarily be personal or extrajudicial. *United States v. Sammons,* 918 F.2d 592, 598 (6th Cir. 1990); *Wheeler*, 875 F.2d at 1250. That is, it "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); *see also Youn v. Track, Inc.,* 324 F.3d 409 (6th Cir. 2003), citing *Grinnell, supra; Bradley v. Milliken,* 620

F.2d 1143, 1157 (6th Cir. 1980); *Woodruff v. Tomlin*, 593 F.2d 33, 44 (6th Cir. 1979). The Supreme Court has held:

> The fact that an opinion held by a judge derives from a source outside judicial proceedings is not a *necessary* condition for 'bias and prejudice' recusal, since predispositions developed during the course of a trial will sometimes (albeit rarely) suffice. Nor is it a *sufficient* condition for 'bias and prejudice' recusal, since some opinions acquired outside the context of judicial proceedings (for example, the judge's view of the law acquired in scholarly reading) will not suffice. ... [J]udicial rulings alone almost never constitute valid basis for a bias or partiality motion. See *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S. Ct. 1698, 16 L. Ed. 2d 778 (1966). ... Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."

*Liteky v. United States,* 510 U.S. 540, 554-55 (1994); *see also Alley v. Bell*, 307 F.3d 380, 388 (6th Cir. 2002)(quoting the deep-seated favoritism or antagonism standard). The *Liteky* Court went on to hold:

> *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration — even a stern and short-tempered judge's ordinary efforts at courtroom administration — remain immune.

510 U.S. at 555. In *Liteky* itself the Court approved as a common practice the retrial of cases on remand by the same judge who heard them before appeal. Since the decision in *Liteky, supra,* "federal courts have been uniform in holding that § 455(a) cannot be satisfied without proof of extrajudicial bias, except in the most egregious cases." Flamm, Judicial Disqualification 2d § 25.99, citing *In re Antar,* 71 F.3d 97 (3rd Cir. 1995). The Miami Township Defendants do not

assert any extrajudicial bias and have not moved for disqualification under §455(b) which requires recusal "[w]here [a judge] has a personal bias or prejudice concerning a party or personal knowledge of disputed evidentiary facts concerning the proceeding;"

Judge Easterbrook has written regarding § 455(a):

> Section 455(a) asks whether a reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits. This is an objective inquiry. A reasonable observer is unconcerned with trivial risks, which are endemic. If they were enough to require disqualification we would have a system of pre-emptory strikes and judge-shopping, which itself would imperil the perceived ability of the judicial system to decide cases without regard to persons. ... There are not enough political eunuchs on the federal bench to resolve all cases with political implications; anyway it would be weird to assign all political cases to the naifs while concentrating antitrust and securities cases in the hands of political sophisticates. ... Tenure of office, coupled with the resolve that comes naturally to those with independent standing in the community have led a 'political' judiciary in the United States to be more assertive in securing legal rights against the political branches than is the politically neutral, civil service judiciary in continental Europe.

*In re Mason*, 916 F.2d 384, 385-87 (7th Cir. 1990).

**Application of the Standard**

The Miami Township Defendants concern is that I have predispositions about how this case should be decided arising from my handling of and decisions in the Habeas Case. They have cited a number of instances where they believe I expressed or evinced such a predisposition in that case which merit consideration in the context in which each of those instances occurred.

6

*Gillispie v. Timmerman Cooper*, 835 F. Supp. 2d 482 (S.D. Ohio 2011)("*Gillispie 1*"), is the final appealable decision in which I granted Roger Gillispie a conditional writ of habeas corpus on the basis of a finding that his rights under *Brady v. Maryland*, 373 U.S. 83 (1963), had been violated. As the Miami Township Defendants quite properly note, to reach that decision, I had to conclude that the contrary decision of the Montgomery County Court of Appeals in *State v. Gillispie,* 2009 Ohio 3640, 2009 Ohio App. LEXIS 3107 (2nd Dist. 2009), was an objectively unreasonable application of *Brady*. The opinion in *Gillispie 1* quotes at length from Judge Froelich's opinion and recites at some length the standard for deference in habeas corpus cases where a state court has previously decided the same constitutional question (so-called AEDPA deference).

My decision had nothing to do with any lack of respect for the legal acumen of the judges who decided that case. In my opinion Jeffrey Froelich, James Brogan, and Mike Fain are among the very best appellate judges in Ohio. Moreover, each of them has been a personal friend throughout the more than thirty years all of us have been judges in Dayton.

While the burden to overcome AEDPA deference is difficult, I decided, purely in the exercise of professional judgment, that it had been met here. The Miami Township Defendants emphasize that they will be asking me in this case "to reverse his conclusion and determine that no *Brady* violation occurred." (Motion, Doc. No. 49, PageID 417.) Precisely how that question will be presented in this case is unclear at this point in time. If presented on summary judgment, it will be for Judge Rose, not me, to decide, since summary judgment motions are classified as dispositive by statute. 28 U.S.C. § 636(b). Certainly the attorneys in this case are completely different from those who appeared in the Habeas Case, and they may be more persuasive than the habeas lawyers were. There may be new law applicable to the *Brady* question decided

between December 2011 and whenever it is finally presented for decision here. Furthermore, the *Brady* question is not likely to be the only dispositive question in the case; qualified immunity issues, for example, played no part in the Habeas Case.

More fundamentally, it cannot be a disqualification for a judge to have previously taken a position on a question from which he or she must be persuaded. So far as I am aware, Justices Brennan and Marshall continued to sit on capital appeals to the Supreme Court long after each of them announced he would never again vote to uphold a death sentence.

The Miami Township Defendants argue this case must be distinguished from disqualification "decisions analyzing judicial-ruling-based partiality challenges by a party on the heels of an adverse ruling or comments in a judicial proceeding. Quite differently, this case is still in its infancy. . ." The distinction is unhelpful to the case for recusal. Justice Scalia noted in *Liteky* that expressions of annoyance, impatience, even anger are not disqualifying. Such expressions are much more likely to be provoked by lawyers' or litigants' courtroom behavior. But that does not logically imply that forty-page hopefully well-reasoned decision in a related case displays "deep-seated favoritism." The Miami Township Defendants certainly point to no examples of favoritism to Plaintiff displayed in the six months this case has been pending.

The Miami Township Defendants are also troubled by the post-judgment decisions in the Habeas Case[1]. The context of those decisions requires explanation. 999 out of 1000 habeas corpus judgments of this Court attract no media attention. Even capital cases where a conditional writ is granted rarely garner more than a column inch in the print media. For reasons unknown to me, this case attracted a great deal of media attention. The Court's pretrial officer who went to Gillispie's place of incarceration to explain bond conditions and attach an electronic

---

[1] They argue "The orders and opinions rendered by Magistrate Judge Merz following the issuance of the conditional writ of habeas corpus further cast doubt on his ability to remain impartial in these proceedings." (Motion, Doc. No. 49, PageID 418.)

monitor reported that the electronic media were present, along with Gillispie's family. A Google search on Plaintiff's name produces literally dozens of media stories published around the time *Gillispie 1* was decided. Coincident with the public attention was a good deal of official attention. One of the moving Defendants actually emailed this Court's Chief Pretrial Services Officer on the evening of Gillispie's release. The Warden immediately appealed the final judgment and sought a stay so that Gillispie would remain in prison pending appeal (3:09-cv-471, Doc. Nos. 65, 67). The Montgomery County Prosecutor, who had not been formally involved in the Habeas Case, entered an appearance and sought to be heard on bond. *Id.* at Doc. Nos. 71-73). Having had Gillispie evaluated by Pretrial Services, the Court ordered him released on conditions to which all parties agreed. *Id.* at Doc. No. 73, PageID 4592. The Court also granted a stay pending appeal, in part out of respect for the opinion of the Second District Court of Appeals. *Id.* at PageID 4591. This was the status of the Habeas case in late December 2011.

On April 13, 2012, the Second District Court of Appeals handed down *State v. Gillispie,* 2012 Ohio 1656, 2012 Ohio App. LEXIS 1453 (Ohio App. 2nd Dist. Apr. 13, 2012), in which it granted Gillispie a new trial. This Court had imposed bond conditions designed in part to protect the State of Ohio's interest in its judgment, but concluded, on Gillispie's motion which the State did not oppose, that "[u]nless the Ohio Supreme Court reinstates that judgment of conviction, the State's interest in the judgment will be completely extinguished." (3:09-cv-471, Doc. No. 88, PageID 4640). The Court therefore continued Gillispie on a conditional own recognizance release on the general conditions imposed on all pretrial releases in this District. *Id.* at PageID 4641. On Motion of the County Prosecutor, the Court added the condition that Gillispie not contact any of the victims. *Id.* at Doc. No. 90 and notation order granting.

The Habeas Case continued in this status until the Ohio Supreme Court declined to exercise jurisdiction over the State's appeal from the Second District's new trial order which occurred on November 7, 2012. *State v. Gillispie*, 133 Ohio St. 3d 1467 (2012). Having been notified of that decision, the Court determined that the State of Ohio no longer had any interest in the prior judgment of conviction and dissolved the bond entirely. The Court also wrote:

> It further appears to this Court that the action of the Ohio Supreme Court renders both this Court's final judgment and the appeal from that judgment moot. The Respondent is accordingly ordered to show cause not later than November 19, 2012, why this Court should not dissolve its stay pending appeal and notify the Sixth Circuit Court of Appeals that the appeal is moot.

(3:09-cv-471, Doc. No. 91, PageID 4647.)

The Miami Township Defendants write that what happened next is "The State, relying upon this order, filed a Motion to Vacate the order issuing the writ and dismissed their merits appeal." (Motion, Doc. No. 49, PageID 410). Counsel for these Defendants do not disclose how they know the State dismissed its merit appeal "relying" on the November 9, 2012, Order. On its face, the Order merely asks the Attorney General to take a position on mootness.[2] Instead of doing that, the Attorney General dismissed the Warden's merit appeal voluntarily, advising this Court in a Response to the Show Cause Order (3:09-cv-471, Doc. No. 92, PageID 4653.)

The Miami Township Defendants question this Court's characterization of the merits appeal dismissal as "voluntary," but that is how Assistant Attorney General Watson characterized it in her Response: "As a result, Respondent has moved to voluntarily dismiss his appeal to the Sixth Circuit court of Appeals from this Court's order granting a writ of habeas

---

[2] The Attorney General did not represent the State in its appeal to the Ohio Supreme Court from the Second District's new trial decision and may not have known, two days after it happened, of the Ohio Supreme Court's decision.

10

corpus conditioned upon the state's retrial of Gillispie." *Id.* at PageID 4650. She did not say the dismissal was a "result" of this Court's show cause order, but rather of her conclusion that this Court had lost jurisdiction to enforce the conditional writ. *Id.* Moreover, in granting the motion to dismiss, the Sixth Circuit characterized the dismissal as voluntary. *Gillispie v. Warden*, Case No. 11-4417 (6th Cir. Nov. 26, 2012)(unpublished; copy at 3:09-cv-471, Doc. No. 93.)

The Attorney General went beyond voluntarily dismissing the appeal and moved this Court to vacate its merits decision under Fed. R. Civ. P. 60(b)(3:09-cv-471, Doc. No. 92, PageID 4650-53). Having ordered additional briefing, the Court denied that Motion. *Gillispie v. Timmerman-Cooper,* 2012 U.S. Dist. LEXIS 180324 (S.D. Ohio Dec. 20, 2012). The State appealed (3:09-cv-471, Doc. No. 101). The State then moved to stay the denial of the 60(b) motion pending the appeal. *Id.* at Doc. No. 100.

The Court denied the stay in a reported decision, *Gillispie v. Timmerman-Cooper,* 2013 U.S. Dist. LEXIS 17998 (S. D. Ohio Feb. 11, 2013). The Miami Township Defendants quote extensively from this decision as if it showed the extraordinary prohibited predispositions adverted to in *Liteky*. At that point in time, the State had lost on the merits of Gillispie's habeas petition and lost on its Rule 60(b) motion. As the Court noted in its decision, it was attempting in the motion to stay to get the benefit of having won the motion to vacate – removal of collateral estoppel effect of the merits judgment on the pending retrial in Common Pleas – without having won. *Id.* at *10-14. In denying the stay, this Court weighed the factors prescribed by the Sixth Circuit for such motions. *Id.* at *4-5, citing *Ohio, ex rel. Celebrezze v. Nuclear Regulatory Comm'n.*, 812 F.2d 288 (6th Cir. 1987). The Sixth Circuit was also asked to stay the decision and declined to do so, deciding in part that the warden was unlikely to prevail on the merits *Gillispie v. Warden*, Case No. 13-3088 (Order of May 29, 2013)(unreported). In doing so, the court noted

11

that "[a]s a general rule, a party who voluntarily foregoes an appeal of a judgment foregoes the remedy of vacatur." *Id.*, citing *U.S. Bancorp Mortg Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 (1994). While the Sixth Circuit has not yet rendered a final decision, its interim order vindicates this Court's denial of a stay. Thus if the order denying stay somehow showed "deep-seated favoritism," it also had a basis in law.

Plaintiff opposes the Motion to Recuse (Doc. No. 57) and the Miami Township Defendants have filed a Reply in Support (Doc. No. 61). The cited case law requires detailed discussion.

In *United States v. Adams*, 722 F.3d 788 (6th Cir. 2013), the court gave examples of comments and orders in a related case which did not meet the *Liteky* standard:

> Defendants argue that the district court was biased because of:
>
>> 1) comments made by the judge about the "culture of corruption" in Clay County at the sentencing hearing on a related case of Kenneth Day, who ultimately testified against Maricle at trial; 2) that in the judge's Memorandum Opinion and Order on Maricle's bond conditions, the court "found Mr. Day's testimony to be credible" based on his appearance before the judge in other cases; and 3) comments made by the court during a bond revocation of one of Maricle's codefendants that the court had a concern that "in many cases that have originated in Clay County, the defendants coming from Clay County don't seem to understand that once they're under bond conditions of this Court that those are pretty serious conditions."
>
> Maricle Br. at 37-38 (citing R. 375 (Mot. to Disqualify) (Page ID #1560-68) and R. 381 (Mot. to Disqualify) (Page ID #1752-53)). These assertions do not show that the district court relied on an extrajudicial source of bias, and defendants cannot otherwise meet

12

> the "extreme" bias or prejudice standard discussed in *Liteky*. Defendants have not pointed to an extrajudicial source because "all the information known by the judge came from his judicial involvement with related cases." *United States v. Jamieson*, 427 F.3d 394, 405 (6th Cir. 2005); *see United States v. Hartsel*, 199 F.3d 812, 820-21 (6th Cir. 1999). Defendants have not met the "extreme" bias or prejudice standard under *Liteky* because the district court judge's statements amount to criticism and disapproval of defendants and other coconspirators, not deep-seated favoritism or antagonism. *See Liteky*, 510 U.S at 555. Because we do not question the district court's impartiality, we affirm the denial of defendants' motions to recuse and hold that the district court judge did abuse his discretion in failing to recuse himself.

722 F.3d at 837-38. The Miami Township Defendants do not respond to Plaintiff's citation of *Adams*. The Court finds that *Adams* supports denial of recusal here.

*Johnson v. Mitchell,* 585 F.3d 923 (6th Cir. 2009), also cited by Plaintiff, is a capital habeas corpus case. Petitioner sought recusal of the assigned District Judge because of his connections with others involved in the state court conviction. The Circuit Court wrote

> [W]e have consistently held that a judge need not recuse himself on the basis of prior contact with a party or a witness, as long as the judge does not have a familial, financial, or similarly close relationship with the party or witness and as long as the judge has not received out-of-court information about the case at hand. *See, e.g., United States v. Dandy*, 998 F.2d 1344, 1349-50 (6th Cir. 1993); *United States v. Sammons*, 918 F.2d 592, 598-99 (6th Cir. 1990).

585 F. 3d at 946. The Miami Township Defendants do not respond to Plaintiff's citation of *Johnson*.

Plaintiff cites published circuit authority holding that federal trial judges are frequently called upon to reconsider prior rulings without recusing themselves (Response in Opposition,

13

Doc. No. 57, PageID 498, citing *Oen Yin-Choy v. Robinson*, 858 F.2d 1400 (9th Cir. 1988), and *United States v. Howard*, 218 F.3d 556 (6th Cir. 2000). The Ninth Circuit in *Yin-Choy* adopted the position of the Sixth Circuit in *Demjanjuk v. Petrovsky*, 776 F.2d 571 (6th Cir. 1985), that a judge who presides over an extradition proceeding is not disqualified from presiding at a subsequent habeas proceeding. The Miami Township Defendants do not respond to Plaintiff's citations of *Yin-Choy* and *Howard*.

In *Wheat v. Ohio*, 23 Fed. Appx. 441, 2001 U.S. App. LEXIS 24423 (6th Cir. 2001), the Sixth Circuit held Magistrate Judge Jack Sherman of this Court was not disqualified to preside over plaintiff's § 1983 civil rights action by having previously presided over his habeas corpus action which involved the same state court conviction. The Miami Township Defendants distinguish *Wheat* by noting habeas relief was denied there but granted here. (Reply, Doc. No. 61, PageID 618.) The distinction cuts against their position because, as in this case, it was the party who lost in the first proceeding who sought recusal in the second.[3]

Plaintiff cites four other decisions in which a judge was held not disqualified in a subsequent 1983 action by his or her presiding over a prior habeas matter involving the same conviction (Response in Opposition, Doc. No. 57, PageID 499, citing *Weimer v. County of Kern*, 2007 WL 14353 (E.D. Cal. Jan. 3, 2007); *Hughes v. City of Albany*, 33 F. Supp.2d 152 (N.D.N.Y. 1999), aff'd 189 F.3d 461, 1999 WL 709290, at *2 (2d. Cir. 1999); *Ingram v. Unknown Deputy No. 1*, 2013 WL 4713574 (D. Or. Aug. 26, 2013); and *Henderson v. Zreliak*, 2006 WL 3827478, at *1 (W.D. Wash. Dec. 28, 2006). The Miami Township Defendants distinguish these cases on the grounds the recusal motions were not well developed or they were made by § 1983 plaintiffs who had previously lost in habeas. The Court assumes those distinctions are well-taken. After all, most

---

[3] Of course, the Miami Twp. Defendants were not parties to the Habeas Case and did not get a chance to be heard there.

habeas petitioners do proceed *pro se* and have difficulty developing the record and most of them also lose. If we put all these cases out of consideration, where is the opposing case law? In their Response, Plaintiff's challenged the Miami Township Defendants on this point: "Conspicuously absent from the Motion is citation to any authority standing for the proposition that a judge previously presiding over a habeas matter is precluded from later presiding over a related § 1983 case." (Doc. No. 57, PageID 498.) Thus challenged the Miami Township Defendants still produced no such authority in their Reply. There being no binding or persuasive authority precisely in point, we are thrown back on more general principles, including those adumbrated in the published Sixth Circuit authority cited by Plaintiff and not addressed by the moving Defendants. Under those general principles, the Miami Township Defendants have not proven that I am disqualified in this case under 28 U.S.C. § 455(a).

When they initially raised the question, the moving Defendants asked that I "voluntarily" recuse myself. Some judges treat recusal as a voluntary matter. In a multi-judge court it is usually possible to trade cases with another judge so as not to impose a burden on a colleague by recusal, so "where's the harm" in removing oneself voluntarily from a case. Even where no trading of cases occurs, a leisure-maximizing judge[4] might recuse upon suggestion of a party without proof that the statute has been satisfied. That has never been my perspective. A judge's duty, as I conceive it, is to decide the matters he or she is assigned unless disqualified as a matter of law. On that basis, the Motion to Recuse is DENIED.

May 28, 2014.

s/ *Michael R. Merz*<br>United States Magistrate Judge

---

[4] See Richard A. Posner, How Judges Think (Cambridge, 2000), p. 11.