IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| ROGER DEAN GILLISPIE, | : | |
| | : | Case No. 3:13-cv-416 |
| Plaintiff, | : | |
| | : | Judge Thomas M. Rose |
| v. | : | |
| | : | Magistrate Judge Sharon L. Ovington |
| CITY OF MIAMI TOWNSHIP, et al., | : | |
| | : | |
| Defendants. | : | |

## DEFENDANT RICHARD WOLFE'S MOTION FOR SUMMARY JUDGMENT

Now comes Defendant Richard Wolfe, by and through the undersigned counsel, and moves the Court for summary judgment as to all of Plaintiff's claims against him. As discussed below, there is no genuine issue of material fact with regard to any of Plaintiff's claims, and Defendant Wolfe is entitled to judgment as a matter of law. A memorandum in support follows.

Respectfully submitted,

/s/ Dwight D. Brannon
Dwight D. Brannon (0021657)
Matthew C. Schultz (0080142)
Attorneys for Defendant Richard Wolfe
Brannon & Associates
130 W. Second St.    Suite 900
Dayton, OH  45402
Telephone:    (937) 228-2306
Facsimile:    (937) 228-8475
E-Mail: dbrannon@branlaw.com
           mschultz@branlaw.com

## MEMORANDUM

I.    **Statement of Facts**

Beginning in 1978, Defendant Richard Wolfe worked in security for General Motors

("GM"). (Deposition of Richard Wolfe, Doc.# 166, PageID# 2947) Over the course of many years, Mr. Wolfe worked his way up, eventually being promoted to the position of Lieutenant in 1986. (Doc.# 166, PageID# 2951) In 1987, GM consolidated its security departments, and Wolfe was promoted to district manager. (Doc.# 166, PageID# 2952) That was the position he held during the events which allegedly give rise to this case.

In his role as district manager, Mr. Wolfe was one of two people managing all of the GM security departments in the greater Dayton area. (Doc.# 166, PageID# 2952) Wolfe had several site coordinators who reported directly to him. (Doc.# 166, PageID# 2958) Below them were shift supervisors, who reported to the site coordinators. (Doc.# 166, PageID# 2960) Finally, below the shift supervisors, and reporting directly to them, were the individual security officers. (Doc.# 166, PageID# 2960) Mr. Wolfe, as a district manager, reported to David Burke, the operations manager. (Doc.# 166, PageID# 2964)

Beginning in 1974, Mr. Wolfe had also worked as a part-time, volunteer, police officer for the Miami Township Police Department, working one shift a week. (Doc.# 166, PageID# 2936) Wolfe continued in that volunteer role until February of 1978, when he became a full-time police officer for the Miami Township Police Department. (Doc.# 166, PageID# 2951-2952) Mr. Wolfe held that full-time position for six months, until August of 1978, when he was offered the position at GM. (Doc.# 166, PageID# 2947) When he accepted the position at GM, Mr. Wolfe returned to volunteering for the Miami Township Police Department one day a week. (Doc.# 166, PageID# 2948) Wolfe stopped volunteering in 1986, when his position at GM became too demanding to allow him to volunteer. (Doc.# 166, PageID# 2950) During his entire time with the Miami Township Police Department, both full and part-time, Mr. Wolfe worked as a patrol officer. (Doc.# 166, PageID# 2947)

On August 20, 1988, sisters B.W. and C.W. were attacked while shopping in Miami Township in the parking lot of a store called Best Products. (See Report Identified as Exhibit 14 Doc.# 170-14, PageID# 3805, to the Deposition of M. Scott Moore, Doc.# 170, PageID# 3544) The sisters were abducted at gunpoint, forced to drive to a remote, wooded area, and forced to perform oral sex on their abductor. The abductor then drove the sisters back to the Best Products store, threatened them again, and left. The sisters drove home to Sidney, Ohio, and reported the crimes to the Dayton Police Department the next day. A composite sketch of the suspect was created. (Doc.# 170-3, PageID# 3805)

Some time later, a similar incident was reported by S.C., which took place on August 5, 1988. (Doc.# 170-3, PageID# 3810) She had been shopping in Harrison Township, Montgomery County, Ohio, and reported being abducted in the parking lot at gunpoint, being forced to drive to a remote location, and being forced to perform oral sex on her abductor. When the abductor tried to remove S.C.'s pants, she was able to kick him in the groin and escape. (Doc.# 170-3, PageID# 3811) When S.C. reported the crime, a second composite sketch was created.

Plaintiff Roger Dean Gillispie began working for GM in 1984, as an "intern". (Deposition of Roger Dean Gillispie, Doc.# 168, PageID# 3145) Mr. Gillispie was hired as, and remained for his time at GM, a supplemental security officer. (Doc.# 166, PageID# 2960-2961; Doc.# 168, PageID# 3299) Supplemental security officers were not permanent employees of GM. They were hired, on an hourly basis, to provide security when the ordinary security personnel were not available, either due to vacation, or illness, or unwanted overtime. (Doc.# 166, PageID# 2960-2961) When the site coordinators decided to terminate the employment of one of the supplemental security officers, they simply stopped scheduling the officer. (Doc.# 166, PageID# 3015)

Defendant Robert Miller was a shift supervisor for GM Security at the Harrison Radiator plaint in Moraine in 1989 and 1990. Sometime during that period, he saw one of the composites created pursuant to the reports of the victims of the rapes. Mr. Miller thought that the composite looked like Plaintiff Roger Dean Gillispie, who was, at that time, a supplemental security officer at the Harrison Radiator plant, and who reported directly to Mr. Miller. Mr. Miller reported the similarity to his supervisor at the time, but nothing was ever done about it.

Defendant Keith Stapleton became the site coordinator for GM's Harrison Radiator plant some time in early 1990. As part of acclimating to the new position, he discussed personnel issues with the shift supervisors. During one of these conversations, Mr. Miller mentioned the composite, and that he thought it resembled Mr. Gillispie, one of the supplemental security officers. (Doc.# 166, PageID# 2910) Mr. Stapleton brought this information to Mr. Wolfe, his immediate supervisor, and the two of them decided that, since Mr. Wolfe had formerly been an officer with the Miami Township Police Department, he would go to the Police Department, and get a copy of the composite so that they could compare it to Gillispie's security identification photo.

Mr. Wolfe went to the Miami Township Police Department and asked for, and received, a copy of a composite sketch relating to an unsolved crime. However, it was the wrong composite, related to a different crime, and Mr. Wolfe had to return to the Police Department to obtain a copy of the composite for the correct crime. (Doc.# 166, PageID# 3009-3010) When Mr. Wolfe obtained the correct composite, he brought it to the GM plant, and he, Mr. Miller, and Mr. Stapleton looked at it and agreed that the composite resembled Gillispie. (Doc.# 166, PageID# 3020) Mr. Wolfe and Mr. Stapleton looked at GM's records to determine if Gillispie had been scheduled to work on either August 5, or August 20, 1988, the dates the rapes took place, and determined that Gillispie had not been scheduled to work either day. (Doc.# 166, PageID# 2912)

Mr. Wolfe then took Mr. Gillispie's ID card from his file, along with several other ID cards, which he thought the police might want to use in a photo line-up, and brought them to the Miami Township Police Department. (Doc.# 166, PageID# 2913) Mr. Wolfe spoke to Steve Fritz and Defendant M. Scott Moore about the photos, and gave the photos to them. Mr. Wolfe is unsure when this meeting took place, but Mr. Moore testified that it took place before he was assigned to investigate the rapes in June of 1990. (Doc.# 170, PageID# 3423) Mr. Moore testified at one of Gillispie's criminal trials that he believed the meeting took place on April 19, 1990. (Doc.# 170, PageID# 3618) At some point, Mr. Wolfe informed Mr. Moore that Gillispie had not been scheduled to work on either of the dates the rapes occurred. (Doc.# 170, PageID# 3622) Later, at Mr. Moore's request, Mr. Wolfe brought copies of the relevant schedules to the Miami Township Police. (Doc.# 166, PageID# 2917) This was the end of Mr. Wolfe's involvement in the investigation until he was asked to testify at Mr. Gillispie's trial.

Mr. Gillispie was tried for the first time in February of 1991. (Doc.# 168, PageID# 3176) Mr. Gillispie was found guilty of all the charges brought against him. (Doc.# 168, PageID# 3254) Mr. Gillispie's criminal defense counsel sought, and received, a new trial based on potentially exculpatory forensic evidence that defense counsel only became aware of after the trial. (Doc.# 168, PageID# 3255) That evidence was included in a second trial, later in 1991, where Mr. Gillispie was again found guilty. (Doc.# 168, PageID# 3256)

Many years later, with the assistance of attorneys from the Innocence Project, Mr. Gillispie sought and received habeas corpus relief. (Doc.# 168, PageID# 3301, 3305) He was released on December 22, 2011. (Doc.# 168, PageID# 3127) He brought this suit nearly two years later, on December 13, 2013. (Complaint, Doc.# 1, PageID# 1)

## II.      Summary Judgment Standard

Under Fed.R.Civ.P. 56(c), "[s]ummary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 861 (6th Cir. 2007) (internal quotation marks omitted), quoting Fed.R.Civ.P. 56.

The party requesting summary judgment has the burden of showing that there is a lack of evidence to support the nonmoving party's case. *Fifth Third Bank, N.A. v. Dziersk*, 12 F.3d 600, 603 (6th Cir. 1993). "The burden is generally on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by 'showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005); quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). Once this initial burden is satisfied the burden shifts to the non-movant to present "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. If the non-moving party fails to meet this burden summary judgment will be entered against him or her. Fed.R.Civ.P. 56(e).

"[O]nly genuine issues of *material* fact preclude summary judgment. An issue of fact concerns 'material' facts only if establishment thereof might affect the outcome of the lawsuit under governing substantive law." *EEOC v. Regency Windsor Management Co*., 862 F. Supp. 189, 192 (W.D. Mich. 1994) (emphasis in original); citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

## III.    Argument

Plaintiff has brought nine causes of action, and appears to direct all but one of them toward Mr. Wolfe, either directly, or as part of an alleged conspiracy. The first five claims seek to establish

liability under 42 U.S.C. § 1983. The last four assert claims under Ohio law. For the reasons discussed below, Mr. Wolfe is entitled to summary judgment on all of these claims.

**A.    Plaintiff cannot prove that Mr. Wolfe was involved in any suppression of exculpatory material under 42 U.S.C. Section 1983.**

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed.2d 40 (1988)) Plaintiff cannot prove either of these elements with regard to Mr. Wolfe.

**1.    Mr. Wolfe was not a State Actor under 42 U.S.C. § 1983.**

As established by the deposition testimony, Rick Wolfe was not an auxiliary police officer with the Miami Township Police Department—or any other police department—at the time any of the events underlying Mr. Gillispie's Complaint occurred. Mr. Wolfe had resigned his position as an auxiliary officer with Miami Township in 1986, years before any of the events set forth in Plaintiff's Complaint. (Doc.# 166, PageID# 2950) This fact is undisputed.

The central fact for which Mr. Gillispie seeks to hold Mr. Wolfe personally liable is that he provided a "tip" to the police. According to the Complaint, Mr. Wolfe's information was one of a number of "tips" received by the Miami Township police that they considered during their investigation. (Amended Complaint, Doc.# 18, PageID# 85, ¶ 41.) "The mere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under §§ 1983 or 1985." *Moldowan v. City of Warren,* 578 F.3d 351, 399 (6th Cir. 2009), quoting *Benavidez v. Gunnell,* 722 F.2d 615, 618 (10th Cir.1983).

There is no evidence that Mr. Wolfe ever made claims of personal knowledge regarding Mr. Gillispie's guilt. He was not the complaining witness or the alleged victim. There is no evidence

that Mr. Wolfe exercised any control over the police investigation. When asked at deposition, Mr. Gillispie admitted that he had no knowledge of any part Mr. Wolfe might have played in suppressing any evidence. (Doc.# 168, PageID# 3296) He also admitted that there was no particular animosity between him and Mr. Wolfe during his time at GM, stating only that he felt like he was receiving more scrutiny than other people in his position. (Doc.# 168, PageID# 3239-3241) Ultimately, the evidence only demonstrates that Mr. Wolfe furnished the police with information which they acted upon, for good or ill, and that he testified about this at the trial. Such an act does not qualify as acting under color of state law for purposes of § 1983 liability. *Moldowan,* 578 F.3d at 399.

As the United States Supreme Court has noted, it is "the right and privilege" of individuals "to aid in the execution of the laws of his country by giving information to the proper authorities of violations of those laws," and that right "may properly be said to be secured by the Constitution and laws of the United States." *Motes v. United States,* 178 U.S. 458, 462–63, 20 S.Ct. 993, 44 L.Ed. 1150 (1900). The fact that Mr. Wolfe was an auxiliary police officer years before the events of this case does not deprive him of that right. The Sixth Circuit has recognized that there is a strong public policy against subjecting private citizens to suit based on their actions in coming forward to assist police or prosecutors before and during criminal trials. Such citizens "must feel secure that cooperating with the police will not expose them to lengthy and invasive civil proceedings." See *Moldowan,* 578 F.3d at 373 (6th Cir. 2009). Lawsuits against citizens who provide information to police can result in "witness intimidation and self-censorship." *Id.* at 373. The Sixth Circuit, therefore, recognizes absolute immunity for witnesses providing evidence during trial and refuses to recognize providing information to police as any form of state action prerequisite to a civil rights claim. Twenty-five years after providing a tip to police, after three rape victims all identified Mr. Gillispie as their attacker, it is grossly unfair that Mr. Wolfe should face the expense and difficulty of

defending against a lawsuit. There is simply no evidence that Mr. Wolfe was acting under color of state law in regard to any of the actions he took with regard to Mr. Gillispie. There is no genuine issue of material fact with regard to this element, and Mr. Wolfe is entitled to judgment as a matter of law.

      **2.**      **Plaintiff cannot prove that Mr. Wolfe was involved in the suppression of any evidence.**

Plaintiff's claim for suppression of exculpatory evidence turns on the allegation that there was a police report that exonerated him. There is, of course, no physical proof that any such report ever existed. More to the point, there is no evidence that Mr. Wolfe would have had any access to such a report or involvement in it going missing.

Mr. Wolfe was not a Miami Township police officer at the time Mr. Gillispie was investigated. (Doc.# 166, PageID# 2950) There is no evidence that he would have had access to any investigatory file. In fact, when asked at deposition, Mr. Gillispie admitted that he had no knowledge of any part Mr. Wolfe might have played in suppressing any evidence. (Doc.# 168, PageID# 3296) There is simply no evidence in the record to support the contention that Mr. Wolfe had any ability to influence, much less involvement in, the destruction of any evidence. Thus, there is no genuine issue of material fact with regard to this claim, and Mr. Wolfe is entitled to judgment as a matter of law.

      **3.**      **Mr. Wolfe, as a private citizen, had no obligation to release exculpatory material.**

A private person cannot be held liable for a violation of *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963) (emphasis added). *Cleary v. County of Macomb,* E.D. Mich. No. 06-15505, 2007 WL 2669102, *17 (Sept. 6, 2007) ("This Court does not believe that Wolf, a social worker who was not retained by the police or prosecution (and thus not a 'police investigator'), can be held liable for a *Brady* violation.") Gillispie asks the Court to hold Mr. Wolfe

liable based on rote allegations that Officer Moore suppressed evidence "in furtherance of the conspiracy." No court has ever recognized any obligation to disclose exculpatory materials falling on a private citizen like Mr. Wolfe. For this reason, also, Mr. Wolfe is entitled to summary judgment.

**B. Plaintiff cannot prove that Mr. Wolfe was involved in any "Suggestive Identification" under 42 U.S.C. Section 1983.**

**1. Mr. Wolfe was not acting under color of state law.**

As discussed above, demonstrating liability under 42 U.S.C. § 1983 requires proving that the defendant was acting under color of state law. *Sigley*, 437 F.3d at 533. Mr. Wolfe resigned from the Miami Township Police Department in 1986, two years before the rapes occurred and four years before Mr. Gillispie was investigated. (Doc.# 166, PageID# 2950) Thus, there is no evidence that he was acting under state law at any time relevant to this case.

**2. Mr. Wolfe had no part in assembling the photo line-ups presented to the victims.**

Mr. Wolfe brought Mr. Gillispie's photo identification card, as well as the photo IDs of several other GM security guards, to the Miami Township Police. (Doc.# 166, PageID# 2950) However, the only one of these photos used by Off. Moore in the photo line-up was Gillispie's photo, which Moore had to have resized so that it would not stand out. (Doc.# 170, PageID# 3600, 3680)

In the process of choosing photographs to use in the lineup, Moore looked through binders of photos of people arrested by the Miami Township Police, which were kept for the purpose of using the photos in lineups. (Doc.# 170, PageID# 3470-3472, 3481) However, Moore had trouble finding photographs which he thought were sufficiently similar to Gillispie's photo from his ID. (Doc.# 170, PageID# 3472) Moore actually ended up taking pictures of two fellow Miamisburg Police Officers, John DiPietro and Tim Wilson, to use in the lineup. (Doc.# 170, PageID# 3668)

There is no evidence that Mr. Wolfe was at all involved in either the preparation or

presentation of the lineup beyond providing the photo of Mr. Gillispie. Mr. Moore's testimony makes it clear that he went to great lengths—including taking photos of his co-workers—in order to create a lineup that was not suggestive. (Doc.# 170, PageID# 3532, 3668) Mr. Gillispie admitted that he had no knowledge of anything Mr. Wolfe might have done with regard to the photo lineup. (Doc.# 168, PageID# 3297) For this reason, Mr. Wolfe is entitled to summary judgment on this claim.

**C.** **Plaintiff cannot prove that Mr. Wolfe was involved in any "Fabricated Evidence" under 42 U.S.C. Section 1983.**

 **1.** **Mr. Wolfe was not acting under color of state law.**

As discussed above, demonstrating liability under 42 U.S.C. § 1983 requires proving that the defendant was acting under color of state law. *Sigley*, 437 F.3d at 533. Mr. Wolfe resigned from the Miami Township Police Department in 1986, two years before the rapes occurred and four years before Mr. Gillispie was investigated. (Doc.# 166, PageID# 2950) Thus, there is no evidence that he was acting under state law at any time relevant to this case.

 **2.** **There is no evidence that Mr. Wolfe was involved in fabricating any evidence.**

There is no evidence in this case that Mr. Wolfe had any part in creating any evidence that was introduced at Mr. Gillispie's two criminal trials. The only piece of evidence introduced at trial with which Mr. Wolfe had any involvement was the photo lineup, which contained the photo of Mr. Gillispie which Mr. Wolfe had provided. (Doc.# 170, PageID# 3579, Doc.# 170-5, PageID# 3830) There is no evidence that Mr. Wolfe took this photograph. There is no evidence that Mr. Wolfe altered the photograph in any way. There is not even any evidence that this photograph was inaccurate in any way. Mr. Gillispie admitted that he had no knowledge of anything Mr. Wolfe had done regarding fabrication of evidence. (Doc.# 168, PageID# 3297)

Nowhere is there any evidence of the existence of any "fabricated evidence" of the type

recognized in *Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006), where the forensic examiner testified falsely at trial about the number of "'non-matching' head hairs recovered from the pantyhose." For this reason, Mr. Wolfe is entitled to summary judgment as to this claim.

### 3. Mr. Wolfe cannot be held liable for testifying at trial.

In his role as a witness, Mr. Wolfe is absolutely immune from any liability as a witness under 42 U.S.C. § 1983. "[C]ommon law provide[s] absolute immunity from subsequent damages liability for all persons-governmental or otherwise-who were integral parts of the judicial process." *Briscoe v. Lahue,* 460 U.S. 325, 328, 103 S. Ct. 1108, 1111, 75 L. Ed.2d 96, 103 (1983). Similar to judges and prosecutors, "Section 1983 does not authorize a damages claim against private witnesses." *Id.* "[Section] 1983 does not allow recovery of damages against a private party for testimony in a judicial proceeding." *Id.* at 329, 1112. "[Section] 1983 does not create a remedy for all conduct that may result in violation of 'rights, privileges, or immunities secured by the Constitution and laws.'" *Id.* "Its reach is limited to actions taken 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . .'" *Id.* "It is beyond question that, when a private party gives testimony in open court in a criminal trial, that act is not performed 'under color of law.' " *Id.* at 329-30, 1112-13. Cf. *Vakilian v. Shaw*, 335 F.3d 509, 516 (6th Cir.2003) (court declined to extend absolute immunity where police officer testified at an ex parte proceeding where his actions were that of a "complaining witness" rather than a "testifying witness"). For this reason, also, Mr. Wolfe is entitled to summary judgment on this claim.

### D. Plaintiff cannot prove that Mr. Wolfe was involved in any "Malicious Prosecution".

As noted above, the mere furnishing of information to state officials does not constitute joint action sufficient to render a private citizen a state actor under Section 1983 or under Section 1985. *Benavidez,* 722 F.2d at 618. For this reason, Mr. Wolfe cannot be liable for malicious prosecution

under 42 US.C. Section 1983.

In addition, there is simply no evidence that Mr. Wolfe was involved in bringing charges against Mr. Gillispie. In order to hold a private actor liable for malicious prosecution under Section 1983, "[t]he private actor must wrongfully influence the state's decision to prosecute through a conspiracy." *Davis v. Union Nat'l Bank*, 46 F.3d 24, 25 (7th Cir.1994), cert. denied, 514 U.S. 1065, 115 S.Ct. 1696, 131 L.Ed.2d 560 (1995); see also *Bryant-Bruce v. Vanderbilt University, Inc*., 974 F.Supp. 1127, 1143 (M.D.Tenn., 1997) (following *Davis*). Mr. Gillispie admitted that he had no knowledge of any way in which Mr. Wolfe may have been involved in indicting or making the decision to prosecute Mr. Gillispie. (Doc.# 168, PageID# 3298) Mr. Gillispie even testified that there was no ill will between himself and Mr. Wolfe during the time he worked at GM. (Doc.# 168, PageID# 3241)

Mr. Gillispie cannot demonstrate that Mr. Wolfe took any specific action to "wrongfully influence" either the decision to indict Mr. Gillispie or the decision to continue to prosecute him. There is no evidence that Mr. Wolfe had any involvement in these decisions. For this reason, Mr. Wolfe is entitled to summary judgment on this claim.

**E.     Plaintiff has no evidence that Mr. Wolfe was involved in the destruction of any evidence.**

As Mr. Wolfe stated above, he was not a state actor at any time relevant to this case, and thus cannot be found liable for any constitutional claim made under 42 U.S.C. 1983. *Sigley*, 437 F.3d at 533. (Doc.# 166, PageID# 2950) Thus Mr. Wolfe is entitled to summary judgment on this claim.

**1.     Federal law does not recognize a claim for spoliation.**

District Courts in the Sixth Circuit have not recognized any cause of action for destruction of evidence, or spoliation, under federal law. *Van Buren v. Crawford Cnty*., Case No. 13-cv-14565,

2017 U.S. Dist. LEXIS 56380, *23, 2017 WL 1353805 (E.D. Mich. April 13, 2017); citing *Lombard v. MCI Telcoms. Corp*., 13 F. Supp.2d 621, 628 (N.D. Ohio 1998).   As the *Van Buren* Court explained, "Under both federal and Michigan law, civil conspiracy claims are derivative. They are cognizable only insofar as there is an underlying cognizable legal claim."  *Van Buren*, 2017 U.S. Dist. LEXIS 56380,  23-24; citing *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003).  Thus, neither Gillispie's spoliation claim, nor his conspiracy to commit spoliation claim, are cognizable under federal law.

        **2.**        **There is no evidence that Mr. Wolfe destroyed any evidence.**

In addition, there is no evidence that any evidence was destroyed.  Gillispie claims that there was a supplemental report written by Gary Bailey, and reviewed by Steve Fritz, that exonerated him. (Amended Complaint, ¶ 28, Doc.# 18, PageID# 82)  Given the fact that it is not the business of police officers to exonerate suspects through drafting supplemental reports, this allegation is inherently suspect.  Further, there is no evidence that, assuming any such supplemental report existed, it was destroyed.   The only testimony relative to this issue is from Mr. Moore, who testified that no such supplemental report was ever generated.  (Doc.# 170, PageID# 3397)    There is no evidence that any such supplemental report was in the investigative file when Moore received it from Steve Fritz.  There is certainly no evidence that Mr. Wolfe took any action to destroy or secrete such a report, or indeed, that he would ever have had access to such a report.  Moore testified that his contact with Wolfe during the investigation was "very limited".  (Doc.# 170, PageID# 3632) Gillispie admitted that he had no knowledge of any action Mr. Wolfe might have taken in furtherance of any conspiracy to destroy any document.  (Doc.# 168, PageID# 3296)  There is simply no evidence that Mr. Wolfe did anything in regard to destruction of any evidence.  For this reason, Mr. Wolfe is entitled to summary judgment on this claim.

**F.      Plaintiff' cannot prove his State-law claim for "Malicious Prosecution".**

"The elements of the tort of malicious criminal prosecution are (1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." *Trussell v. GMC*, 53 Ohio St.3d 142, 142, 559 N.E.2d 732, 734 (1990). Because Gillispie cannot prove that Mr. Wolfe played any role in the decision to prosecute him, or that he was prosecuted without probable cause, Mr. Wolfe is entitled to summary judgment on this claim.

**1.      Mr. Wolfe did not make the decision to prosecute Gillispie.**

"Generally, 'a citizen who serves only as an informer of criminal activity is not regarded as having instituted the criminal proceedings.'" *Copas v. Emro Mktg., Inc*., Case No. 17275, 1999 Ohio App. LEXIS 839, *6, 1999 WL 114975 (Ohio App. Mar. 5, 1999); quoting *Robbins v. Fry*, 72 Ohio App.3d 360, 362, 594 N.E.2d 700 (Ohio App. 1991) (finding that former employers who reported theft were not liable for malicious prosecution.) In this case, there is no evidence that Mr. Wolfe did anything other than report that one of his former employees resembled a suspect in a composite, provide a photo of that employee, along with other similar photos, and cooperate with the police when they asked him for more information. (Doc.# 166, PageID# 2997) This makes him an informer, and thus not the person responsible for making the decision to prosecute Gillispie.

In addition, in order for the claim to survive, the decision to prosecute must have been motivated by malice. *Trussell*, 53 Ohio St.3d 142. Gillispie admitted at deposition that there was no ill will between him and Mr. Wolfe. (Doc.# 168, PageID# 3241) This lack of malice is also fatal to Gillispie's claim. For these reasons, Mr. Wolfe is entitled to summary judgment on this claim.

**2.      There was probable cause to prosecute Gillispie.**

"The return of an indictment by the grand jury is evidence of probable cause." *Deoma v. Shaker Heights*, 68 Ohio App. 3d 72, 77, 587 N.E.2d 425, 428 (Ohio App.1990); citing *Donohoe v.*

*Burd*, 722 F.Supp. 1507, 1517 (S.D.Ohio 1989). Under Ohio law, "[t]he return of an indictment by a grand jury raises a rebuttable presumption that probable cause exists." *Dailey v. First Bank*, 2005-Ohio-3152, ¶ 16, 2005 Ohio App. LEXIS 2921, *14 (Ohio App. 2005); citing *Mayes v. Columbus*, 105 Ohio App.3d 728, 737-738, 664 N.E.2d 1340 (Ohio App. 1995). Gillispie admitted at his deposition that he was prosecuted pursuant to an indictment. (Doc.# 168, PageID# 3149) Thus, a presumption exists that Gillispie was prosecuted with probable cause.

In addition, the fact of conviction gives rise to a conclusive presumption that probable cause existed to charge the defendant.

> a finding of guilty of a criminal offense by a court having jurisdiction to try and dispose of the case, even though later and finally reversed by a reviewing court, raises a conclusive presumption of probable cause and constitutes a complete defense in a later action for malicious prosecution brought by the defendant in the criminal case against the instigator thereof.

*Vesey v. Connally*, 112 Ohio App. 225, 228, 175 N.E.2d 876, 878 (Ohio App. 1960). See also *Harris v. Bornhorst*, 513 F.3d 503, 520 (6th Cir. 2008) (applying *Vesey*); *Selective Ins. Co. v. RLI Ins. Co*., 706 Fed. Appx. 260, 266 (6th Cir. 2017) (applying *Vesey*). Gillispie admitted at his deposition that he was convicted on all charges, twice. (Doc.# 168, PageID# 3254-3255) Thus, Mr. Wolfe is entitled to summary judgment as to the claim for malicious prosecution.

The other evidence in the case supports this presumption. Gillispie was positively identified as the perpetrator of the rapes by each of the three victims. (Doc.# 170, PageID# 3535-3536) The suspect identified himself as a security guard, and Gillispie had worked as a security guard. (Doc.# 170, PageID# 3691) Gillispie resembled the composite sketches generated from the memories of the victims. (Doc.# 166, PageID# 2910) On the other hand, Gillispie has no evidence to rebut the presumption of probable cause. For this reason, also, Gillispie cannot show that there was no probable cause to prosecute him, and Wolfe is entitled to summary judgment on this claim.

- 16 -

3.        **The prosecution was not terminated in Gillispie's favor.**

This Court has recently held:

> However, the mere fact that a case was dismissed against a defendant does not necessarily mean that it was "resolved in a defendant's favor" for the purposes of a claim for malicious prosecution. "In addition to Ohio law, a number of federal cases also hold that a plaintiff must plead and prove in a claim for malicious prosecution under § 1983 that criminal proceedings were concluded in a manner indicative of a factual finding in favor of the accused." *N. Aliakbarkhananfjeh v. Schramm*, 194 F.3d 1311, *3 (6th Cir. 1999) (citing *Torres v. McLaughlin*, 163 F.3d 169 (3d Cir. 1998); *Washington v. Summerville*, 127 F.3d 552 (7th Cir. 1997)); see also *Ohnemus v. Thompson,* 594 Fed. App'x 864, 866 (6th Cir. 2014) (affirming dismissal of malicious prosecution claim by party whose criminal charge was dismissed upon payment of restitution). "The termination must go to the merits of the accused's professed innocence for the dismissal to be 'favorable' to him." *Ohnemus* at 867, citing *Alcorn v. Gordon*, 762 S.W.2d 809, 812 (Ky. Ct. App. 1988). "[I]n determining whether a dismissal is a termination in favor of the accused, the court is not to consider whether the plaintiff is actually innocent of the charges, but rather, whether the dismissal of the proceedings established his [*38] innocence." *Ohnemus* at 868, citing Restatement (Second) of Torts § 658 cmt. c (1977).

*Day v. DeLong*, No. 3:16-cv-437, 2019 U.S. Dist. LEXIS 4027, *37-38, 2019 WL 144381 (S.D. Ohio Jan. 9, 2019). In this case, the trial court ultimately dismissed the criminal charges against Gillispie because the prosecutors could not produce the alleged report exonerating Gillispie. *State v. Gillispie*, 2016-Ohio-7688, 65 N.E.3d 791 (Ohio App. 2016). This decision did not exonerate Gillispie, but rather was based on the perceived *Brady* violation. Gillispie admitted at his deposition that no decision was ever handed down by any court that established he was innocent of the crimes he was charged with. (Doc.# 168, PageID# 3230) Thus, Mr. Wolfe is entitled to summary judgment as to Plaintiff's claim for malicious prosecution.

G.        **Plaintiff cannot prove his claim for Infliction of Emotional Distress.**

The elements of a claim for intentional infliction of emotional distress under Ohio law are:

> (1) that [defendant] either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to

- 17 -

> plaintiff; (2) that [defendant] 's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) that [defendant] 's actions were the proximate cause of plaintiff's psychic injury; and (4) that the mental anguish suffered by plaintiff is serious and of a nature that no reasonable person could be expected to endure it.

*Ekstrom v. Cuyahoga County Cmty. College*, 150 Ohio App.3d 169, 182, 2002-Ohio-6228, ¶ 56, 779 N.E.2d 1067, 1076 (Ohio App. 2002). "Liability is found only where the conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Ekstrom*, 2002-Ohio-6228, ¶ 56-57; citing *Yeager v. Loc. Union 20*, 6 Ohio St.3d 369, 374-375, 453 N.E.2d 666 (Ohio 1983). Actions which an employer is entitled to take, such as disciplining an employee, will not expose the employer to liability, even where the employer knows that it will cause emotional distress. *Ekstrom*, 2002-Ohio-6228, ¶ 61; citing *Foster v. McDevitt*, 31 Ohio App.3d 237, 239, 511 N.E.2d 403 (Ohio App. 1986). Where a defendant makes a criminal report to the police in good faith, that report will not subject the reporting party to liability for intentional infliction of emotional distress. *Anderson v. Eyman*, 180 Ohio App.3d 794, 808-809, 2009-Ohio-102, ¶ 61-65, 907 N.E.2d 730, 741-742 (Ohio App. 2002).

In this case, there is no evidence that Mr. Wolfe ever acted with an intention to cause Gillispie any emotional distress. Gillispie has admitted that there was no ill will between him and Mr. Wolfe. (Doc.# 168, PageID# 3241) Mr. Wolfe acted in good faith by making his report to the Miami Township Police. He thought that Gillispie resembled the composite of the suspect. (Doc.# 166, PageID# 2910) There is no evidence that Mr. Wolfe's actions were extreme or outrageous.

In fact, Mr. Wolfe did exactly what police hope private citizens will do when they see composites: he reported a possible suspect. The State has a legitimate interest in encouraging

private citizens to report potential criminal activity. See, eg., *State v. Draughn*, Case No. CA 9664, 1987 Ohio App. LEXIS 6030, *4, 1987 WL 7511 (Ohio App. Montgomery Mar. 3, 1987). Mr. Wolfe's actions in reporting the similarity between the composite and Mr. Gillispie's ID photo promoted this legitimate government interest. This was not conduct that is "so extreme and outrageous as to go beyond all possible bounds of decency." Nor is it "such that it can be considered as utterly intolerable in a civilized community." It is, in fact, the sort of behavior that is encouraged by the State's interest in having private citizens assist in identifying possible suspects. For this reason, also, Mr. Wolfe is entitled to summary judgment as to this claim.

**H.** **Plaintiff cannot prove that Mr. Wolfe was involved in any spoliation of evidence.**

The elements of spoliation of evidence under Ohio law are

"(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts."

*Kish v. City of Akron*, 200 Fed. Appx. 390, 393 (6th Cir. 2006); quoting *Smith v. Howard Johnson Co., Inc.*, 615 N.E.2d 1037, 1038, 67 Ohio St.3d 28, 1993-Ohio-229.

As discussed above, there is no evidence that any evidence was destroyed regarding Mr. Gillispie's criminal prosecution, much less that Mr. Wolfe had any role in destroying any evidence. Mr. Moore testified that no supplemental report exonerating Gillispie was ever generated. (Doc.# 170, PageID# 3397) There is no evidence that any such supplemental report was in the investigative file when Moore received it from Steve Fritz. There is certainly no evidence that Mr. Wolfe took any action to destroy or secrete such a report, or indeed, that he would ever have had access to such a report. Moore testified that his contact with Wolfe during the investigation was "very limited". (Doc.# 170, PageID# 3632) Gillispie admitted that he had no knowledge of any action Mr. Wolfe might have taken in furtherance of any conspiracy to destroy any document. (Doc.# 168, PageID#

- 19 -

3296)  He also testified that there was no ill will between himself and Mr. Wolfe.  (Doc.# 168, PageID# 3241)  There is simply no evidence that Mr. Wolfe did anything in regard to destruction of any evidence.  For this reason, Mr. Wolfe is entitled to summary judgment on this claim.

**I.      Mr. Wolfe is not responsible to indemnify any other party.**

This claim appears to be directed toward the employer defendants, General Motors and Miami Township.  (Amended Complaint, ¶ 126, Doc.# 18, PageID# 101)  There is no legal basis for holding Mr. Wolfe responsible for the actions of any other party, much less evidence in support of such a proposition.  For this reason, Mr. Wolfe is entitled to summary judgment on this claim.

## <u>CONCLUSION</u>

Defendant Richard Wolfe is not a police officer, or a government agent.  Twenty-five years ago, as a private citizen, he provided a "tip" to Miami Township police based on Plaintiff's resemblance to a police composite, and later testified about that tip during criminal trials.  He is now being subjected to Section 1983 claims, despite the fact that 1983 does not reach private conduct.  Subjecting citizens to civil liability for providing "tips" or other information to police results in "witness intimidation and self-censorship," and Sixth Circuit law has not permitted such claims to go forward. *Moldowan,* 578 F.3d at 373.  Furthermore, there is no evidence to support any state-law claims against him.   Accordingly, and for all of the reasons set forth in the above memorandum, Defendant Richard Wolfe moves the Court to grant him summary judgment as to all claims in Plaintiff's complaint against him pursuant to Fed.R.Civ.P. 56(c).

Respectfully submitted,


/s/ Dwight D. Brannon
Dwight D. Brannon (0021657)
Matthew C. Schultz (0080142)
Attorney for Defendant Richard Wolfe
Brannon & Associates
130 W. Second St.      Suite 900
Dayton, OH   45402
Telephone:      (937) 228-2306
Facsimile:      (937) 228-8475
E-Mail:dbrannon@branlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2019, I filed the foregoing with the Clerk of the Court, which will send notification of such filing to all counsel of record in this matter via the CM/ECF system including the following:

Michele L. Berry, Esq.
114 East Eighth St.
Cincinnati, OH 45202
Counsel for Plaintiff Gillispie

Michael Kanovitz, Esq.
David B Owens, Esq.
Omavi Kushukuru, Esq.
Loevy & Loevy
312 N May; Suite 100
Chicago, IL 60607
Counsel for Plaintiff Gillispie

Edward Joseph Dowd, Esq.
Dawn M. Frick, Esq.
Christopher T. Herman, Esq.
Surdyk Dowd & Turner Co LPA
One Prestige Place; Suite 700
Miamisburg, OH 45342
Counsel for Defendant Miami Township

Lawrence E. Barbiere, Esq.
Scott A. Sollman, Esq.
Jonathan T. Deters, Esq.
Schroeder Maundrell Barbiere & Powers
5300 Socialville-Foster Road; Suite 200
Mason, OH 45040
Counsel for Defendants Dipietro, Angel and Gray

D. Patrick Kasson, Esq.
Keona R. Padgett, Esq.
Kari Hehmeyer, Esq.
Reminger Co., L.P.A.
Capitol Square Building
65 E. State Street, 4th Fl.
Columbus, OH 43215
Counsel for Defendants Wilson and Scothorn

Cara Michelle Wright, Esq.
Todd M Raskin, Esq.
Jeff T. Kay, Esq.
Mazanec, Raskin, Ryder & Keller Co., L.P.A.
100 Franklins Row
34305 Solon Road
Cleveland, OH 44139
Counsel for Defendants Raskin and Moore

Steven P. Goodin, Esq.
Anthony R. Robertson, Esq.
Graydon Head & Ritchie, LLP
312 Walnut St., Suite 1800
Cincinnati, Ohio 45202
Counsel for Defendants Stapleton and David Burke

Anne P. Keeton, Esq.
Freund, Freeze & Arnold
1 South Main Street, Suite 1800
Dayton, Ohio 45402
Counsel for Defendant Miller

Joel E. Sechler, Esq.
Carpenter & Lipps LLP
280 Plaza
280 North High Street; Suite 1300
Columbus, OH 43215
Counsel for Defendant General Motors, LLC


/s/ Dwight D. Brannon
Dwight D. Brannon (0021657)