# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

ROGER DEAN GILLISPIE,

      Plaintiff,

vs.

MIAMI TOWNSHIP, *et al.*,

      Defendants.

: Case No. 3:13-cv-416
:
: District Judge Thomas M. Rose
: Magistrate Judge Sharon L. Ovington
:
:
:
:
:
:

---

## REPORT AND RECOMMENDATIONS[1]

---

## I.    INTRODUCTION

After two trials, numerous appeals, and over twenty years in prison for crimes he alleges he did not commit, Plaintiff Roger Dean Gillispie brings this suit against Defendants alleging under 42 U.S.C. § 1983, suppression of exculpatory material, suggestive identification, fabricated evidence, malicious prosecution, and destruction of exculpatory evidence; and under Ohio law, malicious prosecution, infliction of emotional distress, spoliation of evidence, and indemnification. *See* Doc. #18.

This case is presently before the Court upon Defendants Robert Miller and Richard Wolfe's Motions to Dismiss (Doc. #s 117, 131); Defendant Matthew Scott Moore's Motion for Judgment on the Pleadings (Doc. #121); Defendant Miami Township's Motion for Partial Judgment on the Pleadings (Doc. #123); Plaintiff's

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Responses (Doc. #s 135-36, 139, 142); Defendants' Replies (Doc. #s 143, 144, 146, 147); and the record as a whole.

## II.    BACKGROUND

Because Defendants seek dismissal under Rules 12(b)(6) and 12(c), the Court accepts as true the Amended Complaint's well-pleaded factual allegations, construes the Amended Complaint in Mr. Gillispie's favor, and draws all reasonable inferences in Mr. Gillispie's favor. *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016).

The events giving rise to the present case began in August 1988, when three women—one in Harrison Township and two sisters in Miami Township—were attacked and sexually assaulted. (Doc. #18, *PageID* #81). Mr. Gillispie alleges that he was "framed for [those] sexual assaults that he did not commit, and has spent over 20 years incarcerated as an innocent man." *Id.* at 77. He insists that "his conviction was no accident, as his wrongful conviction was the result of police misconduct perpetrated by officers from the Miami Township Police Department [(the Department)]." *Id.*

At the time of the assaults, Mr. Gillispie worked as a security guard for GM. *Id.* at 80. He alleges that Defendant Wolfe—a "high-ranking supervisor" at GM and a part-time officer at the Department—and the other GM Defendants (Miller, Stapleton, D. Burke, and R. Burke) "harbored malice" against him; targeted him for unfair treatment; and "agreed amongst themselves to cause him difficulties in his job." *Id.* at 83. GM eventually terminated Mr. Gillispie's employment; the harassment did not stop. *Id.* Instead, "in furtherance of the agreement to harass Mr. Gillispie and as a way to prevent him from [taking] action following his termination, the GM Defendants chose to use

Defendant Wolfe's connections and … employment with the Department to implicate Mr. Gillispie in the rapes." *Id.*

In Miami Township, Sergeant-Detective Steven Fritz and Detective-Corporal Gary Bailey investigated the assaults. *Id.* at 82. As part of the investigation, the Department created a flyer with a composite image of the perpetrator. *Id.* In an attempt to direct the rape investigation towards Mr. Gillispie, Defendant Wolfe and another GM Defendant took a copy of Mr. Gillispie's ID badge to a meeting with the investigating detectives and their superiors—Defendants Angel and Scothorn—and "claimed falsely that some GM employees had seen a composite, thought it looked like Mr. Gillispie …." *Id.* at 84. After the meeting, Defendants Angel and Scothorn instructed Sergeant Fritz and Detective Bailey to investigate the GM Defendants' contention that Mr. Gillispie committed the assaults. *Id.* They "conducted an extensive investigation …, and documented the steps of their investigation in supplementary reports." *Id.* at 85. Ultimately, they *excluded* Mr. Gillispie as a suspect. *Id.*

According to Mr. Gillispie, in June 1990—almost two years after the attacks—Defendants Angel, Scothorn, and Wilson reassigned the investigation of the sisters' sexual assaults to Defendant Moore. *Id.* at 86. According to Mr. Gillispie, "Thereafter, Defendants Moore and Wolfe set out to frame [him] for the sexual assault of the twins." *Id.* Defendant Wolfe returned to the Department—this time with several GM identification badges (including Mr. Gillispie's)—in "an attempt to make it appear as if [he] came to the Department with these photographs without Moore's assistance and that this was the first time Mr. Gillispie had been named by Defendant Wolfe or anyone at

GM as the perpetrator of the rapes." *Id.* at 85-87. To that end, Defendant Officers

removed several of Detective Bailey and Sergeant Fritz's supplemental reports from the

case file. *Id.* at 87. These reports contained Detective Bailey and Sergeant Fritz's notes

from the first meeting with Defendant Wolfe; their investigation of Mr. Gillispie; the pant

size of the perpetrator that had been reported later by one of the victims; and a "myriad

[of] other reasons Mr. Gillispie was eliminated as a suspect." *Id.* Eventually, the reports

were destroyed. *Id.* Further, Defendant Moore "created unduly suggestive photo line-

ups" and made "suggestive comments" to the victims. *Id.* at 87-88. Because of

Defendant Moore's deceptive tactics, the victims identified Mr. Gillispie as their attacker.

*Id.* at 88.

After Mr. Gillispie's arrest and leading up to his trial, the co-conspirators

"pressured and manipulated witnesses, convincing some not to testify …." *Id.* at 89.

Defendant Moore altered transcriptions of witness interviews and eventually destroyed

recordings. *Id.* He refused Mr. Gillispie's request to take a polygraph examination. *Id.*

at 90. Defendant Officers destroyed evidence of Mr. Gillispie's alibi. *Id.* The

conspiracy continued into the trial. As prosecuting witnesses, they "provided false and

misleading testimony before the jury." *Id.* at 91.

Ultimately, in February 1991, a jury found Mr. Gillispie guilty of assaulting of all

three victims. *State of Ohio v. Gillispie*, 1990 CR 02667, *1 (C.P. Montgomery Cnty.

Nov. 30, 2015) (citing *Gillispie v. Timmerman-Cooper*, 835 F.Supp.2d 482, 487 (S.D.

Ohio 2011) (Merz, M.J.). Based on newly discovered evidence, Mr. Gillispie was

granted a new trial. *Id.* (citation omitted). In June 1991, he was convicted again and sentenced to prison for twenty-two to fifty years. *Id.* (citation omitted).

Throughout his incarceration (of over twenty years), Mr. Gillispie maintained his innocence and sought relief in both state and federal court. (Doc. #18, *PageID* #s 93-94); *see Gillispie*, 1990 CR 02667, *1-4 (citations omitted). His efforts eventually led to the remand of his case for a third trial. But before the third trial began in the Common Pleas Court of Montgomery County, Judge Steven K. Dankof granted Mr. Gillispie's "Motion to Compel Discovery, and If Required Discovery Is Not Produced, to Dismiss Indictment" and dismissed the Indictment. *Gillispie*, 1990 CR 02667. Upon appeal by the State, the Second District Court of Appeals affirmed Judge Dankof's judgment and the Ohio Supreme Court did not accept the State's appeal. *See State v. Gillispie*, 2016-Ohio-7688, 65 N.E.3d 791 (Ohio App. 2d 2016); *State v. Gillispie*, 150 Ohio St. 1409, 2017-Ohio-6964, 78 N.E.3d 909 (Table).

## III.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8, "A pleading that states a claim for relief must contain: … a short and plain statement of the claim showing that the pleader is entitled to relief; and … a demand for the relief sought …." This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint.  *See RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (citations omitted); *see also Tackett v. M & G Polymers, USA, LLC,* 561 F.3d 478, 488 (6th Cir. 2009) ("a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'") (quoting *Twombly,* 550 U.S. at 555, 570, 127 S.Ct. 1955); *Adkisson v. Jacobs Eng'g Grp., Inc.*, 790 F.3d 641, 647 (6th Cir. 2015) ("when considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court must 'construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true.'") (quoting *Laborers' Local 265 Pension Fund v. iShares Trust,* 769 F.3d 399, 403 (6th Cir. 2014)).

"The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted."  *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citations omitted)

## IV.   ANALYSIS

### A.   Defendants Richard Wolfe & Robert Miller

Mr. Gillispie brings five counts against Defendants Richard Wolfe and Robert

Miller under 42 U.S.C. § 1983—Count I:  Suppression of Exculpatory Material; Count II:

Suggestive Identification; Count III:  Fabricated Evidence; Count IV:  Malicious

Prosecution; and Count V:  Destruction of Exculpatory Evidence.  Defendants Wolfe and

Miller move to dismiss Counts I through V of Mr. Gillispie's Amended Complaint under

Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can

be granted.  (Doc. #s 117, 131).  They assert that these claims under 42 U.S.C. § 1983 fail

because Defendants Miller and Wolfe are not "state actors."

To state a claim under § 1983, a plaintiff must allege that a person acting under

color of state law deprived him of a right secured by the Constitution or laws of the

United States.  *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003).  Generally, "A

plaintiff may not proceed under § 1983 against a private party 'no matter how

discriminatory or wrongful' the party's conduct."  *Id.* (quoting *Am. Mfrs. Mut. Ins. Co. v.

Sullivan,* 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999)).  But "there are

circumstances under which private persons may, by their actions, become 'state actors'

for § 1983 purposes."  *Id.*

"A private actor acts under color of state law when its conduct is 'fairly

attributable to the state.'"  *Romanski v. Detroit Entm't, L.L.C.*, 428 F.3d 629 (6th Cir.

2005) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 947, 102 S.Ct. 2744, 73

L.Ed.2d 482 (1982)).  There are three tests for determining whether a private entity's

conduct is fairly attributable to the state: 1) the public function test; 2) the state compulsion test; and 3) the nexus test. *Tahfs*, 316 F.3d at 591. But, "[a]pplication of these tests to the conduct of a private entity … is relevant only in cases in which there are no allegations of cooperation or concerted action between state and private actors." *Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004) ("If a private party has conspired with state officials to violate constitutional rights, then that party qualifies as a state actor and may be held liable pursuant to § 1983 ...") (citing *Cooper v. Parrish,* 203 F.3d 937, 952 n.2 (6th Cir. 2000); *Moore v. City of Paducah,* 890 F.2d 831, 834 (6th Cir. 1989) ("Thus, a private party may conspire with the state and be liable under § 1983.")). "Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions." *Dennis v. Sparks*, 449 U.S. 24, 28, 101 S. Ct. 183, 186 (1980) (citing *Adickes* v. *S. H. Kress & Co*., 398 U.S. 144, 152, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *United States* v. *Price*, 383 U.S. 787, 794, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966)).

In the present case, Mr. Gillispie alleges cooperation or concerted action between state and private actors: Defendants Wolfe and Miller (along with the other GM defendants) conspired with Defendant Officers to frame him for crimes that he did not commit. However, Defendants Wolfe and Miller contend that Mr. Gillispie's allegations fail to adequately set forth a civil conspiracy.

The Sixth Circuit set forth the standard for proving a civil conspiracy in *Hooks v. Hooks*:

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

771 F.2d 935, 943-44 (6th Cir. 1985). "'It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.'" *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)).

Mr. Gillispie's allegations are sufficient to set forth a plausible civil conspiracy between Defendant Wolfe and Defendant Officers. He alleges a single plan and general conspiratorial objective: "Defendants Moore and Wolfe set out to frame Mr. Gillispie for the sexual assault of the twins. Together, through numerous conversations, they fabricated evidence, withheld and destroyed evidence, unlawfully undermined Mr. Gillispie's defense, and ultimately provided false and misleading testimony at Mr. Gillispie's criminal trials." (Doc. #18, *PageID* #86).

In addition, an alleged overt act was committed in furtherance of the conspiracy. Specifically, after his initial visit to the Department with only Mr. Gillispie's photo, Defendant Wolfe returned with several photos. According to Mr. Gillispie, "Bringing multiple photographs to the Department was an attempt to make it appear as if Defendant

Wolfe came to the Department with these photographs without Moore's assistance and that this was the first time Mr. Gillispie had been named by Defendant Wolfe or anyone at GM as the perpetrator of the rapes. *Id.* at 87. Together, Mr. Gillispie's allegations, taken as true, sufficiently set forth a plausible claim for a conspiracy between Defendant Wolfe and Officer Defendants.

Defendant Wolfe contends that he cannot be liable for Counts I, III, and V because Mr. Gillispie does not specifically allege what evidence he suppressed, fabricated, or destroyed and, as a private actor, he owed no duty to Mr. Gillispie. Further, he cannot be liable for Count II because Mr. Gillispie does not allege he was involved in the line-ups and because there is no constitutional right to be free of unduly suggestive identification procedures.[2] Last, he cannot be liable for Count IV because, "[i]n order to hold a private actor liable for malicious prosecution under [§] 1983, '[t]he private actor must wrongfully influence the state's decision to prosecute through a conspiracy." (Doc. #131, *PageID* #2201) (quoting *Davis v. Union Nat'l Bank,* 46 F.3d 24, 25 (7th Cir. 1994); (citing *Bryant-Bruce v. Vanderbilt Univ., Inc.*, 974 F.Supp. 1127, 1143 (M.D. Tenn. 1997)).

---

[2] "The Due Process Clause prohibits the use of identifications which under the totality of the circumstances are impermissibly suggestive and present an unacceptable risk of irreparable misidentification. *Carter v. Bell,* 218 F.3d 581, 605 (6th Cir. 2000) (citing *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)); *see also Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994) ("A conviction based on identification testimony that follows a pretrial identification violates the defendant's constitutional right to due process whenever the pretrial identification procedure is so "'impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'") (quoting *Thigpen v. Cory,* 804 F.2d 893, 895 (6th Cir. 1986), *cert. denied,* 482 U.S. 918, 107 S.Ct. 3196, 96 L.Ed.2d 683 (1987) (quoting *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968)). Accordingly, Defendant Wolfe's argument to the contrary lacks merit.

"As a conspirator, the citizen is liable, in civil as in criminal law, for the wrongful acts of the other conspirators committed within the scope of the conspiracy." *Proffitt v. Ridgway*, 279 F.3d 503, 507 (7th Cir. 2002) (citing *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988); *Loughman v. Consol-Pennsylvania Coal Co.*, 6 F.3d 88, 103 (3d Cir. 1993); *Halberstam v. Welch*, 227 U.S. App. D.C. 167, 705 F.2d 472, 481 (D.C. Cir. 1983)); *see United States v. Deitz*, 577 F.3d 672, 693 (6th Cir. 2009) ("where a conspiracy is ongoing, a conspirator is liable for the acts of his co-conspirators during the relevant statute of limitations period unless he 'is found to have withdrawn from a conspiracy,' ….") (quoting *United States v. Brown*, 332 F.3d 363, 374 (6th Cir. 2003)). Thus, to the extent Mr. Gillispie does not allege that Defendant Wolfe carried out each wrongful act, because he alleges the wrongful acts were committed by Defendant Wolfe's co-conspirators in furtherance of their conspiracy, he states plausible claims for relief.

To the extent Defendant Wolfe asserts Mr. Gillispie cannot attribute the conduct of the "GM Defendants" to him personally—this argument lacks merit. The Sixth Circuit addressed the issue of the sufficiency of a pleading that refers to all defendants generally and categorically in *Marcilis v. Township of Redford*, 693 F.3d 589 (6th Cir. 2012). In that case, every allegation of misconduct against the group of "Defendants" was "lumped" together. *Id.* at 596. The complaint only mentioned agents by name to identify them as government employees. *Id.* The Court dismissed § 1983 claims against federal agents because categorical references to "Defendants" without a basis to distinguish allegations against each defendant do not allege sufficient facts to survive dismissal. *Id.*

at 596-97 (citing *Atuahene v. City of Hartford*, 10 Fed. App'x 33, 34 (2d Cir. 2001)); *see also Lanman v. Hinson* 529 F.3d 673, 684 (6th Cir. 2008).

In the present case, *Marcilis* does not exclude Mr. Gillispie's claims, as the breadth of his allegations are distinct. Although both complaints make categorical references to "Defendants," unlike in *Marcilis*, Mr. Gillispie names Defendant Wolfe individually on numerous occasions. (Doc. #18, *PageID* #s 79, 80, 83-87, 91, 93, 96, 99). Together, the allegations referring to him by name and as one of the "GM Defendants" informs Defendant Wolfe of his plausible involvement in the conspiracy. Consequently, taking the pleadings as true and in a light most favorable to Mr. Gillispie, his allegations of individual and group involvement plausibly state claims against Defendants Wolfe in Counts I-V.[3]

In contrast, Mr. Gillispie's allegations are insufficient to set forth a plausible conspiracy involving Defendant Miller—a security guard and/or supervisor at GM—and Defendant Officers. (Doc. #18, *PageID* #80). Mr. Gillispie fails to allege joint,

---

[3] Mr. Gillispie asserts that Defendant Wolfe was acting under color of law because he was a part-time, auxiliary police officer for the Miami Township Police Department. (Doc. #18, *PageID* #s 79-80). Generally, "'[s]tate employment is [] sufficient to render the defendant a state actor.'" *West v. Atkins*, 487 U.S. 42, 49, 108 S. Ct. 2250, 2255, 101 L. Ed. 2d 40, 50 (1988) (quoting *Lugar*, 457 U.S. at 936, n.18, 937, 102 S. Ct. 2744). But "not every action undertaken by a person who happens to be a state actor is attributable to the state. Although "under 'color' of law means under 'pretense' of law," the acts of state officials "in the ambit of their personal pursuits" do not constitute state action. *Id.* (citing *Screws v. United States*, 325 U.S. 91, 111, 65 S. Ct. 1031, 89 L. Ed. 1495 (1945)); *see also Waters v. City of Morristown*, 242 F.3d 353, 359, (6th Cir. 2001) ("The key determinant is whether the actor intends to act in an official capacity or to exercise official responsibilities pursuant to state law.") (citing *West*, 487 U.S. 42, 50). Although Mr. Gillispie alleges Defendant Wolfe used his connections to schedule a meeting, he also alleges that Defendant Wolfe and the other GM Defendants' actions were "in furtherance of the agreement to harass Mr. Gillispie and as a way to prevent him from [taking] action following his termination …." (Doc. #18, *PageID* #83). This suggests Defendant Wolfe's involvement is more similar to a personal pursuit than to state action.

concerted activity between Defendant Miller and any state actors to deprive Mr. Gillispie of his civil rights. Instead, he alleges a separate GM scheme involving only the GM Defendants. Mr. Gillispie alleges that Defendant Miller and GM Defendants, harbored malice against him, harassed him, and targeted him for unfair treatment. *Id.* at 83. "Mr. Gillispie was eventually terminated …." *Id*. "Thereafter, in furtherance of the agreement to harass Mr. Gillispie and as a way to prevent him from [taking] action following his termination, the GM Defendants chose to use Defendant Wolfe's connections and prior and[/or] ongoing … employment with the Department to implicate Mr. Gillispie in the rapes." *Id*. Although this statement appears to link the GM scheme with the conspiracy to frame Mr. Gillispie, the next allegation suggests only Defendant Wolfe was involved with the Department: "Defendant Wolfe used his connections at the Department to arrange a meeting with officers from the Department." *Id.* at 84. Defendant Wolfe and an unnamed "GM Defendant" attended the first meeting. *Id*. There are no other allegations linking the GM scheme—and thus, Defendant Miller—to the conspiracy to frame Mr. Gillispie.

Mr. Gillispie's remaining allegations only mention Defendant Miller specifically a couple times and do not state a plausible claim for conspiracy. For instance, Mr. Gillispie alleges that Defendant Wolfe "claimed falsely that some GM employees had seen a composite, thought it looked like Mr. Gillispie, and had then reported this up-the-chain to various GM employees and GM Defendants, including Defendants Stapleton, Miller, and Wolfe." *Id*. But if Mr. Wolfe's claim is false—as Mr. Gillispie alleges—then nothing

was reported to Defendant Miller, and he is not involved in Defendant Wolfe's alleged fabrication of evidence or his second trip to the Department.

Next, Mr. Gillispie alleges, "Acting as an agent of Defendant GM, Defendants Miller and Wolfe provided testimony designed to conceal the animus stemming from Mr. Gillispie's employment and their [] targeting of Mr. Gillispie." *Id.* at 91. This statement illustrates the different objectives between the GM conspiracy—to harass Mr. Gillispie, terminate his employment, and cover up their (alleged) reprehensible actions—and the § 1983 conspiracy—to frame him for several violent felonies. This testimony does not establish Defendant Miller's involvement in the conspiracy to frame him. Importantly, "Providing information to the police, responding to questions about a crime, and *offering witness testimony at a criminal trial* does not expose a private individual to liability for actions taken 'under color of law.'" *Moldowan v. City of Warren,* 578 F.3d 351, 399 (6th Cir. 2009) (emphasis added) (citing *Briscoe*, 460 U.S. 329 ("[Section] 1983 does not allow recovery of damages against a private party for testimony in a judicial proceeding."); *Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983)).

Last, Mr. Gillispie generally alleges "Defendants Moore, Wilson, Angel, Scothorn, DiPietro, other unidentified members of the Miami Township Police Department, acting in conspiracy with GM Defendants, Stapleton, *Miller*, D. Burke, R. Burke, and other unidentified persons, instigated and continued the prosecution of Plaintiff without probable cause and acting out of malice." (Doc. #18, *PageID* #s 97, 99) (emphasis added). Likewise, "Defendants Moore, Wilson, Angel, Scothorn, DiPietro, other unidentified members of the Miami Township Police Department, Wolfe,

Stapleton, *Miller*, D. Burke, R. Burke, and other unidentified persons, acting individually and in conspiracy among themselves and others, intentionally and/or recklessly engaged in extreme and outrageous conduct that caused Plaintiff severe emotional distress and also bodily harm from his distress." *Id.* at 99-100 (emphasis added). These generic statements are not factual allegations; they are legal conclusions unsupported by any specific allegations of continued prosecution. *See Bickerstaff v. Lucarelli*, 830 F.3d 388, 400-01 (6th Cir. 2016) (finding the statement that "all Defendants knowingly wrote and/or solicited and/or facilitated and/or processed and/or presented false statements against Plaintiff which falsely informed and guided a Grand Jury to indict her of crimes she never committed" to be a broad, legal conclusion unsupported by specific allegations) (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563-64 (6th Cir. 2017) (rejecting the statement that "Defendants have conspired among themselves and with others unnamed … to knowing and intentionally deny [Plaintiff's] constitutional rights" as a legal conclusion "masquerading as factual allegation[]").

Mr. Gillispie's allegations do not sufficiently set forth a civil conspiracy between Defendant Officers and Defendant Miller. Because Defendant Miller did not conspire with Defendant Officers, he is not a state actor and cannot be liable under § 1983.

In sum, Mr. Gillispie states plausible claims for relief against Defendant Wolfe in Counts I-V and, accordingly, Defendant Wolfe's Motion to Dismiss (Doc. #131) should be denied as to Counts I-V. Mr. Gillispie does not state plausible claims for relief against Defendant Miller in Counts I-V and, therefore, Defendant Miller's Motion to Dismiss (Doc.#117) should be granted as to Counts I-V.

### B. State Law Claims

#### 1. *Defendant Wolfe—Malicious Prosecution*

Defendant Wolfe contends that Mr. Gillispie's malicious prosecution claim is barred by a one-year statute of limitations. Under O.R.C. § 2305.11(A), a claim for malicious prosecution must be brought within one year after the cause of action accrues. The one-year statute of limitations begins when the prosecution is terminated in the plaintiff's favor. *O'Connor v. Kelty*, 2013 U.S. Dist. LEXIS 11265, *31 (citing *Froehlich v. Ohio Dep't of Mental Health*, 114 Ohio St. 3d 286, 2007 Ohio 4161, 871 N.E.2d 1159, 1162 (Ohio 2007)); *see also King v. Harwood*, 852 F.3d 568, 578 (6th Cir. 2017) ("Because an 'element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused,' *Heck v. Humphrey*, 512 U.S. 477, 484, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the statute of limitations in such an action does not begin to run until 'the plaintiff knows or has reason to know of' such favorable termination.") (quoting *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635). And, "criminal proceedings are terminated in favor of the accused when there is: … (f) a final order in favor of the accused by a trial or appellate court." *Froehlich v. Ohio Dep't of Mental Health*, 114 Ohio St. 3d 286, 289, 2007-Ohio-4161, P13-P19, 871 N.E.2d 1159, 1162, 2007 Ohio LEXIS 1951, *6-7 (quoting the Restatement of Law 2d, Torts (1977) § 659) (internal quotations marks omitted).

On November 30, 2015, Judge Steven K. Dankof granted Mr. Gillispie's "Motion to Compel Discovery, and If Required Discovery Is Not Produced, to Dismiss Indictment" and dismissed the Indictment. *See State v. Gillispie,* No. 1990 CR 02667

(Ct. Com. Pl., Montgomery Cty., Nov. 30, 2015). But this was not the end of the case; the State appealed. The Second District Court of Appeals affirmed Judge Dankof's judgment. *See State v. Gillispie,* 2016-Ohio-7688, 65 N.E.3d 791 (Ohio App. 2d 2016). The State appealed again. On July 26, 2017, the Ohio Supreme Court did not accept the State's appeal. *See State v. Gillispie,* 150 Ohio St. 1409, 2017-Ohio-6964, 78 N.E.3d 909 (Table). This, at last, is when the prosecution terminated in Mr. Gillispie's favor. Mr. Gillispie filed the present case on December 13, 2013 (and filed his Amended Complaint in January 2014)—long before the statute of limitation for malicious prosecution began.

Accordingly, Defendant Wolfe's argument lacks merit.

### 2. *Defendants Moore and Wolfe—IIED & Spoliation*

Defendants Moore and Wolfe assert that Count VII—Infliction of Emotional Distress[4]—and Count VIII—Spoliation of Evidence[5]—are barred by the statute of limitations. (Doc. #122). Mr. Gillispie argues that Defendants' argument is so cursory it should be denied. (Doc. #137, *PageID* #2285) (citing *Options Home Health of N. Fla., Inc. v. Nurses Registry & Home Health Corp.*, No. 5:11-cv-166-JMH, 2012 WL 439691, at *8 (E.D. Ky. Feb. 9, 2012)). And, indeed, Defendants' five-sentence argument—asserting dismissal of two separate counts—lacks the substance reasonably expected from a motion for judgment on the pleadings.

---

[4] Defendant Miller also contends that Count VII should be dismissed as time barred. (Doc. #117, *PageID* #s 2014-15).

[5] Mr. Gillispie does not allege that Defendant Wolfe is liable for spoliation of evidence under Ohio law. *See* Doc. #18, *PageID* #100 ("Defendants Moore, Wilson, Angel, Scothorn, DiPietro, Gray, other unidentified members of the Miami Township Police Department, Betz, Rankin, Nickoson, and other unidentified employees of the Miami Valley Regional Crime Law, willfully destroyed evidence ….").

Defendants Moore and Wolfe argue that, under Ohio Revised Code § 2744.04(A), tort claims against a political subdivision or an employee thereof are subject to a two-year statute of limitations and, Mr. Gillispie's allegations relate to alleged conduct and injury in 1990 and 1991—far outside the two-year statute of limitation. (Doc. #121, *PageID* #2030) (citations omitted). According to Defendants, a cause of action for IIED accrues when the injury is incurred and emotional impact is felt. Unfortunately, Defendants do not suggest when that was in the present case. They tersely contend, "Similarly, the claimed spoliation of evidence allegedly occurred far more than two years before the filing of the present case." *Id*.

Although Mr. Gillispie does not agree with Defendants' assertion that both IIED[6] and spoliation claims are subject to a two-year statute of limitations, Mr. Gillispie does not specifically argue that Defendants are wrong. Instead, the dispute centers around the date of accrual.

Looking first at Mr. Gillispie's spoliation claim, Defendants say very little— "Similarly, the claimed spoliation of evidence allegedly occurred far more than two years before the filing of the present case." (Doc. #121, *PageID* #2030). As Mr. Gillispie

---

[6] Although the statute of limitations for a claim of IIED under Ohio law is four years, O.R.C. § 2305.09(D), when an individual seeks damages from a political subdivision—or its employee—the cause of action must be brought within two years. O.R.C. § 2744.04(A) ("An action against a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, … shall be brought within two years after the cause of action accrues …."); *see Gnezda v. City of N. Royalton*, 2004-Ohio-1678, P15, 2004 Ohio App. LEXIS 1507, *10 ("R.C. 2744.04(A) is a special provision governing the statute of limitations in tort cases against political subdivisions and it prevails over the general statutes of limitations contained in R.C. Chapter 2305.") (citing *Koncsol v. Niles* (1995), 105 Ohio App.3d 535, 664 N.E.2d 616.); *see Cummins v. Madison Corr. Inst.*, 2011-Ohio-1608, 2011 WL 1225556 (10th Dist. March 31, 2011) (citations omitted).

accurately observed, "Defendants have not stated (1) why that assertion is true, (2) when they believe the spoliation of evidence occurred, or (3) even at what point, as a matter of law, a spoliation claim accrues." (Doc. #136, *PageID* #2257).

The statute of limitations in an affirmative defense. *See* Fed. R. Civ. P. 8(c)(1). Because a plaintiff "need not plead the lack of affirmative defenses to state a valid claim," a Rule 12(c) motion for judgment on the pleadings, which considers only the complaint's allegations, is "generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (citing Fed.R.Civ.P. 8(a) and *Jones v. Bock*, 549 U.S. 199, 216 (2007)). However, "dismissal is proper at the pleading stage where the complaint's allegations affirmatively show that the claim is time-barred." *RLFShop, LLC v. Am. Express Co.*, No. 3:17-CV-405, 2019 WL 499835, at *6 (S.D. Ohio Feb. 8, 2019) (Rose, D.J.) (citing *Jones*, 549 U.S. at 215) ("If the allegations ... show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim[.]").

In the present case, Mr. Gillispie contends that the spoliation of evidence continued after his conviction and into his post-conviction proceedings. Thus, the Amended Complaint's allegations—viewed in the light most favorable to Mr. Gillispie—do not affirmatively show that Mr. Gillispie's spoliation claim is time barred.[7] *See*

---

[7] In Reply to Plaintiff's Opposition, Defendants assert, "the Ohio Supreme Court has held that 'claims for spoliation of evidence may be brought after the primary action has been concluded only when evidence of spoliation is not discovered until after the conclusion of the primary action.'" (Doc. #143, *PageID* #2416) (quoting *Davis v. Wal-Mart Stores, Inc.*, 93 Ohio St.3d 488, 491 (2001)). But, this is improper procedure: "It is well settled, however, that a party may not raise an issue for the first time in a reply

*RLFShop*, No. 3:17-CV-405, 2019 WL 499835, at *6 ("Here, the Complaint does not contain sufficient factual allegations regarding the timing of events to determine if the statute of limitations has run.").

Turning to Mr. Gillispie's IIED claim, Defendants correctly assert, "[a] cause of action for intentional infliction of emotional distress does not accrue until the tort is complete, that is, at the time the injury is incurred and emotional impact is felt." *Cummins v. Madison Corr. Inst.*, 2011-Ohio-1608, ¶10, 2011 WL 1225556 (10th Dist. March 31, 2011)) (citing *Biro v. Hartman Funeral Home*, 107 Ohio App. 3d 508, 669 N.E.2d 65, 68 (8th Dist. 1995)); other citation omitted. Defendants do, however, not indicate when they believe Mr. Gillispie's IIED claim accrued.

Mr. Gillispie contends that his IIED claim did not accrue until his malicious prosecution claim accrued. As explained in more detail above, a malicious prosecution claim does not accrue until the prosecution is terminated in the plaintiff's favor. Mr. Gillispie relies on *Biro v. Hartman Funeral Home* to emphasize that the tort must be complete before the statute of limitation begins to run. 107 Ohio App. 3d 508, 669 N.E.2d 65. In that case, the plaintiff discovered in 1992 that his father's remains had been interred in 1986 in a mass grave—contrary to the family's wishes. *Id.* at 513. The

---

brief." *Books A Million, Inc. v. H & N Enterprises, Inc.*, 140 F. Supp. 2d 846, 859 (S.D. Ohio 2001) (citing *Aetna Cas. and Sur. Co. v. Leahey Const. Co., Inc.,* 219 F.3d 519, 545 (6th Cir. 2000)).

Further, this argument lacks merit because Mr. Gillispie could not have brought a claim for spoliation in the primary action—the criminal case against Mr. Gillispie. *See Stillwagon v. City of Delaware*, 175 F. Supp. 3d 874, 912–13 (S.D. Ohio 2016) (Sargus, C.J.) ("*Davis* does not apply because the doctrine of res judicata is not implicated.") (citing *Patriot Water Treatment*, 2013 WL 6506561, ¶¶ 25–27.). "Thus, even if [Mr. Gillispie] discovered the alleged spoliation during the criminal case, that discovery does not bar [him] from bringing his spoliation claim in his current civil case." *Id.* (footnote omitted).

court found that the cause of action for intentional infliction of emotional distress accrued when the plaintiff learned of the mistake, not when the mistreatment occurred. *Id.* Mr. Gillispie likewise points to "continuing tort theory," the idea that "a cause of action accrues at the time the tortious conduct ceases." (Doc. #136, *PageID* #s 2256-57 ) (quoting *Spriestersbach v. Ohio Edison Co.*, C.A. NO. 95CA006026, 1995 WL 641146, *5 (9th Dist. Nov. 1, 1995)). In *Spriestersbach*, farmers sued an electric company for electrical shocks on their farm that continued for several years and diminished the health of their dairy cows. The court found that the statute of limitations began to run "on the date that the tortious conduct causing the stray voltage ceases." C.A. NO. 95CA006026, 1995 WL 641146, *5.

Defendants' alleged misconduct primarily occurred during the investigation and prosecution of Mr. Gillispie between 1988 and 1991. However, Mr. Gillispie alleges that after his conviction, Defendant Moore and other Defendant Officers continued to work to keep him in prison by "repeating their lies and misrepresentations in post-conviction proceedings and through efforts to conceal their own misconduct …." (Doc. #18, *PageID* #93). Further, Mr. Gillispie alleges that Defendant Wolfe conspired with Defendant Moore and other Defendant Officers. *Id.* at 99. And, he continued to feel the impact of Defendants' alleged conduct throughout his incarceration. These allegations, accepted as true, do not affirmatively show that Mr. Gillispie's IIED claim is time barred.

### 3. *Defendant Miller—Malicious Prosecution & IIED*

Defendant Miller asserts that Mr. Gillispie's Count VI—Malicious Prosecution should be dismissed because the Amended Complaint "fails to allege factual allegations

against Mr. Miller to demonstrate he 'instituted' criminal proceedings against Plaintiff, or had any interactions with any of the other defendants concerning the investigation and prosecution of Plaintiff." (Doc. #117, *PageID* #2014).

"'Ohio has set forth the elements of a malicious prosecution claim as follows: (1) malice in instituting (or continuing) the prosecution, (2) lack of probable cause, and (3) termination of the action in favor of the defendant.'" *Harris v. Bornhorst*, 513 F.3d 503, 520 (6th Cir. 2008) (quoting *Swiecicki v. Delgado,* 463 F.3d 489, 503 (6th Cir. 2006); (citing *Trussell v. Gen. Motors Corp.,* 53 Ohio St.3d 142, 559 N.E.2d 732, 735 (Ohio 1990)). For the same reasons detailed above, *supra* § IV(A), Mr. Gillispie's allegations are insufficient to set forth a plausible claim against Defendant Miller—individually or as part of a conspiracy—for malicious prosecution under Ohio law. Likewise, Mr. Gillispie's allegations are insufficient to set forth a claim against Defendant Miller for Intentional Infliction of Emotional Distress under Ohio law.

### C. Miami Township

Defendant Miami Township requests the Court grant its Motion for Partial Judgment on the Pleadings as to Count IX: Indemnification under Ohio law. The parties agree that O.R.C. § 2744.07 governs a political subdivision's duty to indemnify employees. They disagree on whether Mr. Gillispie, as a third party, has standing to bring a private cause of action under that statute.

Section 2744.07(A)(2) provides,

> a political subdivision shall indemnify and hold harmless an employee in the amount of any judgment … that is obtained against the employee in a state or federal court … and that is

for damages for injury, death, or loss to person or property caused by an act or omission in connection with a governmental or proprietary function, if at the time of the act or omission the employee was acting in good faith and within the scope of employment or official responsibilities.

Defendant Miami Township asserts that this statute "does not authorize a tort claimant to sue the political subdivision directly for alleged damages." (Doc. #123, *PageID* #2048). Several courts that have considered this issue agree with Defendant. In *Shoup v. Doyle,* the plaintiff brought a claim against the city defendant, asserting that it has a duty to indemnify the firefighter/paramedics and officer defendants under O.R.C. § 2744.07. 974 F.Supp.2d 1058, 1070 (S.D. Ohio 2013) (Rice, D.J.). The Court dismissed the claim: "This statute does not provide [plaintiff] with a cause of action against the city or anyone; it imposes a duty on the City to defend its employees from her claims." *Id.* at 1093; *see Piro v. Franklin Twp.*, 102 Ohio App.3d 130, 656 N.E.2d 1035, 1042 (1995) ("Requiring the subdivision to indemnify its employee is entirely different from imposing direct liability on the subdivision."). Recently, the Eighth District Court of Appeals of Ohio reached the same decision in *Ayers v. City of Cleveland*: "R.C. 2744.07(A)(2) does not provide [plaintiff] with a private cause of action against the City to enforce its statutory obligation to indemnify its employees." 2017-Ohio-8571, 2017 WL 5499303, at *6 (8th Dist. Nov. 16, 2017). The plaintiff in *Ayers* appealed the decision to the Ohio Supreme Court, where it is presently pending.

Mr. Gillispie asserts that Defendant Miami Township's reliance on *Ayers* is misplaced because its procedural posture is much different from the present case. But Mr. Gillispie ignores that the procedural posture in *Shoup* is very similar.

23

Mr. Gillispie's counsel, who also represented the plaintiff in *Ayers*, claims that Mr. Ayers intends to appeal his case to the Ohio Supreme Court and thus, "the law in this area is uncertain and unsettled." (Doc. #139, *PageID* #2339). And indeed, since Mr. Gillispie filed his Opposition Memorandum, the Ohio Supreme Court accepted the appeal (on proposition of law No. I[8]). *Ayers v. Cleveland*, 153 Ohio St. 3d 1467, 106 N.E.3d 65 (2018).

Nonetheless, the Ohio Supreme Court has not ruled on that case or this issue and, the Court is persuaded, based on its previous decision and the decisions of Ohio Courts of Appeal, that Mr. Gillispie does not have standing to bring an indemnification claim under O.R.C. § 2744.07 against Defendant Miami Township. *See Shoup*, 974 F.Supp.2d 1058; *Ayers*, 2017-Ohio-8571, 2017 WL 5499303; *Ajamu v. City of Cleveland*, No. 1:15cv1320, 2016 WL 4013596, at *2 (N.D. Ohio July 27, 2016); *Piro*, 102 Ohio App. 3d 130, 141 ("Requiring the subdivision to indemnify its employee is entirely different from imposing direct liability on the subdivision."); *Maruschak v. City of Cleveland*, No. 1:09 CV 1680, 2010 WL 2232669, at *6 n.8 (N.D. Ohio May 28, 2010) ("The right of indemnification is the right of the employee; it does not create a[] cause of action or any enforceable right against the city in favor of a Plaintiff who sues a municipal employee."); *cf. Tinney v. Richland Cnty.*, No 1:14cv703, 2015 WL 542415, *14 (N.D. Ohio Feb. 10, 2015) ("the duty to indemnify accrues upon issuance of a judgment … At

---

[8] "Proposition No. 1: Subsection 2744.07(A)(2) reflects the legislature's intent to permit a judgment creditor to proceed directly against an indemnitor." Amended Memorandum in Support of Jurisdiction of Appellant David Ayers, *Ayers v. City of Cleveland*, 2018-0852, *10 (Aug. 9, 2018).

this stage in the proceedings, an indemnification claim is not ripe.").[9]  Accordingly,

Defendant Miami Township's Supplemental Motion for Partial Judgment on the

Pleadings should be granted.

## IT IS THEREFORE RECOMMENDED THAT:

1.  Defendant Robert Miller's Motion to Dismiss (Doc. #117) be
    GRANTED and all Counts against Defendant Robert Miller be
    DISMISSED;

2.  Defendants Moore and Wolfe's Motion for Judgment on the
    Pleadings on Counts VII and VIII (Doc. #121) be DENIED;

3.  Defendant Richard Wolfe's Renewed Motion to Dismiss (Doc.
    #131) be DENIED; and

4.  Miami Township's Supplemental Motion for Partial Judgment
    on the Pleadings (Doc. #123) be GRANTED and Count IX
    against Miami Township be DISMISSED.

May 1, 2019                                  *s/Sharon L. Ovington*
                                             Sharon L. Ovington
                                             United States Magistrate Judge

---

[9] The parties also disagree on whether Plaintiff adequately alleged Defendant Officers acted in good faith, as required by O.R.C. § 2744.07(A)(2).  Because the Court finds that Ohio Revised Code does not allow a third party to sue a political subdivision, at this time, there is no need to address this issue.

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).