# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | |
|---|---|
| ROGER DEAN GILLISPIE, | Case No. 3:13-cv-416 |
| Plaintiff, | District Judge Thomas M. Rose |
| vs. | Magistrate Judge Sharon L. Ovington |
| MIAMI TOWNSHIP, *et al.*, | |
| Defendants. | |

## REPORT AND RECOMMENDATION[1]

There is "a long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681, 78 S. Ct. 983, 986 (1958) (citing *United States v. Johnson*, 319 U.S. 503, 513, 63 S.Ct. 1233, 1238 (1943); *Costello v. United States*, 350 U.S. 359, 362, 76 S.Ct. 406, 408 (1956)). But, grand jury secrecy is not absolute. *See* Fed. R. Crim. P. 6(e)(3).

Plaintiff Roger Dean Gillispie seeks to pierce the veil of secrecy—requesting disclosure of grand jury transcripts related to the assault of three women in 1988. Alternatively, he asserts that Defendants should be estopped from arguing the grand jury indictment created a presumption of probable cause. (Doc. #163).

This case is presently before the Court upon Plaintiff's Motion to Permit Disclosure of Grand Jury Testimony or, in the Alternative, to Estop Defendants from

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendation.

Arguing the Grand Jury Indictment Created a Presumption of Probable Cause (Doc. #163); Defendant Wolfe's Response (Doc. #172); Defendants Matthew Scott Moore, Steven Gray, Thomas Angel, John DiPietro, and Miami Township's Response (Doc. #173); Intervenor Montgomery County Prosecuting Attorney Mathias H. Heck, Jr.'s Memorandum in Opposition (Doc. #184); Plaintiff's Reply (Doc. #181); and the record as a whole.

Plaintiff's criminal case has a long, complicated history; only a small portion is relevant to the Motion before the Court. In August 1988, three women were attacked in Montgomery County, Ohio. On October 4, 1990, the Montgomery County Grand Jury returned an indictment charging Mr. Gillispie with a total of eighteen counts: nine counts of rape with firearm specifications, three counts of kidnapping with firearm specifications, three counts of gross sexual imposition, and three counts of aggravated robbery with firearm specifications. *Gillispie v. Timmerman-Cooper*, 835 F.Supp.2d 482, 487 (S.D. Ohio 2011) (Merz, M.J.) (citation omitted). The case proceeded to trial and in February 1991, a jury found Mr. Gillispie guilty of all but two counts of aggravated robbery (counts 16 and 18). *Id.* However, after new evidence was discovered, the court granted Mr. Gillispie's Motion for a New Trial and set the matter for a second trial on sixteen counts (all except for two aggravated-robbery counts). *Id.* at 487-88. In June 1991, a jury found Mr. Gillispie guilty of all sixteen counts and he was sentenced to incarceration for twenty-two to fifty-six years. *Id.* at 488.

While in prison, Mr. Gillispie appealed his case in both state and federal court. Ultimately, his appeals led to the remand of his case for a third trial. But, before the third

trial began in the Montgomery County Common Pleas Court, Judge Steven K. Dankof granted Mr. Gillispie's "Motion to Compel Discovery, and If Required Discovery Is Not Produced, to Dismiss Indictment" and dismissed the Indictment. *See State v. Gillispie,* No. 1990 CR 02667 (Ct. Com. Pl., Montgomery Cnty., Nov. 30, 2015). Upon appeal by the State, the Second District Court of Appeals affirmed Judge Dankof's judgment. *See State v. Gillispie,* 2016-Ohio-7688, 65 N.E.3d 791 (Ohio App. 2d 2016). The Ohio Supreme Court did not accept the State's appeal. *See State v. Gillispie,* 150 Ohio St. 1409, 2017-Ohio-6964, 78 N.E.3d 909 (Table).

In the present case, Mr. Gillispie alleges "his conviction was no accident, [it] was the result of police misconduct … includ[ing] … witness manipulation; cover-ups; fabrication, destruction, and suppression of evidence; and perjury." (Doc. #18, *PageID* #77). But, according to Mr. Gillispie, "[t]he unlawful misconduct was not limited to officers from Miami Township; it included employees of General Motors Corporation …." *Id.* Together, they conspired to frame him for those crimes and, as a result of their actions, Mr. Gillispie spent over twenty years incarcerated as an innocent man. Mr. Gillispie brings this suit against Defendants alleging under 42 U.S.C. § 1983, suppression of exculpatory material, suggestive identification, fabricated evidence, malicious prosecution, and destruction of exculpatory evidence; and under Ohio law, malicious prosecution, infliction of emotional distress, spoliation of evidence, and indemnification.

In the Motion presently before the Court, Mr. Gillispie seeks disclosure of the grand jury transcripts associated with his wrongful convictions.

3

Mathias H. Heck, Jr., Montgomery County Prosecuting Attorney, intervened in the present case for the purpose of opposing Mr. Gillispie's Motion to Permit Disclosure of Grand Jury Testimony. Mr. Heck asserts that Mr. Gillispie must first request the transcripts from the court that supervised the grand jury—in this case, the Montgomery County Court of Common Pleas.

Defendants Matthew Scott Moore, Steven Gray, Thomas Angel, John DiPietro, and Miami Township agree with Mr. Heck. Defendant Richard Wolfe has no position on whether the grand jury testimony should be released but opposes Mr. Gillispie's judicial estoppel argument. (Doc. #172).

The Supreme Court has consistently recognized, "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 218, 99 S. Ct. 1667, 1672 (1979) (citation omitted); *see also Federal Deposit Ins. Corp. v. Ernst & Whinney*, 921 F.2d 83, 86 (6th Cir. 1990) ("The sanctity of the grand jury as a means of criminal investigation is so widely known that citation to any authority is unnecessary."). The secrecy of grand jury proceedings serves several important interests:

> First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that

4

> persons who are accused but exonerated by the grand jury will
> not be held up to public ridicule.

*Douglas Oil*, 441 U.S. at 219, 99 S. Ct. at 1673 (footnote omitted).

There are, however, exceptions to grand jury secrecy. *See* Fed. R. Crim. P. 6(e)(3). To lift the veil of secrecy, "Parties … must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Douglas Oil*, 441 U.S. at 222, 99 S. Ct. at 1674. The party seeking the grand jury transcripts carries the burden. *Federal Deposit Ins.*, 921 F.2d at 86 (citing *Douglas Oil*, 441 U.S. at 222-23, 99 S.Ct. at 1674-75; *In re: Grand Jury Proceedings*, 841 F.2d 1264, 1268 (6th Cir. 1988); *Cullen v. Margiotta*, 811 F.2d 698, 715 (2d Cir. 1987)).

Although it is not required, "in general, requests for disclosure of grand jury transcripts should be directed to the court that supervised the grand jury's activities." *Douglas Oil*, 441 U.S. at 225-26, 99 S.Ct. at 1676.

> Ideally, the judge who supervised the grand jury should review the request for disclosure, as he will have first-hand knowledge of the grand jury's activities. But even other judges of the district where the grand jury sat may be able to discover facts affecting the need for secrecy more easily than would judges from elsewhere around the country.

Nevertheless, the supervising court is not always in the best position to evaluate whether the transcripts should be disclosed.

> It does not follow, however, that in every case the court in which the grand jury sat should make the final decision whether a request for disclosure under Rule 6(e) should be

5

> granted. Where, as in this case, the request is made for use in a case pending in another district, the judges of the court having custody of the grand jury transcripts will have no firsthand knowledge of the litigation in which the transcripts allegedly are needed, and no practical means by which such knowledge can be obtained. In such a case, a judge in the district of the grand jury cannot weigh in an informed manner the need for disclosure against the need for maintaining grand jury secrecy. Thus, it may well be impossible for that court to apply the standard required by the decisions of this Court, reiterated above, for determining whether the veil of secrecy should be lifted.

*Id.*

In *Socialist Workers Party v. Grubisic*, the Seventh Circuit evaluated a similar effort by the plaintiffs to discover state grand jury materials. The Court found that the plaintiff must seek disclosure from the supervising state court before asking federal courts:

> when state grand jury proceedings are subject to disclosure, comity dictates that the federal courts defer action on any disclosure requests until the party seeking disclosure shows that the state supervisory court has considered his request and has ruled on the continuing need for secrecy. Otherwise the potential threat of disclosure orders in subsequent federal civil litigation would seriously weaken the state court's control over the secrecy of this essential component of its criminal justice system.

619 F.2d 641, 644 (7th Cir. 1980). But, the Court emphasized that the state court's decision does not bind federal courts:

> the requirement that these plaintiffs first seek disclosure through the avenues available to them in the state court does not give the state courts a veto over disclosure in this federal civil rights case. This preliminary stage is designed merely to forestall unnecessary intrusion by the federal courts in state grand jury proceedings or, at least, to ensure that the important

6

> state interest in secrecy is thoroughly considered. On the other
> hand, although the state court may determine that the materials
> are privileged under state law, only the federal court may
> determine whether the materials are privileged under federal
> common law. In this way the federal interest in disclosure will
> be properly considered preliminarily to a final decision on the
> privilege issue.

*Id.*

The Third Circuit's adopted a similar approach. *See Camiolo v. State Farm Fire & Cas. Co.*, 334 F.3d 345, 357 (3d Cir. 2003) ("Principles of comity and federalism demand that a district court presented with a request to compel the disclosure of any matter occurring before a Pennsylvania investigating grand jury should direct the party to first formally petition the judicial officer who possesses the supervisory authority to grant or deny such access.").

In the Southern District of Ohio, United States District Judge Walter H. Rice found the Seventh Circuit's rationale to be persuasive. *Brunson v. City of Dayton*, 163 F.Supp.2d 919 (S.D. Ohio 2001); *see also Mason v. Wal-Mart*, No. 2:14-cv-446, 2015 WL 409695 (S.D. Ohio Jan. 29, 2015) (Kemp, M.J.) (finding *Socialist Workers*, *Camiolo*, and *Brunson* persuasive). In *Brunson*, the plaintiff brought claims under both Ohio's wrongful death statute and § 1983, alleging defendants violated his Constitutional rights under the Fourth and Fourteenth Amendments.[2] 163 F.Supp.2d at 921. Judge Rice concluded, like the Court in *Socialist Workers*, "Principles of comity demand that the judge of the Montgomery County Common Pleas Court, who supervised the Grand Jury

---

[2] The plaintiff also alleged under § 1985(3) that the defendants conspired to deprive him of Constitutional rights.

7

which investigated the shooting …, be afforded the first opportunity to decide whether the testimony and exhibits presented before it can be released." *Id.* at 922.

As Mr. Gillispie correctly points out, there are differences between *Brunson* and the present case. For instance, in *Brunson*, the plaintiff requested the grand jury transcripts less than two years after the grand jury proceedings concluded. By comparison, in the present case, the Montgomery County Grand Jury returned an indictment charging Mr. Gillispie on October 4, 1990—nearly thirty years ago. Further, in *Brunson*, the plaintiff's claims involved excessive force. Mr. Gillispie alleges, among other claims, malicious prosecution under both § 1983 and Ohio law.

Looking first at the timing of the request, although it has been almost thirty years since the indictment was returned, Montgomery County Court of Common Pleas Judge Steven K. Dankof recently dismissed the indictment in November 2015. *State of Ohio v. Gillispie*, 1990 CR 02667 (C.P. Montgomery Cnty. Nov. 30, 2015). This required an in-depth look at the extensive history of the case. Thus, despite the significant thirty-year gap in time, it is likely that the Common Pleas Court is more familiar with Mr. Gillispie's criminal case (including the grand jury proceedings) and/or "may be able to discover facts affecting the need for secrecy more easily than would judges from elsewhere …." *Douglas Oil*, 441 U.S. at 225-26, 99 S.Ct. at 1676.

Turning to the malicious prosecution claims, according to Mr. Gillispie, "Defendants may argue that Plaintiff's indictment created a rebuttable presumption of probable cause." (Doc. #181, *PageID* #3987). Why is that significant? Because, to succeed on a malicious prosecution claim—under both § 1983 and Ohio law—a plaintiff

must show a lack of probable cause, among other elements. *See Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015)[3]; *Harris v. Bornhorst*, 513 F.3d 503, 520 (6th Cir. 2008).[4] Thus, Mr. Gillispie asserts, "the grand jury indictment bears directly upon the grand jury proceedings attacked in Plaintiff's malicious prosecution claim …. This Court, not the state court[,] should determine whether Plaintiff should be handicapped in his ability to rebut this presumption of probable cause by being denied access to grand jury records." (Doc. #181, *PageID* #3987) (citations omitted).

Mr. Gillispie's argument lacks merit. As explained by the Seventh Circuit, the state court's review is a "preliminary stage." *Socialist Workers*, 619 F.2d at 644. If the state court refuses to disclose the grand jury records, Mr. Gillispie may renew his motion with this Court.

**IT IS THEREFORE RECOMMENDED THAT**:

Plaintiff's Motion to Permit Disclosure of Grand Jury Testimony
(Doc. #163) be DENIED without prejudice to renewal.

May 1, 2019                               *s/Sharon L. Ovington*
                                          Sharon L. Ovington
                                          United States Magistrate Judge

---

[3] "To succeed on a malicious-prosecution claim under ... § 1983, a plaintiff must prove the following: (1) the defendant made, influenced, or participated in the decision to prosecute the plaintiff; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceedings, the plaintiff suffered a deprivation of liberty apart from the initial arrest; and (4) the criminal proceeding was resolved in the plaintiff's favor." *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015) (citing *Sykes v. Anderson,* 625 F.3d 294, 308-09 (6th Cir. 2010).

[4] Under Ohio law, malicious prosecution has three elements: "'(1) malice in instituting (or continuing) the prosecution, (2) lack of probable cause, and (3) termination of the action in favor of the defendant.'" *Harris v. Bornhorst*, 513 F.3d 503, 520 (6th Cir. 2008) (quoting *Swiecicki v. Delgado*, 463 F.3d 489, 503 (6th Cir. 2006) (citing *Trussell v. Gen. Motors Corp.*, 53 Ohio St. 3d 142, 559 N.E.2d 732, 735 (Ohio 1990)).

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).