IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

ROGER DEAN GILLISPIE,  )
  )
  Plaintiff,  )
  )  No. 3:13-cv-416
  v.  )
  )
THE CITY OF MIAMI TOWNSHIP,  )
  et al.,  )
  )
  Defendants.  )  JURY TRIAL DEMANDED

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT WOLFE'S MOTION FOR SUMMARY JUDGMENT**

Mike Kanovitz
David B. Owens
Omavi Shukur
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
(312) 243-5900

## INTRODUCTION

The core question, for present purposes, is whether a reasonable jury could find that Defendant Wolfe acted in a concerted action—a conspiracy—with Defendant Moore to implicate Dean Gillispie in crimes he did not commit. The answer is yes. In asserting otherwise, Wolfe has impermissibly painted the facts in his favor, ignored extensive other evidence against him, and departed from governing law and the well-established standard at summary judgment. Wolfe's effort to evade accountability for imprisoning an innocent man must fail.

Indeed, viewed in the light most favorable to Gillispie, the evidence shows Wolfe was motivated against Gillispie and, with the help of Moore, used his connections as a former Miami Township Police Department (MTPD) officer to obtain prosecution of Gillispie. The evidence shows Wolfe worked as a pseudo-partner to Moore in implicating Gillispie—he interviewed potential witnesses, made his own lineup, captained his own "investigation," and the list goes on. Wolfe contends otherwise, meaning the core facts are disputed. Thus, the motion should be denied.

## APPLICABLE LEGAL STANDARDS

Summary judgment is only warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "In making that determination, a court must view the evidence 'in the light most favorable to the opposing party.'" *Tolan v. Cotton*, 134 S. Ct. 1866 (2014) (citation omitted). The Supreme Court has emphasized the "importance of drawing inferences in favor of the nonmovant." *Id.* at 1866. Additionally, "it is of no import" that Defendants have refused to admit "to an agreement, express or tacit"; a "jury may properly infer the existence of one from the circumstantial evidence before it." *United States v. Johnson*, 26 F. App'x 441, 445-46 (6th Cir. 2001). The "jury is allowed to make reasonable inferences from facts proven in evidence having a reasonable tendency to sustain them." *Jackson v. City of Cleveland*, 925 F.3d 793, 814 (6th Cir. 2019) (citation omitted).

## UNDISPUTED FACTS THAT PRECLUDE SUMMARY JUDGMENT

In the Argument, each Statement of Fact ("SOF") will be referenced by paragraph number.

### I.    Three Dayton-Area Women Are Raped in the August of 1988

1.    On August 20, 1988, two twin sisters, B.W. and C.W., were forced to perform oral sex after being abducted at gunpoint from the parking lot of the Best Products store in Dayton (the 8/20 Rapes). Doc.230-5, PAGEID#6106. After hearing of the 8/20 Rapes, another woman, S.C., reported being forced at gunpoint to perform oral sex on August 5th. Doc.233-1, PAGEID#6750.

2.    Detective Gary Bailey investigated the 8/20 Rapes. Doc.222, PAGEID#4786. Detective Sergeant Steven Fritz supervised Bailey and met with him regarding strategies for the investigation. *Id.* PAGEID#4846. Bailey interviewed B.W. and C.W., accompanied them to the scene of the crimes, Doc.231-1, PAGEID#62227, 6233, and noted his interviews. Doc.222, PAGEID#4848. B.W. and C.W. were shown books of photographs of potential suspects, none of whom were identified. Doc.231-3, PAGEID#6368, 6410. Together, B.W. and C.W. aided in the creation of a composite image. Doc.219, PAGEID#4214; Doc.231-3, PAGEID#6391. S.C. viewed photographs at the Sheriff's office but made no identification. Doc.163-1, PAGEID# 2552. She also aided in the production of a composite. Doc.220, PAGEID#4299. One of the twins called MTPD and reported the perpetrator's pants size, which she had observed. Doc.222, PAGEID#4798. Bailey recorded this information in a supplemental report. *Id.* PAGEID#4800, 48128-29.

3.    Bailey investigated various tips and leads regarding the 8/20 Rapes. (Doc 231-1, PAGEID#6238. Fritz also fielded some of these calls. Together, Fritz and Bailey developed a profile of the suspect. Doc.221, PAGEID#4386. In the end, Bailey investigated more than twenty suspects and leads. Doc.233-3, PAGEID#6881-6889; Doc.231-1, PAGEID#6238-39. The investigation continued until "all the good leads ran out." *Id.* PAGEID#6231.

4.      Gillispie had nothing to do with the rapes and, in fact, could not have committed them because he was in Kentucky when they happened. Doc.231-2, PAGEID# 6270-71, 79-80.

5.      Gillispie did not have a criminal record and has not developed one since his release. Doc.230-5, PAGEID#6107); Doc.231-2, PAGEID#6280.

**II.      Wolfe Uses His Police Experience In a Failed Attempt to Implicate Gillispie**

6.      At the time of the rapes, Gillispie worked as a supplemental security officer at GM, where he had been employed since 1984. Doc.168, PAGEID#3144-55, 3147.

7.      At GM, Gillispie was heavily scrutinized by his superiors, including Wolfe, who resented Gillispie for being hired for a position that Wolfe wanted his friend to have. Doc.229-10, PAGEID#5776. Wolfe was also upset when Gillispie refused to provide him special treatment, like others did, when Gillispie worked the gate. Further, Wolfe did not like Gillispie because he believed Gillispie was involved in thefts of air compressors from GM. Doc.221-5, PAGEID#4644.

8.      Other GM employees observed the palpable tension and animosity between Wolfe and Gillispie. Both the president and vice president of the local union had to deal with the conflicts between Gillispie and Wolfe. Doc.229-1, PAGEID# 5693; Doc.229-4, PAGEID#5698.  It was common knowledge that management—including Wolfe—hated Gillispie. PAGEID#5698. Robert Kepperling, a supervisor at GM who recognized Gillispie was a good worker, also observed arguments and hostility between Gillispie and Wolfe. Doc. No. 229-3, PAGEID#5696-97.

9.      In late-1989, over a year after the rapes, and while Bailey was still an MTPD Detective, Wolfe contacted MTPD, claiming Gillispie should be investigated and prosecuted as a suspect in the rapes. Doc.166, PAGEID#2997); Doc.221, PAGEID#4373. Gillispie had been fired from GM shortly before this happened. *Id.* PAGEID#4571; Doc.168, PAGEID#3157.

10.     Wolfe still maintained contacts in the department, after working as a police officer there for over a decade until the mid-1980s including with Moore's father, the prior police chief.

Doc.166, PAGEID#2936-37, 2948-49, 2967-69, 2994. Wolfe knew his suggestion that Gillispie be investigated for the rapes would be taken seriously by MTPD. *Id.*

11.     Wolfe was granted a meeting with then-Chief Thomas Angel, Captain Marvin Scothorn, Fritz, and Bailey. Doc.222, PAGEID#4880; Doc.221, PAGEID#4373. There, Wolfe showed a single GM ID card, bearing Gillispie's photo, claiming it matched a composite of the perpetrator of the 8/20 Rapes. Doc.163-5, PAGEID#2580.

12.     After Wolfe brought up firing Gillispie, Bailey asked whether Wolfe was implicating Gillispie out of some sort of vindictiveness. Doc.221, PAGEID#4571. Bailey noted Wolfe made this allegation over a year after the crime, and both he and Fritz recognized the obvious hostility Wolfe displayed towards Gillispie. Doc.221, PAGEID#4571). Fritz, who worked with Wolfe for years on at MPTD, noticed Wolfe exhibited particular dislike for Gillispie; unusual behavior for Wolfe. Doc.221-5, PAGEID#4643-44. Bailey and Fritz wrote reports documenting this meeting. Doc.222, PAGEID#4867-68; Doc.221, PAGEID#4559-60.

13.     Chief Angel then ordered Bailey and Fritz to investigate Gillispie as a suspect in the 8/20 Rapes. Doc.221, PAGEID#4384; Doc.221-5, PAGEID#4696-97; Doc.222, PAGEID#4883. Angel sought to accommodate his former colleague, Wolfe, whose accusations received heightened attention given he was a former MTPD officer. Doc.221, PAGEID#4523, 4647.

14.     Eventually, Bailey and Fritz concluded that Gillispie should be eliminated as a suspect. Doc.222, PAGEID#4883. Today, Bailey and Fritz are unable to list *all* of the reasons they eliminated Gillispie as a suspect, and the reports they wrote detailing their reasons have been secreted, if not destroyed. *Id.* PAGEID#4859. Some of the reasons Gillispie was eliminated as a suspect include: (1) Gillispie's pants size could not have matched the pants size of the perpetrator; (2) Gillispie's lack of any criminal history, while the perpetrator's brazenness strongly suggested extensive criminal history; (3) the perpetrator, who told the victims his name was "Roger," most

4

likely would not have provided his real name; and (4) Wolfe's animosity toward Gillispie from his termination at GM. (*Id.* PAGEID#4798, 4800, 4858-59, 4894-95); Doc.221, PAGEID#4376, 4571.

15. Fritz relayed these findings to Angel, who agreed with Fritz and Bailey. Doc.221, PAGEID#4525, 4546. Fritz and Bailey also wrote supplemental reports memorializing their work. *Id.* PAGEID#4546; Doc., 231-1, PAGEID#6233; Doc.222, PAGEID#4856. These reports were placed into two MTPD files—the Records Division file, and a copy in the MTPD Detectives' "working file," housed in the detectives' section. Doc.222, PAGEID#4861.

### III. Detective Moore Suppresses, and Likely Destroys, Material Evidence

16. Bailey was reassigned out of the Detective Division in November 1989. Doc. 233-6, PAGEID#6950. The rape investigation was inactive. Doc.222, PAGEID#4812. Fritz left the department on June 15, 1990, Doc.221 PAGEID# 4406, and on June 18, 1990, Moore was assigned the 8/20 investigation. Doc.170, PAGEID#3619; Doc.221, PAGEID#4363.

17. Upon this assignment, Moore received all of the supplemental reports—from the detectives section and permanent records—that predated his involvement in the 8/20 rape investigation. Doc.170, PAGEID#3488; Doc.222, PAGEID#4803, 4861. Moore had the ability to remove both files from the department. *Id.* PAGEID#4884, 4923-4924.

18. Moore then suppressed handwritten notes and typed reports concerning: (1) the initial meeting with Wolfe; (2) the pants size of the perpetrator; (3) Bailey's report eliminating Gillispie as a suspect approved by Fritz; and (4) Fritz's memorandum to Chief Angel about elimination of Gillispie as a suspect. Doc.222, PAGEID#4798, 4800-01, 4859, 4867-68; Doc.221, PAGEID#4559-60; Doc.230-5, PAGEID#6106-25. These reports were not produced to Gillispie's defense attorney, and have not been produced in this civil case. Doc.224, PAGEID#5130.

19. Moore wrote supplemental reports omitting Wolfe's initial meeting at MTPD and the entire circumstances concerning elimination of Gillispie as a suspect. Doc. No. 230-5, PAGEID

#6106. Instead, Moore fabricated that Gillispie was a "new" suspect when he took over in June 1990, even though he knew it to be false. *Id*.; Doc.170, PAGEID#3589.

20. Moore suppressed, and likely destroyed, evidence that Gillispie was in Kentucky at the time of the crimes, as confirmed through an investigation by Fritz who had been hired to perform specific tasks for Gillispie's defense. Doc.168, PAGEID#3242); *see generally* Doc.221, PAGEID#4417, 4433, 4488-89, 4509; Doc.234-1, PAGEID#6969; Doc.168, PAGEID#3248.

21. Moore had audio recordings of conversations with witnesses from the investigation. Doc.229-5, PAGEID#5700; Doc.230-5, PAGEID#6106. No such recordings were produced to Gillispie's defense attorneys, or in this case. Doc.170, PAGEID#3490-3491.

### IV. Moore Uses the Photo Provided By Wolfe to Fabricated False and Unreliable Identifications of Gillispie

22. Each of the three victims identified Gillispie as the perpetrator during the photo lineup procedures, all of which were administered by Moore roughly two years after the rapes. Doc.230-5, PAGEID#6106, 6113. The photograph of Gillispie was taken from his old GM ID badge, which was provided by Wolfe. Doc.231-3, PAGEID#6334.

23. These identifications, fabricated evidence, were suggestively obtained and unreliable due to, among other things, the passage of time, cuing by Moore before and after the procedures, the fact that the picture of Gillispie had been enlarged and was on a different finish than the others, and faulty "fillers," whose images obviously contradicted the perpetrator's description (as well as Gillispie's appearance). Doc.230-10, PAGEID#6159-80; Doc 233-1, PAGEID#6760, 6763-67; Doc. 229-5, PAGEID#5699-60.

### V. Moore Fabricates Reports Related to His Interactions with Gillispie

24. Moore's reports include falsehoods as it relates to his interactions with Gillispie. For example, though Wolfe refused to tell Gillispie why he was interviewing him, Doc.229-10,

6

PAGEID#5778-79, Moore reported telling Gillispie he was interviewing him about the rapes; presenting a false account of Gillispie seeming to have a guilty conscience. *Id.* PAGEID#6111-12.

25.    Moore testified to these reports at trial. Doc. 235-1, PAGEID#7008-13, 7023-27. Gillispie's defense attorney was cognizant of this fact, and asked Gillispie questions about the interview, in rebuttal to Wolfe's false testimony. Doc.231-2, PAGEID#6267, 6270, & 6272.

### VI.    Wolfe Actively Coordinated and Conspired to Seek Gillispie's Prosecution

26.    Even after the meeting with MTPD top brass, SOF¶¶9-12, Wolfe would stop by MTPD and follow-up on his Gillispie allegation, Doc.221 PAGEID#4373, and did so despite the fact Investigator Robert Burke was the only GM employee whose role it was to work with law enforcement. Doc.166, PAGEID#2963-66. Wolfe also called MTPD concerning Gillispie. Doc.221-5, PAGEID#4694. On one such call, Fritz informed Wolfe Gillispie had been eliminated as a suspect and MTPD would not be arresting Gillispie. Doc.221-5, PAGEID#4694.

27.    Nonetheless, the very day Moore was assigned the case, he spoke with Wolfe. Doc.170, PAGEID#3621-22. As a result, Moore described Gillispie as (1) a *new* suspect; (2) brought to the attention of the department by Wolfe; and (3) that Gillispie had been discharged from GM. Doc.230-5, PAGEID#6107; Doc.166, PAGEID#3017. Moore also discussed with Wolfe whether Gillispie worked the time of after the 8/20 Rapes. Doc.230-5, PAGEID#6107. Wolfe investigated and reported Gillispie had not worked on August 20 or 21, 1988. *Id.*

28.    Wolfe sought and received from Moore at least two composites. Doc.166-2, PAGEID#3103-05. Notably, Moore did not speak to potential witnesses at GM. *Id.* Instead, having obtained the composites to show to GM employees, Wolfe performed this task. *Id.* Wolfe showed a composite to multiple GM employees, including Robert Miller. Doc.166, PAGEID#2911. Wolfe claims they agreed this was Gillispie, which he reported to Moore. Doc.231-6, PAGEID#6486-87. Per his reports, Moore never interviewed Miller. Doc. 230-5, PAGEID#6106-6125.

7

29.     At some point, Wolfe brought Gillispie's GM ID badge and four others to MTPD. Doc.166, PAGEID#2913. Wolfe used his police training to select IDs he thought could be used to create a lineup. *Id.* PAGEID#2913, 3004-05; *see also* Doc. 230-7, PAGEID#6127 (4 of 5 badges).

30.     In July and August 1990, Moore expanded the investigation to all three victims. Doc.230-5, PAGEID#6111-15. Moore was trying to determine whether Gillispie owned a gun. *Id.* On August 28, 1990, Moore spoke with Wolfe about whether Gillispie was working the S.C. rape *Id.* PAGEID#6113-14. Wolfe agreed to check the payroll records and reported Gillispie did not work that day. *Id.* He also informed Moore Gillispie never talked about owning a gun. *Id.* PAGEID#6114

31.     At Moore's request, Wolfe later went to MTPD drop off Gillispie's employment records for August 1988. *Id.*; Doc.166, PAGEID# 2917.

32.     Gillispie was arrested on September 5, 1990. Doc.230-5, PAGEID#6117-19. Even then, Wolfe and Moore would confer about the prosecution. Doc.166, PAGEID#2922-23.

33.     In fact, according to Moore, Wolfe had an investigation as well. Doc.230-5, PAGEID#6120-22. Pursuant thereto, Wolfe claimed to Moore he learned Gillispie had spent time in jail in Morehead, Kentucky. *Id.* PAGEID#6120-21.

34.     The following week, Wolfe called Moore to provide additional details learned about the false alleged incident in Morehead. *Id.* PAGEID#6122. Moore found nothing as a result. *Id.*

**VII.    Gillispie is Convicted and Eventually Exonerated**

35.     Gillispie was charged and then tried in February 1991 and, again, after a new trial was granted, in June of 1991. Gillispie was convicted each time. *Gillispie v. Timmerman-Cooper*, 835 F. Supp. 2d 482, 487–88 (S.D. Ohio 2011); *see* Doc., 229-6, PAGEID#5706-07. Wolfe, Moore, and Miller (the GM employee Wolfe interviewed, but that Moore did not) testified against Gillispie. Doc.231-5 PAGEID#6472; Doc.231-7 PAGEID#6499; Doc.170 PAGEID#3374.

36.     Gillispie maintained his innocence, and his conviction was later overturned by two separate courts. First, a federal court granted *habeas* relief after finding Gillispie's due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), were violated by suppression of the Fritz/Bailey reports. *Gillispie*, 835 F. Supp. 2d at 506-09; Doc.222, PAGEID#5722-55.

37.     Second, Gillispie's conviction was overturned by an Ohio Court of Appeals on the basis of new evidence concerning an alternative suspect for the crimes, Kevin Cobb. *State v. Gillispie*, 2012-Ohio-1656, on reconsideration, 2012-Ohio-2942, ¶ 46, Docs, 229-7 & 299-8.

38.     Gillispie moved to dismiss the indictment with prejudice if the State did not produce the Fritz/Bailey reports. Doc.230-2, PAGEID#5802. The State of Ohio did not—and stated it could not—produce them and the motion was granted. Doc.230-3, PAGEID#6101, 6103.

## ARGUMENT

Wolfe's motion is based upon distractions and *non sequitur*s, and fails to adhere to the summary judgment standard. For example, Wolfe points out that Gillispie himself lacks personal knowledge of Wolfe's pervasive actions borne out in discovery. This is irrelevant. A Plaintiff is not required to be *personally* aware of the extensive discovery in a case. Likewise, Wolfe points out he cannot be liable merely for testifying, given absolute immunity. This is also irrelevant—Gillispie does not contend Wolfe is liable merely for testifying (albeit misleadingly) at trial. Wolfe's motion does not address the core issues for an obvious reason: when properly examined, it is clear genuine issues of material fact preclude summary judgment here.

## I.     Wolfe Is Liable on Account of His Coordinated Efforts with Detective Moore

Wolfe's primary (and repeated) argument that he cannot be liable because he was not a state actor at time of the rape investigations fails. It is axiomatic, of course, that § 1983 imposes liability upon individuals when they have violated someone's constitutional rights while "acting under color of state law." *West v. Atkins*, 487 U.S. 42 (1988). Here, while not a police officer at the time, Wolfe

9

acted under color of law because "[p]rivate persons jointly engaged with state officials in a

deprivation of civil rights are acting under color of law for purposes of § 1983." *Hooks v. Hooks*, 771

F.2d 935, 943 (6th Cir. 1985). That is, "[p]rivate persons may be held liable under § 1983 if they

willfully participate in joint action with state agents." *Memphis, Tenn. Area Local, Am. Postal Workers

Union v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004). Under *Hooks*, a "civil conspiracy is an

agreement between two or more persons to injure another by unlawful action"; however, "[e]xpress

agreement among all the conspirators is not necessary to find the existence of a civil conspiracy",

and each conspirator need not know the details of the illegal plan or participants involved." 771 F.2d

at 943-44. Instead, Gillispie need only show (1) that there was a single plan, (2) that the

coconspirator shared in the general conspiratorial objective, and (3) that an overt act was committed

in furtherance of the conspiracy that caused his injuries. *Id.*

"Rarely in a conspiracy case will there be direct evidence of an express agreement among all

the conspirators to conspire." (citation omitted)). *Bazzi v. City of Dearborn*, 658 F.3d 598, 606 (6th Cir.

2011). Accordingly, "the existence of an express agreement between defendants will frequently be

provable only through circumstantial evidence." *Aetna Cas. & Sur. Co. v. Leahey Const. Co.*, 219 F.3d

519, 538 (6th Cir. 2000). A conspiracy "may be inferred from relevant and competent circumstantial

evidence, such as the acts of the conspirators themselves," and "acts done with a common purpose

can establish an implicit agreement." *United States v. Milligan*, 17 F.3d 177, 182-83 (6th Cir. 1994);

*United States v. Walls*, 293 F.3d 959, 967 (6th Cir. 2002) (similar)

These standards are amply met here. First, Wolfe and Moore had a plan and singular

objective: to prosecute and convict Gillispie for the rapes. Stemming from his dislike of Gillispie at

GM, Wolfe's commitment to this objective began before Moore was ever assigned to the 8/20

Rapes, and continued, undeterred, even after his efforts to convince Fritz and Bailey to prosecute

Gillispie failed, and even after Gillispie was arrested. *See* SOF, ¶¶6-15, 26-34.

10

Wolfe undertook numerous overt acts in furtherance of this objective, including:

(1) bringing the single GM identification card to MTPD and having a meeting with, among others, the Police Chief, Fritz and Baily to implicate Gillispie in the rapes, *id.*¶¶9-12;

(2) repeatedly calling and going to MTPD to check on the investigation of Gillispie, wherein eventually learned Gillispie had been eliminated as a suspect, *id.* ¶26;

(3) nonetheless conferring with Moore the day Moore was assigned the 8/20 Rapes where he discussed Gillispie being fired, and again alleged Gillispie should be a suspect, *id.* ¶27;

(4) obtaining composite images from Moore, taking them to GM, and interviewing potential witnesses, including Robert Miller (who eventually testified at Gillispie's trials), *id.* ¶28;

(5) using his police training to select and deliver several GM ID badges (including Gillispie's a second time) in an effort to create his own photographic line-up at MTPD even though Gillispie had been eliminated as a suspect, *id.* 29;

(6) checking GM payroll records multiple times to examine Gillispie's work schedule, and ultimately delivering them to MTPD at Moore's request, *id.* ¶¶27, 30-31; and

(7) conducting his own "investigation" of Gillispie at GM and twice reporting to Moore the false claim Gillispie committed sexual misconduct in Morehead, Kentucky, *id.*¶¶4-5, 32-34.

The laundry-list of actions Wolfe took with Moore to implicate Gillispie in the rapes—and inferences that flow from them—far exceed the standard for allowing a reasonable jury to conclude that Wolfe was "jointly engaged with state officials." *Dennis v. Sparks*, 449 U.S. 24, 28 (1980).

In the end, Wolfe's argument is premised on an argument rejected at the pleadings phase: the only thing he did was merely provide a "tip" to the police. Doc. 171, PAGEID#3860. This characterization of the facts is belied by the record, which must be construed in Gillispie's favor.

## II.    Wolfe Is Liable For Moore's Unlawful Acts Taken Pursuant to Their Conspiracy

Wolfe's arguments on three of Gillispie's substantive constitutional claims boil down to a core argument: (1) he did not *personally* suppress the evidence; (2) he did not *personally* create or administer the suggestive photo-lineups; (3) he did not *personally* fabricate evidence; and (4) he did not *personally* destroy evidence. This argument rests on the erroneous premise that Wolfe can be liable only for *his* actions, and not his conspirators. This Court has already rejected this contention.

11

Established law provides: "each member of a conspiracy becomes responsible for acts in furtherance of the conspiracy committed by his co-conspirators." *United States v. Frost*, 914 F.2d 756, 762 (6th Cir. 1990); *see also Hooks*, 771 F.3d at 943-44. Accordingly: "As a conspirator, the citizen is liable, in civil as in criminal law, for the wrongful acts of the other conspirators committed within the scope of the conspiracy." Doc.191, PAGEID#4049 (quoting *Proffitt v. Ridgway*, 279 F.3d 503, 507 (7th Cir. 2002) (citing *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)); *see also United States v. Deitz*, 577 F.3d 672, 693 (6th Cir. 2009) (similar). In short, "the act of one conspirator may be treated as the act of all." *United States v. Robinson*, 872 F.3d 760, 766 (6th Cir. 2017).

Here, Wolfe does not argue that there is insufficient evidence for a reasonable jury to conclude *Moore* violated Plaintiff's constitutional rights by: (1) suppressing exculpatory and impeaching evidence, including evidence that would have impeached Moore's investigation, in violation of due process, *see Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), *Kyles v. Whitley,* 514 U.S. 419,445-46 (1995); (2) using suggestive procedures to obtain the identifications in violation of due process, *see Manson v. Brathwaite*, 432 U.S. 98 (1977) and *Neil v. Biggers*, 409 U.S. 188 (1972); or (3) fabricating evidence against Gillispie, *see Gregory v. City of Louisville*, 444 F.3d 725, 744-45 (6th Cir. 2006). Accordingly, Plaintiff does not detail this law (or provide extensive discussion of the facts concerning these claims).[1]

Instead, Wolfe's premise is that *he* did not actually do the underlying acts and, therefore, cannot be liable. However, as explained, Wolfe's interpretation of the law is fundamentally flawed and ignores the nature of his coordinated actions in furtherance of his conspiracy with a police

---

[1] Additional evidence exists that supports these claims but is not presented here, given space limitations the scope of Wolfe's arguments. Wolfe has not even addressed the substantive constitutional standards that govern each claim. Nor may he advance such an argument for the first time in reply. *Sanborn v. Parker,* 629 F.3d 554, 579 (6th Cir. 2010) (explaining that "arguments made to us for the first time in a reply brief are waived."); *Ross v. Choice Hotel Int'l, Inc.*, 882 F. Supp. 2d 951, 958 (S.D. Ohio 2012). In other words, Wolfe's motion fails because he has failed to carry his burden with respect to these claims.

officer (Moore) to prosecute and wrongfully convict Gillispie for rapes he did not commit. *Cf.*

*Gregory v. City of Louisville*, 444 F.3d 725, 744-45 (6th Cir. 2006) (holding a *Brady* claim was actionable

against a conspirator). Though that should end the matter, two more issues are addressed below.

First, as it concerns the suggestive identification claim, and without evidentiary support,

Wolfe suggests that Moore did not engage in any suggestive behavior and went to "great lengths—

including taking photos of his co-worker—to create a lineup that was not suggestive. Doc.171,

PAGEID#3864. Plaintiff could not disagree more strenuously with this assertion. Moore took

actions before, during, and after the photo line-ups to influence the witnesses, and the lineup was

anything but fair. SOF¶¶22-23. At most, Wolfe has presented a self-serving version of the evidence,

which cannot support a motion for summary judgment. *Gregory*, 444 F.3d at 746 (given disputes

concerning whether "the line-up was a reasonable one in light of the infirmities of the situation, the

decision is one for the finder of fact"); *Wheatt v. City of E. Cleveland*, 2017 WL 5187780, at *15 (N.D.

Ohio Nov. 9, 2017) (denying summary judgment due to "disputed and material facts about both the

suggestiveness of the procedure and the reliability" of the identification).[2]

Second, concerning Gillispie's fabrication claim, Wolfe seems to suggest that only evidence

actually introduced at trial is relevant. Doc.171, PAGEID#3864-65. This narrow view has been

squarely rejected by the Sixth Circuit, *Jackson,* 925 F.3d at 821-22. Indeed, *Gregory*, which Wolfe cites

held an officer's reports were "pretrial fabrication efforts" that comprised the "documentary record

before the prosecution and defense and affected the course of the criminal proceeding independent

of any testimony to the notes' contents." 444 F.3d at 741. The "very existence" of the reports, "even

if not introduced as evidence at trial, affected Plaintiff's criminal prosecution independent of the

---

[2] Though Wolfe can be liable for Moore's acts, it bears emphasizing that Wolfe's *intention* was for
Moore to use Gillispie ID badge to create a lineup. SOF ¶29. This was important because, as Wolfe
knew, Gillispie had no criminal record. *Id.* ¶5. Without Wolfe's act, the fabricated, suggestive, and
unreliable photo-identifications—powerful evidence that contributed to Gillispie's conviction—
would have never occurred.

officers' testimony." *Id.* That is certainly the case here, as it concerns the fabricated evidence, which

Wolfe was instrumental in maintaining.[3] Wolfe's argument fails.

### III. Gillispie's Fourth Amendment Claim Must Be Submitted to the Jury

To succeed on a Fourth Amendment "malicious prosecution" claim, Gillispie must establish:

(1) Defendants influenced or participated in the decision to initiate a criminal prosecution against

him; (2) there was no probable cause to support the charges; (3) as a result of the prosecution,

Gillispie suffered a deprivation of liberty following his initial arrest; and (4) the criminal proceedings

ended in his favor. *Miller v. Maddox*, 866 F.3d 386, 389 (6th Cir. 2017). A Fourth Amendment claim

is not a common law or state-law "malicious prosecution" action—*e.g.*, malice is not a

requirement—and federal law governs. *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010).

Here, apart from his misguided assertion he cannot be a state actor, which has already been

addressed, Wolfe's only argument on this issue is that he "was not involved in bringing charges

against Mr. Gillispie;" *i.e.*, that there is no evidence Wolfe "took any specific action to 'wrongfully

influence' either the decision to indict Mr. Gillispie or the decision to prosecute him." Br., Doc.171,

PAGEID#3866. Wolfe's arguments should be rejected.[4]

To be liable, Wolfe need not have been the one to personally have made the decision to

prosecute; it is sufficient that he *influenced* the decision. *Sykes*, 625 F.3d at 311. Whether Wolfe

"influenced or participated in the decision to prosecute hinges on the degree of [his] involvement

and the nature of the [his] actions," *id.* at 311 n.9, and this requirement can be satisfied where a

---

[3] While Wolfe need not be the actual fabricator, his role was crucial in the fabrication: he had to
withhold the truth of his actions and motives, particularly in bringing initial ID badge to MTPD and
returning with additional badges and parading this as a "new" process with Moore.

[4] Wolfe does not cite to, much less discuss, the other elements of the Fourth Amendment claim. Of
course, he may not do so for the first time in reply. *See supra* n. 1.

defendant was "prompting or urging" the "decision to bring charges . . . in the first place." *Sanders v. Jones*, 845 F.3d 721, 731 (7th Cir. 2017).

Wolfe prompted and urged the decision to bring the charges. Wolfe was the first person to urge MTPD to arrest Gillispie, even before Moore was involved; an effort that was easy for Wolfe given his influence at MTPD. *Id.* ¶¶9-12. The prompting continued after Moore was assigned to the rapes; Wolfe made a "lineup" and interviewed a witness, Miller, who testified at trial (who Moore never interviewed). *Id.* ¶¶28-29, 35. These continued even after Gillispie was arrested. *Id.* ¶¶32-34.

## IV. A Reasonable Jury Can Easily Conclude Defendants Destroyed Evidence

Wolfe presents three arguments as it concerns Gillispie's destruction of evidence claim: (1) that no such claim exists; (2) that he can be liable only if he, himself, destroyed evidence; and (3) that there is no evidence to support this claim; *i.e.*, "there is no evidence that any evidence was destroyed." Br. Doc.171, PAGEID#3867. Wolfe is mistaken.

First, Wolfe is simply wrong. A "plaintiff's due process rights may indeed be violated where the police fail to preserve evidence." *Allen v. Clark*, No. 1:13CV326, 2014 WL 3016075, at *4 (S.D. Ohio July 3, 2014) (citing *Arizona v. Youngblood*, 488 U.S. 51, 57–58 (1988); *California v. Trombetta*, 467 U.S. 479, 488-89 (1984)). To the extent Wolfe is suggesting the Fritz/Bailey reports never existed, this is a profoundly disputed fact precluding summary judgment.[5]

Second, as explained above, Wolfe is liable for the actions of his co-conspirator, Moore.

Third, there is evidence that supports Gillispie's destruction of evidence claim. Moore destroyed not only the handwritten notes, supplementary reports, working file, and other files from

---

[5] Wolfe insinuates that Fritz and Bailey's testimony is "suspect" on the basis that it is "not the business of police officers to exonerate suspects through drafting supplemental reports." Doc. 171, PAGEID# 3867. This is a credibility-based argument, not permitted at summary judgment. *Adams v. Metiva*, 31 F.3d 375, 384 (6th Cir. 1994). Wolfe also misses the reason it was important to have documentation here: *his* influence at MTPD led Angel to order an investigation, which Fritz and Bailey were sure to document.

15

the MTPD but also the Kentucky campground documents that would have been able to confirm Gillispie's innocence, *i.e.*, his alibi. SOF ¶¶16-25.

Finally, to the extent Wolfe's argument boils down to an assertion that because Miami Township did not maintain or preserve its files, *Gillispie* cannot prove that Moore had the reports and, accordingly, could not destroy them, he is mistaken. The same evidence illustrating Moore suppressed the reports, illustrates Moore's opportunity and ability to destroy them. And, the inference from the fact that Miami Township and Moore cannot account for their entire files, let alone the one as it existed the day Moore obtained it, constitutes circumstantial evidence in Gillispie's *favor. CRS Site RD/RA Grp. v. Chem. Solvents*, 2015 WL 11990926, at *2 (N.D. Ohio Nov. 16, 2015) (denying summary judgment where movant made inferences against the nonmovant based on missing or circumstantial evidence). A reasonable jury could easily conclude that Fritz and Bailey wrote the reports and put them in both the Records and Detective files; that the reports did not magically vanish or get lost; that Moore saw the reports; and that, after writing his own misleading reports, Moore destroyed evidence. These questions are for the jury at trial. *Jackson*, 925 F.3d at 814.

## V. Gillispie's State-Law Claims Must Be Submitted to The Jury

### A. Wolfe's Conspiracy With Moore Precludes Summary Judgment

The same facts described above illustrating Wolfe's federal liability and conspiracy with Moore preclude summary judgment on Gillispie's state-law claims. In Ohio, as in federal law, "the acts of coconspirators are attributable to each other." *Williams v. Aetna Fin. Co.,* 83 Ohio St.3d 464, 475 (1998) (citing PROSSER & KEETON ON TORTS (5 Ed.1984) 323, Section 46)).

### B. Wolfe's Challenges to Gillispie's Malicious Prosecution Claim Fail

Ohio state-law malicious prosecution claims require proof of: (1) malice in instituting or continuing the prosecution; (2) lack of probable cause; and (3) favorable termination of the

prosecution. *Trussle v. Gen. Motors Corp.*, 53 Ohio St. 3d 142, 559 N.E.2d 732, 735 (Ohio 1990). Summary judgment cannot be granted on any of these elements.

*First*, as it concerns "instituting or continuing prosecution" prong, "[in order to charge a private person with the responsibility for the initiation of proceedings by a public official," evidence must indicate Wolfe's "desire to have the proceedings initiated expressed by direction, request, or pressure of any kind was the determining factor in the official's decision to commence the prosecution. *Archer v. Cachat*, 165 Ohio St. 286, 288, 135 N.E.2d 404, 406 (1956). "The test of liability in such an action is: Was defendant actively instrumental in putting the law in force? To sustain the action, it must affirmatively appear as a part of the case of the party demanding damages that the party sought to be charged was the proximate and efficient cause of maliciously putting the law in motion." *Siegel v. The O.M. Scott & Sons Co.,* 56 N.W.2d 345, 347 (Ohio Ct. App. 1943).

Wolfe's assertion that he was a "mere informer" is belied by the record. Without Wolfe's efforts *no* prosecution of Gillispie would have ever occurred. Wolfe presented the issue to MTPD initially and before Moore was involved; during Moore's assignment, though he knew Gillispie had been excluded; and after Gillispie was arrested. SOF ¶¶9-12, 16-24. A pseudo-partner to Moore, Wolfe was "actively instrumental in putting the law in motion." *Siegel*, 56 N.W.2d at 347.

Malice under Ohio law for present purposes means "the state of mind under which a person intentionally does a wrongful act without a reasonable lawful excuse and with the intent to inflict injury or under circumstances from which the law will infer an evil intent." *Arnold v. Hurwitz*, 2018 WL 3732384, at *4 (N.D. Ohio Aug. 6, 2018) (citation omitted). Malice entails "an improper purpose, or any purpose other than the legitimate interest of bringing an offender to justice." *Id.*

At a minimum, there is deeply disputed issue of material fact about what Wolfe's motivations were. Extensive record evidence—*e.g.*, from Gillispie, Fritz, Bailey, Robert Kepperling, Estill Holbrook, and Macy Gray—would easily enable a jury to find that, despite his protestations

17

otherwise, Wolfe had it out for Gillispie and used his connections with the MTPD to turn a workplace grudge into a criminal case for which Gillispie spend more than 20 years wrongfully imprisoned. *See generally* SOF¶¶7-12, 26-34. Wolfe interprets the evidence differently. And, that is the point: "The existence of malice" is a "question[] of fact which should be determined by the jury where the evidence submitted is susceptible to different inferences by reasonable minds." *Prince v. City of Shaker Heights*, No. 54397, 1989 WL 43393, at *3 (Ohio Ct. App. Apr. 20, 1989) (citation omitted). Wolfe cannot obtain summary judgment.

*Second*, Wolfe has misapplied Ohio law concerning probable cause in this context. On one hand, Wolfe is correct that the authorities he cites provide that under Ohio law, "a finding of guilty of a criminal offense . . . even though later and finally reversed by a reviewing court, raises a conclusive presumption of probable cause and constitutes a complete defense in a later action for malicious prosecution." *Selective Ins. Co. of the Se. v. RLI Ins. Co.*, 706 F. App'x 260, 266 (6th Cir. 2017) (citing *Vesey v. Connally*, 175 N.E.2d 876, 878 (Ohio App. 1960), and *Tilberry v. McIntyre*, 733 N.E.2d 636, 641 (Ohio App. 1999)). On the other hand, Wolfe misleadingly neglected the very next two sentences in *Selective Insurance*, which he cited. Those provide: "This presumption can be rebutted, but only by 'fraud or unlawful means in securing a conviction.' A *Brady* violation such as the one alleged here can constitute such 'fraud or unlawful means.'" *Id.* (quoting, respectively, *Vesey*, 175 N.E.2d at 878, and *Harris v. Bornhorst*, 513 F.3d 503, 520 (6th Cir. 2008). Accordingly, at summary judgment, the court must examine the record "to determine whether" plaintiff's "convictions were secured by fraud or unlawful means." *Courtney v. Rice*, 46 Ohio App. 3d 133, 136 (1988).

Here, properly construed, the record illustrates that Gillispie's conviction was procured through "fraud or unlawful means," as one court overturned his conviction on the basis of a *Brady* violation, SOF¶ 36. Thus, only a rebuttable presumption applies, and the *Brady* violation itself rebuts the presumption of probable cause. *Id.*; *see also, e.g., Harris v. Bornhorst*, 513 F.3d 503, 521 (6th Cir.

18

2008) (*Brady* violation constitutes fraud that can rebut the presumption of probable cause); *Elkins v. Summit Cty., Ohio*, 2009 WL 1150114, at *11 (N.D. Ohio Apr. 28, 2009) (finding *Brady* violation constituted fraud that rebuts the presumption and further rebutted presumption under Ohio law). On this basis alone, summary judgment can be denied on this issue.

Assuming *arguendo* reference to other evidence was relevant, Wolfe's argument still fails, given that the evidence to support probable cause was fabricated. SOF¶¶22-25. *See Manuel v. City of Joliet*, 137 S. Ct. 911, 919-20 (2017) (holding that probable cause cannot be based upon fabricated evidence); *Jackson v. City of Cleveland*, 925 F.3d 793, 821 (6th Cir. 2019) (summary judgment improper where evidence illustrated evidence, including eyewitness identification, was fabricated).

Finally, the "existence of probable cause is often a question for a fact-finder." *Selective Insurance*, 706 F. App'x at 266 (citing *Crockett v. Cumberland Coll.*, 316 F.3d 571, 581 (6th Cir. 2003)); *see also Waller v. Foxx*, 1982 WL 4753, at *1 (Ohio Ct. App. Oct. 6, 1982) ("Under the law of Ohio the issue of probable cause is a question of fact for the jury to decide."). That is the case here.

*Third*, Gillispie's conviction was absolutely terminated in is favor: the charges were dismissed with prejudice after one court found a *Brady* violation and another court found that evidence of an alternative perpetrator warranted vacating the conviction as well. SOF ¶¶36-38. That is more than sufficient to constitute favorable termination. *Wheatt v. City of E. Cleveland*, 2017 WL 3174285, at *6 (N.D. Ohio July 26, 2017); *Ayers v. City of Cleveland*, 2013 WL 775359, at *10 (N.D. Ohio Feb. 25, 2013).

Wolfe has argued that there is no favorable termination here because the charges against Gillispie were based on a "perceived *Brady* violation." Doc.171, PAGEID#3870. This argument fails to accept the facts as they exist, let alone take them in the light most favorable to Gillispie. His conviction was overturned on the basis of a *finding*—under an exceptionally demanding standard—that Gillispie's due process rights have been violated.

19

Moreover, the sole case Wolfe cites, *Day v. DeLong*, 358 F. Supp. 3d 687, 707 (S.D. Ohio 2019), is not to the contrary. There, this Court found that the dismissal of charges against that plaintiff was "upon a determination that a new trial date would not comply with Plaintiff's speedy trial rights." *Id.* This is a far cry from what happened here.[6] At absolute minimum, there is a disputed issue of material fact here, precluding summary judgment.

### C. Wolfe Can Be Liable for Inflicting Emotional Distress on Gillispie

As explained above, Wolfe set out on a mission to obtain the wrongful prosecution and conviction of Gillispie, all over disdain he had for him as a former employee. Under Ohio law, Wolfe must have: (1) intended, knew, or should have known his actions would result in emotional distress; and (2) engaged in outrageous and extreme conduct intolerable in a civilized community; that (3) was a proximate cause of the injury; and (4) was of a nature no reasonable person could be expected to endure it. *Talley v. Family Dollar Stores of Ohio, Inc.,* 542 F.3d 1099, 1110 (6th Cir.2008).

There is no question that taking affirmative and intentional efforts, as Wolfe did, to cause Gillispie's wrongful conviction satisfies these standards; *i.e.*, that "that presentment of the facts, as alleged by [Gillispie], would be shocking and outrageous to average members of the community." *Ayers v. City of Cleveland*, 2013 WL 775359, at *15 (N.D. Ohio Feb. 25, 2013). Other courts have reached the same conclusion in analogous situations. *E.g. O'Donnell v. Yezzo*, 2018 WL 6169283, at *10 (N.D. Ohio Nov. 26, 2018); *LeFever v. Ferguson*, 2013 WL 3742530, at *15 (S.D. Ohio July 15, 2013), *rev'd in part on other grounds*, 567 F. App'x 426 (6th Cir. 2014). This Court should reach the same conclusion and find that Wolfe may be liable for seeking Gillispie's wrongful conviction.

### CONCLUSION

Defendant Richard Wolfe's Motion for Summary Judgment should respectfully be denied.

---

[6]It is notable the Ohio Legislature considers a *Brady* violation such a favorable determination that the wrongful conviction statute was recently amended specifically to include Gillispie and others wrongfully convicted on account of a *Brady* violation. *See* O.R.C. § 2743.48(5).

RESPECTFULLY SUBMITTED,

_____
*One of Plaintiff's Attorneys*

Mike Kanovitz
David B. Owens
Omavi Shukur
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
(312) 243-5900

Michele L. Berry (0018939)
THE LAW OFFICE OF MICHELE BERRY, LLC
114 East 8th Street
Cincinnati, OH 45202
Tel: 513.919.5315
Fax: 513.376.8752
mberry@mberrylaw.com

## CERTIFICATE OF SERVICE

I, David B. Owens, an attorney, certify that I caused the foregoing Response to be filed on the Court's electronic filing system thereby effecting service on all counsel of record on July 25, 2019.

_____

1