UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ROGER DEAN GILLISPIE, | ) | CASE NO.:  3:13-CV-416 |
| | ) | |
| Plaintiff, | ) | JUDGE:  THOMAS M. ROSE |
| | ) | |
| vs. | ) | **DEFENDANT MATTHEW SCOTT** |
| | ) | **MOORE'S MOTION FOR SUMMARY** |
| THE CITY OF MIAMI TOWNSHIP, et al., | ) | **JUDGMENT** |
| | ) | |
| | ) | |
| Defendants | ) | |

Defendant Matthew Scott Moore respectfully requests that this Honorable Court grant him summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  There are no genuine issues of material fact and each of the Plaintiff's claims fail as a matter of law.  A memorandum in support of this Motion follows.

Respectfully submitted,

MAZANEC, RASKIN & RYDER CO., L.P.A.

*s/Cara M. Wright*
TODD M. RASKIN  (0003625)
JEFFREY T. KAY  (0069371)
CARA M. WRIGHT  (0084583)
100 Franklin's Row
34305 Solon Road
Cleveland, OH  44139
(440) 248-7906
(440) 248-8861 – Fax
Email:   traskin@mrrlaw.com
jkay@mrrlaw.com
cwright@mrrlaw.com

Counsel for Defendant Matthew Scott Moore

## TABLE OF CONTENTS AND SUMMARY OF THE ARGUMENT

I.     STATEMENT OF THE CLAIMS ..........................................................................1

II.    STATEMENT OF THE FACTS ...........................................................................1

      A.     Matthew Scott Moore becomes a police officer. .......................................1

      B.     Two women are raped and the rapes are initially investigated by Det. Gary Bailey and Sgt. Steven Fritz........................................................................2

      C.     Det. Moore is assigned the investigation. .................................................4

      D.     All evidence is provided to Plaintiff's defense attorney. ..........................7

      E.     Plaintiff is twice convicted of the crimes.................................................9

III.    LAW AND ARGUMENT ..................................................................................10

      A.     Plaintiff's federal law claims fail as a matter of law. .............................10

            1.     There is no evidence that would support Plaintiff's claim that Det. Moore suppressed any evidence. ........................................... 10

Pursuant to *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of good faith or bad faith of the prosecution. A police officer fulfills his *Brady* obligations as long as he informs the prosecutor about evidence that undermines the state's preferred theory of the crime. *D'Ambrosio v. Marino*, 747 F.3d. 378, 389 (6th Cir. 2014). In this case the undisputed evidence establishes that Prosecutor Folfas was aware that Fritz and Bailey had eliminated Gillispie as a suspect. There is no evidence that Det. Moore ever saw, possessed or suppressed any written reports authored by either Fritz or Bailey.

            2.     Plaintiff's claim that his constitutional rights were violated by the creation of a suggestive identification fails as a matter of law. ................ 11

"An unduly suggestive identification does not, in and of itself, violate constitutional rights." *Gregory v. City of Louisville*, 444 F.3d 725, 747 (6th Cir. 2006). As a result, this claim does not stand on its own. Even assuming such a claim exists, Plaintiff has failed to prove that the lineup was unduly suggestive such that his due process rights were violated. To prove such a violation, the court first evaluates whether the identification procedures were unduly suggestive. Second, if the identification procedures are found to be unduly suggestive, the court evaluates whether, under the totality of the circumstances, the identification was reliable even though the procedure was suggestive. *Manson v. Brathwaite*, 432 U.S. 98 (1977). The procedures used were not unduly suggestive and even if they were the identification was nonetheless reliable.

            3.     There is no evidence that Det. Moore fabricated any evidence that was used against Plaintiff during either of his trials. ............................... 15

A person's constitutional rights are violated when evidence is knowingly fabricated and a reasonable likelihood exists that the false evidence would have affected the decision of the jury. *Gregory v. City of Louisville*, 444 F.3d 725, 737 (6th Cir. 2006). There is no evidence in this case that Det. Moore fabricated any evidence. This claim fails as a matter of law.

4.      There is no evidence that Plaintiff was maliciously prosecuted. .............. 16

To succeed on a Fourth Amendment malicious prosecution claim, the Plaintiff must prove a lack of probable cause. *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010). Plaintiff in this case was indicted by the grand jury. In general, an indictment conclusively determines that a prosecution is supported by probable cause. *Burgess v. Bowers*, 773 Fed.Appx. 238, FN3 (6th Cir. 2019). The exception that permits a plaintiff to rebut the presumption of probable cause established in *King v. Harwood*, 852 F.3d 568, 587 (6th Cir. 2017) does not apply. Summary judgment should be granted.

5.      There is no evidence that Det. Moore destroyed any exculpatory evidence. ................................................................................................ 18

To prevail upon a due process claim based upon destruction of exculpatory evidence, the Plaintiff must prove: 1) Det. Moore acted in bad faith in failing to preserve the evidence, 2) the exculpatory value of the evidence was apparent before its destruction and 3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other means. *Arizona v. Youngblood,* 488 U.S. 51, 56 (1988). There is no evidence that Det. Moore destroyed any evidence in this case. Summary judgment should be granted.

6.      Det. Moore is qualifiedly immune from the Plaintiff's federal claims. ................................................................................................ 19

Qualified immunity shields federal and state officials from liability unless the plaintiff can prove 1) that the official violated a statutory or constitutional right and 2) that the right was 'clearly established' at the time of the challenged conduct. *Pearson v. Callahan*, 555 U.S. 223 (2009). The undisputed evidence in this case establishes that Det. Moore did not violate the Plaintiff's constitutional rights and, even if he did, the contours of that right was not sufficiently established in 1988 that a reasonable official would have understood that Det. Moore's conduct violated the Plaintiff's rights. Summary judgment should be granted.

B.    Plaintiff's state law claims fail as a matter of law. ................................................20

1.      Det. Moore is immune from Plaintiff's state law claims. .......................... 21

Employees of political subdivisions are generally immune from tort liability pursuant to R.C. § 2744.03(A)(6). None of the exception to immunity apply in this case and Det. Moore should be found to be immune from the Plaintiff's state tort claims.

2.      Summary judgment should be granted as to Plaintiff's malicious prosecution claim. ................................................................................... 22

Just like in the Fourth Amendment malicious prosecution claim, under Ohio law the return of an

indictment by the grand jury is prima facie evidence of probable cause. *Anderson v. Eyman*, 907 N.E.2d 730, 738, 180 Ohio App. 3d 794, 804 (5th Dist., 2009). Once an indictment has been returned by a grand jury, the plaintiff in a malicious prosecution has the burden of producing substantial evidence to establish lack of probable cause. In order words, a plaintiff "must produce evidence to the effect that the return of the indictment resulted from perjured testimony or that the grand jury proceedings were otherwise significantly irregular. *Id.* Plaintiff cannot meet this burden and summary judgment should be granted.

3. Summary judgment should be granted as to Plaintiff's IIED claim.......... 23

A defendant can only be held liable for intentional infliction of emotional distress when the conduct at issue is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yeager v. Local Union 20 Teamsters*, 6 Ohio St.3d 369, 374 (1983) (overruled on unrelated grounds). Det. Moore's conduct in this case while investigating the crimes was neither extreme nor outrageous. Summary judgment should issue.

4. Summary judgment should be granted as Plaintiff's spoliation claim. ................................................................................................................ 24

To prevail on a claim for tortious interference with evidence, the Plaintiff must prove: 1) pending or probable litigation involving the plaintiff, 2) knowledge on the part of the defendant that litigation exists or is probable, 3) willful destruction of evidence by defendant intended to disrupt the plaintiff's case, 4) disruption of the plaintiff's case, 5) damages proximately caused by the defendant's act. *Id.* As with the due process fabrication of evidence claim, there is no evidence that Det. Moore willfully destroyed any evidence. Summary judgment should be granted.

IV. CONCLUSION ................................................................................................................26

<u>**MEMORANDUM IN SUPPORT**</u>

## I.     STATEMENT OF THE CLAIMS

This case arises from the investigation and prosecution of Plaintiff Roger Dean Gillispie for crimes that occurred in 1988.  Specifically, Plaintiff was twice tried and twice convicted of 9 counts of rape, 3 counts of kidnapping, 3 counts of gross sexual imposition and 1 count of aggravated robbery.  He was subsequently released on a writ of habeas corpus and separately was granted a new trial based upon newly discovered evidence.  Plaintiff admits, however, that he has never been found to be actually innocent of these crimes.  Gillispie Depo., Doc. 168, PageID 3230.

Plaintiff has now filed suit against, among others, Detective Matthew Scott Moore. Plaintiff's Amended Complaint asserts nine causes of action:

1) A violation of his due process rights for suppression of exculpatory material;
2) A violation of his due process rights for suggestive identification;
3) A violation of his due process rights for fabrication of evidence;
4) A violation of his Fourth Amendment right to be free from malicious prosecution;
5) A violation of his due process rights for destruction of exculpatory evidence;
6) State law malicious prosecution;
7) State law intentional infliction of emotional distress;
8) State law spoliation of evidence; and
9) State law indemnification.[1]

Each of these claims fail as a matter of law and should be dismissed with prejudice.

## II.     STATEMENT OF THE FACTS

### A.     Matthew Scott Moore becomes a police officer.

Matthew Scott Moore became a police officer to help and protect people.  Moore Depo., Doc. 170, p 3405.  Being a law enforcement officer was in his blood.  His father was also a police officer who had rose up the ranks of the Miami Township Police Department and ultimately became the Miami Township Chief of Police.  *Id.*

---

[1] This claim is not asserted against Det. Moore.

1

Det. Moore began his career working security for JCPenney and the Dayton Mall. Moore Depo., Doc. 170, PageID 3416. He was then hired as a reserve police officer with the Miami Township Police Department in 1985. Moore Depo., Doc. 170, PageID 3403. He served as a reserve officer for three or four months and then was hired as a full-time patrol officer. As both a reserve officer and a full-time patrol officer he would respond to calls for service. *Id.*

Det. Moore was assigned to the detective section on November 5, 1989. Bailey Depo., Doc 222-6, PageId 5028. Throughout the course of his career he was a well-respected and professional officer. Indeed, his supervisor Steven Fritz authored a commendation where he described Det. Moore as "conducting himself in his investigation in a highly professional miner in keeping with the high standards set by the law enforcement profession in the Miami Township Police Department." Fritz Depo., Doc. 221, PageID 4464, 4621.

**B.** **Two women are raped and the rapes are initially investigated by Det. Gary Bailey and Sgt. Steven Fritz.**

On August 20, 1988 twin sisters Bonnie Wise (n/k/a Tomanelli) and Connie Wise (n/k/a Strozensky) were abducted from the parking of the Best Products store at gunpoint. Strozensky Depo. Ex. 2, Doc. 219-2 Page ID 4269. Their abductor forced Bonnie to drive away from the shopping center and into the woods, where he forced them to perform oral sex on him. *Id.* at PageID 4269-4272. Miami Township Patrolman Robert Burling was the officer that took the initial report regarding the incident. Moore Depo., Doc. 170, PageID 3445.

Det. Sgt. Steven Fritz was the supervisor of the detective bureau at the time that the twins were kidnapped and raped. Fritz Depo., Doc. 221, PageID 4357. Sgt. Fritz did not personally undertake any investigation into the kidnappings and rapes. Fritz Depo., Page ID 4362. Instead, he assigned the investigation to Det. Gary Bailey. *Id.* at 4385.

Det. Bailey interviewed the victims two days later, on August 22, 1988. Bailey Depo.,

Doc. 222, PageID 4790. The victims told Det. Bailey that the perpetrator had identified himself as having the first name Roger and provided a physical description of their assailant. *Id.* at 4792-4794. The two women also completed statements detailing their abduction and rape and providing a detailed description of the perpetrator. Strozensky Depo., Doc. 219-2, PageID 4269-4282; Tomanelli Depo.Doc. 228, PageID 5641[2].

In approximately mid to late 1989 a GM employee named Rick Wolfe presented at the police station, with a photograph of Plaintiff. Mr. Wolfe identified Plaintiff as a potential suspect in the rapes. Fritz Depo., Doc. 221, PageID 4373. Bailey Depo., Doc. 222, PageID 4798. Miami Township Police Chief Tom Angel ordered Sgt. Fritz to investigate Mr. Wolfe's tip. Fritz Depo., Doc. 221, PageID 4384. Instead of personally investigating this tip, Sgt. Fritz assigned the investigation to Det. Bailey. *Id.* at 4385.

Det. Bailey, in turn, did nothing to investigate this tip either. He acknowledges that he never interviewed Plaintiff. Doc. 222, PageID 4793. He could not recall comparing the physical description that the victims gave to him to the physical description of Plaintiff. Indeed, at deposition he could not remember undertaking any investigation at all before deciding the Plaintiff was not the perpetrator. *Id.* at 4785-4786. Instead of actually investigating the tip, Det. Bailey testified that he eliminated the Plaintiff as a suspect because, in his opinion, the composite sketch of the suspect did not match the Plaintiff and the victims described a pants size that could not have fit the Plaintiff. *Id.* at 4798. The victims however, have testified that they never observed the pant size of the person that assaulted them. Strozensky Depo., Doc. 219, PageID 4237. Tomanelli Depo., Doc. 228, PageID 5679. Det. Bailey claims that he prepared a supplemental report that

---

[2] Plaintiff previously filed the transcript of the deposition of Bonnie Tomanelli, but the filing did not include the exhibits utilized in her deposition. Exhibit 33 to her deposition was her written statement. The written statement is attached to this Motion as Ex. A.

would contain the pant size that the victims reported and indicate his decision to eliminate Plaintiff as a suspect.  Bailey Depo. PageID 4805-4806.

At this point in time, reports were prepared on carbon paper.  The report would be provided to the supervisor, who reviews the supplemental report, then takes the original report to the central records clerk who would file the report in the original file, and put a duplicate copy would be placed in the detective file.  Fritz Depo., Doc. 221, PageID 4382; Bailey Depo., Doc. 222, PageID 32.  Utilizing this system, records and documents were frequently misfiled.  *Id.* at 4429.  Neither Fritz nor Bailey, nor any other witnesses testified that they placed the report in the physical file.  Bailey Depo., Doc. 222, PageID 4804.  Similarly, neither Fritz nor Bailey could testify that the report was ever placed in the file at central records or that anyone had seen the report other than the two of them.  Bailey Depo., Doc. 222, PageID 4806; Fritz Depo., Doc. 221, PageID 4544-45.

Det. Bailey inactivated the file and the case went cold.  Fritz Depo., Doc. 221, PageID 4377-4378; Bailey Depo., Doc. 222, PageID 4812.   Det. Bailey was then reassigned to patrol and left the detective bureau on November 5, 1989, the same date Det. Moore was assigned to the detective bureau.  Det. Bailey admits that he did not have any discussions with Det. Moore regarding the case, or the documents contained within the file.  *Id.*  He further admits that he cannot describe the contents of the working file in the detective bureau at the time that Det. Moore was assigned to investigate the rapes or that the report regarding the elimination of Plaintiff as a suspect was in the file at the time that Det. Moore received the file.  *Id.* at 4810.

**C.    Det. Moore is assigned the investigation.**

Sgt. Fritz left the Miami Township Police Department in June 1990.  Fritz Depo., Doc. 221, PageID 4362.  Shortly before Sgt. Fritz left the department, Mr. Wolfe returned with an envelope of photographs claiming to have additional information regarding the Plaintiff being a

suspect in the rapes. *Id.* at 4374. Sgt. Fritz told Mr. Wolfe that he was leaving the department, but that the case would be reassigned. *Id.*

On June 18, 1990 Det. Moore was assigned to work on the investigation of the Best Products rapes. Moore Depo., Doc. 170, PageID 3545. He received and reviewed the investigation file as it was provided to him. *Id.* at PageID 3591. The supplemental reports claimed to have been authored by Sgt. Fritz and Det. Bailey were not contained within the file that was provide to Det. Moore. *Id.* at PageID 3397. <u>This fact is undisputed.</u> Det. Bailey has no facts or evidence that Det. Moore removed any reports from the files pertaining to the rapes or falsified any part of his investigation. PageID 4814. He has no knowledge that Det. Moore took the original file of the rape case out of the records section of the department, or the detective file out of the detective section. PageID 4924. He has no evidence Det. Moore failed to carry out his duties and responsibilities under federal and state law. In fact, Det. Bailey is not aware of any misconduct engaged in by Det. Moore. PageID 4837.

As stated previously, reports, records and documents were frequently misfiled during this time period. Fritz Depo, Page ID 4429-4430. Sgt. Fritz agrees that if the reports were misfiled, Det. Moore would never have seem them or known that they existed. *Id.* at PageID 4431. Sgt. Fritz does not know if anyone saw the reports other than him and Det. Bailey. *Id.* at Page ID 4517|. There is simply no evidence that Det. Moore ever saw or possessed these reports.

Instead, Det. Moore had been told that a new lead had come in that Plaintiff could be a suspect in the crime. Moore Depo., Doc. 170, PageID 3594. Unlike Det. Bailey, Det. Moore immediately began investigating this lead. Det. Moore detailed his investigatory actions in his supplemental report. Doc. 170-3, PageID 3804-3821. Det. Moore confirmed that Plaintiff was not working on the date that the kidnappings and rapes occurred. *Id.*at 3805. Det. Moore contacted

the Plaintiff via telephone and asked Plaintiff to come to the police department. Moore Depo., Doc. 170, PageID 3599, Gillispie Depo., Doc. 168, PageID 3169. Plaintiff hung up on Det. Moore. *Id.* at 3601. Det. Moore made repeated attempts to contact Plaintiff for an interview, but was unsuccessful. *Id.* at PageID 3806-3808.

Det. Moore prepared a photo line-up for the victims to view to see if they would identify the Plaintiff as the man who had kidnapped and raped them. Det. Moore worked diligently to select photographs of six individuals that matched the physical description given by the women. Moore Depo., Doc. 170, PageID 3529. He took precautions to ensure that the process was fair and secure. When the first victim, Connie, came in, he showed her the photo lineup and read the photographic lineup instruction to her. *Id.* PageID 3822. After she made her identification, he made a copy of the photo lineup, had her circle, time and date the photo. He specifically did not tell her whether she had identified the suspect. *Id.* PageID 3535.

Bonnie came in the next day. *Id.* at 3534. He went through the same process of reading her the instructions, showing her the lineup and documenting her identification. However, because he had concerns that she may have spoken with her sister, Det. Moore moved the photographs into a different order. *Id.* at 3535. Bonnie also identified Plaintiff as the perpetrator.

Det. Moore became aware of a third woman, Sandra Clark, who had reported another rape that occurred under similar circumstances in August 1988. Sandra was similarly abducted at gunpoint and forced to perform oral sex on a person that identified himself as being in security, identified himself as Roger and had a similar build to the perpetrator that Bonnie and Connie had described. Moore Depo., Doc. 170, PageID 3574. Det. Moore contacted Sandra in an effort to bolster his investigation into the Best Products case. *Id.* at 3557. He then investigated Sandra's rape and ultimately showed Sandra a photograph line-up containing the Plaintiff's photo. As

6

before, Det. Moore re-arranged the order of the photographs within the line-up shown to Sandra and read the required instructions to Sandra before showing her the line-up. *Id.* at 3535. Sandra also identified Plaintiff as the man who had kidnapped and raped her. *Id.* at 3562.

Bonnie testified that she knew that Plaintiff was the perpetrator the minute she saw him. Tomanelli Depo. p. 5651, 5664. There is no doubt in her mind that she correctly identified Plaintiff as the perpetrator in the photo line-up and at the criminal trials. Tomanelli Depo., Doc. 228, PageId 5681. Connie similarly testified that she was 100% sure that Plaintiff was the perpetrator as soon as she saw the picture. Strozensky Depo., Doc. 219, PageID 4220. Sandra testified that she "couldn't believe [Det. Moore] brought the picture of the man who did this out there." Clark Depo., Doc. 220, PageID 4308. Sandra was similarly confident that she had identified the correct man. *Id.* at PageID 4310.

Plaintiff did present at the police station for an interview on August 8, 1990. Moore Depo., Doc. 170, 3599. Gillispie Depo. Doc. 168, PageID 3170. Det. Moore read Plaintiff his *Miranda* rights and Plaintiff acknowledged understanding his rights. *Id.* at 3605. Plaintiff denied any involvement in the rapes during his interview. Moore Depo., Doc. 170, PageID 3607. Ultimately, Det. Moore obtained an arrest warrant and arrested Plaintiff. Gillispie Depo., Doc. 168, PageID 3173. Plaintiff was then indicted on 18 criminal counts. Ex. B, Indictment.

### D. All evidence is provided to Plaintiff's defense attorney.

In the early 1990s the Montgomery County Prosecutor's Office had an open discovery rule. Folfas Depo., Doc. 252, PageID 7268. Pursuant to that rule, any reports provided to the prosecutor's office, including supplemental reports, were turned over to defense counsel. *Id.*

Det. Moore understood his obligation to produce all evidence- both exculpatory and inculpatory- to the prosecutor who, in turn would produce the evidence to defense counsel. Moore

Depo., Doc. 170, PageID 3718. In this case, Det. Moore prepared copies of the police file, including all supplemental reports, for both the prosecution and the defense. Moore Depo., Doc. No. 170, PageID 3400. Everything in the police file was turned over to the prosecution and, in turn, provided to the defense. *Id* at 3402, 3591; *see also* Folfas Depo., Doc. 252, PageID 7275.

During the first meeting between Mr. Folfas and Det. Moore, Det. Moore told Mr. Folfas that Fritz and Bailey had previously eliminated Gillispie as a suspect. *Id.* at 7358. Prior to the first trial, Plaintiff's defense attorney, Dennis Lieberman, had a conversation with Prosecutor Paul Folfas and told him that Fritz and Bailey had previously investigated Plaintiff and determined that he was not a viable suspect. *Id.* at 7287-7292. Lieberman made a request for a copy of the reports authored by Fritz and Bailey to that effect. Mr. Folfas inquired about the reports to Det. Moore, who in turn searched for the reports and indicated that there were no such reports. *Id.* at 127. In addition, Fritz and Bailey both contacted Folfas and told him that they believed he had the wrong guy because they had eliminated Plaintiff as a suspect. *Id.* at p. 64. Folfas's testimony clearly establishes that he, as the prosecutor responsible for prosecuting the Plaintiff's case, was aware of the fact that Fritz and Bailey had eliminated Plaintiff as a suspect in the Best Products rape case.

There is no evidence that Det. Moore removed or destroyed anything that was in the file. Moore Depo, Doc. 170, PageID 3591. Plaintiff does not have any evidence to dispute that Moore reviewed all of the evidence and did not find any reports authored by Fritz or Bailey regarding Plaintiff being eliminated as a suspect. Gillispie Depo., doc. 168, PageID 3261. Furthermore, neither Fritz nor Bailey can dispute this fact either. Bailey admits that he cannot testify as to whether the report was in the working file or the file in central records at the time that the case was assigned to Det. Moore. Bailey Depo., PageID 4810-4811.

Plaintiff has no knowledge of any evidence that was fabricated to be used against him in

8

the criminal prosecution. Gillispie Depo., Doc. 168, PageID 3198. Plaintiff concedes that he did

not know Moore prior to this investigation. Gillispie Depo., Doc. 168, PageID 3263. He knows

of no reason Moore would have any ill will or bad feelings toward him. *Id.* at 3264.

      **E.**    **Plaintiff is twice convicted of the crimes.**

A criminal trial commenced in February 1991. Plaintiff was convicted of 9 charges of

rape, 3 charges of kidnapping, 3 charges of gross sexual imposition and 1 charge of aggravated

robbery. Gillispie Depo, Doc. 168, PageID 3254, *See also Ex. C, Verdict Forms*. During that trial

the Plaintiff challenged the witness identifications. A suppression hearing was held and the trial

court found that the identifications were admissible. *See Ex. D., Judgment Entry Denying Motion

to Suppress.* A new trial was held due to lab reports that indicated that hair found on the victims'

clothes did not match Plaintiff had not been produced prior to the original trial. Gillispie Depo.

Doc 168, PageID 3255. This evidence was presented to the jury in a second trial and, despite this

evidence, Plaintiff was again convicted. *Id.* at PageID 3256, *see also Ex. C, Verdict Forms*.

Plaintiff continued to maintain his innocence of the crimes after his conviction, ultimately filing a

petition for a writ of habeas corpus.

In 2011, Plaintiff's writ of habeas corpus was granted. *Gillispie v. Timmerman-Cooper*,

835 F.Supp. 2d 482, 487 (S.D.Ohio 2001). Tellingly the state called neither Det. Moore nor

Prosecutor Folfas to testify at the hearing. Folfas Depo., Doc 252, PageID 7243. Accordingly,

the district court judge never heard testimony from Mr. Folfas that he had knowledge that Fritz

and Bailey had eliminated Gillispie as a suspect, or that Moore had looked for and could not find

any written reports to that effect.

The indictment was subsequently dismissed with prejudice. Plaintiff, however, has never

been found to be actually innocent of the crimes that he was charged and twice convicted of

committing. Gillispie Depo., Doc. 168, PageID 3230. To this day the victims, Det. Moore and Prosecuting Attorney Paul Folfas all continue to believe that Plaintiff is the perpetrator and that the evidence produced in this case establishes the Plaintiff's guilt beyond a reasonable doubt. Strozensky Depo., Doc. 219, PageID 4239; Clark Depo., Doc. 220, PageID 4324; Tomanelli Depo., Doc. 228, PageID 5680, 5682; Moore Depo., Doc. 170, PageID 3459; Folfas Depo., Doc. 252, PageID 7312.

## III. LAW AND ARGUMENT

### A. Plaintiff's federal law claims fail as a matter of law.

#### 1. There is no evidence that would support Plaintiff's claim that Det. Moore suppressed any evidence.

The Due Process Clause of the Fourteenth Amendment provide that "no state may deprive any person of life, liberty or property, without due process of law…" Pursuant to *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of good faith or bad faith of the prosecution. The purpose of the *Brady* rule is to ensure that a miscarriage of justice does not occur. *U.S. v. Bagley*, 473 U.S. 667, 675 (1985). Thus, the prosecutor is not required to deliver his entire file to the defense, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial. *Id.*

Prosecutors are not the only state actors bound by *Brady*. Police officers have a concomitant or derivative duty to turn potentially exculpatory material over to the prosecutor. *Moldowan v. City of Warren*, 578 F.3d 351, 379 (6th Cir. 2009). A police officer fulfills his *Brady* obligations as long as they inform the prosecutor about evidence that undermines the state's preferred theory of the crime. *D'Ambrosio v. Marino*, 747 F.3d. 378, 389 (6th Cir. 2014).

Prosecutor Folfas's testimony clearly and unequivocally establishes that Det. Moore informed him that Fritz and Bailey had eliminated Plaintiff as a suspect in this case. Moreover, Prosecutor Folfas's testimony establishes that both Fritz and Bailey also contacted him and provided him information regarding the prior elimination of Plaintiff as a suspect before the first trial. As a result, the undisputed evidence establishes that Prosecutor Folfas was aware of the exculpatory evidence and that Det. Moore satisfied his obligations under *Brady*. This claim fails.

It is anticipated that Plaintiff will assert that a *Brady* violation nonetheless occurred because Det. Moore did not provide the prosecutor with copies of the written reports. However, the undisputed evidence produced in this case establishes that the reports were not in the file when he received it and that he never reviewed, saw or possessed the alleged reports. This claim should also fail. *Brady* requires a police officer to disclose evidence to the prosecutor only when its exculpatory value is "apparent" to the officer. *D'Ambrosio*, 747 F.3d at 390. This requirement is the functional equivalent to a finding that the officer acted in bad faith. *Id.* Here, there is no evidence that the reports were ever in the file provided to Det. Moore. Indeed, Fritz testified that documents, at that time, were frequently misfiled. Neither Fritz nor Bailey could testify that the reports were in the file provided to Det. Moore. Further, the evidence establishes that Det. Moore looked for the reports when requested by Prosecutor Folfas, but could not find them. There is not a scintilla of evidence that Det. Moore withheld those reports in bad faith. This claim fails.

> **2. Plaintiff's claim that his constitutional rights were violated by the creation of a suggestive identification fails as a matter of law.**

Plaintiff claims that his constitutional rights were violated and that he should be permitted to prevail upon a due process claim premised entirely upon his allegation that the photo line-up created by Det. Moore was unduly suggestive. This claim fails as a matter of law. Indeed, the Sixth Circuit has held that "an unduly suggestive identification does not, in and of itself, violate

constitutional rights." *Gregory v. City of Louisville*, 444 F.3d 725, 747 (6th Cir. 2006); *see also Hutsell v. Sayre*, 5 F.3d 996, 1005 (6th Cir. 1993).

Since this decision, courts throughout the Sixth Circuit have held that such a claim does not stand on its own. *See Walden v. Pryor*, No. 5:18-CV-171-TBR, 2019 WL 2441838 (W.D. Ky. June 11, 2019); *Legenzoff v. Steckel*, No. 2:11-CV-11405, 2013 WL 1278527, at \*7 (E.D. Mich. Mar. 27, 2013) ("Nowhere does the court endorse a right to be free from unduly suggestive identification procedures actionable under § 1983 independent of the exclusionary rule."); *Harper v. Bohanan*, No. 3:97-CV-80, 2007 WL 9734415, at \*10 (E.D. Tenn. Feb. 8, 2007) ("[E]ven if the photographic lineups were unnecessarily suggestive, the flawed lineups do not violate a constitutionally protected interest sufficient to merit damages under Section 1983.").

Furthermore, even assuming that suggestive identification did create a cause of action, this claim nonetheless fails because there is no evidence that the photo line-up created by Det. Moore was, in fact, unduly suggestive such that it would implicate the Plaintiff's right to due process.

Within the context of a petition for a writ of habeas corpus the Sixth Circuit applies a two-part inquiry established in *Manson v. Brathwaite*, 432 U.S. 98 (1977) when reviewing whether an out-of-court identification violated a criminal defendant's due process rights. *Wilson v Mitchell*, 250 F.3d 388, 397 (6th Cir. 2001). First, the court evaluates whether the identification procedures were unduly suggestive. Second, if the identification procedures are found to be unduly suggestive, the court evaluates whether, under the totality of the circumstances, the identification was reliable even though the procedure was suggestive. *Id.* When this test is properly applied it is apparent that the Plaintiff's due process rights were not violated. Indeed, this test was already properly applied by both the trial court and the state appellate court and it was determined that the identification did not violate the Plaintiff's constitutional rights. *State v. Gillispie*, 2nd Dist. No.

12941, 1993 WL 10927 (Jan. 21, 1993).

In evaluating the first factor, the court questions whether the procedure itself steered the witness to one suspect or another, independent of the witness honest recollection. *Wilson*, 250 F.3d at 397. There is no evidence that anything that Det. Moore did steered the victims to select Plaintiff as the perpetrator. Instead, Det. Moore testified at length regarding the efforts that he undertook to ensure that the photo line-up that he created was fair and not unduly suggestive. Moore Depo., Doc. 170, PageID 3471-3475; 3527-3538, *See also* Doc. 170-5, PageID 3830. He reviewed years' worth of arrest photos in an effort to find individuals that appeared like and similar to the perpetrator described by the victims. *Id.* He similarly went through a file of Polaroid photos to find other individuals that met the description of the perpetrator. *Id.* at 3480. The photo line-up produced by Det. Moore clearly included six white males, who appeared to be in their early twenties with hair and mustaches, similar to the description provided by the victims. *Id.* at 3830. The photo line-up itself had instructions, which Det. Moore read to each victim and followed. *Id.* at 3822-3829.

The elements of the photo line-up that Plaintiff claims were unduly suggestive have already been rejected. For example, in *U.S. v. McComb*, 249 Fed.Appx. 429, 440 (6th Cir. 2007) the Court held that a differed colored background did not create an impermissible suggestion that the person in that photograph is the offender. Similarly, the fact that the head shots vary in size does not create an impermissible suggestion that the person in a particular photograph is the offender. *Tipton v. Carlton*, 306 Fed.Appx. 213, 219 (6th Cir. 2008); *see also U.S. v. Stevenson*, No. 1:11-cr-00350, 2012 WL 142169 (N.D. Ga. Mar. 7, 2012) (holding that photo line-up in which defendant's photograph showed his head tilted and appearing smaller than the others in the line-up not unduly suggestive and noting that the principal question is "whether the picture of the accused,

13

matching descriptions given by the witness, so stood out from all of the other photographs as to suggest to an identifying witness that the accused was more likely to be the culprit.").

Plaintiff's expert in eyewitness identification testified that Det. Moore did not violate any standard of care in place at the Miami Township Police Department during the course of his investigation. Dysart Depo., Doc. 256, PageID 7701-7703. Moreover, all of the criticisms Plaintiff has of the identification are based upon scientific research that was published after Det. Moore's investigation was completed. Indeed, the National Law Enforcement Policy Center did not create a training key regarding photo line-ups until 1992, *Id.* at PageID 7835, and the Department of Justice did no publish guidelines regarding the photo line-ups until 1999. *Id.* at PageID 2828-7829. Perhaps most importantly, Ms. Dysart cannot testify that any of the three women's identification of the Plaintiff as the perpetrator was influenced by any conduct of Det. Moore. *Id.* at PageID 7993-7994.

Because the procedures utilized in conducting the photo line-up were not unduly suggestive, the inquiry should end and this Honorable Court should conclude that the Plaintiff's due process rights were not violated.

Assuming that the procedures that were used were in fact unduly suggestive- which they were not- this claim still fails because the identification was nonetheless reliable. Courts within the Sixth Circuit consider several factors in evaluating the totality of the circumstances of an identification to determine whether an identification is reliable, including: 1) the witness's opportunity to view the criminal at the time of the crime, 2) the witnesses degree of attention at the time of the crime, 3) the accuracy of the witnesses prior description of the defendant, 4) the witness's level of certainty when identifying the suspect at the confrontation and 5) the length of time that has elapsed between the crime and the confrontation. *United States v. Hill*, 967 F.2d 226,

230 (6th Cir. 1992). When these factors are evaluated in this case, it is clear that each and every victim identification was reliable and that Plaintiff's due process rights were not violated.

In order to establish the second prong of this test, Plaintiff would have to show that each and every identification was inherently unreliable. He cannot do this. All three victims spent an extended amount of time with the perpetrator and had the opportunity to see the perpetrator's face. Strozensky Depo., Doc. 219, PageID 4239; Clark Depo., Doc. 220, PageID 4324. All three victims paid careful attention during their encounter with the perpetrator and provided detailed descriptions of the perpetrator following the encounter. Strozensky Depo., Doc. 219-1, PageID 4267-4282; Clark Depo. Doc. 220, PageID 4297-4298, Tomanelli Depo. Doc. 228, PageID 5644, Ex. 33. All three victims testified that they were certain that they had identified the correct person. Strozensky Depo., Doc. 219, PageID 4220; Clark Depo. Doc. 220, PageID 4311; Tomanelli Depo., Doc. 228, Page ID 5662, 5665.

When the factors are applied, it is clear that, regardless of whether any unduly suggestive procedures occurred, the victims' identification of Plaintiff as the perpetrator was nonetheless reliable under the totality of the circumstances. This is exactly what the trial court and the appellate court determined when they decided this issue.

As a result, any claim premised upon an unduly suggestive identification fails as a matter of law and should be rejected.

### 3. There is no evidence that Det. Moore fabricated any evidence that was used against Plaintiff during either of his trials.

The Sixth Circuit has held that a person's constitutional rights are violated when evidence is knowingly fabricated and a reasonable likelihood exists that the false evidence would have affected the decision of the jury. *Gregory v. City of Louisville*, 444 F.3d 725, 737 (6th Cir. 2006). To prevail on such a claim, the plaintiff must prove: 1) a fabrication of evidence occurred and 2)

the defendant was aware of the fabrication. Even then, not all cases of fabrication of evidence are actionable. If the fabricated evidence does not affect a jury's decision, a plaintiff cannot prevail. *Williams v. Lucas*, Case No. 1:10cv615, 2011 WL 4632883 (N.D. Ohio, Sept. 30, 2011), *citing Richardson v. Nasser*, No. 08-12951, 2009 WL 4730446 (E.D. Mich., Dec. 9, 2009).

There is no evidence in this case that would support Plaintiff's contention that Det. Moore fabricated any evidence that was used against Plaintiff during either of his two trials. This claim fails as a matter of law. Summary judgment should be granted.

### 4. There is no evidence that Plaintiff was maliciously prosecuted.

To succeed on a Fourth Amendment malicious prosecution claim the plaintiff must prove: (1) that a criminal prosecution was initiated against the plaintiff; (2) that the defendant made, influenced, or participated in the decision to prosecute; (3) the defendant lacked probable cause for the criminal prosecution; (4) as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure; and (5) the criminal proceeding must have been resolved in the plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010). The Sixth Circuit has routinely recognized that, as a general rule, "the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for a prosecution." *Burgess v. Bowers*, 773 Fed.Appx. 238, FN3 (6th Cir. 2019). Here, there can be no dispute that the Plaintiff was indicted on eighteen criminal charges. Ex. B, Indictment.

The Sixth Circuit has recently created an exception to this general rule. *King v. Harwood*, 852 F.3d 568, 587 (6th Cir. 2017). Under *King,* a plaintiff may rebut the presumption of probable cause established by an indictment if and only if the plaintiff can prove:

> (1) a law-enforcement officer, in the course of setting a prosecution in
> motion, either knowingly or recklessly makes false statements (such

as in affidavits or investigative reports) or falsifies or fabricates
evidence;

(2) the false statements and evidence, together with any concomitant
misleading omissions, are material to the ultimate prosecution of the
plaintiff; and

(3) the false statements, evidence, and omissions do not consist solely of
grand-jury testimony or preparation for that testimony (where
preparation has a meaning broad enough to encompass conspiring to
commit perjury before the grand jury), the presumption that the
grand-jury indictment is evidence of probable cause is rebuttable and
not conclusive.

*King*, 852 F.3d at 587-88.

Plaintiff in this case cannot satisfy even the first element needed in order to attempt to rebut the
presumption of probable cause. There is no evidence that Det. Moore knowingly or recklessly
made any false statements, or that he falsified or fabricated evidence. This claim fails.

Furthermore, the evidence in this case undisputedly establishes that there was probable
cause to arrest and prosecute the Plaintiff based upon the individual identifications by the three
victims. These identifications, standing alone, provide probable cause to prosecute Plaintiff for
the crimes.

The law in the Sixth Circuit is clear that a law enforcement officer is entitled to rely on a
single eyewitness's identification to establish adequate probable cause with which to sustain an
arrest. *Franklin v. Miami University*, 214 Fed. Appx. 509, 511 (6th Cir. 2007), *citing Ahlers v
Schebil*, 188 F.3d 365, 370 (6th Cir. 1999). In this case not one but three woman identified the
Plaintiff as the perpetrator. Furthermore, as described above, the identifications were not unduly
suggestive and, under the totality of the circumstances, the identifications were reliable. The arrest
and prosecution, therefore, clearly was supported by probable cause. This claim fails as a matter
of law and should be dismissed with prejudice.

**5.      There is no evidence that Det. Moore destroyed any exculpatory evidence.**

In *California v. Trombetta,* 467 U.S. 479, 481, 104 S.Ct. 2528, 2530, 81 L.Ed.2d 413 (1984), the Supreme Court held that it was a violation of due process to fail to preserve "material" evidence, meaning evidence that might be expected to play a role in the defense, after it is gathered and in possession of the police when two conditions are met. First, the evidence must "possess an exculpatory value that was apparent before the evidence was destroyed," and second, it "must be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489, 104 S.Ct. at 2534. Moreover, the Supreme Court held that failure to preserve evidence that is *potentially* exculpatory violates due process if the police acted in bad-faith. *Arizona v. Youngblood,* 488 U.S. 51, 58–59, 109 S.Ct. 333, 337–38, 102 L.Ed.2d 281 (1988), *reh'g. denied,* 488 U.S. 1051, 109 S.Ct. 885, 102 L.Ed.2d 1007 (1989).

To prevail upon such a claim, a Plaintiff must establish: 1) Det. Moore acted in bad faith in failing to preserve the evidence, 2) the exculpatory value of the evidence was apparent before its destruction and 3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other means.  *Youngblood*, 488 U.S. at 56.  Plaintiff has set forth two theories as to how Det. Moore allegedly destroyed evidence.  Neither theory is supported by any actual evidence and both must be rejected.

First, Plaintiff contends that Det. Moore destroyed the supplemental reports purportedly authored by Fritz and Bailey eliminating Plaintiff as a suspect.  As indicated above, however, there is no evidence that Det. Moore ever saw these reports and no evidence that he destroyed that evidence.  Summary judgment should be granted.

Second, Plaintiff contends that Det. Moore destroyed records from the campground in Kentucky where Plaintiff claims to have been on the date of the Best Products rapes.  There is

similarly no evidence to support that claim. Det. Moore's undisputed testimony establishes that he was never in Kentucky. Moore Depo., Doc. 170, PageID 3459. There is no evidence that the receipts existed, that they would have been exculpatory or that they were destroyed by Det. Moore. Summary judgment should be granted.

### 6. Det. Moore is qualifiedly immune from the Plaintiff's federal claims.

Government officials, like Det. Moore, performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 817-818 (1982). Qualified immunity is an immunity from suit rather than a mere defense to liability. *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009), *citing Mitchell v. Forsythe*, 472 U.S. 511 (1985). Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful action generally turns on the "objective legal reasonableness of the action." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

When a defendant officer raises qualified immunity as an affirmative defense, the plaintiff bears the burden of demonstrating that the officer is not entitled to that defense. *Moldowan v. City of Warren*, 578 F.3d 351, 375 (6th Cir.2009). Qualified immunity shields federal and state officials from liability unless the plaintiff can prove 1) that the official violated a statutory or constitutional right and 2) that the right was 'clearly established' at the time of the challenged conduct. *Pearson v. Callahan*, 555 U.S. 223 (2009).

As described above, the Det. Moore has not violated Plaintiff's constitutional rights. For this reason, alone Det. Moore is entitled to qualified immunity. However, even if Plaintiff is able to establish a violation of his constitutional rights, Det. Moore is nonetheless still entitled to qualified immunity because the Plaintiff cannot establish the second prong of the qualified

immunity analysis.

The second prong of the qualified immunity analysis cannot be satisfied by simply alleging a violation of extremely abstract rights. *Anderson*, 533 U.S. at 639. Instead, the right that the official is alleged to have violated must be clearly established in a more particularized, and hence more relevant sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Id.* at 639-640. Indeed, the Supreme Court recently reiterated the "longstanding principle that 'clearly established law' should not be defined at a high level of generality" and that "the clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, 137 S.Ct. 548, 552 (2017). The rule must be "settled law", which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority. *D.C. v. Wesby*, 138 S.Ct. 577 (2018). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that ***every*** reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *Id.* at 590 (emphasis added, internal citations omitted). Plaintiff cannot point to any legal precedent that would establish that Det. Moore knowingly and intentionally violated the Plaintiff's constitutional rights. Instead, the law cited above establishes that a reasonable officer in Det. Moore's position would have believe that his conduct occurred within the confines of the constitution. Det. Moore is qualifiedly immune from Plaintiff's federal clams. Summary judgment should be granted.

**B.** **Plaintiff's state law claims fail as a matter of law.**

Plaintiff in this case has asserted state law claims of malicious prosecution, intentional infliction of emotional distress, and spoliation against Det. Moore. Det. Moore is immune from each of these claims pursuant to Chapter 2744 of the Ohio Revised Code. Even if Det. Moore were not immune, Plaintiff's claims should nonetheless fail because the evidence fails to support

these claims. Summary judgment should be granted in his favor.

### 1. Det. Moore is immune from Plaintiff's state law claims.

Under Ohio law, employees of political subdivisions, like Det. Moore, are generally immune from tort liability. This immunity is codified at Section 2744.03(A)(6) of the Ohio Revised Code, which provides:

> (A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability: …
>
> (6) … [T]he employee [of a political subdivision] is immune from liability unless one of the following applies:
>
> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
>
> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
>
> (c) Liability is expressly imposed upon the employee by a section of the Revised Code.

By its plain language, R.C. § 2744.03(A)(6) operates as a presumption of immunity. *Cook v. Cincinnati*, 103 Ohio App.3d 80, 90 (1st Dist.1995). As with the subdivision itself, this presumption may only be overcome by demonstrating that an exception to immunity applies. *M.B. v. Elyria City Bd. of Educ.*, 9th Dist. Lorain No. 05CA008831, 2006-Ohio-4533, ¶ 19.

The evidence produced in this case establishes that Det. Moore was acting within the course and scope of his employment at all times during the course of his investigation of the rapes. As a result, the exception to immunity contained at R.C. § 2744.03(A)(6) does not apply. There are no statutes under Ohio law that expressly impose liability under the facts of this case. The exception contained at R.C. § 2744.03(A)(6)(c) does not apply.

The evidence produced in this case similarly establishes that Det. Moore did not act "with

malicious purpose, in bad faith, or in a wanton or reckless manner" as is required for the exception contained at R.C. § 2744.03(A)(6)(b) to apply.

"Malicious purpose" has been defined as "the willful and intentional design to injure or harm another, generally seriously, through unlawful or unjustified conduct." *Rural Building of Cincinnati, LLC v. Mercer*, 96 N.E. 3d 882, 2017-Ohio-7226 (1st Dist.). Willful misconduct implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury.*" Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, ¶ 32. "Wanton misconduct" is the failure to exercise any care toward those to whom a duty of care is owed in circumstances where there is a probability that harm will result." *Id* at ¶ 33. "Reckless conduct" is characterized by a conscious disregard or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct. *Id.* at ¶ 34.

There is no evidence that Det. Moore acted with level of heightened culpability needed for this exception to immunity to apply. Plaintiff concedes that he did not know Moore prior to this investigation. Gillispie Depo., Doc. 168, PageID 3263. He knows of no reason Moore would have any ill will or bad feelings toward him. *Id.* at 3264. There is no evidence that Det. Moore acted willfully, wantonly, recklessly, maliciously or in bad faith. All of the Plaintiff's state law claims should be dismissed with prejudice.

## 2.  Summary judgment should be granted as to Plaintiff's malicious prosecution claim.

To prevail on a claim for malicious prosecution under Ohio law the Plaintiff must prove (1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." *Trussell v. Gen. Motors Corp.*, 559 N.E.2d

732, 736, 53 Ohio St.3d 142 (Ohio 1990). Ohio courts have held that malice can be inferred from the absence of probable cause. *Melanowski v. Judy,* 102 Ohio St. 153, 154 (Ohio 1921). "Probable cause is the real gist of the action." *Id.* at 361, 102 Ohio St. at 155.

Probable cause is defined as "a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged." *Id.*; *see also Burkholder v. Emahiser,* 6th Dist. No. OT–01–020, 2002 WL 444969, *3 (Mar. 22, 2002). "It is important to recognize that probable cause may exist despite the fact that no crime actually occurred." *Doty v. Marquis,* 7th Dist. No. 99 JE 9, 2000 WL 1486582, at *2 (Sept. 22, 2000). One need not even have evidence to ensure a conviction. *Deoma v. Shaker Heights*, 587 N.E.2d 425, 428, 68 Ohio App.3d 72 (8th Dist.1990), citing *Epling v. Pacific Intermountain Express Co.*, 379 N.E.2d 239, 241-42, 55 Ohio App.2d 59 (9th Dist.1977).

Just like in the Fourth Amendment malicious prosecution claim, under Ohio law the return of an indictment by the grand jury is prima facie evidence of probable cause. *Anderson v. Eyman*, 907 N.E.2d 730, 738, 180 Ohio App. 3d 794, 804 (5th Dist. 2009). Once an indictment has been returned by a grand jury, the plaintiff in a malicious prosecution has the burden of producing substantial evidence to establish lack of probable cause. In order words, a plaintiff "must produce evidence to the effect that the return of the indictment resulted from perjured testimony or that the grand jury proceedings were otherwise significantly irregular. *Id.*

There is no such evidence. Instead, as described above, the probable cause was established by the three separate eyewitness identifications of the Plaintiff as the rapist. This claim fails.

### 3. Summary judgment should be granted as to Plaintiff's IIED claim.

"One who by extreme and outrageous conduct intentionally or recklessly causes severe

emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Yeager v. Local Union 20 Teamsters*, 6 Ohio St.3d 369, 374 (1983) (overruled on unrelated grounds).

A defendant can only be held liable for intentional infliction of emotional distress when the conduct at issue is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." It is not enough that a defendant has acted with an intent to commit a tort, a criminal act or to inflict emotional distress, or even that a defendant's conduct has been characterized by malice or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort. Rather, a plaintiff must be able to show devastating injury as a consequence of intentional conduct so repugnant that it shocks the conscience. *Id.*

There is no evidence that Det. Moore engaged in any extreme and outrageous conduct. Instead, he was assigned to investigate a lead that Plaintiff had committed criminal acts. The evidence establishes that Det. Moore acted appropriately in his investigation, the two trials of this matter and in post-trial proceedings. This claim fails as a matter of law.

### 4.    Summary judgment should be granted as Plaintiff's spoliation claim.

A cause of action exists in tort for the interference or destruction of evidence. *Smith v. Howard Johnson Co., Inc.* 615 N.E.2d 1037, 1038, 67 Ohio St. 3d 28, 29 (1993). To prevail on such a claim, the Plaintiff must prove: 1) pending or probable litigation involving the plaintiff, 2) knowledge on the part of the defendant that litigation exists or is probable, 3) willful destruction of evidence by defendant intended to disrupt the plaintiff's case, 4) disruption of the plaintiff's case, 5) damages proximately caused by the defendant's act. *Id.*

Here, as with the due process destruction of evidence claim, Plaintiff asserts that Det.

24

Moore destroyed two pieces of evidence: 1) the supplemental reports authored by Fritz and Bailey eliminating Plaintiff as a suspect and 2) the receipts from the Kentucky campground. There is no evidence to support either of these claims.

### a.    The supplemental reports

There is no evidence that Det. Moore willfully destroyed the supplemental reports. Assuming that Fritz and Bailey are telling the truth and these written supplemental reports existed, there is no evidence that Det. Moore ever saw these reports and no evidence that he destroyed the reports. Indeed, there is no evidence that the reports were ever even in the files that were provided to Det. Moore when he was assigned the case. Summary judgment should be granted.

### b.    The campground receipts.

As a preliminary matter, Plaintiff has failed to establish that the campground receipts that Plaintiff claims would have been exculpatory ever existed. To sustain a spoliation of evidence claim, the plaintiff must offer proof that the defendant destroyed evidence that actually existed. *Wheatley v. Marietta College*, 48 N.E.3d 587, 620, 2016-Ohio-949 (Ohio App. 4th Dist.). A spoliation claim cannot be based upon conjecture that evidence might have existed and that a party might have destroyed it. If a party fails to present evidence that allegedly destroyed evidence actually existed, the spoliation of evidence claim must fail. *Id.* Since there is no evidence that the exculpatory receipts existed, this claim necessarily fails as a matter of law.

Assuming that the receipts in question did in fact exist, there is simply no evidence that Det. Moore willfully destroyed them. His undisputed testimony establishes that he never went to Kentucky- much less that he willfully destroyed evidence there. Moore Depo., Doc. 170, PageID 3459. Summary judgment should be granted.

## IV.    CONCLUSION

For these reasons, summary judgment should be granted and all claims asserted against Matthew Scott Moore should be dismissed with prejudice.

Respectfully submitted,

MAZANEC, RASKIN & RYDER CO., L.P.A.

*s/Cara M. Wright*
TODD M. RASKIN  (0003625)
JEFFREY T. KAY  (0069371)
CARA M. WRIGHT  (0084583)
100 Franklin's Row
34305 Solon Road
Cleveland, OH  44139
(440) 248-7906
(440) 248-8861 – Fax
Email:    traskin@mrrlaw.com
jkay@mrrlaw.com
cwright@mrrlaw.com

Counsel for Defendant Matthew Scott Moore

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on Monday, September 16, 2019, a copy of the foregoing Defendant Matthew Scott Moore's Motion for Summary Judgment was filed electronically.  Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*s/Cara M. Wright*
TODD M. RASKIN  (0003625)
JEFFREY T. KAY  (0069371)
CARA M. WRIGHT  (0084583)

Counsel for Defendant Matthew Scott Moore

PERS-140073/Moore MSJ

26