## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| ROGER DEAN GILLISPIE, | : | CASE NO.  3:13-CV-416 |
| | : | |
| Plaintiff, | : | Judge Thomas M. Rose |
| | : | Magistrate Judge Sharon L. Ovington |
| v. | : | |
| | : | |
| THE CITY OF MIAMI TOWNSHIP, *et al.,* | : | **DEFENDANT, MIAMI TOWNSHIP,** |
| | : | **OHIO'S MOTION FOR SUMMARY** |
| Defendants. | : | **JUDGMENT** |

---

Now comes Defendant, Miami Township, Ohio ("Defendant" or "the Township") (erroneously designated as The City of Miami Township), by and through counsel, and hereby moves the Court for an Order granting it summary judgment pursuant to Fed.R.Civ.P. 56. Defendant seeks the requested Order because no genuine dispute of material fact remains as to Plaintiff's claims, thus, Defendant is entitled to judgment as a matter of law.  The reasons for this Motion are stated in the accompanying Memorandum.

Respectfully submitted,

/s/ Edward J. Dowd
Edward J. Dowd (0018681)
Dawn M. Frick (0069068)
Christopher T. Herman (0076894)
SURDYK, DOWD & TURNER, CO., L.P.A
8163 Old Yankee Street, Suite C
Dayton, Ohio 45458
(937) 222-2333 || (937) 222-1970 (fax)
edowd@sdtlawyers.com
dfrick@sdtlawyers.com
cherman@sdtlawyers.com
Trial Attorneys for Defendant, Miami Township,
Ohio

## COMBINED TABLE OF CONTENTS AND SUMMARY OF ARGUMENT

I.     INTRODUCTION ........................................................................................... 1

II.    FACTS ......................................................................................................... 2

III.   LAW AND ARGUMENT ............................................................................... 9

   A.   Miami Township is entitled to summary judgment on Plaintiff's Section 1983 suppression of exculpatory evidence claim ...................................................... 9

       1.   Plaintiff's *Monell* claim for suppression of exculpatory evidence must fail    9

In order to find a municipality liable under Section 1983, the Plaintiff must first prove that a municipal employee caused a constitutional violation. *Los Angeles v. Heller*, 475 U.S. 796 (1986). The Plaintiff must also prove that "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by the body's officers." *Monell v. New York Dept. of Social Servs.*, 436 U.S. 658 (1978). Here, Plaintiff has failed to establish that former Detective Scott Moore violated his civil rights. Not only has Plaintiff failed to prove the underlying constitutional violation, but Plaintiff has failed to point to a facially unconstitutional official policy or edict of a policymaking official.

       2.   Magistrate Judge Merz' decision in the *habeas* matter that there was a *Brady* violation is not binding on the claim against Miami Township    12

Miami Township was not in privity with the parties in Plaintiff's *habeas* matter

       3.   There is no *Brady* violation because Plaintiff and his criminal defense attorney knew about the alleged information in the supplemental reports before Plaintiff's first criminal trial    15

   B.   Miami Township is entitled to summary judgment on Plaintiff's Section 1983 suggestive identification claim because it is barred by the *Rooker-Feldman* doctrine ................... 17

Plaintiff's attack on the photo lineup is an attack of a state court judgment in a federal court and is improper. *United States v. Owens*, 54 F.3d 271, 274 (6th Cir.1995) (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983)); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

   C.   Miami Township is entitled to summary judgment on Plaintiff's Section 1983 fabricated evidence claim ........................................................................................... 19

   D.   Miami Township is entitled to summary judgment on Plaintiff's Section 1983 malicious prosecution claim ........................................................................................... 20

E.  Miami Township is entitled to summary judgment on Plaintiff's Section 1983 destruction of exculpatory evidence claim ........................................................................ 23

F.  Miami Township is entitled to summary judgment on Plaintiff's state law indemnification claim ............................................................................................................................ 25

Plaintiff has no standing under R.C. 2744.07(A)(2) to assert an indemnification claim on behalf of another party and there is no judgment against any of the Township's former employee who are named as defendants. Therefore, Plaintiff's claim for indemnification is premature and should be dismissed.

G.  Miami Township is not liable for punitive damages ........................................................ 26

Plaintiff cannot recover punitive damages against a political subdivision, either under Section 1983, or on his state law claims. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 260 n. 21 (1981); R.C. § 2744.05.

H.  Plaintiff has failed to file suit against the real party in interest ...................................... 26

Plaintiff filed suit against the City of Miami Township, which is not a public entity.

I.  The Miami Township Police Department is not *sui juris* ................................................ 28

Police departments are not *sui juris*; they are merely sub-units of the municipalities they serve. *Jones v. Marcum*, 197 F.Supp.2d 991, 997 (S.D.Ohio 2002) (citing *Williams v. Dayton Police Dept.*, 680 F.Supp. 1075, 1080 (S.D.Ohio 1987)).

J.  Miami Township did not conspire to violate Plaintiff's rights ........................................ 28

To the extent Plaintiff alleges that members of the MTPD conspired together to violate Plaintiff's rights, such a claim is barred by the Intracorporate Conspiracy Doctrine. In general, "in civil conspiracy cases … a corporation cannot conspire with its own agents or employees." *Hull v. Cuyahoga Valley Joint Vocational School Dist. Bd. of Educ.*, 926 F.2d 505, 509-10 (6th Cir.1991). The Doctrine applies to government agencies. *Brace v. Ohio State University*, 866 F.Supp. 1069, 1075 (S.D.Ohio 1994). "[M]embers of the same legal entity cannot conspire with one another as long as their alleged acts were within the scope of their employment." *Jackson v. City of Columbus*, 194 F.3d 737, 753 (6th Cir.1999), *abrogated on other grounds by Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002).

IV.  CONCLUSION .................................................................................................................... 30

CERTIFICATE OF SERVICE .................................................................................................... 30

## TABLE OF AUTHORITIES

**Cases**

*Barnes v. Wright*, 449 F.3d 709 (6th Cir.2006) ............................................................... 22

*Brace v. Ohio State University*, 866 F.Supp. 1069 (S.D.Ohio 1994) ............................ 31

Brady v. Maryland, 373 U.S. 83 (1963) ...................................................................... 16

*Brown v. Dayton*, 89 Ohio St.3d 245 (2000) ................................................................ 15

*Buckeye Ret. Co., L.L.C. v. Busch*, 2011-Ohio-1125 ..................................................... 14

*Carter v. Bell*, 218 F.3d 581 (6th Cir.2000)................................................................. 16

*City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981) ....................................... 28

*City of Oklahoma v. Tuttle,* 471 U.S. 808 (1985) ......................................................... 12

*Cleveland v. Hogan*, 92 Ohio Misc. 2d 34, 699 N.E.2d 1020 (Mun. 1998) ................. 15

*Columbus v. Union Cemetery Assn.*, 45 Ohio St.2d 47 (1976)....................................... 14

*Coon v. Froehlich*, 573 F.Supp. 918 (S.D.Ohio 1983) .................................................. 31

*D'Ambrosio v. Marino*, 747 F.3d 378 (6th Cir.2014)............................................. 17, 27

*Daubenmire v. City of Columbus*, 507 F.3d 383 (6th Cir. 2007).................................... 14

*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) .................... 20

*Doe v. Claiborne County, Tenn, By and Through Claiborne County Bd. of Educ.*, 103 F.3d 495
(6th Cir. 1996)........................................................................................................... 12

*Feldman*, 460 U.S. at 482 ............................................................................................. 20

*Feliciano v. City of Cleveland,* 988 F.2d 649 (6th Cir.), *cert. denied,* 510 U.S. 826 (1993)........ 12

*Gillispie v. Timmerman-Cooper*, 835 F.Supp.2d 482 (S.D.Ohio 2011) ........................ 10

*Gottfried v. Medical Planning Servs., Inc.*, 142 F.3d 326 (6th Cir.), *cert. denied*, 525 U.S. 1041
(1998).......................................................................................................................... 20

1

*Grava v. Parkman Twp.*, 73 Ohio St. 3d 379, 1995-Ohio-331 .................................................. 13

*Gutierrez v. Lynch*, 826 F.2d 1534 (6th Cir.1987)................................................................. 31

*Heyne v. Metropolitan Nashville Public Schools*, 655 F.3d 556 (6th Cir.2011) ......................... 31

*Hicks v. De La Cruz*, 52 Ohio St.2d 71 (1977) ...................................................................... 14

*Hull v. Cuyahoga Valley Joint Vocational School Dist. Bd. of Educ.*, 926 F.2d 505 (6th Cir.1991) ........................................................................................................................................ 31

*Jackson v. City of Columbus*, 194 F.3d 737 (6th Cir.1999), *abrogated on other grounds by Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002)................................................................ 31

*Johnson v. Moseley*, 790 F.3d 649 (6th Cir.2015) ........................................................... 22, 23

*Jones v. Marcum*, 197 F.Supp.2d 991 (S.D.Ohio 2002)......................................................... 30

*King v. Harwood*, 852 F.3d 568 (6th Cir.2017)..................................................................... 23

*Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75 (1984)........................................... 20

*Moldowan v. City of Warren*, 578 F.3d 351 (6th Cir.2009) ................................................... 27

*Monell v. New York Dept. of Social Servs.*, 436 U.S. 658 (1978) ..................................... 11, 12

*N. Aliakbarkhananfjeh v. Schramm*, 194 F.3d 1311 (6th Cir.1999) ...................................... 24

*Nashville, Chattanooga & St. Louis Ry. Co. v. Browning,* 310 U.S. 362 (1940) ....................... 12

*Ohnemus v. Thompson*, 594 Fed.Appx. 864 (6th Cir.2014) .................................................. 24

*Oklahoma City v. Tuttle*, 471 U.S. 808 (1985) ..................................................................... 11

*O'Nesti v. DeBartolo Realty Corp.*, 13 Ohio St. 3d 59, 2007-Ohio-1102, ¶ 98.......................... 15

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986).............................................................. 11

*Pieper v. Am. Arbitration Ass'n, Inc.*, 336 F.3d 458 (6th Cir.2003)......................................... 20

*Polk County v. Dodson*, 454 U.S. 312 (1981)....................................................................... 11

*Preston v. Murty*, 32 Ohio St.3d 334 (1987)........................................................................ 28

*Radvansky v. City of Olmsted Falls,* 395 F.3d 291 (6th Cir.2005).......................................... 24

*Rehberg v. Paulk*, 566 U.S. 356 (2012) ....................................................................... 23

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) ...................................................... 20

*Sanders v. Jones*, 845 F.3d 721 (6th Cir.2017) ............................................................ 23

*Smith v. Wade*, 461 U.S. 30 (1983) ............................................................................... 28

*State ex rel. Estate of Miles v. Village of Piketon*, 121 Ohio St.3d 231, 2009-Ohio-786 ............ 14

*State ex rel. Hofstetter v. Kronk*, 20 Ohio St.2d 117 (1969) ........................................ 14

*State v. Gillespie*, Montgomery App. No. 14595, 1995 WL 41334 (Feb. 1, 1995) ............... 10, 19

*State v. Gillespie*, Montgomery App. Nos. 12941 and 13585, 1993 WL 10927 (Jan. 21, 1993) 10, 19

*State v. Gillispie* (Jan. 4, 1991), Montgomery County Common Pleas Court No. 90-CR-2667, unreported ........................................................................ 10, 19

*State v. Gillispie*, Montgomery App. Nos. 22877, 22912, 2009 WL 2197052 (July 24, 2009) ... 17

*State v. Slagle*, 2d Dist. Montgomery No. 23934, 2012-Ohio-1575 ....................................... 14, 15

*State v. Williams*, 76 Ohio St.3d 290 (1996) ................................................................. 14

*Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381 (1940) ...................................... 14

*United States v. Owens*, 54 F.3d 271 (6th Cir.1995) ..................................................... 20

*Vaughan v. City of Shaker Heights*, No. 1:10 CV 00609, 2015 WL 1650202 (N.D.Ohio Apr. 14, 2015) ............................................................................................................. 27

*Washington v. Summerville*, 127 F.3d 552 (7th Cir.1997), *cert. denied,* 118 S.Ct. 1515 (1998) . 24

*Whitehead v. Gen. Tel. Co.*, 20 Ohio St.2d 108 (1969) ................................................. 13

**Statutes**

R.C. § 2744.05 ................................................................................................................. 28

3

**MEMORANDUM**

## I. INTRODUCTION

This case arises out of an incident on August 5, 1988, when a man abducted a woman at gunpoint in her car outside a store in Harrison Township, Ohio, ordered her to drive to the back of the shopping center, and forced her to perform oral sex on him.[1] In a similar incident on August 20, 1988, a man abducted twin sisters at gunpoint in their car outside a Best Products store in Miami Township, Ohio, ordered them to drive to a remote rural location, and forced them to perform oral sex on him.[2] The Miami Township victims reported their incident first, and the Harrison Township victim came forward after she saw a report of the Miami Township incident.

In 1990, Defendant Scott Moore ("Moore") investigated the cases and photo lineups were presented separately to all three victims. Each victim picked Plaintiff out of the lineup shown to her. Moore presented his case to the Montgomery County Prosecutor's Office, a grand jury indicted Plaintiff, and two juries convicted Plaintiff in February and June of 1991.[3] Plaintiff contested his convictions in state and federal court until eventually the Court granted his Petition for Writ of *Habeas Corpus* on December 15, 2011, and he was ordered released from custody.

Plaintiff filed his Amended Complaint on January 17, 2014 against Defendant Miami Township ("Miami Township")[4] and several of its former officers, Montgomery County and several of its former employees at the Miami Valley Regional Crime Lab, and General Motors, LLC and

---

[1] This incident will herein be referred to as the Harrison Township case.

[2] This incident will herein be referred to as the Best Products case.

[3] Plaintiff appealed his convictions after the first trial and the Second District Court of Appeals overturned the convictions and ordered a new trial.

[4] Plaintiff actually sued "The City of Miami Township" which is not a legal entity. (Am. Compl., Doc. 18, PageID 76, 78 (¶ 6, 8), 93 (¶ 74), 94 (¶ 81), 101.) In fact, Plaintiff never correctly named Miami Township, Montgomery County, Ohio as a defendant, but referred to one of its departments, the Miami Township Police Department. (Id. at *passim*.)

several of its former employees. Plaintiff alleged numerous federal claims against "The City of Miami Township" and/or the Miami Township Police Department under 42 U.S.C. § 1983 and a state law claim for indemnification. As explained herein, Plaintiff cannot prove that Miami Township violated his constitutional rights, he has no standing to pursue his indemnification claim, and his indemnification claim is not ripe. Accordingly, this Court should issue an Order granting Miami Township's motion for summary judgment as a matter of law.

## II. <u>FACTS</u>

### A. Three women are raped in Montgomery County in August 1988

On August 20, 1988, twin sisters B.W. and C.W. were raped after being abducted at gunpoint from the parking lot of the Best Products store in Dayton, Ohio. The perpetrator forced the twins to drive to a remote rural location and perform oral sex on him in a wooded area off of the road. (Supp. Report, Doc. 230-5, PageID 6106). The Best Products case happened in Miami Township, and therefore fell under jurisdiction of the Miami Township Police Department ("MTPD"). (Id.) Although the perpetrator wore sunglasses, the twins spent about an hour and a half with him, looked at his face, and were ordered to look up at him while they performed oral sex on him. (Supp. Hrg., Doc. 231-3, PageID 6366-68, 6389, 6407-08, 6434.) In this case, the twins testified that they were confident that they identified their attacker, Plaintiff Roger Dean Gillispie, in the lineups because they knew he was the one who did it, and never had any doubt that they identified the right person. (C.W. Dep., Doc. 219, PageID 4220, 4231, 4239; B.W. Dep., Doc. 228, PageID 5664-65, 5680.) The perpetrator also told the twins that his name was Roger and that he was a security guard. (Supp. Hrg., Doc. 231-3, PageID 6394-95.)

After hearing about the Best Products case, another woman, S.C., reported being raped in a similar fashion on August 5, 1988. (Scott Dec., Doc. 233-1, PageID 6750). According to S.C., she

2

was also held at gunpoint in a Harrison Township parking lot and forced to perform oral sex. (Id.; Supp. Hrg., Doc. 231-3, PageID 6448, 6454.) S.C. spent about forty minutes with the perpetrator, looked at his face, and remembered the features and characteristics of his face. (Supp. Hrg., Doc. 231-3, PageID 6438-49, 6453-6454.) Like the twins, S.C. also testified that she was confident in her identification of Plaintiff as her attacker and that she had no doubt in her mind. (S.C. Dep., Doc. 220, PageID 4310, 4311, 4320.) He also said his name was Roger mentioned being a security guard. (Composites, Doc. 254-3, PageID 7669.)

### B. Gary Bailey's investigation of the Best Products case

The day after the Best Products case, the twins went to the MTPD and initially met with Officer Robert Burling. Shortly thereafter, Det. Bailey was assigned to investigate the rapes. (Bailey Dep., Doc. 222, PageID 4785-86). On August 22, 1988, Det. Bailey interviewed B.W. and C.W., and accompanied them to the scene of the crimes to search for evidence. (Bailey Trial II Tr., Doc. 231-1, PageID 6217, 6223-25.) Back at the station, Bailey showed the twins books of photographs of potential suspects, none of whom were identified as the perpetrator. (Supp. Hrg., Doc.231-3, PageID 6368, 6410.) A composite image of the perpetrator was created based on the description given by B.W. and C.W. (C.W. Dep., Doc. 219, PageID 4214; Supp. Hrg., Doc. 231-3, PageID 6391.) Separately, S.C. also aided in the production of another composite with Montgomery County Sheriff's Office Detective Matheny at the MTPD. (S.C. Offense Report, Doc. 163-1, PageID 2552; S.C. Dep., Doc. 220, PageID 4299.)

According to Det. Bailey, at some point, one of the twins called MTPD and informed him of the perpetrator's pant size, which she allegedly observed during the rape. (Bailey Dep., Doc. 222, PageID 4798.) He thought the pant size was around 40-42. (Id. at PageID 4852-53.) Det. Bailey claims he recorded this information in a supplemental report. (Id. at PageID 4800-01.) Neither twin

3

remembered anything about their assailant's pant size; nor remembered observing the pant size of their assailant; nor remembered calling the police and reporting a pant size. (B.W. Dep., Doc. 228, PageID 5679; C.W. Dep., Doc. 219, PageID 4237, 4242.)

Plaintiff worked as a GM security officer at the time of the 1988 rapes. (Gillispie Dep., Doc. 168, PageID 3144-45.) Sometime in late 1989 or early 1990, Wolfe brought Gillispie's identification photo to the MTPD and spoke to the officer in charge of the Best Products case. (Wolfe Dep., Doc. 166, PageID 2997; Fritz Dep., Doc. 221, PageID 4373.) After the meeting, Chief Angel instructed Det. Bailey and Sgt. Fritz to investigate Gillispie as part of the Best Products case. (Fritz Dep., Doc. 221, PageID 4384.) Sgt. Fritz assigned Det. Bailey to investigate Gillispie. (Id. at PageID 4385.) Both Det. Bailey and Sgt. Fritz claim they wrote supplemental reports documenting this meeting. (Id. at PageID 4559-60; Bailey Dep., Doc. 222, PageID 4867-68.) Det. Bailey then investigated Gillispie as a person of interest in the sexual assault investigation. (Bailey Dep., Doc. 222, PageID 4883.)

### C. Gary Bailey performs a cursory investigation of Gillispie as a suspect

Det. Bailey recalled that there were three reasons that he believed Gillispie was not a viable suspect: 1) he believed there was a labor issue between Gillispie and Wolfe at GM[5]; 2) in his opinion Gillispie's photograph did not match the composite; and 3) the pant size allegedly told to him by the victim could not match Plaintiff. (Bailey Dep., Doc. 222, PageID 4798, 4804.) Gillispie's criminal background also played a role in eliminating him as a suspect (id. at PageID 4890), but Bailey cannot remember if he interviewed Gillispie to determine whether he had an alibi (id. at PageID 4823) (in fact, Plaintiff testified that he has never talked to Bailey (Gillispie Dep., Doc. 168, PageID 3168), or

---

[5] If Bailey had interviewed Plaintiff, then he would have learned that there was no ill will or bad blood between Plaintiff and Rick Wolfe or Plaintiff and his GM supervisor Robert Miller. (Gillispie Dep., Doc. 168, PageID 3241, 3290.) Plaintiff also did not know anyone employed at the MTPD and had never met Scott Moore or his father, former Chief of Police James Moore, before he was indicted. (Id. at PageID 3190.) There would have been no reason for Plaintiff or Scott Moore to have ill will or bad feelings toward each other because they had never met before. (Id. at PageID 3263.)

if he interviewed Gillispie's girlfriend, Torrie Strohman (Bailey Dep., Doc. 222, PageID 4836). Despite this, Bailey can point to no facts that contradict the MTPD records showing that he did not conduct an investigation of Gillispie as a viable suspect. (Id. at PageID 4796.)

Since the Best Products case was assigned to Bailey, his supervisor, Sgt. Fritz, did not undertake any investigation to determine whether Plaintiff committed the rapes. (Fritz Dep., Doc. 221, PageID 4362-63, 4475-76.) Fritz cannot recall what steps Bailey took to determine that Gillispie was not a viable candidate in the Best Products case or how long Bailey worked the tip before he decided to eliminate Gillispie. (Id. at PageID 4385-86, 4392-93.) While an alibi would have been enough to clear Gillispie as a suspect, Fritz' understanding was that no one was ever able to establish an alibi for Plaintiff and no witness ever ruled him out as a suspect. (Id. at PageID 4528-29.) Plaintiff's physical description, hair, absence of a criminal record, clothing, or a feeling that there was bad blood between Plaintiff and Wolfe would not be sufficient grounds to eliminate Plaintiff as a suspect. (Id. at PageID 4376, 4391-92, 4529.) Although Fritz testified that he would have gotten Plaintiff's work schedule from GM and compared it to the police report (id. at PageID 4530), there is no evidence that Bailey did that. Nevertheless, Det. Bailey and Sgt. Fritz maintain that they concluded that Gillispie should be eliminated as a suspect in the rape investigation. (Bailey Dep., Doc. 222, PageID 4883.) Fritz and Bailey have both claimed that Bailey documented his investigation of Plaintiff in a supplemental report and that it was filed in the records section at the MTPD, but Bailey never looked at the original file to confirm his supplemental report was in the proper file and Fritz has no specific recollection of taking a supplemental report to the records division. (Id. at PageID 4804, 4856; Fritz Dep., Doc. 221, PageID 4546.)

### D. Scott Moore is assigned the Best Products case

5

Det. Bailey was reassigned to road patrol in November 1989, and the rape investigation became inactive. (Bailey Dep., Doc. 222, PageID 4812; Fritz Dep. Ex. A, Doc. 221-1, PageID 4616.) Sgt. Fritz left the department on June 15, 1990 (Fritz Dep., Doc. 221, PageID 4406), and on June 18, 1990, Moore was assigned the Best Products case investigation (Moore Dep., Doc. 170, PageID 3619).  Upon receiving this assignment, Moore received all of the supplemental reports that predat[ed] his involvement in the Best Products case. (Moore Dep., Doc. 170, PageID 3488.)

Moore did not have exclusive or direct access to all of the original copies of the reports concerning the Best Products case, or any case.  Captain Marvin Scothorn oversaw the records section in the property room at the MTPD. (Scothorn Dep., Doc. 254, PageID 7489.) The property room was locked at all times except for regular business hours, and records staff, Capt. Scothorn, and the chief of police were the only ones with keys to the room. (Id. at PageID 7612.)  The department had a policy that original files did not leave the record section and employees were good about following that policy. (Id. at PageID 7621; Fritz Dep., Doc. 221, PageID 4379; Bailey Dep., Doc. 222, PageID 4802-03.)  Officers and detectives could review or request a copy of an original file from the records section, but they did not check out the report and were not allowed to take the original file out of the records section. (Scothorn Dep., Doc. 254, PageID 7615-16, 7618; Fritz Dep., Doc. 221, PageID 4382.) At the time of the Best Products case, supplemental reports were made on carbon paper and the original would go in the central records file.  (Bailey Dep., Doc. 222, PageID 4857.)  In his 26 years with the MTPD, Capt. Scothorn could not recall any instance of an original initial report or original supplemental report ever being removed from the filing cabinet in the records section. (Scothorn Dep., Doc. 254, PageID 7598, 7624-7625.) Neither Sgt. Fritz nor Det. Bailey know of any facts to conclude that Moore destroyed evidence (i.e. their supplemental reports regarding Plaintiff)

or have personal knowledge whether Moore took original files out of the records section. (Fritz Dep., Doc. 221, PageID 4484-85; Bailey Dep., Doc. 222, PageID 4924.)

### E. Scott Moore investigates Gillispie as a suspect

Wolfe returned to the MTPD sometime before June 1990 and brought Gillispie's ID card along with several other ID cards that he thought the police may want to use in a lineup. (Wolfe Dep., Doc. 166, PageID 2913.) Wolfe spoke to Fritz and Moore about the photos, and gave the photos to them. Although Wolfe does not recall when this meeting took place, Moore testified that it took place before he was assigned to investigate the rapes in June of 1990. (Moore Dep., Doc. 170, PageID 3423.) Moore testified at one of Gillispie's criminal trials that he believed the meeting took place on April 19, 1990. (Id. at PageID 3618.) At some point, Wolfe informed Moore that Gillispie had not been scheduled to work on either of the dates the rapes occurred. (Id. at PageID 3622.) Later, at Moore's request, Wolfe brought copies of the relevant schedules to the MTPD. (Wolfe Dep., Doc. 166, PageID 2917.) Moore eventually constructed a photo lineup using Plaintiff's picture from his ID card. The lineups consisted of six photographs, one being of Gillispie, displayed all at once. (Color copy of Photo Lineup, Doc. 170-5, PageID 3830.) Each of the victims identified Gillispie as the perpetrator. (Supp. Report, Doc. 230-5, PageID 6110, 6111, 6113; Photo ID General Guidelines, Doc. 170-4, PageID 3822-3829.) Even today, each victim is confident and has no doubt that she correctly identified Gillispie as her attacker. (C.W. Dep., Doc. 219, PageID 4220, 4231, 4239; B.W. Dep., Doc. 228, PageID 5664-65, 5680; S.C. Dep., Doc. 220, PageID 4310, 4311, 4320.)

### F. Plaintiff is arrested, charged, and convicted

Moore arrested Gillispie on September 5, 1990. (Supp. Report, Doc. 230-5, PageID 6117-19.) On August 31, 1990, Moore met with Montgomery County Assistant Prosecuting Attorney Linda Howland to initiate a prosecution against Gillispie for the rapes. (Id. at PageID 6114-15; Moore Dep.,

Doc. 170, PageID 3382.) Moore made a complete copy of the original file of the Best Products case and gave it to the prosecutor's office. (Moore Dep., Doc. 170, PageID 3667.) As a result of Moore's meeting with Ms. Howland, a grand jury was asked to indict Gillispie on several charges, including nine counts of rape. (Supp. Report, Doc. 230-5, PageID 6114-15.) At the conclusion of the grand jury proceedings, Gillispie was indicted. (Indictment, Doc. 163-9, PageID 2610-2619.)

Sometime before Plaintiff's first scheduling conference, the assistant prosecuting attorney assigned to the case, Paul Folfas, heard from Moore that Bailey had eliminated Gillispie as a suspect. (Folfas Dep., Doc. 252, PageID 7287-88.) Folfas then had a conversation with Gillispie's defense attorney, Dennis Lieberman, immediately after the first scheduling conference. Lieberman told him that Fritz and Bailey had eliminated Gillispie as a suspect and requested the supplemental reports they prepared in that regard. (Id. at PageID 7286.) Folfas directed Moore to obtain the reports, and in a follow-up conversation, Moore told Folfas that there were no reports in the file generated by Fritz and Bailey eliminating Gillispie. (Id. at PageID 7286, 7360.) A few days later, Folfas advised Lieberman there were no reports generated by Fritz and Bailey that pertained to Gillispie. (Id. at PageID 7286, 7292.) Fritz, who by that time was hired by Lieberman and working as the investigator for Gillispie's defense team (Fritz Dep., Doc. 221, PageID 4486-87), and Bailey, also contacted Folfas before Gillispie's criminal trials and told Folfas that the State had the wrong guy, asked about the supplemental reports. Folfas told them there were no reports. (Folfas Dep., Doc. 252, PageID 7297-98.) Folfas never had a conversation with Fritz and Bailey about the perpetrator's pant size. (Id. at PageID 7374.) Finally, Folfas testified that he did not supplement his response to Lieberman's request for *Brady* material because defense counsel already specifically had knowledge of the fact that Fritz and Bailey had eliminated Gillispie as a suspect. (Id. at PageID 7296.)

8

Plaintiff sought to suppress the victims' photo lineup identifications, but the trial court overruled the motion and twice the Second District Court of Appeals upheld the trial court's decision. *See State v. Gillispie* (Jan. 4, 1991), Mont. Cnty Common Pleas Crt No. 90-CR-2667, unreported, attached hereto as **Exh. A**; *State v. Gillespie*, Montgomery App. Nos. 12941 and 13585, 1993 WL 10927, *6-8 (Jan. 21, 1993); *State v. Gillespie*, Montgomery App. No. 14595, 1995 WL 41334, *3 (Feb. 1, 1995). The matter proceeded to a jury trial in February 1991 and, again, after a new trial was granted, in June of 1991. A jury convicted Gillispie each time.

For the next two decades, Gillispie contested his convictions in state and federal court, ultimately filing a petition for a Writ of *Habeas Corpus*. In 2011, his writ was granted. *Gillispie v. Timmerman-Cooper*, 835 F.Supp.2d 482, 509 (S.D.Ohio 2011).

III.    LAW AND ARGUMENT

A.    **Miami Township is entitled to summary judgment on Plaintiff's Section 1983 suppression of exculpatory evidence claim**

Plaintiff asserts that Moore removed and destroyed supplemental reports that contained exculpatory evidence related to Fritz and Bailey's elimination of him as a suspect. (Am. Compl., Doc. 18, PageID 87, 91.) As a result, Plaintiff claims his rights were violated because of the policies, practices, customs, and/or decisions of Miami Township's policymakers. (Id., PageID 94.) For the reasons that follow, Miami Township is entitled to summary judgment on this claim.

1.    Plaintiff's *Monell* claim for suppression of exculpatory evidence must fail

A municipality may be liable under 42 U.S.C. § 1983 if the government body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. *Monell v. New York Dept. of Social Servs.*, 436 U.S. 658, 692 (1978). But, under Section 1983, local governments are responsible only for "their own illegal acts." *Pembaur v. City of Cincinnati*, 475

9

U.S. 469, 479 (1986). It is well settled that a municipality cannot be held liable under Section 1983 on a theory of *respondeat superior*. *Monell*, 436 U.S. at 691.[6]

Plaintiff must also prove that "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by the body's officers." *Monell*, 436 U.S. at 690. Plaintiffs must also prove a municipal custom or policy was the "moving force" behind the constitutional violation alleged. *Polk County v. Dodson*, 454 U.S. 312, 326 (1981). Unless the alleged policy is itself unconstitutional, "considerably more proof than [a] single incident will be necessary" to establish municipal liability. *Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985).

A course of conduct will be considered to be a "custom" only when, even though not authorized by law, "such practices of state officials [are] so permanent and well settled" as to virtually constitute law. *Id.* (citing *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 691 (1978) (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167-68 (1970))). In *Doe v. Claiborne County, Tenn, by and Through Claiborne County Bd. of Educ.*, the United States Court of Appeals for the Sixth Circuit explained:

> A "custom" for purposes of *Monell* liability must be "so permanent and well settled as to constitute a custom or usage with the force of law." *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036 (internal quotation marks and citation omitted); *see also Feliciano v. City of Cleveland,* 988 F.2d 649, 655 (6th Cir.), *cert. denied,* 510 U.S. 826 (1993). In turn, the notion of "law" must include "deeply embedded traditional ways of carrying out state policy." *Nashville, Chattanooga & St. Louis Ry. Co. v. Browning,* 310 U.S. 362, 369 (1940). It must reflect a course of action deliberately chosen from among various alternatives. *City of Oklahoma v. Tuttle,* 471 U.S. 808, 823 (1985). In short, a "custom" is a "legal institution" not memorialized by written law. *Feliciano,* 988 F.2d at 655.

---

[6] If the Court finds that Moore did not violate Plaintiff's constitutional rights as alleged in Count I (1983 claim for suppression of exculpatory evidence), Count II (1983 claim for suggestive identification), Count III (1983 claim for fabricating evidence), Count IV (1983 claim for malicious prosecution, or Count V (1983 claim for destruction of exculpatory evidence), then there is no *Monell* liability for Miami Township.

103 F.3d 495, 507-08 (6th Cir. 1996).[7]

Here, Plaintiff can neither identify a policy nor an official with final authority who issued the policy. He also is unable to point to evidence that there was a permanent and well-settled practice of suppressing or destroying *Brady* material at the MTPD. Plaintiff's Amended Complaint alleges that Chief Angel and other high ranking police officers were "policymakers" for purposes of establishing the unlawful policy that caused him harm. However, he has uncovered no evidence of a policy or decision by any policymaker at the MTPD that endorsed the alleged suppression of exculpatory evidence. Indeed, while Moore testified that he did not know if there was a written procedure or general order that concerned the preservation and production of exculpatory evidence, he knew that he had a duty to turn over anything he had to the prosecutor. (Moore Dep., Doc. 170, PageID 3485-86.) Moore even testified that he did nothing inconsistent with department policies and practices as he understood them in connection with the Best Products investigation. (Id. at PageID 3694.) Sgt. Fritz testified that while at the MTPD, he never had occasion to know of any officer fabricating or destroying evidence (Fritz Dep., Doc. 221, PageID 4549-4550.) Capt. Scothorn also testified that in his 26 years with the department, he was not aware of any officers destroying evidence in any case. (Scothorn Dep., Doc. 254, PageID 7598.) Plaintiff will have to identify an unlawful custom, policy, or practice, connect the policy to the Township, and show that the particular injury was incurred because of the execution of that policy in order to impose liability upon the Township. In this matter, Plaintiff has not, and cannot, identify an unlawful policy such that he can even begin to argue that liability should be imposed on the Township. For all of the foregoing reasons, this Court should grant

---

[7] Miami Township hereby incorporates its review of law applicable to *Monell* claims in the following sections III.B. through III.E. related to Plaintiff's claims for suggestive identification, fabricated evidence, malicious prosecution, and destruction of exculpatory evidence.

11

Miami Township a summary judgment with respect to Plaintiff's suppression of exculpatory material claim.

> 2.    Magistrate Judge Merz' decision in the *habeas* matter that there was a *Brady* violation is not binding on the claim against Miami Township

Miami Township is not bound by Magistrate Judge Merz' decision under the doctrine of *res judicata* because there is a lack of privity between it and the Respondent in that matter, Warden Deb Timmerman-Cooper of the London Correctional Institution.  Miami Township did not have any opportunity to participate in or control the proceedings in the *habeas* matter, thereby preventing its rights from being adequately represented.  Accordingly, re-litigation of Plaintiff's *Brady* claim is proper.

In Ohio, the doctrine of *res judicata* consists of claim preclusion and issue preclusion. *Grava v. Parkman Twp.*, 73 Ohio St. 3d 379, 381, 1995-Ohio-331 (citing *Whitehead v. Gen. Tel. Co.*, 20 Ohio St.2d 108 (1969).  Here, issue preclusion, or collateral estoppel, is relevant to the suppression of exculpatory evidence claim against the Township.  In general, collateral estoppel "precludes further action on an identical issue that has been actually litigated and determined by a valid and final judgment as part of a prior action among the same parties or those in privity with those parties." *State v. Williams*, 76 Ohio St.3d 290, 294 (1996). In Ohio, it applies when:

> (1) the fact or issue was actually and directly litigated in the prior action; (2) the fact or issue was passed upon and determined by a court of competent jurisdiction; and (3) the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action.

*Daubenmire v. City of Columbus*, 507 F.3d 383, 389 (6th Cir. 2007). As such, in order for collateral estoppel to apply, the issues and identity of both parties are equally as relevant. *Columbus v. Union Cemetery Assn.*, 45 Ohio St.2d 47 (1976); *Hicks v. De La Cruz*, 52 Ohio St.2d 71, 74 (1977).  Here, there is no privity of parties for collateral estoppel to apply.

"In order for res judicata to apply, the parties must be the same or must be in privity with the parties to the prior action, as the term 'privity' has been interpreted by the Supreme Court of Ohio." *Buckeye Ret. Co., L.L.C. v. Busch*, 2d Dist. Greene No. 2010-CA-51, 2011-Ohio-1125, ¶ 25. When ascertaining the identity of the parties, "a court must look behind the nominal parties to the substance of the cause to determine the real parties in interest." *State ex rel. Hofstetter v. Kronk*, 20 Ohio St.2d 117, paragraph two of the syllabus (1969). Ohio has adopted the U.S. Supreme Court's finding that, with regards to collateral estoppel, the "identity of parties is not mere matter of form, but of substance." *Id*. (citing *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402 (1940)). Nominal differences are not sufficient to defeat privity. *State v. Slagle*, 2d Dist. Montgomery No. 23934, 2012-Ohio-1575, ¶ 42.

The Ohio State Supreme Court has noted that the dispositive issue is whether the parties sought to be bound by the previous determination "had a controlling participation in the first action." *State ex rel. Estate of Miles v. Village of Piketon*, 121 Ohio St.3d 231, 2009-Ohio-786, ¶ 29. This analysis is not new to Ohio courts. In *Cleveland v. Hogan*, 92 Ohio Misc. 2d 34, 42, 699 N.E.2d 1020, 1026 (Mun. 1998), the court held that because the city of Cleveland could not have participated in the prior action, its lawyers could not have called or cross-examined its own witnesses, it could not have implemented its own trial strategy, and that it could not have appealed the prior decision on its own, there was no privity between the party in the original action and the city of Cleveland in the second action. The same reasoning applies to this case.

Mutuality of interests is required to show that two non-identical parties are in privity. *Brown v. Dayton*, 89 Ohio St.3d 245, 248 (2000). Merely having the same desired outcome is supportive of mutuality, but not indicative. *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St. 3d 59, 2007-Ohio-1102, ¶ 9. What is indicative is whether or not all of the parties to the present proceeding were bound

13

by the prior judgment. *State v. Slagle*, 2d Dist. Mont. No. 23934, 2012-Ohio-1575. Here, the *habeas* decision was made solely regarding constitutional violations in the criminal investigation and prosecution of Gillispie. The finding of constitutional mistakes made by the State of Ohio in the criminal case did not bind Miami Township in any way concerning Plaintiff's Section 1983 federal claims. Miami Township was not required to take any action subsequent to the judgment. This is unlike the State of Ohio in the criminal action. The *habeas* action created an obligation on the State of Ohio, that is, it had to produce the *Brady* material evidence and retry Gillispie. Thus, the State of Ohio had no argument that it was not in privity with the Warden-Defendant, as it was bound by the judgment which created mutuality. However, this is not the case for Miami Township. There is no indication that Miami Township was affected at all by the conditional writ. As such, Miami Township is not bound by any part of Magistrate Judge Merz' decision because there is no mutuality of interest.

More importantly, Miami Township's legal rights were not adequately represented by the Warden-Defendant or the State in the *habeas* action. Miami Township had no ability to control or participate in the *habeas* action. Similar to the City of Cleveland in *Cleveland v. Hogan*, Miami Township could not have participated in the prior action, its lawyers could not have called its own witnesses or cross-examined Plaintiff's witnesses, it could not have implemented its own trial strategy, and it could not have appealed Magistrate Judge Merz' *habeas* decision on its own. Indeed, the Ohio Assistant Attorney General who represented the warden did not even call Scott Moore, the case detective who solved the Best Products case, or Paul Folfas, the prosecutor responsible for obtaining guilty verdicts in both criminal trials, as witnesses at the *habeas* evidentiary hearing. These two men were uniquely situated and had intimate knowledge of the investigation and prosecution so as to refute the evidence presented by Gillispie. Yet, for reasons unknown, the Assistant Attorney General did not call either one as a witness, or call *anyone* as a witness. Even if Miami Township

14

had wished to protect its future interests by participating in the proceedings, it could not have done so. Accordingly, this Court should find that Plaintiff cannot bootstrap the *habeas* ruling and principles of *res judicata* to preclude Miami Township's defense of this claim.

     3. <u>There is no *Brady* violation because Plaintiff and his criminal defense attorney knew about the alleged information in the supplemental reports before Plaintiff's first criminal trial</u>

  Since the *habeas* decision is not determinative of this claim as against Miami Township, Plaintiff must prove that the State failed to provide exculpatory evidence known to the MTPD, thereby violating his right to due process as set forth in *Brady v. Maryland*, 373 U.S. 83 (1963). There is no constitutional violation "if the defendant knew or should have known the essential facts permitting him to take advantage of the information in question, or if the information was available to him from another source." *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir.2000). Police officers fulfill their *Brady* obligations when they disclose to the prosecutor evidence whose exculpatory value is apparent to the officer. *D'Ambrosio v. Marino*, 747 F.3d 378, 389 (6th Cir.2014). New evidence and testimony developed in this case supports the conclusion that Moore fulfilled his *Brady* obligations and that Plaintiff, and his attorney knew the essential facts of the information and the information available to them from another source–former Sgt. Fritz who worked for Plaintiff's criminal defense counsel. Indeed, this new information bolsters the Second District Court of Appeals' July 24, 2009 decision affirming the trial court's conclusion that there had not been any *Brady* violations. *See State v. Gillispie*, Montgomery App. Nos. 22877, 22912, 2009 WL 2197052, *8-20 (July 24, 2009).

  According to Assistant Prosecuting Attorney Paul Folfas, Moore told him that Bailey had eliminated Gillispie as a suspect. (Folfas Dep., Doc. 252, PageID 7287-88.) Folfas then had a conversation with Gillispie's defense attorney, Lieberman, immediately after the first scheduling conference. Lieberman told Folfas that Fritz and Bailey had eliminated Gillispie as a suspect and

requested the supplemental reports they prepared in that regard. (Id. at PageID 7286.) Folfas directed Moore to look for the alleged reports, and in a follow-up conversation, Moore told Folfas that there were no reports generated by Fritz and Bailey eliminating Gillispie. (Id. at PageID 7286, 7360.) A few days later, Folfas advised Lieberman there were no reports generated by Fritz and Bailey that pertained to Gillispie. (Id. at PageID 7286, 7292.) Fritz and Bailey also contacted Folfas before Gillispie's criminal trials and told Folfas that the State had the wrong guy, asked about the supplemental reports. Folfas told them there were no reports. (Id. at PageID 7297-98.) Finally, Folfas testified that he did not supplement his response to Lieberman's request for *Brady* material because defense counsel already specifically had knowledge of the fact that Fritz and Bailey had eliminated Gillispie as a suspect. (Id. at PageID 7296.) Based upon this testimony, Miami Township fulfilled its duty to provide the prosecutor with all exculpatory and impeachment information when Moore told him that Bailey had eliminated Plaintiff as a suspect. In turn, the State of Ohio fulfilled its duties under *Brady* when the prosecutor discussed the issue with Plaintiff's defense counsel and informed him that there were no supplemental reports supporting defense counsel's and Fritz and Bailey's assertion that the State of Ohio had the wrong guy.

More importantly, this Court should find that, even if Bailey's supplemental reports concerning Gillispie existed, the information therein was not material because of Bailey's minimal investigation of Plaintiff as a suspect. Bailey eliminated Gillispie because he believed there was a labor dispute between Wolfe and Gillispie–which Plaintiff refuted when he testified that there was no ill will or bad blood between the two. Bailey also eliminated Gillispie because of his pant size— which is refuted by the twins' testimony that they do not recall anything about the perpetrator's pant size, and even if they did, Bailey thought the size was 40-42, which Plaintiff could have worn due to his size. One of the composites identified the perpetrator's height and weight as 6 feet 3 inches, 250

16

pounds (Composites, Doc. 254-2, PageID 7668), and the other identified it as 6 feet to 6 feet 3 inches, 185-250 pounds (Composites, Doc. 254-3, PageID 7669).) Plaintiff's driver's license identified his height as 6 feet 2 inches and his weight as 240 pounds. (Supp. Report, Doc. 230-5, PageID 6107.) Under these circumstances, eliminating Plaintiff because of a subjective belief that he was not a similar size to the perpetrator was simply not sufficient to eliminate him as a suspect.

Finally, Bailey eliminated Gillispie because he did not think Gillispie resembled the composites. Bailey, who never even met Plaintiff in person let alone had to spend no less than 30 minutes and no more than 90 minutes with him as he raped his victims, was the least credible person to determine whether the composites resembled Plaintiff. Indeed, when C.W. picked Plaintiff out of the photo lineup Moore showed to her, she stated "he looks better than the composite you guys put out." (Photo ID General Guidelines, Doc. 170-4, PageID 3823.) Based upon the more thorough facts developed in this matter, this Court must find that there is no merit to Plaintiff's *Brady* claim under Section 1983 and grant summary judgment to Miami Township.

**B.**     **Miami Township is entitled to summary judgment on Plaintiff's Section 1983 suggestive identification claim because it is barred by the *Rooker-Feldman* doctrine**

Plaintiff's challenge to the photo lineups is an attack on the Montgomery County Common Pleas Court's 1991 decision denying his motion to suppress. *See State v. Gillispie* (Jan. 4, 1991), Montgomery County Common Pleas Court No. 90-CR-2667, unreported (attached hereto as **Exh. A**); *State v. Gillespie*, Montgomery App. Nos. 12941 and 13585, 1993 WL 10927, *6-8 (Jan. 21, 1993) (finding "absolutely nothing in the record to indicate that the photo array was overly suggestive or that the identification procedure was impermissible"; that the detective's comments to the victims about the photo lineup were not "so unduly suggestive as to taint the identification procedure"; that B.W. and C.W. were with the offender for approximately one and one half hours and S.C. was with

17

the offender for at least one half hour, all during daylight hours; and that "the victims' opportunity to observe the appellant and to subsequently identify him with certainty at trial was not outweighed by any corrupting effect that the challenged identification may have had on the victims' in-court identification"); *State v. Gillespie*, Montgomery App. No. 14595, 1995 WL 41334, *3 (Feb. 1, 1995) (finding that Gillispie's argument that his trial counsel was incompetent for failing to file necessary pre-trial motions to suppress "the suggestive identification procedure" was already raised on direct appeal, was thoroughly dealt with by the court of appeals, and that his renewed attack on the identification is "*res judicata* and cannot be raised a second time in a petition for post-conviction relief."). Such a challenge is precluded by the *Rooker-Feldman* doctrine.

This doctrine, which is a "combination of the abstention and res judicata doctrines, stands for the proposition that a federal district court may not hear an appeal of a case already litigated in state court. A party raising a federal question must appeal a state court decision through the state system and then directly to the Supreme Court of the United States." *United States v. Owens*, 54 F.3d 271, 274 (6th Cir.1995) (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983)); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). Jurisdiction to correct state court judgments rests solely with the United States Supreme Court. *Feldman*, 460 U.S. at 482. "Federal courts must give 'full faith and credit' to the judicial proceedings of the state courts.'" *Gottfried v. Medical Planning Servs., Inc.*, 142 F.3d 326, 330 (6th Cir.), *cert. denied*, 525 U.S. 1041 (1998) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 85 (1984)); *see also Pieper v. Am. Arbitration Ass'n, Inc.*, 336 F.3d 458, 462 (6th Cir.2003) ("[T]he *Rooker-Feldman* doctrine [ ] appl[ies] to interlocutory orders and to orders of lower state courts.").

Here, Plaintiff is attacking, for at least a fourth time, Moore's and the MTPD's photo lineups administered to the victims by claiming that they "used improper and suggestive procedures to cause

18

Plaintiff to be misidentified as the perpetrator" and that "[t]his misconduct trained the pretrial identifications of Mr. Gillispie, which were offered against him at trial, and the in-court identifications during his trial." (Am. Compl., Doc. 18, PageID 95 (¶ 84).)  Three times his attacks have been rebuffed, and this Court should likewise find that this claim has already been decided on the merits, and dismiss the claim with prejudice.

Even if this Court determines that the *Rooker-Feldman* doctrine does not apply, Plaintiff is still unable to prove his *Monell* claim by pointing to an unconstitutional custom or policy that was the "moving force" behind the constitutional violation alleged.  In fact, the MTPD had a procedure and policy for creating and administering photo lineups.  That procedure and policy included typed Photographic General Identification Guidelines and Photographic Show-Up Instructions that it used when administering a photo lineup and that Moore read to each of the victims when he administered the lineups. (Photo ID General Guidelines, Doc. 170-4, PageID 3822.)  Those instructions are now commonplace amongst police department nationwide and have been adopted by the International Association of Police Chiefs.  Therefore, Plaintiff can point to no evidence that the MTPD and its policymakers had a custom or policy encouraging its police officers to make unduly suggestive photo lineups.  Miami Township is, therefore, entitled to summary judgment on Plaintiff's suggestive identification claim.

### C.     Miami Township is entitled to summary judgment on Plaintiff's Section 1983 fabricated evidence claim

Miami Township is also entitled to summary judgment on Plaintiff's *Monell* claim for fabricating evidence.  Moore testified that he understood it would be unconstitutional to fabricate evidence. (Moore Dep., Doc. 170, PageID 3464-65.)  He also understood that it would be unconstitutional to put false and/or misleading information in a police report. (Id.) Fritz, Plaintiff's

main witness in his *habeas* matter, testified that he had no facts to conclude that Moore fabricated or destroyed evidence in the Best Products case. (Fritz Dep., Doc. 221, PageID 4484-85.) Sgt. Fritz also said that in all his time at the MTPD, he never had occasion to know of any officer fabricating or destroying evidence, and it would have been his duty as a supervisor to advise someone of that. (Id. at PageID 4549-50.) Capt. Scothorn also testified that he could not recall a case before or after the Best Products case where an officer was accused of fabricating evidence, destroying evidence, removing files, or command staff approving any officer misconduct. (Scothorn Dep., Doc. 254, PageID 7593-95.) In his 26 years with the department, he was not aware of any officer destroying evidence in any case. (Id. at PageID 7598.) Indeed, the department would have initiated an investigation if it discovered an employee violated any practice, policy, procedure, or state and federal law. (Id. at PageID 7595.) There simply is no evidence of a practice, custom, policy, or procedure at the MTPD to fabricate evidence. Plaintiff certainly cannot point to any such policy or procedure, and the testimony from its officers and members of the command staff prove that there was not a custom of fabricating evidence at the department. Accordingly, Miami Township is entitled to summary judgment on this claim.

**D.    Miami Township is entitled to summary judgment on Plaintiff's Section 1983 malicious prosecution claim**

In order for Plaintiff to succeed on his malicious prosecution claim, he must prove (1) that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute; (2) there was no probable cause for the prosecution; (3) as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure and (4) that the criminal proceeding resolved in the plaintiff's favor. *Johnson v. Moseley*, 790 F.3d 649, 654 (6th Cir.2015). The grand jury indicted Plaintiff for rape, kidnapping, gross sexual

20

imposition, and aggravated robbery such that the existence of probable cause is established. "The finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause." *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir.2006). In 2012, the U.S. Supreme Court extended absolute immunity to law enforcement officers for grand jury testimony, including derivative claims for conspiracy to present false testimony and "any other § 1983 claim concerning the initiation or maintenance of a prosecution" which relied upon that testimony. *Rehberg v. Paulk*, 566 U.S. 356, 367-369 (2012).

Following *Rehberg*, the Sixth Circuit Court of Appeals held that a grand jury indictment bars malicious prosecution claims based on allegations of negligence and reckless investigation or critical omissions of material evidence, whether made to the prosecutor or the grand jury. *Sanders v. Jones*, 845 F.3d 721, 734 (6th Cir.2017). A limited claim can still exist where: (1) a law enforcement officer knowingly or recklessly makes false statements in the course of setting a prosecution in motion; (2) the false statements and evidence along with any concomitant misleading omissions are material to the ultimate prosecution of the plaintiff; and (3) the false statements, evidence, and omissions do not consist solely of grand-jury testimony or preparation for that testimony. *King v. Harwood*, 852 F.3d 568, 587-588 (6th Cir.2017). In those cases, the grand jury indictment creates only a rebuttable presumption of probable cause. *Id.* Here, Plaintiff cannot overcome the rebuttable presumption of probable cause created by the grand jury indictment. Plaintiff tried and failed to obtain an order from this Court allowing him access to the grand jury transcripts, and the Montgomery County Court of Common Pleas has not ruled on his motion to disclose the grand jury testimony. Plaintiff, therefore, is unable to point to any evidence that Moore provided any information that was false or fabricated any evidence.

Furthermore, an essential element of a Section 1983 malicious prosecution claim is that the

defendant "made, influenced, or participated in the decision to prosecute." *See Johnson,* 790 F.3d at 654. Similarly under state law, "police officers will not be held liable for the instigation of criminal proceedings, where they provide the prosecutor with a full and fair disclosure of all the material facts as revealed by their investigation, including the accused's exculpatory statements." *Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 316-17 (6th Cir.2005). Here, there is no evidence that Moore or any other officer from the MTPD failed to make a full and fair disclosure of all material facts from the investigation. Prosecuting Attorney Paul Folfas testified that prior to the first scheduling conference, Moore informed him that Fritz and Bailey had apparently eliminated Gillispie as a suspect, but that there were no supplemental reports documenting their investigation.

Additionally, Plaintiff's criminal case also did not terminate in his favor. Although the trial court ultimately dismissed the indictment against Plaintiff, the Sixth Circuit has indicated that the mere fact that a case was dismissed against a defendant does not necessarily mean that it was "resolved in a defendant's favor" for the purposes of a claim for malicious prosecution. In *N. Aliakbarkhananfjeh v. Schramm*, 194 F.3d 1311 (6th Cir.1999), the Sixth Circuit noted that, "[i]n addition to Ohio law, a number of federal cases also hold that a plaintiff must plead and prove in a claim for malicious prosecution under § 1983 that criminal proceedings were concluded in a manner indicative of a factual finding in favor of the accused." *Id.* at *3 (citing *Torres v. McLaughlin*, 163 F.3d 169 (3d Cir.1998)); *Washington v. Summerville*, 127 F.3d 552 (7th Cir.1997), *cert. denied,* 118 S.Ct. 1515 (1998). Similarly, in *Ohnemus v. Thompson*, 594 Fed.Appx. 864 (6th Cir.2014), a criminal charge was dismissed upon the defendant's payment of restitution and the defendant brought a claim for malicious prosecution. *Id.* at 866. Upon review of the lower court's dismissal of the claim, the Sixth Circuit held that "[t]he termination must go to the merits of the accused's professed innocence for the dismissal to be 'favorable' to him." *Id.* at 867 (citing *Alcorn v. Gordon*, 762 S.W.2d

22

809, 812 (Ky. Ct.App. 1988)).  Further, "[o]nly where dismissal indicates that the accused may be innocent of the charges, have Kentucky courts found that the termination of the proceedings were favorable to the party bringing a malicious prosecution claim." *Id.*  Based upon this reasoning, the Court noted that the dismissal of the criminal complaint in *Ohnemus* was based on Plaintiff's payment of restitution and did not suggest that he was innocent of the charges. *Id.*  The Court further held that "in determining whether a dismissal is a termination in favor of the accused, the court is not to consider whether the plaintiff is actually innocent of the charges, but rather, <u>whether the dismissal of the proceedings established his innocence</u>." *Id.* at 868 (citing Restatement (Second) of Torts § 658 cmt. c (1977)).  The Sixth Circuit held that payment of restitution is inconsistent with innocence and, therefore, the dismissal did not constitute a termination in favor of Plaintiff.  *Id.* Similarly here, the *habeas* decision did not establish Plaintiff's innocence and therefore, Plaintiff cannot satisfy the element that the criminal proceeding resolved in his favor.

Finally, there is no evidence of a custom, policy, or practice of MTPD officers providing false information in connection with the prosecution of a case such that Miami Township is liable on a *Monell* claim for malicious prosecution.  Accordingly, this Court should enter a summary judgment for Miami Township on Plaintiff's Section 1983 malicious prosecution claim.

> **E.** **Miami Township is entitled to summary judgment on Plaintiff's Section 1983 destruction of exculpatory evidence claim**

For the same reasons discussed above, Plaintiff's *Monell* claim related to the destruction of exculpatory evidence must also fail because Plaintiff cannot identify a custom, policy, or practice by the MTPD, or a decision by a policymaker, that it destroys exculpatory evidence.  Plaintiff alleges that the MTPD and its officers destroyed police reports, audio recordings, alibi evidence, and crime scene evidence containing genetic material. (Am. Compl., Doc. 18, PageID 98.)  Scott Moore testified

23

that no tapes were intentionally destroyed by anybody, and he did not destroy any reports because he never saw a report generated by Fritz or Bailey concerning Plaintiff. (Moore Dep., Doc. 170, PageID 3397-98, 3645-46.) He also testified that he did not turn on/off his tape recorder during his interview of Plaintiff's girlfriend to be misleading. (Id. at PageID 3645.) Moore also swore in an affidavit that he did not travel to the campground where Gillispie claims to have been in support of an alibi, but that he instead requested and received campground records from Twin Knobs campground in the mail from District Ranger James D. Manner. (See Scott Moore April 25, 2008 Affid., attached hereto as **Exh. B**.)

As for Plaintiff's assertion that the MTPD and its officers destroyed evidence with genetic material, this claim is also not supported by the evidence because the forensic scientist who examined the victims' clothing found no semen or seminal fluid. (See Denise Rankin December 10, 2004 Affid., attached hereto as **Exh. C**; Miami Valley Regional Crime Laboratory September 22, 1988 report admitted as Exhibit 5 in Plaintiff's criminal trial, attached hereto as **Exh. D**.) Although the clothing was returned to the victims before Plaintiff had the opportunity to independently examine and test it, Miami Township cannot be held liable for destroying genetic material that was never present on the clothing. Indeed, Ms. Rankin testified in her deposition for this case that, using the tests available to her in 1988, she found no seminal fluid on any of the evidence she examined and that she would expect those same tests, which are used today, would still produce negative results. (Rankin Dep., Doc. 259, PageID 8346-50.) However, hair fibers were collected from the items submitted to the crime lab, and Plaintiff had access to and the ability to conduct examinations and tests of the fibers before his criminal trial. Examinations of the fibers ruled out Gillispie as the source of those fibers. Based on all of the foregoing, there is simply no evidence to support Plaintiff's claim that Miami Township had a custom, policy, or practice for destroying exculpatory evidence, thus,

Miami Township is also entitled to summary judgment on this claim.

**F.    Miami Township is entitled to summary judgment on Plaintiff's state law indemnification claim**

Miami Township incorporates and restates its arguments in the Supplemental Motion for Partial Judgment on the Pleadings (Doc. 123) filed on February 8, 2018, and its arguments in the Reply in Support of Supplemental Motion for Partial Judgment on the Pleadings (Doc. 144) filed on May 17, 2018. For those reasons, Miami Township is entitled to a summary judgment. Furthermore, if this Court rules that Moore is liable for a *Brady* violation under 42 U.S.C. § 1983, then the Township is absolved from its duty to indemnify him. The Sixth Circuit has held that a police officer who is determined to have committed a *Brady* violation has *per se* acted in bad faith. "Where the police are aware that the evidence in their possession is exculpatory, the Supreme Court's decisions . . . indicate that the police have an *absolute duty* to . . . disclose that information." *Moldowan v. City of Warren*, 578 F.3d 351, 383 (6th Cir.2009). As such, in order to determine whether "bad faith" is required under Section 1983, the critical issue is whether or not the exculpatory value of the evidence is "apparent" or not. *Id*. That is, "[b]ecause an officer's destruction or concealment of obviously exculpatory evidence can never be done in good faith and in accord with the officer's normal practice . . . this rule is the functional equivalent of a requirement that the officer act in bad faith." *See D'Ambrosio*, 747 F.3d at 389; *see also Vaughan v. City of Shaker Heights*, No. 1:10 CV 00609, 2015 WL 1650202, *21 (N.D.Ohio Apr. 14, 2015). While there is no defined test for determining what evidence is apparently exculpatory, it is based upon whether the exculpatory value of the evidence would have been apparent to the detectives given the state of the case at the time. *Id*. (citing *Elkins v. Summit Cty*., 615 F.3d 671, 677 (6th Cir.2010)). Accordingly, if this Court determines that Moore

is liable for a *Brady* violation, then he has acted in bad faith and Miami Township does not need to indemnify him under Ohio Rev. Code § 2744.07(A)(2).

### G.     Miami Township is not liable for punitive damages

To the extent Plaintiff's Amended Complaint can be interpreted as requesting an award of punitive damages against Miami Township, it is well-settled that Plaintiff cannot recover punitive damages against a political subdivision, either under Section 1983, or on his state law claims. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 260 n. 21 (1981); R.C. § 2744.05. The Court explained that punitive damages enforced against a municipality are "in effect a windfall to a fully compensated plaintiff and are likely accompanied by an increase in taxes or a reduction of public services for the citizens footing the bill. Neither reason nor justice suggests that such retribution should be visited upon the shoulders of blameless or unknowing taxpayers." *Id.* at 267. Thus, as a matter of public policy, punitive damages against a political subdivision as an entity does not serve the purpose of punishing the alleged wrongdoer.

In order for Plaintiff to be entitled to ask the jury for an award of punitive damages against the individual defendants under Section 1983, he must show that the individual defendants' conduct was motivated by evil motive or callous indifference to a federally-protected right. *Smith v. Wade*, 461 U.S. 30, 56 (1983). To assert a claim for punitive damages on state law claims, Plaintiff must show that the individual defendants acted with actual malice. *Preston v. Murty*, 32 Ohio St.3d 334, 336 (1987). In this case, Plaintiff cannot show that Scott Moore or any other employee of the MTPD acted with evil motive, callous indifference, or actual malice. Accordingly, Plaintiff's claims for punitive damages should be dismissed.

### H.     Plaintiff has failed to file suit against the real party in interest

26

In the caption of Plaintiff's Amended Complaint, he named "The City of Miami Township" as a defendant and alleged that "Defendant City of Miami Township (the "Township") is an Ohio municipal corporation that operates the Miami Township Police Department ("Department"). (Am. Compl., Doc. 18, PageID 78 (¶ 6).) He then alleged that the <u>City</u> is liable for the violation of his rights caused by the "policies, practices, customs, and/or the decisions of policymakers" (id. at PageID 94 (¶ 81)), and, using his defined term "Township" to describe "Defendant City of Miami Township", alleged that the Township is liable for the violation of his rights caused by the "policies, practices, customs, and/or the decisions of policymakers" (id. at PageID 95 (¶ 88), 96 (¶ 95), 97 (¶ 102), 98 (¶ 109)).

Miami Township placed Plaintiff on notice that he failed to file suit against the real party in interest when it stated in its Answer to Plaintiff's Amended Complaint filed on March 21, 2014 that it was "erroneously designated as the City of Miami Township" and further raised the affirmative defense that Plaintiff failed to join all necessary and indispensable parties as required by Rule 19 of the Federal Rules of Civil Procedure. (Ans., Doc. 36, PageID 284, 289.) Miami Township also noted the erroneous designation in its Supplemental Motion for Partial Judgment on the Pleadings filed on February 8, 2018 (Doc. 123, PageID 2045), its reply in support of same filed on May 17, 2018 (Doc. 144, PageID 2418), and its Lay Witness Disclosures filed on June 11, 2018 (Doc. 152, PageID 2491). Despite these notices, Plaintiff has never corrected his Amended Complaint to properly name Miami Township, Montgomery County, Ohio as a defendant in this matter, and he cannot do so because the deadline to amend pleadings and add parties passed on May 9, 2018. (See Prelim. Pretrial Conf. Order, Doc. 129, PageID 2175.) Chief Ronald L. Hess, the Township's representative for Plaintiff's Rule 30(b)(6) deposition, testified that he was the acting township administrator and chief of police for Miami Township, Montgomery County, Ohio police department, thereby proving that the Township

27

is not a municipal corporation as alleged in the Amended Complaint, and therefore improperly named and sued. (Hess Dep., Doc. 227, PageID 5441.)  Accordingly, this Court must find that Miami Township, as the real party in interest in this matter, has not been properly named, sued, and served, and all claims against the Township and its police department must be dismissed.

      **I.**      **The Miami Township Police Department is not *sui juris***

Plaintiff also alleges the City of Miami Township operates the Miami Township Police Department and that his wrongful conviction was caused by the Department's widespread practices, customs, and policies. (Am. Compl., Doc. 18, PageID 78 (¶ 6), PageID 93 (¶ 74).)  To the extent any of Plaintiff's claims in Counts I, II, III, IV, V and IX can be construed as a claim against the Miami Township Police Department, such claims must be dismissed. Police departments are not *sui juris*; they are merely sub-units of the municipalities they serve. *Jones v. Marcum*, 197 F.Supp.2d 991, 997 (S.D.Ohio 2002) (citing *Williams v. Dayton Police Dept.*, 680 F.Supp. 1075, 1080 (S.D.Ohio 1987)). As such, the Miami Township Police Department cannot be held liable independent of the Township and should be dismissed.

      **J.**      **Miami Township did not conspire to violate Plaintiff's rights**

Throughout his Amended Complaint, Plaintiff alleges certain conspiratorial acts by former Township employees and GM employees to frame him for the crimes that occurred in the Best Products case and the Harrison Township case. (See Am. Compl., Doc. 18, ¶ 1, 49, 56, 58, 60, 62, 65, 77, 84, 91, 98, and 105.)  Initially, "[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state a claim under § 1983."  *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir.1987). "Legal conclusions that are 'masquerading as factual allegations'" will not suffice.  *Heyne v. Metropolitan Nashville Public Schools*, 655 F.3d 556, 564 (6th Cir.2011) (quoting *Terry v. Tyson*

28

*Farms, Inc.,* 604 F.3d 272, 276 (6th Cir.2010)). In order to establish the existence of a conspiracy under 42 U.S.C. § 1983, Plaintiff must prove "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Coon v. Froehlich*, 573 F.Supp. 918, 922 (S.D.Ohio 1983) (internal citation and quotation marks omitted). There is no evidence in this case, beyond mere conjecture and speculation, that Miami Township police officers and GM employees acted together to commit any unlawful act to frame Plaintiff for the rapes of B.W., C.W., and S.C.

Furthermore, to the extent Plaintiff alleges that members of the MTPD conspired together to violate Plaintiff's rights, such a claim is barred by the Intracorporate Conspiracy Doctrine. In general, "in civil conspiracy cases … a corporation cannot conspire with its own agents or employees." *Hull v. Cuyahoga Valley Joint Vocational School Dist. Bd. of Educ.*, 926 F.2d 505, 509-10 (6th Cir.1991). The Doctrine applies to government agencies. *Brace v. Ohio State University*, 866 F.Supp. 1069, 1075 (S.D.Ohio 1994). Employees acting within the scope of their employment benefit from the Doctrine. "[M]embers of the same legal entity cannot conspire with one another as long as their alleged acts were within the scope of their employment." *Jackson v. City of Columbus*, 194 F.3d 737, 753 (6th Cir.1999), *abrogated on other grounds by Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002). Although Plaintiff alleges that defendant officers are sued in their individual capacities (Am. Compl., Doc. 18, PageID 78 (¶ 8)), to the extent Plaintiff alleges or argues that any of the officers, in their capacity as a policymaker for the Township, conspired together to violate Plaintiff's rights, this Court should apply the Doctrine and dismiss Plaintiff's conspiracy claim.

IV.     **CONCLUSION**

For the reasons stated herein, Miami Township respectfully requests that the Court issue an

Order granting it summary judgment on the entirety of Plaintiff's claims.

Respectfully submitted,

/s/ Edward J. Dowd
Edward J. Dowd (0018681)
Dawn M. Frick (0069068)
Christopher T. Herman (0076894)
SURDYK, DOWD & TURNER, CO., L.P.A
8163 Old Yankee Street, Suite C
Dayton, Ohio 45458
(937) 222-2333 || (937) 222-1970 (fax)
edowd@sdtlawyers.com
dfrick@sdtlawyers.com
cherman@sdtlawyers.com
Trial Attorneys for Defendant, Miami Township, Ohio

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court on
September 16, 2019, using the CM/ECF system, which will send notification of such filing to all
CM/ECF participants.

/s/ Edward J. Dowd
Edward J. Dowd (0018681)