

# Transcript of Tim L. Wilson

**Date:** December 18, 2018
**Case:** Gillispie -v- City of Miami Township, et al.

**Planet Depos**
**Phone:** 888.433.3767
**Email::** transcripts@planetdepos.com
**www.planetdepos.com**

```
1                UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF OHIO
2                      WESTERN DIVISION

3      _____

4      ROGER DEAN GILLISPIE,

5                   Plaintiff,

6      vs.                            Case No. 3:13-CV-416

7      CITY OF MIAMI TOWNSHIP, et al.,

8                   Defendants.
       _____
9

10

11

12

13                   Videoconference Deposition of:

14                   TIM L. WILSON

15                   Taken on behalf of the Plaintiff

16                   9:14 A.M.

17                   December 18, 2018

18

19

20

21

22

23     _____
24

25     Reported by: Sandra Andrys, LCR, RPR, RMR
```

Transcript of Tim L. Wilson
Conducted on December 18, 2018                        2

```
1                  A P P E A R A N C E S

2

3

4    For the Plaintiff:

5          MR. DAVID B. OWENS
           Attorney at Law
6          Loevy & Loevy
           311 North Aberdeen Street, Suite 100
7          Chicago, Illinois 60607
           (312)243-5900
8          David@loevy.com

9

10   For the Defendant City of Miami Township:

11         MR. EDWARD DOWD
           Attorney at Law
12         Surdyk, Dowd & Turner Co., LPA
           8163 Old Yankee Street, Suite C
13         Dayton, Ohio 45458
           (937)222-2333
14         Edowd@sdtlawyers.com
           (Appeared via videoconference)
15

16
     For the Defendants Marvin Scothorn and Tim Wilson:
17
           MR. PATRICK KASSON
18         Attorney at Law
           Reminger Co., LPA
19         200 Civic Center Drive, Suite 800
           Columbus, Ohio 43215
20         (614)232-2418
           Pkasson@reminger.com
21

22

23

24

25
```

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    3

```
 1    For the Defendants John DiPietro, Steven Gray and
      Thomas Angel:
 2
              MR. JONATHAN T. DETERS
 3            Attorney at Law
              Schroeder, Maundrell, Barbiere & Powers
 4            5300 Socialville-Foster Road, Suite 200
              Mason, Ohio 45040
 5            (513)707-4249
              Jdeters@smbplaw.com
 6            (Appeared via videoconference)

 7


 8
      For the Defendant Scott Moore:
 9
              MR. JEFFREY T. KAY
10            Attorney at Law
              Mazanec, Raskin & Ryder Co., LPA
11            100 Franklin's Row
              34305 Solon Road
12            Cleveland, Ohio 44139
              (440)248-7906
13            Jkay@mrrlaw.com
              (Appeared via videoconference)
14

15

16

17

18

19

20

21

22

23

24

25
```

Transcript of Tim L. Wilson
Conducted on December 18, 2018      4

```
1                    I  N  D  E  X

2                                             Page
     Examination
3    By Mr. Owens                                6

4    Examination
     By Mr. Dowd                               101
5
     Examination
6    By Mr. Kay                                111

7    Examination
     By Mr. Owens                              113
8
     Examination
9    By Mr. Dowd                               115

10

11

12

13

14               E  X  H  I  B  I  T  S

15                                            Page

16   (None entered.)

17

18

19

20

21

22

23

24

25
```

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    5

```
1              S T I P U L A T I O N S

2

3

4          The videoconference deposition of TIM L.

5   WILSON was taken by counsel for the Plaintiff, at

6   Baymont by Wyndham, 4038 U.S. 127, Crossville,

7   Tennessee, on December 18, 2018, for all purposes

8   under the Federal Rules of Civil Procedure.

9          All formalities as to caption, notice,

10  statement of appearance, et cetera, are waived.  All

11  objections, except as to the form of the questions,

12  are reserved to the hearing, and that said deposition

13  may be read and used in evidence in said cause of

14  action in any trial thereon or any proceeding herein.

15          It is agreed that SANDRA ANDRYS, LCR,

16  RPR, RMR, Notary Public and Court Reporter for the

17  State of Tennessee, may swear the witness, and that

18  the reading and signing of the completed deposition

19  by the witness are not waived.

20

21

22

23

24

25
```

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    6

```
1                      *   *   *

2

3               MR. OWENS:  Do the folks who are on the

4    video want to identify themselves first, and can you

5    confirm that you can hear me?

6               MR. DETERS:  I'm here representing Angel,

7    Gray, and DiPietro; they are all defendants.

8               MR. KAY:  Jeff Kay here -- David, I can

9    hear you -- on behalf of Scott Moore.

10              MR. OWENS:  Anyone else?  Is that it?

11              MR. DETERS:  Ned is on as well.

12              MR. DOWD:  Sorry, I had it on mute.  I

13   can hear you.

14              MR. OWENS:  All right, great.

15

16                     *   *   *

17                   TIM L. WILSON

18   was called as a witness, and having first been duly

19   sworn, testified as follows:

20

21                     EXAMINATION

22   QUESTIONS BY MR. OWENS:

23   Q.     Good morning, sir.

24   A.     Good morning.

25   Q.     Could you please state and spell your name
```

1  for the record?

2  A.      Tim Lee Wilson, W-I-L-S-O-N, is the last

3  name; Timmy, T-I-M-M-Y, middle name Lee, L-E-E.

4  Q.      And, Mr. Wilson, have you ever been deposed

5  before?

6  A.      Yes.

7  Q.      Okay.  How many times have you been deposed?

8  A.      Once.

9  Q.      And what was the context of that deposition?

10  A.      It was a civil case.  My granddaughter at

11  birth died, and it was a civil case as a result of

12  that.

13  Q.      So was it -- is it fair to say it wasn't

14  related to any of your duties or capacities with

15  respect to being a police officer?

16  A.      Correct.

17  Q.      And have you ever been named as a defendant

18  in a lawsuit outside of this one?

19  A.      No.

20  Q.      Are you aware of any formal complaints that

21  have been lodged against you as a result of or

22  relating to your police work in any way?

23  A.      Repeat that for me.

24  Q.      Are you aware of any formal complaints having

25  ever been filed against you related to your police

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    8

1   work?

2   A.      No.

3   Q.      Were you ever disciplined by the Miami

4   Township Police Department?

5   A.      Yes.

6   Q.      For what?

7   A.      We had a -- there was a KKK rally in Dayton,

8   Ohio.  I was a supervisor for a squad of officers to

9   protect and block off a certain area.  One of the

10  officers came up behind me with a nightstick and

11  wrapped me over the head.  I told him to stop.

12          He did it, I believe, two more times, and

13  on the third time he did it, he approached me from

14  the side, and we were in an area with protesters and

15  I thought it was a protester and I struck the

16  officer, and I received a day off on disciplinary

17  action, and so did he.

18  Q.      Any other times you were disciplined by the

19  Miami Township Police Department?

20  A.      Not that I recall.

21  Q.      What did you do to prepare for your

22  deposition today?

23  A.      Looked over a few depositions, read those.

24  They were sent to me by my attorney.

25  Q.      And which depositions did you read?

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    9

1    A.       I read Scott Moore's, Rick Wolfe.  I glanced

2    over a couple other employees from General Motors

3    that I don't recall their names.  I don't know them.

4    I think that was all I saw.

5    Q.       All right.  Was one of the employees David

6    Burke?  Does that sound familiar?

7    A.       Yes.

8    Q.       Was one of the GM employees, was that Keith

9    Stapleton?

10   A.       Yes.

11   Q.       Did you know Mr. Stapleton?

12   A.       No.

13   Q.       Anything jump out at you when you read the

14   deposition of Mr. Moore?

15   A.       Well, refresh my memory on -- or it just told

16   me a story, but I don't know about the word "jumped

17   out" to me.

18   Q.       Was there anything that you saw in the

19   deposition transcript for Mr. Moore that struck you

20   as contrary to what your memory was?

21            MR. KASSON:  Objection.  If you can

22   remember everything that was said, you can go ahead

23   and answer.

24            THE WITNESS:  I don't -- are you saying

25   everything -- do I remember everything that happened

```
1    back in '90- --
2              MR. OWENS:  No.
3              MR. KASSON:  He's asking you whether you
4    remember everything that's said in Moore's deposition
5    that you disputed, if you do.
6              THE WITNESS:  No, I do not.  I do not
7    remember everything, no.
8    BY MR. OWENS:
9    Q.     What I'm asking you, actually, is something
10   different, which is whether or not anything, that as
11   you were reading the deposition, stuck out to you
12   that you disagreed with?
13   A.     No.
14   Q.     Do you agree with anything -- there was
15   nothing sitting here today that you can recall
16   disagreeing with when you read Mr. Moore's
17   deposition?
18   A.     Truthfully, to answer that question, I'd have
19   to sit here and read it again.  It's been probably a
20   day or two since I read it.  So I don't want to get
21   trapped here and say one thing and have to change my
22   mind.
23   Q.     Right.  And what I'm asking you for is the
24   basis of your memory.  I know you don't have the
25   document in front of you.
```

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    11

1          How long ago did you read the deposition

2   transcript?

3   A.      Probably about three days ago.

4   Q.      Okay.  And so what I'm wondering is, can you

5   tell me what you can recall from reading that three

6   days ago, whether or not there was anything that you

7   can recall that you disagreed with?

8          MR. KASSON:  Again, objection.  Asked and

9   answered.  You can answer it again.

10         THE WITNESS:  No.  I can't say that I

11  openly disagree with anything specific, no.

12  BY MR. OWENS:

13  Q.      Okay.  Was there anything that you read that

14  you thought Mr. Moore said was untrue?

15  A.      Not that I recall, no.

16  Q.      Was there anything that you read in

17  Mr. Moore's deposition that you can recall that

18  conflicted with your memory of how things worked in

19  Miami Township during the period of time in which the

20  Wise sisters' rapes were being investigated?

21  A.      It seemed like it was pretty much accurate.

22  Q.      Now, you read the deposition testimony of

23  Mr. Wolfe as well, correct?

24  A.      Yes.

25  Q.      And did you know Mr. Wolfe at the time of the

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    12

1   Wise sisters' rape investigation?

2   A.      I did.

3   Q.      And how did you know Mr. Wolfe?

4   A.      I knew Mr. Wolfe just from being a part-time

5   reserve police officer at Miami Township.

6   Q.      Were you in the Miami Township Police

7   Department when he was there?

8   A.      As a part-time officer, yes.  Actually, not

9   even as a part-time; as a reserve voluntary officer,

10  yes.

11  Q.      You were a reserve or he was a reserve?

12  A.      We both were.

13  Q.      And then you later became full time?

14          (An off-the-record discussion was held.)

15          MR. DOWD:  I think the question was

16  whether there was anything that's conflicted with his

17  memory of how things operated in Miami Township at

18  the time of the Wise sisters' rapes, and then it cut

19  out.

20          MR. OWENS:  Okay.  I asked about whether

21  or not there was anything -- those same sorts of

22  questions with respect to Mr. Wolfe, and getting some

23  background information about his memory of and

24  relationship with Rick Wolfe, and I was just about to

25  ask the same series of questions about Mr. Wolfe's

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    13

1   dep, now that we have established that they knew each
2   other from being reserves officers.
3              MR. DOWD:  Okay.  Let me just back up.
4   In answer to the question whether he recalled
5   anything that conflicted with his memory of how
6   things operated in Miami Township at the time of the
7   Wise rapes, we didn't hear it.  What was the answer
8   to that question?
9              MR. OWENS:  The answer is "no."
10             MR. DOWD:  Okay.  All right.  Thank you.
11  BY MR. OWENS:
12  Q.      So you were a reserve officer of Miami
13  Township at the same time Rick Wolfe was?
14  A.      I have to think about this, because I was
15  there and gone several times.  I believe I was just
16  prior to being drafted into the military in 1972.  I
17  think Rick was a reserve officer then, so I knew him,
18  did not know him well.
19             And I think he stayed there when I went
20  into the military.  And when I came back in '75, I
21  think he was still there.
22  Q.      After you came back to Miami Township in
23  1975, how long did you stay with the department?
24  A.      I did not.  After returning back from Korea,
25  I immediately went to Warren County Sheriff's Office

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    14

1    in 1975.

2    Q.      How long were you at Warren County Sheriff's

3    Office?

4    A.      '75 until '86.

5    Q.      And then where did you go in 1986?

6    A.      I went to Montgomery County, Ohio, courtroom

7    security detail as a supervisor.

8    Q.      How long were you working at Montgomery

9    county as a courtroom supervisor?

10   A.      For about two years, until 1988.

11   Q.      Where did you go in 1988?

12   A.      In 1988, I was hired at the Montgomery

13   County, Ohio, prosecutor's office as a prosecutor's

14   investigator; welfare, theft, and fraud.

15   Q.      What were your duties as a welfare, theft,

16   and fraud investigator for the Montgomery County

17   prosecutor's office in 1988?

18   A.      I received case reports or complaints from my

19   supervisor, and it was my duty to investigate people

20   that were on welfare, receiving benefits through

21   Montgomery County in the state of Ohio, cheaters of

22   welfare funds.  It was my duty to investigate and

23   bring to -- bring the case to the prosecutor's

24   office.

25   Q.      Did you investigate any sexual assaults while

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    15

1    you were at the prosecutor's office?

2    A.      No.

3    Q.      Murders, any serious crimes like that?

4    A.      No, strictly welfare, theft, and fraud.

5    Q.      How long were you in that position?

6    A.      Until 1989 -- I'm sorry, until 1990, June of

7    1990.

8    Q.      So what happened in June of 1990?

9    A.      I believe it was right on my birthday, June

10   15 of 1990, I received a call from Captain Scothorn

11   of the Miami Township Police Department asking if I

12   was interested in a detective sergeant's position at

13   the police department.

14           We entered into negotiations, and right

15   around that date I was hired to go to Miami Township

16   Police Department as a detective sergeant.

17   Q.      What did the negotiations involve?

18   A.      We just talked about pay.  We talked about

19   hours.  We talked about company cars, retirement

20   system, that type thing.

21   Q.      Okay.  And so what were you hired on to do

22   specifically?

23   A.      Run internal affairs at the Miami Township

24   Police Department -- excuse me, the "run" word is not

25   right.  It is to investigate internal affairs under

1    the supervision of Captain Marvin Scothorn and to be

2    the sergeant of the detective section.

3    Q.      So you sort of had two multiple roles there;

4    is that right?

5    A.      Yes, sir.

6    Q.      Okay.  Tell me first about what your duties

7    were from the internal affairs side of things.

8    A.      I would be assigned a case generally from

9    Captain Scothorn or Chief Tom Angel concerning any

10   kind of allegations against any of our officers,

11   misconduct, criminal cases, civil -- not civil, but

12   internal cases, and I would investigate them and

13   report back to the captain.

14   Q.      Were there any written general orders or

15   special orders governing how internal affairs

16   investigations worked in 1989?

17   A.      1990.

18   Q.      Excuse me, yeah, June of 1990.  Got it.

19   A.      We had a standard operating procedure

20   booklet, pamphlet.

21   Q.      And were you, as the internal affairs

22   supervisor, did you have somebody below you who did

23   the investigation, or did you do the investigation

24   yourself?

25   A.      I did.

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    17

1    Q.      And then you would report that up the chair

2    to the captain and the chief?

3    A.      Yes.

4    Q.      And the chief at the time in 1990 was Tom

5    Angel?

6    A.      Yes.

7    Q.      And the captain was Marvin Scothorn?

8    A.      Scothorn.

9    Q.      Scothorn, excuse me.

10   A.      Yes, sir.

11   Q.      And Captain Scothorn is the one who hired

12   you, correct?

13   A.      Well, the chief of police actually hired me.

14   Captain Scothorn, I guess, kind of reached out to me.

15   Q.      Did you know Captain Scothorn from -- how did

16   you know him?

17   A.      We had been personal friends and associated

18   on and off with Miami Township Police Department for

19   50 years.

20   Q.      When did you first meet Captain Scothorn?

21   A.      It was either 1968 or 1969, we were both in

22   high school.  Chief Edward Ward of the Miami Township

23   Police Department put out an advertisement for police

24   cadets, and I applied with the department as a police

25   cadet, and so did Marvin Scothorn, and that's when we

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    18

```
1    first met.
2    Q.      You met as police cadets?
3    A.      Yes, sir.
4    Q.      You didn't meet at high school?
5    A.      No, sir.
6    Q.      All right.  But you were both about high
7    school age?
8    A.      We were high school.
9    Q.      Do you keep up with Mr. Scothorn now?
10   A.      I do.
11   Q.      So was Mr. Scothorn reserve officer in Miami
12   Township when you were?
13   A.      Yes.
14   Q.      Now, June of 1990, did Mr. Scothorn tell you
15   why he was calling you about this position?
16   A.      Yes.
17   Q.      What was that?
18   A.      He said that Steve Fritz had tendered his
19   resignation, and that he thought I would be a good
20   fit to come in, to come back to Miami Township to
21   take over the detective section and internal affairs
22   for him.
23   Q.      Anything else you can remember that he told
24   you about Steve Fritz leaving the department?
25   A.      Yes.
```

Transcript of Tim L. Wilson
Conducted on December 18, 2018          19

1    Q.      What's that?

2    A.      He said that Steve Fritz was a disgruntled

3    employee.  I do not know exactly why he was

4    disgruntled.  I don't even remember if Captain

5    Scothorn told me.  He said that he had walked in and

6    tendered his resignation, and came back a few days

7    later, after they had contacted me, came back into

8    the office and said, "I want" -- "I change my mind,

9    I'm not leaving."  And they said, "Yes, you are.  We

10   have replaced you."

11   Q.      Were you there when that happened?

12   A.      No.

13   Q.      That's just what somebody told you?

14   A.      That's what Captain Scothorn told me.

15   Q.      Did you ever overlap with Steve Fritz in the

16   department?

17   A.      No.

18   Q.      Anything else you can recall about why

19   Mr. Scothorn told you that they needed to fill the

20   position?

21   A.      Said they had given some thought to

22   internally filling the position, and they thought an

23   outsider was more appropriate.

24   Q.      Okay.  Did he say why?

25   A.      No, I don't think so.

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    20

1    Q.       All right.  So one aspect of your job when
2    you first joined the department was to do internal
3    affairs, correct?
4    A.       Yes.
5    Q.       The other side of the coin, as it were, was
6    to be the sergeant for the detective division,
7    correct?
8    A.       Yes.
9    Q.       And what were your duties as the sergeant for
10   the detective division in 1990?
11   A.       Overall supervision of about -- I think we
12   had about five detectives, detectives that were
13   assigned cases, anything from serious misdemeanors to
14   homicides.  We had a drug undercover investigator; I
15   would supervise him.  Generally assign reports to
16   detectives to investigate, and offer assistance to
17   them and supervision whenever they needed it.
18   Q.       Now, at the time, you said there were about
19   five detectives.  Do you recall any of the detectives
20   who were there that you directly supervised when you
21   joined the department?
22   A.       Yes.
23   Q.       What's that?
24   A.       There was --
25   Q.       Or, excuse me, who is that?

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    21

1    A.      There was Detective Walter Nock, who is
2    deceased, drug --
3    Q.      Can you spell Nock for me?
4    A.      It was N-O-C-K.
5    Q.      And did you say he was a drug investigator?
6    A.      Drug investigator, yes, sir.
7    Q.      Who else?
8    A.      There was Michael Carr, C-A-R-R.  There was
9    Scott Moore.  There was John DiPietro.  Myself.  I
10   think that was it at the time, when I first got
11   there.
12   Q.      Okay.  Did any more -- were there any
13   additional detectives added within the first couple
14   years you were there, so say between when you arrived
15   in June of 1990 and the end of 1992, those first 18
16   months?
17   A.      I don't think there was any added.  There may
18   have been transfers in and out of detective section,
19   promotions.
20   Q.      Anything that you can -- any person that you
21   can recall?
22   A.      At those two years?
23   Q.      Yes, sir.
24   A.      Those first two years?  I really don't
25   remember exactly the dates of the transfers, but I'm

1    thinking that that staff that I named to you was

2    pretty much it for the first couple years.

3    Q.      Okay.  And now what were your duties in

4    relationship to supervising these detectives when

5    they were working on ongoing investigations?

6    A.      When they were working an ongoing

7    investigation?

8    Q.      Yes, sir.

9    A.      As I said, first of all, I considered myself

10   not a micro manager.  I didn't look over their

11   shoulder constantly.  They were all fairly

12   experienced officers promoted into the detective

13   section.  They had all, I believe, handled some

14   pretty significant cases in the past.

15           My daily duties were just to observe, to

16   be there for them.  If they needed assistance or they

17   needed help on a case, I would assign additional help

18   to them.  Ensure that their cases was wrapped up, so

19   to say, presented to the prosecutor's office, you

20   know, in as timely as could be.  To assist them if

21   they requested any assistance for search warrants.

22   Just generally being there, being there for them.

23   Assigning cases to them.  If they submitted reports,

24   I'd review the reports, document the reports to

25   records or whoever.

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    23

1   Q.      Anything else you can recall?

2   A.      That was about it.

3   Q.      All right.  You mentioned that you would

4   review reports?

5   A.      Yes.

6   Q.      What was that process like?  And at the

7   time -- I just want to be really clear so that we are

8   on the same page.

9           I'm talking about between June of 1990,

10  for about a year or year and a half after, until the

11  beginning of 1992.

12  A.      If I recall, that was about the time period

13  that they switched from handwritten reports to

14  computerized generized [sic] reports.

15          The detectives would open up the main

16  case file or case report in the computer that they

17  had been assigned, and they would do a supplemental

18  report as the investigation was ongoing.

19          And they would either -- once finished

20  with that supplemental report, they would either, or

21  both, save it in the computer and/or print it out if

22  they were pretty much finished with it.

23          Once I received a printed copy of that

24  report, I'd look at it, review it, make suggestions,

25  sometimes talk to the detectives about it if need be,

1    sometimes not, and generate or send that report to

2    the records section for filing.

3    Q.      And when the reports were computerized, the

4    case reports, would you review them along the way or

5    just at the end of the investigation?

6    A.      Generally at the end -- not generally.

7    Mostly at the end.

8    Q.      And what circumstances would you not

9    review -- strike that.

10           In what circumstances would you review

11   supplementary case reports before the end of the

12   investigation?

13   A.      Actually, I would have to say I don't

14   remember a specific incident of opening up a computer

15   to get into a detective's case file to look at it, so

16   I would have to say it was mostly at the end of the

17   case.

18   Q.      And just to be clear about your testimony,

19   you can't recall ever having gone in before the case

20   was closed on a digital case file; is that correct?

21   A.      Maybe if I had a supplement that I did, that

22   needed documented, maybe I would open up that file,

23   do the supplement, follow the same procedure, get it

24   to records.  But to go in to say, I want to check on

25   Detective X's report, I don't recall ever doing that.

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    25

1   Q.      Great.  And I want to hand you what's been

2   previously marked as Deposition Exhibit 6 from

3   Officer Gray's deposition, and I'm just going to

4   start at the third page.

5               Sir, do you recognize that?

6               MR. KASSON:  So what I want you to do

7   first, before he directs you to the page, I want you

8   to look at the document starting with page 1.  You

9   don't have to read the whole thing, but I want you to

10  look at the entire document to familiarize yourself.

11              MR. OWENS:  It's totally inappropriate

12  for you to direct the witness during this deposition.

13              MR. KASSON:  There's nothing wrong with

14  me telling him to look at the entire document before

15  he answers questions.  It's done all the time.

16              MR. OWENS:  It's never done.  I mean, I'm

17  not trying to be obstructive or anything like that,

18  but I don't appreciate instructions to a witness

19  during a deposition.

20  BY MR. OWENS:

21  Q.      Sir?

22  A.      Yes.

23  Q.      If your attorney has some additional

24  questions that he wants to ask you based upon this

25  document, when I'm done, he can.  I'm going to move

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    26

1   on, okay?

2               MR. KASSON:  Well, he's going to get a

3   chance to look at the document before he's questioned

4   on it.

5               MR. OWENS:  I mean, you are interrupting

6   me.  I wanted to ask him a question.  There's no

7   reason for you to interrupt me right now.  I mean,

8   you can ask him what you want to when it's your

9   chance.

10              MR. KASSON:  I'm telling him not to

11  answer until he gets a chance to look at the

12  document.

13              MR. OWENS:  There's not even a question

14  pending.  You are just instructing him to do things

15  during the deposition that's completely

16  inappropriate.

17              If we were at trial and he was on the

18  stand, you wouldn't get up there and say, hey, look

19  at the whole thing, would you?

20              MR. KASSON:  For 27 years witnesses have

21  been able to look at documents before they get to

22  answer.

23              MR. OWENS:  I have no problem with that.

24  I have a problem with you directing him to do so

25  during the deposition.

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    27

```
 1              MR. KASSON:  Well, he's going to look at
 2    it before he answers, so he knows.
 3              MR. OWENS:  This is completely
 4    objectionable.  It's completely inappropriate.  It's
 5    no different than you saying, hey, answer this way,
 6    in my mind.
 7              MR. KASSON:  Are you trying to trick him
 8    or something?
 9              MR. OWENS:  No.
10              MR. KASSON:  Then let him look at it.
11    What's the matter?
12              MR. OWENS:  I wanted to ask him a really
13    simple question about the format of the document, and
14    now he's sitting here for five minutes wasting my
15    time.  It's my questioning.
16              MR. KASSON:  Sure.  Are you ready?
17              THE WITNESS:  May I have just another
18    minute to look this over?
19              MR. OWENS:  You can take as much time as
20    you want.
21              THE WITNESS:  Thank you, sir.
22              I've familiarized myself.  I did not read
23    it.  Your question?
24    BY MR. OWENS:
25    Q.      Sure.  Did you review that before your
```

1    deposition today?

2    A.       No, sir.

3    Q.       Did you review any documents before your

4    deposition today, outside of the deposition

5    transcripts that you described earlier?

6    A.       Today?

7    Q.       Did you review any other documents -- or

8    strike that.

9             Did you review any documents at all

10   outside of the deposition transcripts to prepare for

11   your deposition today?

12   A.       No.

13   Q.       No police reports?

14   A.       No.

15   Q.       No supplementary reports?

16   A.       I don't have any.

17   Q.       Okay.  Did you review any documents from

18   Miami Township that had the Miami Township -- were on

19   Miami Township letterhead?

20   A.       No.

21   Q.       Did you review any photographic ID or lineup

22   reports?

23   A.       No.

24   Q.       Now, the document that you familiarized

25   yourself with, Exhibit 6, from Gray's deposition, is

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    29

1    this the type of forms that supplementary reports

2    would take when they were done in the computer by the

3    detectives in 1990 and 1991?

4    A.      Is it a type of format, is that your

5    question?

6    Q.      Yes, sir.

7    A.      Yes, it is.

8    Q.      Was there a standardization for the format,

9    or how did that work?

10   A.      There was -- to my knowledge, there was no

11   written standardization.  No SOP.

12   Q.      Sure.

13   A.      I think this was a common practice that this

14   is the way things worked in a computer when you were

15   working with the report.

16   Q.      Got it.

17           I know that computers have come a long

18   way since 1990.  Do you remember whether or not the

19   program was essentially like a Word document or some

20   kind of continuous file, or what the setup was in

21   1990 and 1991?

22   A.      I don't know, sir.

23   Q.      Was it something that where a detective would

24   have a particular folder or were there separate --

25   was there a template of any sort?

1    A.       All I know is they got into the computer,

2    opened up the case file and started their work.

3    Q.       Okay.  And do you know whether or not at the

4    time in 1990 and 1991 that edits could be made to the

5    entire document once things were put in?

6    A.       I would assume someone could edit.

7    Q.       Yeah.

8    A.       Prior to it being printed off, I would

9    assume, yes.

10   Q.       And once it was printed off, it was your duty

11   to review it?

12   A.       If I was there and received a report, yes.

13   Q.       Who else would -- strike that.

14            Would there be anybody else who might be

15   there or responsible to review a report if you

16   weren't there at the time?

17   A.       Yes.

18   Q.       Who is that?

19   A.       It could have been Corporal Bob Burling.

20   Q.       What was his role?

21   A.       I think I forgot to even mention him as some

22   of the original detectives, but Corporal Burling was

23   there and a detective sergeant at the time.  His role

24   was basically my assistant.  He would take over my

25   duties in my absence.

Transcript of Tim L. Wilson
Conducted on December 18, 2018                              31

```
1    Q.      Okay.  Fair to say that when a detective at
2    the Miami Township Police Department submitted a
3    report in 1990 or 1991, that it had to be reviewed by
4    some sergeant or supervisor?
5    A.      When they printed it out, when they were
6    finished with their summaries or finished with the
7    investigation and it crossed our desk, yes.
8    Q.      I guess what I'm wondering is, as a matter of
9    policy and practice at the time, did detectives have
10   to submit every report to a supervisor?
11   A.      I would say yes.
12   Q.      Now, other than the depositions you read, did
13   you do anything else to prepare for your deposition
14   today?
15           MR. DOWD:  David, I didn't hear that
16   question, please.
17           MR. OWENS:  I said, other than the
18   depositions that we previously discussed, was there
19   anything that you did to prepare for your deposition
20   today.
21           MR. DOWD:  All right.  Thanks.  I just
22   didn't hear it, I apologize.
23           MR. OWENS:  Okay.
24           THE WITNESS:  I just arrived here.
25   ///
```

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    32

```
1   BY MR. OWENS:

2   Q.      Well, thank you for that.

3   A.      Yes, sir.  You are welcome.

4   Q.      Did you have any conversations with your

5   attorneys about the deposition today?

6           MR. KASSON:  Objection.  Don't answer

7   that.  I think you can ask whether he had a

8   conversation with me, and the minute you say anything

9   about the deposition, you are intruding into what was

10  discussed, right, so --

11  BY MR. OWENS:

12  Q.      So did you have any meetings with your

13  attorneys in advance of your deposition today?

14  A.      Not today, no.

15  Q.      Did you have any attorneys at -- excuse me.

16          Did you have any meetings at any time

17  with your attorneys in advance of your deposition

18  today?

19  A.      Yes.

20  Q.      And how long was the most recent meeting?

21  A.      Yesterday.

22  Q.      And how long was the meeting?

23  A.      Two hours, max, I think.

24  Q.      And was anybody else present at the meeting

25  other than you or your attorneys?
```

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    33

```
 1    A.      No.
 2    Q.      And have you had any conversations with any
 3    of the other named defendants in this lawsuit about
 4    the lawsuit?
 5    A.      Today?
 6    Q.      No, at any point.
 7    A.      Yes.
 8    Q.      All right.  Who have you spoken with?
 9    A.      I've spoken with my -- you said "defendants."
10    I've spoken with Steve Gray and Marvin Scott.
11    Q.      Have you spoken with anybody else from the
12    Miami Township Police Department about this lawsuit?
13    A.      No.
14    Q.      Have you spoken with any witnesses in this
15    case about the lawsuit?
16    A.      No.
17    Q.      Have you -- outside of your attorneys,
18    Mr. Scothorn and Mr. Gray, who have you spoken with
19    about this lawsuit?
20    A.      My wife.
21    Q.      What did you tell your wife?
22    A.      Of course, she was curious about what it was
23    all about.  And I basically told her that this rape
24    case had occurred prior to me arriving at Miami
25    Township.  Was assigned to Scott Moore by an
```

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    34

```
1   authority other than me to investigate.  He
2   investigated.  It went to trial twice.
3           The man was convicted twice.  Sent to
4   prison, got out someway or another 20 years later.
5   And found some attorneys to file a lawsuit for
6   allegedly a conspiracy of trying to set him up and
7   frame him.
8   Q.      All right.  Sorry.
9   A.      That was it.
10  Q.      I didn't mean to interrupt you.  So it's
11  sometimes like in the course of normal conversation
12  when you think somebody is done, you might start in,
13  so let me give you some space.
14          Were you finished with your answer?
15  A.      I was just going to say, so she wanted to
16  naturally ask, "Did you do anything wrong?  Are we in
17  jeopardy, or what?"
18          And I just told her, I said, "We have
19  good counsel representing us."  And, "No, I didn't do
20  anything wrong."
21  Q.      All right.  What did you talk about with
22  Mr. Scothorn?
23  A.      We talked about who actually assigned that
24  case to Scott Moore.  He gave me his answers.  And we
25  talked about did either one of us do anything wrong
```

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    35

1    or know of anything wrong.

2    Q.      Who assigned the case to Scott Moore?

3    A.      My understanding from Captain Scothorn was,

4    after Fritz left or right at the time period that --

5    let me back up.

6            Right at the time period he left, Captain

7    Scothorn's words were, "The chief and I decided to

8    put fresh eyes on this investigation."  And it was

9    assigned to Scott Moore for investigation prior to me

10   getting to Miami Township.

11   Q.      And that's what Captain Scothorn told you?

12   A.      Yes.

13   Q.      And when was that?

14   A.      Probably back in the summer.  I don't have an

15   exact date.

16   Q.      Last summer?

17   A.      Yes, this past summer.

18   Q.      And anything else that -- strike that.

19           What else did you speak with Captain

20   Scothorn about relative to this case over the summer?

21   A.      General conversation was -- I guess we had

22   been accused of an ongoing conspiracy to frame Roger

23   Gillispie.

24           And we both commented, "Hell, we don't

25   even know Roger Gillispie.  We have no reason to

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    36

1    frame Roger Gillispie."

2              I told Scothorn I didn't do anything

3    wrong, didn't know of anybody that did anything

4    wrong.  It looked like the case was handled well to

5    me and investigated well and prosecuted well.

6              And his response was basically the same

7    thing, and that's about it.

8    Q.     Anything else you can recall about his

9    response?

10   A.     Yes.  He said -- we both said we wonder why

11   Gary Williams is not named in this somewhere along

12   the line, because Gary Williams was my immediate

13   supervisor for the detective section and he worked

14   underneath Captain Scothorn.

15             So we kind of thought that for the

16   first -- sometime in this investigation that Scott

17   Moore probably answered to Gary Williams just before

18   I got there or right after I got there in Miami

19   Township, but neither one of us really know if that's

20   true or not.  Certainly, I don't know if it's true.

21   And Scothorn said he just couldn't remember who Moore

22   was reporting to.

23   Q.     Do you have any independent memory of Scott

24   Moore working on the Wise sisters' rape or this

25   prosecution?

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    37

1    A.       It's very vague to me.

2    Q.       Okay.  What's the vague memory that you have

3    sitting here today?

4    A.       Well, vaguely, what is vague is I don't

5    remember Detective Moore investigating or interacting

6    with the alleged victims or the victims in this case.

7    I don't remember any sit-down interviews or

8    recordings, in-person lineups or photo lineups that

9    he may have presented to the victims.  I don't -- I

10   have no knowledge of that, that I can recall, or

11   search warrants.

12            Really, I don't remember anything -- or,

13   I don't remember having any real knowledge of the

14   case for the first, I don't know, at least weeks,

15   maybe a couple months, that I was even there.  I just

16   don't remember knowing that he had prior cases.

17            The thing I do remember is he showed me a

18   photograph of Roger Gillispie.  And that's, in my

19   mind from 20 years ago, that's the first thing I can

20   really recall.

21   Q.       All right.  Do you remember what the

22   circumstances were when he showed you that

23   photograph?

24   A.       I just remember of the discussion of the case

25   being -- I think being prepared for trial, or at

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    38

1    least being sent to the prosecutor's office.  And I

2    remember saying, "Who is this Roger Gillispie?

3    What's he look like?"  And I was showed a photograph.

4    Q.     Is that from an identification badge from

5    General Motors?

6    A.     I do not remember the structure of the

7    photograph.  I just remember a photograph.

8    Q.     Do you know if it was a Polaroid?

9    A.     I do not recall.

10   Q.     Did you directly oversee Scott Moore in his

11   preparation of any photographic lineups?

12   A.     No.

13   Q.     And what was your process for reviewing

14   lineup identification procedures by detectives in

15   1990, 1991?

16            MR. KASSON:  Objection to the form.  It

17   assumes there was a process.

18            Go ahead, answer.

19            MR. OWENS:  No, let me fix the objection.

20   BY MR. OWENS:

21   Q.     Was there a process for reviewing

22   identification procedures by your detectives in 1990

23   and 1991?

24   A.     At the time, I do not recall a written SOP or

25   standard operating procedure, as far as a written

Transcript of Tim L. Wilson
Conducted on December 18, 2018                          39

```
 1   documentation of that.  What I do recall is the

 2   officer -- the detectives constructing the photo

 3   lineup from a multitude of available photographs or

 4   mug shots at the police department.  That was the

 5   primary source of the photograph.

 6              They would arrange an array, sometimes --

 7   if I recall, six, maybe eight photographs.  I'm sure

 8   nothing less than six, probably no more than eight,

 9   for one suspect on one incident.

10              They would concentrate on having

11   photographs of the suspect being like and similar.

12   They would pay special interest, obviously, to race,

13   to the physical structure, facial hair structure.

14   Just try to get photographs of somebody that's as

15   close as they can to the suspect, put it in an

16   organized chart or bundle, and present it separately

17   to the victim or victims individually.

18              They may have them -- without trying to

19   prejudice the identification that might be made by

20   the victim, they would not refer to names and that

21   type of thing.  They would just simply say, "Look at

22   it.  Do you see anybody that looks familiar that may

23   have assaulted," or whatever the case may be.

24              If they identified that person, they may

25   have the victim sign their name on that particular
```

1    photograph, date it and the time, and present that

2    information to the prosecutor's office somewhere

3    along the line.

4    Q.      Now, were there any -- now, what was the

5    review of any of those practices that you would do as

6    a sergeant?

7    A.      Really, nothing, unless the officer or the

8    detective came to me and needed assistance in

9    constructing it or presenting it.

10   Q.      Now, you mentioned a couple minutes ago that

11   there was some kind of photo databases that used --

12   excuse me.  Strike that.

13           You mentioned a moment ago that there was

14   photo databases that detectives could use to generate

15   the photo arrays.  Do you recall that?

16   A.      Yes.

17   Q.      And what were those photo databases that were

18   available in 1990 and 1991?

19   A.      During that time period, the best I can

20   recall, was just a photo album-type things, mug shot

21   books that we housed in the detective section from

22   people who had been arrested in the past, or what we

23   called a field interrogation; somebody that's acting

24   suspicious, there was reason for us to be there, for

25   the patrol officer to be there.  The patrol officer

Transcript of Tim L. Wilson
Conducted on December 18, 2018                          41

```
1    may take a Polaroid and do what was called a memo

2    card, just a brief card saying that on such a date, I

3    saw John Doe.  John Doe was acting suspicious, had no

4    identification.  We took a photograph.

5              That's it.  We would house that at the

6    detective section.  Detectives would have access to

7    those photo books or mug books.

8    Q.      And those would include Polaroid pictures,

9    correct?

10   A.      Yes, they would include Polaroid.

11   Q.      And they would include sort of mug shots,

12   booking shots; is that correct?

13   A.      Not everybody's mug shot was kept there, but

14   some of them.  I don't know what the reasons would

15   have been, I don't remember, but, yes, some had mug

16   shots.

17   Q.      Now, under what circumstances were police

18   officers used for photographs to go in six packs?

19   A.      Under what circumstances?

20   Q.      Yes.

21   A.      Police officers?

22   Q.      Yes.

23   A.      Well, if they are in uniform, none, unless

24   it's a uniformed officer that's a suspect.

25   Q.      What about if they are out of uniform, would
```

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    42

1    it be appropriate in 1990 and 1991 for a detective to
2    use pictures of police officers in a photographic
3    lineup?
4    A.      If a police officer -- first of all, let me
5    back up to say I would hesitate doing that, because
6    that officer might have been seen out on the street.
7            But, under certain circumstances if
8    that -- if that police officer was like and similar
9    in age and physical structure of the person and
10   looked like and similar to that person, I don't know
11   that it would be that big of a deal; it could be
12   used.
13   Q.      Any other hesitations that you would have in
14   putting police officers in a photographic lineup?
15   A.      You certainly wouldn't want to put a
16   detective or police officer that's undercover in a
17   photo lineup, but just for a general police officer,
18   I don't think it was ever common practice, but it's
19   possible.
20   Q.      Are you aware of any time that you were
21   included in a photographic lineup?
22   A.      I don't remember being involved.
23   Q.      Would you be surprised to find out that you
24   were included in a photographic lineup?
25   A.      No, because I've heard that I was in this

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    43

1    photo lineup.  I wouldn't be surprised today.  But

2    when I learned that, yes, I was surprised.

3    Q.     Okay.  When did you learn that?

4    A.     I honestly don't remember when it was or how

5    I learned of it.

6    Q.     Okay.  Did you learn that from a conversation

7    that you had with Mr. Scothorn?

8    A.     No.

9    Q.     Did you learn that from reading Mr. Moore's

10   deposition?

11   A.     It might have been -- might have been

12   Mr. Moore's -- Detective Moore's deposition.

13   Q.     Okay.  Do you remember reading me where I

14   asked him a bunch of questions about including police

15   officers in the photo array?  Does that strike you --

16   sound familiar?

17   A.     Yes.

18   Q.     So is it fair to say that, before you read

19   that, you didn't know that you had been included in

20   the lineup?

21   A.     I don't remember being included in the

22   lineup.

23   Q.     Okay.  Now, I just want to be really clear

24   about the way in which your supervision of Detective

25   Moore would have worked in 1990.

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    44

1          And for the photographic lineup, it would
2     have been consistent with the practices of the
3     department, as you understood them, for him to create
4     the lineup without showing it to you before he showed
5     it to the victims, correct?
6     A.     Would it be consistent?
7     Q.     Was it the practices of the department for
8     Detective Moore to have made the lineup and then
9     shown it to the victims without having any other
10    officer review it?
11    A.     Yes.
12           MR. KASSON:  Objection.  Form.
13    BY MR. OWENS:
14    Q.     And it would have been consistent with the
15    practices of the department for Officer -- excuse me,
16    strike that.
17           It would have been consistent with the
18    practices of the department, as you understood them
19    at the time, for Detective Moore to include police
20    officers in the lineup, correct?
21    A.     So before I answer I'd like to make sure I'm
22    clear on that.  Could you repeat it, please?
23    Q.     Yeah.  Let me just ask it slightly
24    differently.
25           In 1990, it would not have violated any

Transcript of Tim L. Wilson
Conducted on December 18, 2018                45

1    practice or rule of the department for Detective

2    Moore to include police officers in the photographic

3    lineup, correct?

4    A.      Yes.

5    Q.      And are you aware of any circumstances in

6    which Miami Township detectives used the Miami Valley

7    Regional Crime Lab to create pictures to be used in a

8    photographic lineup?

9    A.      Am I aware?

10   Q.      Yes.

11   A.      I am not.

12   Q.      Is that something that you ever specifically

13   recall approving?

14   A.      I never did.

15   Q.      So I guess I just want to be a little bit

16   clear.  As a supervisor for Detective Moore over the

17   Wise rape investigation, you would have reviewed the

18   supplementary reports that were typed up, correct?

19               MR. KASSON:  Objection.

20               THE WITNESS:  For Detective --

21               MR. KASSON:  Asked and answered.

22               You can go ahead and answer again.

23               THE WITNESS:  For Detective Moore's rape

24   investigation on the Gillispie case?

25   ///

Transcript of Tim L. Wilson
Conducted on December 18, 2018                      46

```
1    BY MR. OWENS:
2    Q.      Yes.
3    A.      I'm not so sure that I was receiving his
4    investigative or supplemental reports because I did
5    not assign that case to him.  It was assigned before
6    I got there.
7              I was unaware that he was working that
8    case for a period of time that I don't remember how
9    long it took.  He may -- he may have submitted
10   reports to a higher authority than me, and he may not
11   have submitted those reports at all, I don't know.
12   Q.      But I guess I thought we were on the same
13   page.  At the end of the case you would have reviewed
14   the supplementary reports that were in Exhibit 6,
15   correct?
16             MR. KASSON:  Objection.  He didn't
17   testify to that.  Asked and answered.  You can answer
18   it again.
19             THE WITNESS:  I'm sure at some point in
20   time.  Definitely later on I looked at them, yes.
21   BY MR. OWENS:
22   Q.      Right.  I thought we established earlier,
23   once the case is closed, you would have reviewed the
24   reports, unless you happened to not be there and Bob
25   Burling would have; is that correct?
```

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    47

```
1    A.       Yes.  But you didn't ask which case that was,
2    I don't believe.  So cases that I assigned to
3    Detective Moore, I expected supplemental reports.
4    Q.       Right.
5    A.       And I kept track of supplemental reports in
6    the assignment book.  For the Gillispie case, I did
7    not keep track of supplemental reports because I
8    didn't assign it to him, and I didn't know about it
9    for quite some time.
10   Q.       And when you said there was an assignment
11   book, what is that?
12   A.       It was just a ledger, a written ledger of
13   cases that I personally assigned to individual
14   detectives, and would note the date, the time of
15   assignment, the specific detective and the required
16   supplemental date that I expected a return on his
17   supplemental investigation.
18   Q.       Okay.  And you didn't do any of that stuff
19   with respect to Detective Moore in this case, because
20   you didn't assign him the investigation; is that
21   correct?
22   A.       That is correct.
23   Q.       And you can't tell me who would have been
24   responsible for doing the direct supervision of
25   Mr. Moore in this investigation; is that correct?
```

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    48

1          MR. DOWD:  Objection.  Foundation.

2     BY MR. OWENS:

3     Q.     Go ahead.

4          MR. KASSON:  You can answer.

5          THE WITNESS:  I can only assume who it

6     was.  I do not know for sure.

7          MR. KASSON:  Well, don't guess.  If you

8     are guessing, that's --

9          MR. OWENS:  See, you can't do that.  You

10    know that.

11          MR. KASSON:  Tell him not to guess?

12          MR. OWENS:  No, you can't.  You can't

13    direct the witness on how to answer a question when

14    the question is posed.  That's completely improper.

15          MR. KASSON:  Are you telling him you want

16    him to guess?

17          MR. OWENS:  No.  He can answer the

18    question.  If he needs to ask --

19    BY MR. OWENS:

20    Q.     Let's be clear, sir.  Today you are here

21    represented by counsel, right?

22    A.     Yes, sir.

23    Q.     And you haven't given a deposition before, so

24    let's talk about some of the ground rules, all right?

25    A.     I have given a deposition before.

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    49

```
1    Q.      It's been a while, right?

2    A.      Yes, sir.

3    Q.      All right.  So I'm asking you questions under

4    oath.  Do you understand that?

5    A.      Yes.

6    Q.      You understand that the oath you gave today

7    is the same one you would have given in court,

8    correct?

9    A.      Yes, sir, I do.

10   Q.      All right.  So from time to time, attorneys

11   may object, okay?  We just had an example of that.

12   A.      Yes, sir.

13   Q.      And unlike being in court, there's no judge

14   to resolve the objections, right?  And so unless the

15   question involves an issue related to privilege, you

16   know, whether it's an attorney/client type of a

17   conversation, you will answer the question, and then

18   we'll resolve whether the objection was right or

19   wrong later in front of the judge, okay?

20           MR. KASSON:  Just so we are clear, when I

21   object, you will answer it if I tell you to answer

22   it, you won't answer it if I tell you not to answer

23   it.  That's our rule, okay?

24           THE WITNESS:  I understand, sir.

25           MR. KASSON:  All right.  That's the rule.
```

Transcript of Tim L. Wilson
Conducted on December 18, 2018      50

1   BY MR. OWENS:

2   Q.     Okay. So the way a deposition works is just

3   the same as other testimony. You understand that?

4   A.     Yes, sir.

5   Q.     All right. And if there's an objection from

6   counsel about the form of the question or things like

7   that, those are objections that we will deal with

8   later. That's not something that we can resolve

9   here, unless we stop every time there's an objection

10   and call the judge. And you can imagine why judges

11   wouldn't want that.

12        Okay. Now, my question was whether or

13   not you can tell me who directly supervised Scott

14   Moore on this investigation, if it was anyone at all?

15        MR. KASSON: Objection to the form. You

16   can answer.

17        THE WITNESS: I cannot tell you with

18   accurate, truthful firsthand knowledge exactly who it

19   was, because I didn't know.

20   BY MR. OWENS:

21   Q.     Okay. So you learned about the investigation

22   into the Wise rape sometime after you started; is

23   that correct?

24   A.     Yes.

25   Q.     And who were the other potential people that

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    51

1    could have been overseeing Mr. Moore on the case?

2    A.      I would think it would be one of three

3    people.

4    Q.      Sure.

5    A.      It would be Lieutenant Gary Williams, my

6    immediate supervisor as far as detective section.  It

7    could have been my supervisor, Captain Marvin

8    Scothorn; he was my supervisor over internal affairs.

9    Or it could have been the chief of police.

10   Q.      And that was Tom Angel at the time?

11   A.      Yes, I'm sorry.  Tom Angel.

12   Q.      Thank you.

13           Was Gary Williams in the department when

14   you got there?

15   A.      Yes.

16   Q.      And was he there after you left?

17   A.      No.

18   Q.      All right.  How long was Mr. Williams in the

19   role that he was in as your immediate supervisor?

20   A.      I'm guessing, four or five years.

21   Q.      And what was the title?

22   A.      Lieutenant.

23   Q.      Lieutenant.

24           So you were a sergeant?

25   A.      Detective sergeant.

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    52

```
1    Q.      Detective sergeant.

2            And then he would have been the

3    lieutenant or detective lieutenant?

4    A.      Administrative lieutenant, one step above me.

5    Q.      Okay.  And then above that would have been?

6    A.      Captain Marvin Scothorn.

7    Q.      Only one more left in the chain?

8    A.      Chief Thomas Angel.

9    Q.      Thank you.

10   A.      Yes, sir.

11   Q.      How long were you at the Miami Township

12   Police Department?

13   A.      From 1990 until September of 1998, eight

14   years.

15   Q.      Was there ever, from what you can recall

16   while you were there, sort of an overhaul to the

17   policies and SOPs or anything like that led by Chief

18   Angel?

19   A.      Yes.

20   Q.      When was that?

21   A.      I don't remember the year, sir.  It was

22   probably, I'm guessing, 1993 or 1994; we went through

23   accreditation.

24   Q.      And as a part of the accreditation process,

25   the SOPs and policies were written up and redone; is
```

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    53

1    that fair to say?

2    A.      It is.

3    Q.      And the Wise investigation happened before

4    that accreditation process, correct?

5    A.      Yes.

6    Q.      Did you ever have any other positions in the

7    department before you left in 1998?

8    A.      Yes.

9    Q.      What was that?

10   A.      I transferred out onto the road and was a day

11   shift road patrol supervisor as a sergeant.

12   Q.      And do you recall roughly what years you did

13   that?

14   A.      I think it was in 1997, I believe.

15   Q.      Did you retire in 1998?

16   A.      Yes, I did.

17   Q.      And how long have you been here in Tennessee?

18   A.      Twenty years.

19   Q.      So did you have any impressions of Scott

20   Moore as a detective?

21   A.      Yes.

22   Q.      What was that?

23   A.      Scott Moore, as a detective, my impression

24   would be that he was a very thorough investigator.

25   He was knowledgeable.  He was probably above average

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    54

1   as an investigator.

2              He was -- I've often said he's the type

3   of investigator that if you wrote a bad check on or

4   committed a forgery -- because that was his main

5   responsibilities that I would assign him to -- if you

6   wrote a bad check, you wouldn't want him on your --

7   on your tail.  He would track you down.

8              He was thorough in presenting his cases

9   to the prosecutor's office.  He was punctual.  He

10  showed up for work.  He was -- he was not receptive

11  to supervision very well.  He was kind of

12  independent.  He liked to act independently.

13             But basically he was a good detective,

14  and I think -- I was very proud of him the way he

15  finalized this case and got convictions, not once,

16  but twice.

17  Q.     And would that be something sort of how in

18  the department officers thought about cases; being

19  successful means securing a conviction as a result of

20  your investigation?

21  A.     Repeat that to me, please.

22  Q.     I was just trying to understand the

23  perspective.  And I thought your testimony was that

24  you were proud of him because he was able to get

25  convictions, not once, but twice, in this case;

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    55

```
1   correct?

2   A.      I think yes would be the answer.  Certainly,

3   anytime you have a major case investigation like that

4   where you have got multiple victims that's been

5   harmed and you investigate and you present it to the

6   prosecutor's office and they accept your

7   investigation and they present it to a jury and you

8   get a conviction once, an appeal, and you get the

9   conviction again, yes, it's something to be proud of,

10  and should be recognized by the police department.

11  Q.      And was that something that was -- sort of

12  officers in the department paid attention to, whether

13  or not a case that you investigated, a major case,

14  resulted in a conviction?

15  A.      Sure.

16  Q.      Now, I believe you testified that Detective

17  Moore was somewhat independent; is that correct?

18  A.      Yes.

19  Q.      And did you ever have any problems or

20  concerns associated with that level of independence?

21  A.      Yes.

22  Q.      What was that?

23  A.      Later on, after the Gillispie case -- I

24  believe this all occurred after the Gillispie case

25  had been adjudicated on the second time.  Detective
```

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    56

1   Moore applied for and was granted permission to

2   transfer to the CANE unit in Montgomery County, Ohio,

3   that is the combined -- I believe it's called the

4   Combined Agency Narcotics Investigators.

5           It's a drug investigation squad with the

6   Montgomery County Sheriff's Department and regional

7   departments in Montgomery County.  And he was

8   promoted -- I won't say "promoted," it wasn't a

9   promotion.  He was transferred to that position by

10  Chief Tom Angel.

11  Q.      Then what happened?

12  A.      He was transferred to that position and was

13  directly supervised by Dave Vore, who later became

14  the Montgomery County sheriff.

15          Dave Vore called me up a couple of times

16  and said, "I've got a concern with Detective Moore.

17  He's independent."  He -- "We are having problems

18  with him, trying to convince him that he needs to let

19  his supervisor directly know where he's going, what

20  he's doing, who he's out in the field with, what he's

21  investigating, contacts he's being with."

22          We are talking drug investigations.  I

23  said, "I'll have a talk with him."

24          We did have those talks.  I received a

25  couple of more phone calls from Dave Vore.  We had

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    57

```
 1   additional -- I had additional talks with Detective
 2   Moore.  And at one point or another Dave said, "Go
 3   talk to your chief and tell him to send me somebody
 4   else."
 5             I talked to my captain, then I talked to
 6   the chief with my captain.  We suggested to pull
 7   Scott Moore out of CANE, get him back into Miami
 8   Township.
 9             The chief said, "No, he will stay there."
10   I got a subsequent call again from Dave Vore, and
11   Dave Vore said, "Either you take him out, or I'm
12   going to take him out."
13             And I said, "Okay, I'll tell the chief."
14   And I told the chief, and at some point or another
15   Chief Moore -- or Chief Angel recalled him back to
16   the police department.
17   Q.      Now, when you first started in the
18   department, did anybody say anything to you about
19   Moore being independent or needing -- struggling with
20   supervision or anything like that?
21   A.      Yes.
22   Q.      And who was that?
23   A.      Captain Scothorn.
24   Q.      When did that conversation happen?
25   A.      I don't remember.  I don't have the date.  I
```

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    58

1   didn't document it, but it was when I first got

2   there.

3   Q.      So you knew to try to keep an eye out on

4   Detective Moore?

5   A.      It was in the back of my mind, yes.

6   Q.      And were you aware of whether or not the Wise

7   rape investigation was one of the first major cases

8   he had as a detective?

9   A.      Say that again now.

10  Q.      Were you aware of the fact that the Wise rape

11  investigation was one of the first major cases that

12  he had as a detective?

13  A.      Not when I first got there, no.

14  Q.      When you learned about the case, did you

15  become aware of that fact?

16  A.      Yes.

17  Q.      And you knew that he had only been a

18  detective for a little bit of time, correct?

19  A.      Yes.

20  Q.      That's something that you learned when you

21  spoke with Mr. Scothorn when you started, correct?

22  A.      Yes.

23  Q.      It sounds like Captain Scothorn gave you sort

24  of a rundown of the back story of all of the guys

25  that you were supervising; is that fair to say?

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    59

1     A.      Quite a few of them, yes.

2     Q.      Well, definitely Mr. Moore, though, correct?

3     A.      Yes.

4     Q.      Anything else you can recall about what

5     Captain Scothorn told you when you were initially

6     starting as it relates to Mr. Moore?

7     A.      Yes.

8     Q.      What is that?

9     A.      Well, in a general conversation he told me

10    things like, "You know Scott is Jim Moore's son."

11            Jim Moore was the previous police chief.

12    And I said, "Yes."

13            And it was implicated that Chief Angel

14    kind of owed a little bit of allegiance to Chief

15    Moore for getting Tom Angel the job as police chief.

16    So it was kind of thought that the chief would go an

17    extra step for Scott Moore.

18    Q.      Anything else?

19    A.      That's about it.

20    Q.      Is it fair to say that Scott Moore had a

21    little bit of extra leeway as a young detective,

22    given the fact that --

23            MR. KAY:  Objection.

24            MR. DOWD:  I'm also going to object.  I

25    didn't even hear the question, so --

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    60

```
 1                    MR. KASSON:  Are you sure it's
 2    objectionable?
 3                    MR. DOWD:  Since I didn't hear it, I
 4    object.
 5    BY MR. OWENS:
 6    Q.      All right.  Is it fair to say that Scott
 7    Moore had more leeway as a young detective in the
 8    department because his father was the former chief?
 9    A.      There was that appearance.
10                    MR. DOWD:  I'd object as to foundation.
11                    THE WITNESS:  There was appearance of
12    that, yes, in my opinion.
13    BY MR. OWENS:
14    Q.      And that's what you observed as a newcomer to
15    the department?
16    A.      Yes.
17    Q.      Did you ever hear the word "cowboy"
18    associated with Scott Moore at all?
19    A.      Yes.
20                    MR. KAY:  Objection.
21    BY MR. OWENS:
22    Q.      And tell me anytime you can remember hearing
23    that.
24    A.      I believe it came up in the conversations
25    with Dave Vore, the director of CANE, the Montgomery
```

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    61

1   County Sheriff's Office, somewhere in that time

2   period.

3   Q.      Did you ever hear the term "cowboy"

4   associated with Scott Moore when you first started at

5   the department?

6   A.      No, I don't think so.

7   Q.      Did you ever have any personal conversations

8   with Steve Fritz?

9   A.      Yes.

10  Q.      In what context?

11  A.      Very short, more like greetings.  "Hey, how

12  are you doing?"  "Hello."  "How is it going at the

13  township?"  "How is it going at Warren County

14  Sheriff's Office?"  And that was about it.  I knew

15  very little -- I had very little contact with Steve

16  Fritz.

17          MR. KASSON:  When you get to a good

18  breaking point, let's take a break, whenever it is

19  good for you.

20  BY MR. OWENS:

21  Q.      Yeah.  I should have said this earlier too.

22  If you ever need a break at any point during the

23  deposition, feel free to take one, so long as there's

24  not a question pending.  So you if you answer the

25  question, then we can take a break.

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    62

```
1              I don't mean for this to be an endurance
2     contest.  I keep meaning to take a break, but then I
3     forget because I have all of my thoughts going.  So
4     feel free to ask for one, and this is a fine point to
5     do that.
6     A.      I understand.  Thank you.
7              MR. OWENS:  So we'll just take five.
8              (An off-the-record discussion was held.)
9     BY MR. OWENS:
10    Q.      So you didn't have any -- fair to say you
11    didn't have any professional interactions with
12    Mr. Steve Fritz?
13    A.      I did not.
14    Q.      What about Gary Bailey?
15    A.      I know Gary as a police officer and as a
16    corporal with the Miami Township Police Department.
17    We worked together on the force at the same time
18    period.
19    Q.      And you mentioned that ranking a couple
20    times, corporal.  What was the corporal rank?  Where
21    did that fall within the hierarchy at the time?
22    A.      A corporal position, whether it be on the
23    street or in the detective section -- on the street
24    it would have been higher than a patrolman's rank,
25    and just underneath a patrol sergeant's rank; the
```

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    63

```
1    same way with the detective.  A detective corporal
2    would be one step above detective, one pay grade
3    below detective -- I'm sorry, sergeant detective.
4    Q.      Okay.  And when you were at the department,
5    you were -- Mr. Bailey had already left the detective
6    division, correct?
7    A.      I don't believe he was ever in the detective
8    section with me.
9    Q.      Now, I understand your testimony today is
10   that you didn't directly supervise Mr. Moore on the
11   Wise case, and you learned about it sometime after
12   you first arrived at the department, right,
13   basically?
14   A.      Yes.
15   Q.      And what I'm wondering is, did you ever read
16   the initial case reports, the handwritten ones, for
17   the Wise case?
18   A.      No.
19   Q.      Would it have been in your practice to do so?
20   A.      If I'd known about it at the time, yes.
21   Q.      And why didn't you do it -- why didn't you
22   read the original reports and get caught up on it
23   when you found out about the case?
24   A.      When I found out about the case, I can't say
25   that I didn't.  I may have when I found out about the
```

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    64

```
1    case.  I don't remember.
2    Q.      When you were initially -- when you initially
3    arrived in the department and you started assigning
4    cases to the detectives, did you read the underlying
5    handwritten reports to the extent that they existed
6    from the original incident?
7    A.      Of cases I was -- that was brought aware to
8    me?
9    Q.      Yeah.
10   A.      That was presented to me?  I would at least
11   skim over them, yes.
12   Q.      Now, do you remember going to Mr. Gillispie's
13   house and being present for his arrest?
14   A.      I do not.
15   Q.      Did you have any conversations with Scott
16   Moore about the evidence that he believed that he had
17   against Gillispie that would have justified his
18   arrest?
19   A.      I do not.
20   Q.      Do you remember having a conversation with
21   Scott Moore about whether or not Gillispie should be
22   allowed to stay at his house when a search warrant
23   was being effectuated?
24   A.      I have no knowledge.
25   Q.      Do you deny that or is it just something that
```

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    65

```
 1   you don't recall?
 2   A.      I don't remember ever having that
 3   conversation.
 4   Q.      All right.  Let's go back to what we have got
 5   here as Exhibit 6.  Now, on the bottom do you see
 6   that there are numbers -- we call those Bates numbers
 7   in the law.  Do you see the numbers there, sir?
 8   A.      Yes.
 9   Q.      Would you take a moment and turn to the page
10   number that says 35106 at the bottom.
11   A.      35106, okay.
12   Q.      Yes, sir.  Do you see the entry there that
13   starts about halfway down?
14   A.      Yes.
15   Q.      All right.  And would you just take a moment
16   to just review that, and I think it goes onto the
17   next page, and then just look up once you have had
18   the chance to review that portion of the document.
19   A.      I've reviewed it.
20   Q.      All right.  Now, do you see this mentions
21   yourself being present for the arrest of
22   Mr. Gillispie?
23   A.      I see it.
24   Q.      Does this refresh your recollection one way
25   or the other about whether or not you were present
```

1    for that?

2    A.      I do not recall.  Don't think it ever

3    happened.

4    Q.      Why don't you think it ever happened?

5    A.      I don't remember it.

6    Q.      Do you know anybody named Sergeant Jones at

7    the Fairborn Police Department?

8    A.      No.

9    Q.      Would Sergeant Jones have been -- had any

10   right to provide sergeant -- excuse me, strike that.

11          Would Sergeant Jones or any officer from

12   the Fairborn Police Department have had the authority

13   to provide an order to Scott Moore effectuating this

14   arrest?

15          MR. KASSON:  Objection.  I don't

16   understand the question.  If you understand it, you

17   can answer.

18          THE WITNESS:  I don't understand it.  I

19   was going to ask you to clarify it.

20   BY MR. OWENS:

21   Q.      Sure.  So do you see how -- well, let's just

22   make it easier.

23          Would it be typical practice for you as a

24   sergeant in Miami Township Police Department in 1990

25   to go out and effectuate arrests with detectives?

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    67

1    A.      No.

2    Q.      And why not?

3    A.      My understanding from my supervisor, Captain

4    Scothorn, his thinking was supervisors supervise,

5    detectives go out in the field and detect.

6             That was contrary to what I had done at

7    other departments.  Plus, we had fewer people at the

8    other department.  So as a detective sergeant, I was

9    also out in the field a lot more.

10            At Miami Township it was expected to let

11   the field detectives go out and do their

12   investigations, and if they needed assistance, ask

13   for it, and I would go.  Or if I saw something that I

14   thought needed my attention, I would do.

15   Q.      Okay.  And so you did not go with Scott Moore

16   to arrest Dean Gillispie; is that correct?

17   A.      I did not.

18   Q.      Now, earlier today -- you can put that to the

19   side, sir -- you mentioned having a log of the cases

20   that you organized when you wanted the sups back.  Do

21   you recall that you had a book that you kept the

22   supplementary reports logged in; is that correct?

23   A.      Yes.

24   Q.      Did I get the description of that wrong?

25   A.      Logbook is fine.  Journal.  Case report book.

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    68

1    Q.      How would you describe it?

2    A.      I just referred to it as my case report book.

3    Q.      Now, was that yours or something that was

4    generally maintained by the department?

5    A.      It was basically mine.  I brought --

6    basically brought that idea with me.

7    Q.      So that's not a practice that existed before

8    you arrived?

9    A.      Not to my knowledge.

10   Q.      All right.  I want to show you what was

11   previously marked as Exhibit 12.  Do you recognize

12   what this document is, sir?

13   A.      No.

14   Q.      All right.  Were you familiar with the

15   process of assigning case numbers to particular

16   incidents or calls at the Miami Township in 1990?

17   A.      Repeat that one time for me.

18   Q.      Were you familiar with the process of

19   assigning case numbers to particular calls or

20   incidents at the Miami Township Police Department

21   when you first got there or at any time before?

22   A.      Vaguely.  I believe the -- I believe the

23   dispatchers, once they received a call and dispatched

24   a patrolman, if the officer responded and took a

25   report, they would often ask for a case number.  And

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    69

```
1    the dispatchers would log it and give them a case
2    number, to the best of my memory.
3    Q.      Do you know where -- are you aware of any --
4    of a place at the Miami Township Police Department
5    where a book like this might have been held?
6    A.      To the best of my memory, the dispatchers
7    maintained a book on their desk at their ready to
8    where they could give the next following case number
9    or report number, actually not a case number, but a
10   report number, to an officer who requested it.
11   Q.      All right.  Now, I want to show you what's
12   been previously marked as Exhibit 16 from a prior
13   deposition.
14           MR. DOWD:  When you refer to Exhibit 12,
15   just for my -- is that the Bates Number 9117?
16           MR. OWENS:  Yes, sir.
17           MR. DOWD:  Okay.  Thank you.
18   BY MR. OWENS:
19   Q.      Do you see this picture of a photo array?  Do
20   you see it?
21   A.      Yes.
22   Q.      Who is in box number one?
23   A.      He's a good-looking man.  I believe that's
24   me, Tim Wilson.
25   Q.      All right.  Who is in box number 4?
```

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    70

```
1   A.      That is Detective John DiPietro.

2   Q.      Thank you.

3           Were you present for any interviews or

4   interrogations or conversations that Detective Moore

5   had with Dean Gillispie at the Miami Township Police

6   Department?

7   A.      No.

8   Q.      Are you aware of any practice of the Miami

9   Township Police Department in 1990 that authorized

10  detectives to order individuals into the police

11  station for interviews, even if they didn't have a

12  warrant or probable cause to arrest them?

13  A.      Yes.

14  Q.      Okay.  What was that?

15  A.      It was specifically designated for

16  financial-type crimes, for the best that I can

17  recall.  If we thought someone had written a bad

18  check and we had an address on that check and a name,

19  we would often, instead of physically sending someone

20  out there, we would often send a letter to them

21  requesting them to come in to be interviewed about

22  this bad check.

23  Q.      Sure.  Now, would those requests have any

24  kind of warning or threat that they would be arrested

25  if they didn't go in -- come into the Miami Township
```

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    71

1   Police Department?

2   A.      Honestly, I don't remember.

3   Q.      Do you think as a supervisor in 1990, whether

4   or not that would be lawful to order somebody to come

5   to the police station if you didn't have a warrant

6   for their arrest?

7               MR. KASSON:  Objection.  You can go ahead

8   and answer.

9               MR. DOWD:  Objection to form and

10  foundation.

11              THE WITNESS:  Would it be lawful?

12  BY MR. OWENS:

13  Q.      Yes, sir.  In your --

14  A.      I think it would be lawful, yes.

15  Q.      To order somebody to come to the police

16  station, even if there were no arrest warrant, on the

17  threat that they would be arrested if they don't show

18  up?

19              MR. KASSON:  Same objection.  You can go

20  ahead and answer.

21              THE WITNESS:  I believe it would be

22  lawful.

23  BY MR. OWENS:

24  Q.      Let me show you, sir, what has previously

25  been marked as Exhibit 21.  Are you familiar with

Transcript of Tim L. Wilson
Conducted on December 18, 2018                        72

1   this form?  Without the details being filled in, just

2   the form of the document.

3   A.      I've seen similar writings like this, a

4   similar form, yes.

5   Q.      Is this a standard form that the Miami

6   Township Police Department used in 1990?

7   A.      "Standard" would be the key word.  And I do

8   not think it would be a standard form.

9   Q.      Okay.  Now, do you see the bottom two lines

10  that happen to be highlighted in yellow?

11  A.      Yes, I do.

12  Q.      Would those be part of the typical form, or

13  is that something that would have been added in this

14  particular instance?

15  A.      I do not remember this being standard

16  procedure with the wording as it is worded now.

17  Q.      And what do you mean by that?

18  A.      Well, I do not believe that -- I have to

19  concentrate or -- I have to express that during

20  financial crimes is where I saw this type of letter.

21          And I do not remember seeing "Failure to

22  appear will result in a warrant being issued for your

23  arrest," because we didn't know if we could legally

24  arrest that person, or if that person was actually

25  the person that may have done a financial crime, but

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    73

1    it was -- it was not out of routine to send a letter

2    to someone saying we have -- we are investigating a

3    financial crime, come to the police department.

4    Q.      Right.  It wouldn't be out of routine to send

5    a letter asking somebody to come to the police

6    department like this one.  It would have been out of

7    routine to include the last two lines; is that fair

8    to say?

9    A.      It was not routine, in my opinion.

10   Q.      Can you think of any other time that you have

11   seen one of these two letters with these last two

12   lines that are highlighted in yellow on this one?

13   A.      No.

14   Q.      As a supervisor, if somebody was working on a

15   major case like this rape case here, would your

16   officers -- to come you for some type of approval if

17   they were going to make an arrest?

18   A.      No.

19   Q.      Do you have any conversations with Scott

20   Moore that you can recall about his decision to

21   pursue Gillispie or to arrest him?

22   A.      No.

23   Q.      Now, as an incoming new sergeant detective in

24   1990, how did you become familiar with the practices

25   and policies of the department?

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    74

1    A.      Mainly by physically being there, day-by-day

2    operations and as situations presented themselves.

3    Q.      Did Captain Scothorn sit you down and say,

4    here is how we do this, here is how we do this, and

5    sort of give you an orientation of any sort?

6    A.      Not to that extent, no.

7    Q.      Was there something to a lesser extent?

8    A.      I don't remember.

9    Q.      Were you familiar with the manner in which

10   case reports or supplemental reports were submitted

11   to the prosecutors or to the criminal justice system

12   after a case had been charged?

13   A.      Yes.

14   Q.      What was the process for that?

15   A.      Well, after charges had been filed?

16   Q.      Yes, sir.

17   A.      If there was a supplemental report, then the

18   detective printed out a copy and sent it to the

19   prosecutor's office, usually by physically going

20   downtown to Dayton, Ohio, and dropping it off to that

21   prosecutor.

22   Q.      All right.  What about -- what was the

23   process for before charges were filed?

24   A.      Before?

25   Q.      Yes, sir.

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    75

1   A.      They would accumulate all of their reports,

2   the case file, evidence documents, evidence receipts,

3   photographs, anything that had particular interest to

4   that case, and they would physically bundle it up and

5   physically take it to a prosecutor for a prosecutor's

6   review, a denial or approval, and then it would go

7   through the system from there.

8   Q.      What do you mean, "it would go through the

9   system from there"?

10  A.      Well, the prosecutor's office would file a

11  charge, would either send it to the grand jury, may

12  approve a warrant to be issued, and the warrant would

13  be taken to the appropriate court in the jurisdiction

14  and a warrant issued and a physical arrest made.

15  Q.      And what I'm wondering is about the process

16  of ensuring that the prosecutor had all of the

17  documents that needed to be turned over in the file.

18  Can you tell me about what steps or what the practice

19  was at the time at Miami Township in 1990 for that?

20  A.      Yes, I can.

21  Q.      Thank you.

22  A.      The detective or officers assigned to the

23  case, it was their responsibility to make available

24  to print out, to provide to the prosecutor every

25  piece of work that they had generated for the

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    76

1   prosecutor's review, so it was solely their

2   responsibility to do that.  And as far as I know,

3   they did.

4   Q.      Was there any sort of a log system or

5   discovery, production, kind of, tracking system that

6   would allow you as a supervisor to say, all right, on

7   this case the discovery was turned over to the

8   prosecutor on this date; there was some supplemental

9   reports written after; whereas those were tendered to

10  the prosecutor on a subsequent date?  Any system like

11  that in 1990 or 1991?

12  A.      No.

13  Q.      Now, you understood as the supervisor of

14  detectives in 1990 that it was required that officers

15  turn over all of the important, exculpatory, whatever

16  it was, evidence in the file to the prosecutors,

17  right?

18  A.      Yes.

19  Q.      And you understood that part of the reason

20  that that had to be done was because if it wasn't

21  turned over to the criminal defendants, that might

22  violate their right to a fair trial, correct?

23  A.      Certainly.

24  Q.      And as a -- well, take a step back.  In 1990

25  and 1991, was there a name referred to for the file

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    77

1    the detectives would use?  Was there a common name

2    for that file?

3    A.      Just usually it was the case name of the

4    person involved that had reported the crime; the

5    Wilson file.

6    Q.      So this would be the Wise sisters' file?

7    A.      It could have been the Gillispie file or it

8    could have been the Wise file.  I'm not sure which

9    one he classified it under.  But there were times

10   where if the main suspect had been worked and it was

11   believed that suspect was the person, it could have

12   been Gillispie/Wise, Wise/Gillispie.

13   Q.      Who knows?

14   A.      Yeah.

15   Q.      Okay.  And you didn't personally know about

16   this particular file, correct?

17   A.      I did not.

18   Q.      Did you ever supervise Scott Moore in any way

19   as it relates to the things that he did or did not

20   turn over to the prosecutors or criminal defense?

21   A.      Personally supervise, no.

22   Q.      Did you have any conversations with Scott

23   Moore about that topic?

24   A.      Not that I can recall.

25   Q.      Would it have been your practice to have

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    78

1   conversations like that with detectives you

2   supervised as it relates to what they have turned

3   over to prosecutors in their criminal defense and

4   when they did it or anything like that?

5   A.      On other cases I'd assigned to them, yes.

6   Q.      So you are saying you wouldn't have done that

7   here because you didn't assign this to Mr. Moore; is

8   that correct?

9   A.      Not only did I not assign it to him, I wasn't

10  aware of it for quite some time.

11  Q.      All right.  And it's your testimony that you

12  were not aware of this particular case until after

13  Mr. Gillispie was charged; is that correct?

14  A.      No, I can't say after he was charged.  And I

15  cannot testify here today as to exactly when that

16  was, but it was sometime later after I had been

17  there.  I don't know if it was before he was charged

18  or after he was charged, or if it was at the time

19  period when they took the case to the prosecutor's

20  office.

21  Q.      Did you participate in taking the case to the

22  prosecutor's office with Detective Moore?

23  A.      No.

24  Q.      Why not?

25  A.      I don't recall that it was necessary for me

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    79

1   to do that.

2   Q.     Is that something that you would have done

3   typically on investigations for detectives, is go

4   with them to present the case to the prosecutor?

5   A.     Not unless I had actually participated in

6   recovering evidence, making arrests, doing the search

7   warrant.

8   Q.     Okay.  Were you ever aware of an individual

9   named Bob Burke, Robert Burke, from General Motors?

10  A.     Prior to this case's lawsuit, no.

11  Q.     What about David Burke?

12  A.     No.

13  Q.     You testified earlier that you spoke with

14  Steven Gray about this lawsuit, correct?

15  A.     Yes.

16  Q.     What did you talk to him about?

17  A.     We talked about this case.  We talked about

18  his participation -- let me back up.

19         We talked about his involvement being in

20  the property room, or records property officer.  And

21  then he said, "I'm being accused of destroying

22  evidence, getting rid of evidence," or something like

23  that.

24         And I said, "What did you do?  What did

25  you handle?"

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    80

```
 1                 He said, "Do you remember the clothing of
 2      the girls?"
 3                 And I said, "No.  I never handled them,
 4      never touched them, never saw them."
 5                 He said, "Well, I signed it back" -- I
 6      believe he said, "I signed it back to the girls,
 7      returned it to the girls upon their request."
 8                 And I said, "Well, who told you to do
 9      that?"
10                 He said, "Fess Blair."  And he said,
11      "They need to call Fess Blair."
12                 I said, "You do realize Fess Blair is
13      dead.  They can't call Fess Blair."
14                 And he said, "Yes, of course, I do know."
15                 I said, "Did anybody else tell you to get
16      rid of the evidence, turn the evidence back over to
17      the girls?"
18                 He said, "No, Fess Blair did."
19                 I said, "Is that all you did?"
20                 He said, "That's it."
21                 I said, "You did what you were told.  You
22      have got no problem."  And so that's about all we
23      have talked about.
24      Q.    Do you keep up with Mr. Gray?
25      A.    Not as much as Mr. Scothorn, but occasionally
```

Transcript of Tim L. Wilson
Conducted on December 18, 2018                          81

1    we do talk.

2    Q.      So Mr. Gray was involved in the property room

3    and the records room, correct?

4    A.      I know that he was a court -- prisoner

5    transport person to the court, officer to the court.

6    He worked in property and he worked in records.

7    Q.      Right.  And what I'm wondering is, are you

8    aware of how records were kept at the department in

9    1990 or 1991?

10   A.      Well, they were maintained in files, hard

11   copies in files in file cabinets in the records

12   section.

13   Q.      And am I right that at the time that, even

14   though there was a shift to some computerization of

15   typing some supplemental reports, that those would

16   then be printed and then placed into a physical file?

17   A.      Yes.

18   Q.      Do you know about whether or not there was,

19   like, control cards or how the files were maintained

20   in the records division?

21   A.      I don't know, sir.

22   Q.      Do you know where the original case file is

23   for the Wise sisters' investigation?

24   A.      Today?

25   Q.      Yes.

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    82

```
 1    A.      I have no idea.

 2    Q.      Have you had any conversations with Scott

 3    Moore about this case?

 4    A.      No.

 5    Q.      Do you keep up with him at all?

 6    A.      None.

 7    Q.      Why not?

 8    A.      He basically went his way, I went mine, and

 9    we never had a personal or friendship relationship.

10    Q.      What about Detective DiPietro?

11    A.      The same, same answer.

12    Q.      You don't keep up with him at all?

13    A.      Only about FOP business.

14    Q.      And in what context do you interact with

15    Mr. DiPietro about FOP business?

16    A.      We just talk about meetings.  We talk about

17    fees that are due, get-togethers with FOP.  We don't

18    discuss business at all.

19    Q.      Are you active with the FOP?

20    A.      I am.

21    Q.      And to what extent?

22    A.      Actually, I just joined again last year.  I

23    had not been a member for quite a few years, and I

24    joined the FOP last year.

25            So the joining process was I had to go
```

1    through John DiPietro who was -- I think he was vice

2    president last year.  And he got me the FOP cards and

3    I paid my dues, sent my dues to him so he could pay

4    my dues to the local and state lodges.

5    Q.    And are you still registered out of Ohio

6    then?

7    A.    Yes, I'm a member of the Ohio lodge.

8    Q.    Okay.  And Mr. DiPietro is still active in

9    the Ohio lodge FOP as of last year?

10   A.    I think he's now the president of the lodge.

11   Q.    What police station does Mr. DiPietro work

12   for now?

13   A.    I'm not aware that he is a police officer.

14   Q.    Okay.  You are aware of the circumstances in

15   which Mr. DiPietro left the Miami Township Police

16   Department?

17   A.    I am.

18   Q.    And that doesn't -- does it concern you at

19   all that he is the vice president or president of the

20   FOP, the lodge that you signed up for?

21   A.    Slightly.

22   Q.    Have you taken any steps to express that

23   concern?

24   A.    No.

25   Q.    Do you express anything -- any concern about

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    84

```
1    that to Mr. DiPietro?
2    A.      No.
3    Q.      I want to loop back to Mr. Wolfe.
4    A.      Yes, sir.
5    Q.      Do you remember Mr. Wolfe coming to the Miami
6    Township Police Department at all after you started?
7    A.      No.
8    Q.      Did you have any conversations with Rick
9    Wolfe about any criminal investigation at GM after
10   you started?
11   A.      I did not.
12   Q.      Did you have any conversations with any --
13   with Rick Wolfe about Gillispie after you joined the
14   Miami Township Police Department again in 1990?
15   A.      I did not.
16   Q.      Did you ever have any conversations with
17   Scott Moore about Rick Wolfe being one of the
18   witnesses in his prosecution?
19   A.      Not that I recall.
20   Q.      Now, you found out -- did you have any
21   conversations with Chief Angel about this
22   investigation?  And when I say "this investigation,"
23   I mean of the Wise twins' rapes or Gillispie, however
24   you want to refer to it.
25           MR. DETERS:  Can you repeat the question?
```

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    85

```
1    I'm sorry.  It sounded like you were ruffling papers
2    maybe.
3              MR. OWENS:  No, it was one of you-all.
4              MR. DETERS:  I was on mute, so it wasn't
5    me.
6              MR. OWENS:  Yes.
7              MR. DETERS:  Thank you.
8    BY MR. OWENS:
9    Q.      Did you have any conversations with former
10   Chief Angel about the Wise sisters investigation or
11   Gillispie, however you want to refer to it?
12   A.      No.
13   Q.      Now, when was the first time that you found
14   out that Gillispie's conviction had been overturned?
15   A.      I don't remember.
16   Q.      Was it probably in 2013 when you got sued, do
17   you recall that?
18   A.      Was that the first time I heard about it?
19   Q.      Yes.
20   A.      That his conviction was overturned?
21   Q.      Yes.
22   A.      I thought you meant when he got a second
23   trial.
24   Q.      I got it.
25   A.      I apologize.
```

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    86

1    Q.      Got it.  No, we are on the same page now.

2            You don't remember finding out about the

3    process of him getting a second trial back in 1991;

4    is that right?

5    A.      Correct.

6    Q.      Did you talk to Steve Gray about anything

7    related to evidence that had gone missing that led to

8    Mr. Gillispie getting a second trial?

9    A.      As I said, the only thing I've talked to

10   Steve about was the property he said he released

11   under the direction of Fess Blair.

12   Q.      Do you think it was unfair that Mr. Gillispie

13   got a second trial in 1991?

14   A.      I can't say one way or the other.  I don't

15   know that much about it.

16   Q.      All right.  Now, you found out that

17   Gillispie's conviction, after he spent a long time in

18   prison, was subsequently overturned, correct?

19   A.      Yes.

20   Q.      What do you know about that?

21   A.      I think I learned it through the lawsuit.

22   Q.      Okay.  Do you have an opinion one way or the

23   other about whether or not Mr. Gillispie was

24   wrongfully convicted?

25   A.      Do I have an opinion?

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    87

1    Q.      Yes, sir.

2    A.      I have an opinion that he was convicted

3    correctly by a jury, and my understanding is twice.

4    Q.      And what is the basis for your opinion

5    thinking that Mr. Gillispie was correctly convicted?

6    A.      Because the jury convicted him.  Evidently,

7    the case was presented to the jury.  He had an

8    adequate defense at the time, and the jury made their

9    ruling twice.

10   Q.      Okay.

11   A.      Is what I understand.

12   Q.      Yes, sir.

13           And my question is, so you think it was a

14   mistake that his conviction was turned over --

15   overturned again after all of those years; is that

16   correct?

17   A.      I'm not going to say I think it was a

18   mistake.  I don't know that much about the judge who

19   ruled on it or the lawyers that presented it or what

20   Gillispie has to say.  I just don't know.

21           So the court made the ruling, so they

22   must have thought there was, in the court's opinion

23   or a judge's opinion or someone's opinion, there was

24   something somewhere.  I don't know what that is.

25   Q.      Let's try to be really clear.  You are not

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    88

1    aware of the evidence that was presented that led two

2    courts to declare that Mr. Gillispie's conviction

3    should be overturned, correct?

4    A.       That is correct.

5    Q.       You may have -- did you read the complaint in

6    this lawsuit?

7    A.       At some time ago, yes.

8    Q.       Now, do you have an opinion about whether or

9    not Mr. Gillispie's conviction should have been

10   ultimately overturned or whether or not he's

11   innocent?

12   A.       Okay.  I do not know what the evidence was of

13   why it was overturned, if it was overturned.  I do

14   not know.  I do have an opinion about the accusations

15   made against me and the other officers at Miami

16   Township and the crime lab and whoever else is named

17   in the suit.

18   Q.       Okay.  And your opinion about those

19   allegations is that they are false, correct?

20   A.       In the lawsuit?

21   Q.       Yes, sir.

22   A.       Of course they are incorrect and are false.

23   Q.       And my question is about whether or not you

24   have an opinion about whether or not Gillispie is

25   innocent or guilty.

1   A.      Yes, I do.

2   Q.      And what is that?

3   A.      He's guilty.  The jury said he was, twice.

4   Q.      And so no other additional evidence or

5   anything that you have heard would convince you

6   otherwise, right?

7   A.      Yes, correct.

8   Q.      So you don't think that there's a chance that

9   Scott Moore got a conviction that was a mistake,

10  correct?

11  A.      Correct.

12  Q.      Now, were there -- once a case -- going back

13  to 1990 and 1991, sir, if a detective that you are

14  supervising completed a case, how would you provide

15  that information to the captain or to the chief?

16  A.      I wouldn't.

17  Q.      Okay.  What was their involvement in ongoing

18  investigations?

19  A.      Very little.

20  Q.      Would they approve the reports written by

21  detectives?

22  A.      They wouldn't even see it unless it was

23  involved in internal affairs.  I won't say they would

24  never see it.  Very, very seldom, almost never, would

25  they see a report written by anybody unless it

Transcript of Tim L. Wilson
Conducted on December 18, 2018          90

1    involved internal affairs, and that would be Captain

2    Scothorn, unless they had some interest in it and

3    they asked to see it.

4    Q.      But as sort of a more general matter, Captain

5    Scothorn and Chief Angel didn't review or weren't

6    typically given the reports on investigations even in

7    major cases; is that right?

8    A.      That's correct.

9    Q.      And now, did you keep up with former Chief

10   Angel before he passed away?

11   A.      Yes.

12   Q.      Did he live down here too?

13   A.      No.

14   Q.      Okay.  How often did you speak with him?

15   A.      A couple, three or four times a year.

16   Q.      Did you hang out recreationally?

17   A.      No, he lived in Ohio.  I lived in Tennessee.

18   Q.      And you don't like to go back to Ohio?

19   A.      I despise going back to Ohio.

20          MR. OWENS:  We could strike that answer,

21   for the record, in case this gets played publicly.

22   BY MR. OWENS:

23   Q.      When you arrived at the Miami Township Police

24   Department, were some reports still completed

25   handwritten?

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    91

1    A.      Yes.

2    Q.      I'm going to show you what's been previously

3    marked as Exhibit 15.  This is Bates stamp Gillispie

4    35166 to 35173.

5            Now, sir, you can take as much time as

6    you need to sort of just review the structure of the

7    document, and then I'm just going to ask you some

8    questions about just the form, generally, as opposed

9    to the substance.

10   A.      Okay.

11   Q.      Are these -- strike that.

12           Am I correct that these are not forms

13   that you would have typically reviewed pursuant to an

14   investigation that you were supervising; is that

15   correct?

16   A.      That would be correct.

17   Q.      And I did actually have one more question.

18   We can go back to Exhibit 16, if you'd like to see

19   it.

20           I wanted to ask you one more thing about

21   your picture there, which is, where did that picture

22   come from?

23   A.      I don't recall.

24   Q.      Do you know why that that picture was

25   available at the department?

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    92

1   A.      I don't recall.

2   Q.      Did Scott Moore take that picture

3   specifically to use in the photo array?

4   A.      Again, I don't recall.

5   Q.      Do you recall ever having your picture taken

6   in a shirt and tie for the purposes of generating

7   pictures that could be used in a photo array?

8   A.      I do not recall that, no.

9   Q.      And I'm not talking about just this time, I'm

10  talking about anytime.

11  A.      Never that I recall.

12  Q.      All right.  I want to show you what's been

13  marked previously as Exhibit Number 10 -- actually,

14  we'll start with Exhibit 11, which is Gillispie

15  35050.

16          Sir, are you familiar with that document?

17  A.      I know what it is now, yes.

18  Q.      All right.  And what is it now?

19  A.      It appears to be a composite drawing of a

20  person on Miami Township Police Department

21  letterhead.

22  Q.      And my question is, did you review this in

23  1990 or 1991 at all?

24  A.      No.

25  Q.      I want to show you what's been marked as

Transcript of Tim L. Wilson
Conducted on December 18, 2018                93

1    Exhibit 10.

2              MR. OWENS:  I'm sorry, Pat, did you want

3    copies?

4              MR. KASSON:  That's okay.

5    BY MR. OWENS:

6    Q.      Do you know what this is?

7    A.      It appears to be a composite drawing, again,

8    of a male subject on Miami Township Police Department

9    letterhead, Jim Moore, Chief of Police.

10   Q.      Does this look familiar at all?

11   A.      No.

12   Q.      Are you familiar with -- so what I want to --

13   strike that.

14             In 1990 and 1991, I understand the

15   department was moving over to computer supplementary

16   reports, correct?

17   A.      Yes.

18   Q.      What was the practice with respect to what

19   officers would do with their handwritten notes before

20   they typed them in the computer?

21   A.      I don't know that officers actually typed

22   them into the computer.  Handwritten notes?

23   Q.      Right.  So if --

24   A.      Are you talking about field notes?

25   Q.      Yes, sir.

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    94

1    A.      I don't know that field notes were ever
2    transcribed into a handwritten report on a daily
3    basis.
4    Q.      Right.  And so what I'm wondering is, what
5    was the practice with respect to what would happen to
6    field notes once the supplementary reports were
7    written?
8    A.      As far as I know, they would keep them in
9    their possession and turn them over to the
10   prosecutor's office.
11   Q.      So the field notes were supposed to be
12   included in the file and turned over to the
13   prosecutor's office?
14   A.      My way of thinking back then was, anything
15   that a detective generated or had possession of, for
16   or against a defendant, would be given to and
17   reviewed by a prosecutor.
18   Q.      So Miami Township officers, in your
19   experience, never destroyed their field notes after
20   writing their supplementary reports?
21   A.      Not to my knowledge.
22           MR. DOWD:  Objection.  Foundation.
23   BY MR. OWENS:
24   Q.      Did you ever review Scott Moore's field notes
25   for this investigation?

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    95

```
1    A.      No.
2    Q.      Did you ever review Scott Moore's field notes
3    for any investigation?
4              MR. KAY:  Objection.  Foundation.
5    BY MR. OWENS:
6    Q.      Go ahead.
7    A.      I'm thinking.
8    Q.      Okay.
9    A.      No.
10   Q.      Did you review any -- can you recall
11   reviewing field notes for any detectives for any
12   investigation while you were a sergeant for the
13   detective division in the Miami Township Police
14   Department?
15   A.      No.
16   Q.      Now, am I correct that there was no general
17   order or SOP in 1990 and 1991 requiring officers in
18   the Miami Township Police Department to retain and
19   disclose their field notes?
20   A.      An SOP?
21   Q.      Yes.
22   A.      A written SOP?  I don't believe there was an
23   SOP that specifically spelled out field notes to be
24   retained.
25   Q.      Okay.  Was there an SOP that laid out some
```

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    96

1   other types of notes must be retained or any other

2   type of documents that you can recall in 1990-91,

3   before the accreditation?

4   A.      I don't recall such SOP.

5   Q.      And before the accreditation, were formal

6   orders -- was the format standard operating

7   procedures, is that what the Miami Township Police

8   Department used?

9   A.      Format.

10  Q.      So some police departments use general

11  orders, some police departments use manuals, some

12  police departments use booklets.

13          In Miami Township in 1990, when you

14  showed up, what did they use for saying this was the

15  official policy of the department?

16  A.      The most that I can remember and the most

17  that I was involved in were standard operating

18  procedures of conduct and disciplinary procedures.

19          As far as everyday investigative

20  operation procedures concerning reports, I don't even

21  remember such a manual, if there was one.

22  Q.      You are not in possession of anything like

23  that, are you?

24  A.      I am not.

25  Q.      Were you ever given a set of standard

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    97

1    operating procedures when you arrived in the
2    department in 1990?
3    A.      Of standard operating procedures on --
4    Q.      Any topic.
5    A.      Yes.
6    Q.      You were?
7    A.      Yes.
8    Q.      Where are those?
9    A.      I have no idea.
10   Q.      When is the last time you saw them?
11   A.      Probably the day I left the police department
12   in 1998.
13   Q.      Would you have retained the original ones
14   that you had from before the accreditation when you
15   arrived at the department?
16   A.      Would I have?
17   Q.      Retained the original standard operating
18   procedures, whichever ones you received when you
19   arrived, even through the accreditation process until
20   you retired?
21   A.      Yes, I believe so.
22   Q.      And you are sure you don't have them in any
23   storage box, garage, anything like that?
24   A.      Sir, I have absolutely nothing except maybe
25   something out of my personnel file; date of hire,

1    retirement date.  Concerning Miami Township, no

2    police reports, no supplements, no files, no field

3    notes, nothing like that.  No SOPs, no accreditation

4    manuals, nothing.

5    Q.     You have your personnel file?

6    A.     No, I don't have my personnel file.  I just

7    have a couple of things from it, which indicated my

8    hire date and the date that I was sworn in as a clerk

9    of courts at Miamisburg.

10   Q.     The hire date that you have, the personnel

11   document to which you just referred, was that from

12   Miami Township or from somewhere else?

13   A.     Actually, it was from the clerk of courts'

14   office where I was sworn in June the 19th to be a

15   notary.  I think every officer at Miami Township had

16   to be sworn in as a notary of the court to be able to

17   sign documents at court, return warrants and blah,

18   blah.

19   Q.     Could you please transmit any documents you

20   have related to your employment, or Miami Township in

21   any way, to your attorney so that we can review them?

22   A.     Yes.

23   Q.     Thank you.

24          Would you be surprised to know that Miami

25   Township doesn't have a copy of any of the SOPs that

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    99

```
 1   existed in 1990?
 2             MR. DOWD:  Objection.  Form.
 3             MR. KASSON:  You can answer.
 4             THE WITNESS:  Would I be surprised?
 5   BY MR. OWENS:
 6   Q.     Yeah.
 7   A.     No.
 8   Q.     Why not?
 9   A.     It's 30 years ago.
10             MR. KASSON:  When you get a good time for
11   a break, we have been going for an hour, so whatever
12   is a good time for you.
13             MR. OWENS:  This is a good time, sure.
14             THE WITNESS:  I'm fine, whatever.
15             MR. KASSON:  We'll take a five-minute
16   break.
17             (An off-the-record discussion was held.)
18   BY MR. OWENS:
19   Q.     So just a few more questions.
20             As the sergeant detective -- is that the
21   correct --
22   A.     Detective sergeant, sergeant detective.
23   Q.     In 1990, were there any other individuals who
24   occupied that position at Miami Township?
25   A.     In 1990?
```

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    100

```
1    Q.      Yeah.

2    A.      Just me and myself and Steve Fritz, as far

3    as -- as far as I know.

4    Q.      Right.  And Fritz left right before you,

5    right?

6    A.      Yes.

7    Q.      So then after you got there, were there any

8    other Miami Township supervisors who were -- whose

9    job it was to directly supervise the detectives?

10   A.      No.

11   Q.      Now, we have gone over a few documents today.

12   We have gone over the depositions.  You have had a

13   two-hour meeting with your attorney in advance.

14           Is there anything else that you can

15   recall about the investigation of the Wise rapes or

16   the Gillispie case, however you want to refer to it,

17   that you haven't told me today?

18           MR. KASSON:  Objection to the form.  You

19   can go ahead and answer.

20           THE WITNESS:  No.

21   BY MR. OWENS:

22   Q.      Has our discussion today or review of any of

23   the documents refreshed your recollection about

24   anything that you told me that you previously

25   couldn't recall?
```

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    101

1    A.      They have been helpful.

2    Q.      And so what I'm saying is, now are there

3    things that your memory has been jogged on that we

4    haven't discussed already today?

5    A.      No.

6    Q.      Nothing new popped into your head during a

7    break or as I was asking a different question?

8    A.      No.

9    Q.      And you have been completely forthcoming and

10   truthful in your answers today?

11   A.      Truthful to the very best of my knowledge.

12           MR. OWENS:  I don't think I have any more

13   questions.

14           MR. KASSON:  Anybody else?

15           MR. DETERS:  You can go.

16           MR. DOWD:  Go ahead.

17           MR. DETERS:  This is Jon Deters for Gray,

18   DiPietro, and Angel.  I have no questions at this

19   time.

20           MR. DOWD:  This is Ned Dowd.  I do have a

21   few questions of the witness.

22

23                      EXAMINATION

24   QUESTIONS BY MR. DOWD:

25   Q.      Mr. Wilson, Ned Dowd here.  I'm the attorney

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    102

1    that represents Miami Township, and a couple of

2    things I'd like to cover with you.  We really didn't

3    get into the allegations in the complaint, and I'd

4    like to cover some of those with you just to make

5    sure we are all on the same page here.

6              First of all, there's an allegation in

7    Paragraph 43 of the complaint that said that you were

8    responsible, along with Angel and Scothorn, for

9    reassigning the case to Detective Moore.  Are you

10   aware of that?

11   A.     I am, sir.

12   Q.     All right.  I understand from your testimony

13   that factually is not an accurate allegation,

14   correct?

15   A.     That is correct, sir.

16   Q.     All right.  Do you know, sir, if the file had

17   been turned over to Mr. Moore by Detective Fritz

18   before he left the department?

19             MR. OWENS:  Objection to the form of the

20   question.

21             MR. KASSON:  You can go ahead and answer.

22             THE WITNESS:  I am unaware of that, sir.

23   I do not know.

24   BY MR. DOWD:

25   Q.     So prior to your arrival, it's certainly

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    103

1    conceivable that Mr. Fritz could have handed that

2    file to Mr. Moore, you weren't there and have no

3    knowledge of that; is that fair to say?

4    A.      Yes, it is, sir.

5    Q.      All right.  Now, at least when you took over

6    at the detective section, did you at least meet with

7    your detectives to get some understanding of what was

8    on their plate as far as what they were

9    investigating?

10   A.      No.  It was more like what cases -- what type

11   of cases do you prefer to investigate, what were your

12   strong points, where would you like to go, and that

13   helped me make my decision on assigning cases to

14   individuals.

15   Q.      Okay.  Did you try to get some understanding

16   of what currently was on their plate so that you

17   could decide who may or may not have the time or

18   resources to take on new work?

19   A.      I don't recall doing that.

20   Q.      Okay.  But at least at some point in time it

21   came to your attention that the Gillispie or the Wise

22   case was in the office, correct?

23   A.      That's true, sir.

24   Q.      And it's my understanding you just can't

25   recall what point in time that was?

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    104

1    A.      That's correct, sir.

2    Q.      All right.  And then I don't recall and I may

3    not understand, would you at least -- when the report

4    was completed, is that something you would have at

5    least reviewed, do you know, or would that have gone

6    to somebody else within the department?

7    A.      On that particular case, it very well could

8    have went to somebody else that assigned the case --

9    higher authority than me that assigned the case to

10   Moore.

11   Q.      So, as you sit here today, is it possible you

12   may have reviewed that and simply don't recall, or

13   are you sure that you did not review the final report

14   before it would have gone to the prosecutor's office?

15   A.      I may have reviewed it, but I don't remember

16   reviewing it.

17   Q.      Right.  I assume over the seven years you

18   were in the department you were involved in hundreds

19   of investigations overseeing all of these detectives,

20   correct?

21   A.      That's correct, sir.

22   Q.      And I certainly wouldn't expect you to recall

23   the review of each and every one of those incidents.

24   Is it one of those things you may have given it a

25   review and passed it on and just don't have a recall

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    105

1    of it?

2    A.      That's correct, sir.

3    Q.      And I assume what you'd be reviewing, in any

4    event, was really just to make sure that the

5    investigation appeared -- at least what you were able

6    to review, appears to contain sufficient information

7    in a professional manner that would be presented to

8    the prosecutor so they could evaluate it and make a

9    determination as to whether to accept the case?

10              MR. OWENS:  Objection to the form of the

11   question.

12              MR. KASSON:  You can go ahead and answer.

13   BY MR. DOWD:

14   Q.      Is that fair to say?

15   A.      Yes, sir, it is.

16   Q.      You didn't go through line-by-line and

17   question each and every entry in these reports of

18   each of these detectives before they went to the

19   prosecutor's office?

20   A.      That's correct.

21   Q.      Is that fair?

22   A.      That's correct, sir.

23   Q.      All right.  Now, in the complaint, there's an

24   allegation in Paragraph 45 that Moore and Wolfe set

25   out to frame Mr. Gillispie; and in connection with

Transcript of Tim L. Wilson
Conducted on December 18, 2018                     106

1   that, they, first of all, fabricated evidence,

2   withheld and destroyed evidence, unlawfully

3   undermined Mr. Gillispie's defense, provided false

4   and misleading testimony.

5              All right.  First of all, if, in fact,

6   that were to occur, that evidence was being

7   fabricated and whether it was withheld, destroyed, or

8   providing false testimony, those actions themselves

9   would, in fact, be criminal acts, would they not?

10             MR. OWENS:  Objection to the form of the

11  question.

12             THE WITNESS:  They would be criminal, as

13  far as I know, sir.

14  BY MR. DOWD:

15  Q.      All right.  And as I understand it, I assume

16  you had certainly no knowledge of any such activities

17  taking place on any of these files; is that fair to

18  say?

19  A.      That is very fair to say, no knowledge of

20  anybody doing anything like that.

21  Q.      And, in fact, as a law enforcement officer,

22  when you are sworn as an officer, you take an oath

23  that you are going to uphold the Constitution of the

24  United States, federal laws, the Constitution of the

25  State of Ohio, state laws and all local ordinances

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    107

1    and laws, correct?
2              MR. OWENS:  Objection.  Form.
3              THE WITNESS:  Yes, sir.
4    BY MR. DOWD:
5    Q.    All right.  And any officer who would
6    knowingly or intentionally either fabricate evidence,
7    withhold or destroy evidence or unlawfully undermine
8    a suspect's defense, or commit perjury or provide
9    false testimony, would be acting contrary to that
10   oath they took when they became a police officer; is
11   that fair to say?
12             MR. OWENS:  Objection.  Form.
13             THE WITNESS:  It is, sir.
14   BY MR. DOWD:
15   Q.    All right.  In Paragraph 49, it just
16   generically refers to the defendant officers, sir,
17   and you are encompassed within that in the complaint.
18             And I just want to address for the
19   record, it states in there that, "Defendant officers
20   removed from case file supplemental reports authored
21   by Bailey and approved by Fritz."
22             Sir, let me ask you:  Did you remove any
23   case file supplements or reports authored by Bailey
24   or Fritz?
25   A.    Sir, I did not.

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    108

1    Q.      And did you have any knowledge of any other

2    officers in the Miami Township Police Department

3    removing supplemental reports authored by Bailey or

4    Fritz?

5    A.      I do not have any knowledge, sir.

6    Q.      Sir, as a supervisor of the detectives, if,

7    in fact, that information came to your attention, you

8    would have, number one, put a stop to it; and, number

9    two, reported that to your supervisor, I take it,

10   correct?

11   A.      Exactly, yes, sir.

12           MR. OWENS:  Objection to the form of the

13   last question.

14   BY MR. DOWD:

15   Q.      All right.  Bear with me.  My notes are kind

16   of scattered here.

17           All right.  In Paragraph 74 of the

18   complaint, it is alleged that the department, Chief

19   Angel and other high-ranking officials, including

20   yourself, sir, engaged in a systematic process of

21   rigging criminal prosecutions against persons whom

22   they and/or other friends of the department had

23   problems with.

24           Sir, let me ask:  Did you personally

25   engage in any such systematic process of rigging

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    109

```
 1   criminal prosecutions against persons whom they or
 2   other friends had problems with?
 3   A.      No, sir, I did not, never.
 4   Q.      All right.  And during the eight years that
 5   you were employed by the Miami Township Police
 6   Department, did it ever come to your attention that
 7   anyone within the department had engaged in the
 8   systematic process of rigging criminal prosecutions
 9   against persons whom they and/or other friends of the
10   department had problems with?
11   A.      No knowledge of that, sir, no.
12   Q.      All right.  And, in fact, if members of the
13   department were engaged in such conduct, that would
14   in itself be a criminal act, would it not?
15           MR. OWENS:  Objection to the form of the
16   question.
17           THE WITNESS:  Could you repeat that, sir?
18   BY MR. DOWD:
19   Q.      Yeah.  If, in fact, there were members of the
20   police department that had engaged in the systematic
21   process of rigging criminal prosecutions against
22   persons whom they or other friends of the department
23   had problems with, that, in fact, would be a criminal
24   act in itself, would it not?
25   A.      Yes.
```

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    110

```
1    Q.      In paragraph 77, it's alleged that "The
2    defendant officers, GM and county, acted individually
3    in a conspiracy to destroy, fail to disclose, and
4    otherwise withheld and/or suppressed exculpatory
5    information and material from prosecution."
6            Sir, did you -- were you aware of any
7    failure to disclose any exculpatory evidence with
8    respect to Mr. Gillispie's investigation?
9    A.      No, sir.
10   Q.      All right.  And during the eight years that
11   you served in the department, did it ever come to
12   your attention that the Miami Township Police
13   Department had a habit or routine of failing to
14   disclose or otherwise provide exculpatory evidence to
15   the prosecutor?
16   A.      No, sir.
17   Q.      And I believe you had earlier testified that,
18   while you were the head of the detective department,
19   it was common practice of the department for the
20   investigating detectives to provide all evidence to
21   the prosecutor, even evidence that may be of an
22   exculpatory nature, correct?
23           MR. OWENS:  Objection to the form of the
24   question.  It's a mischaracterization of the prior
25   testimony.
```

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    111

```
1              THE WITNESS:  That is correct, sir.
2    BY MR. DOWD:
3    Q.      And if I've mischaracterized anything, please
4    let me know.  But my understanding from your
5    testimony was that you basically expected your
6    detectives to basically provide everything to the
7    prosecutor's office, correct?
8    A.      It was mandatory, yes, sir.
9    Q.      All right.  And that was, in fact, during the
10   time period you were there, the custom and practice
11   of the Miami Township Police Department, was it not?
12   A.      It was, sir.
13             MR. DOWD:  Mr. Wilson, I thank you for
14   your time.  I believe that's all of the questions I
15   have.
16             THE WITNESS:  Thank you, sir.
17
18                      EXAMINATION
19   QUESTIONS BY MR. KAY:
20   Q.      Jeff Kay.  Can you hear me?
21   A.      I can, sir.
22   Q.      I represent Scott Moore in this case.  Just a
23   few questions for you.
24             Going back to your earlier testimony, you
25   had stated in your opinion Scott Moore was a good
```

Transcript of Tim L. Wilson
Conducted on December 18, 2018                   112

1  detective, true?

2  A.     Yes.

3  Q.     All right.  I think you had also stated that

4  he performed very thorough investigations, correct?

5           MR. OWENS:  Objection.  Form.

6           THE WITNESS:  Yes.

7  BY MR. KAY:

8  Q.     Okay.  And as far as the Connie and Bonnie

9  Wise rape matter, your testimony was that you thought

10 it was investigated well; isn't that right?

11 A.     Yes, by Scott Moore.

12 Q.     That's right.  So as far as the entirety of

13 Scott Moore's handling of the Connie and Bonnie Wise

14 rape investigation, you had no criticisms of them; is

15 that a fair statement?

16 A.     You may have to repeat it, sir.  It was kind

17 of interfered with.

18 Q.     Sorry.  As far as the entirety of Scott

19 Moore's handling of the Connie and Bonnie Wise rape

20 investigation, you have no criticisms of him; is that

21 a fair statement?

22 A.     It is, sir.

23           MR. KAY:  Thank you.  That's all I have.

24           (An off-the-record discussion was held.)

25 ///

1                    EXAMINATION

2    QUESTIONS BY MR. OWENS:

3    Q.      Sir, just a couple more questions and then

4    we'll get out of here.

5    A.      Yes, sir.

6    Q.      You testified a moment ago that the

7    disclosure of all material in the file was mandatory.

8    Do you recall that?

9    A.      Yes.

10   Q.      And there was no written document that said

11   that at the time, correct?

12   A.      I cannot remember that there was a written

13   document, but it was a Tim Wilson, Detective

14   Sergeant, expectation that detectives do that.

15   Q.      Okay.  When did you communicate that

16   expectation to Scott Moore?

17   A.      I don't know when.  I don't have the date,

18   just throughout my reign as detective sergeant, at

19   some point in time it was just general practice,

20   widely accepted, that when you went down with a case

21   file to the prosecutors, Montgomery County, Ohio,

22   prosecutor's office, you took everything and you

23   showed everything to the prosecutor's office,

24   exculpatory, for the defendant, against the

25   defendant, it was our obligation to provide

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    114

1    everything.

2    Q.      So you would say that everybody knew that

3    they had an obligation to turn over the good, bad,

4    and the ugly to the prosecutors, right?

5    A.      As detectives, yes.

6    Q.      And that was the expectation that you had for

7    your officers, correct?

8    A.      Exactly.

9    Q.      But at the same time you didn't take any

10   steps to figure out whether or not that was happening

11   or monitor what they did, correct?

12   A.      I didn't think I had to babysit them, no.

13   Q.      And you testified a moment ago that, in

14   response to the questioning from the attorney from

15   the City of Miami -- or, excuse me, I guess from

16   Miami Township, it's not a city.

17   A.      Yes, sir.

18   Q.      That you didn't review the reports or that

19   you signed off on them line-by-line; is that correct?

20   A.      That is true.

21   Q.      Did you just rubber stamp them?

22   A.      No.  I wouldn't say rubber stamp, no.  If a

23   document was handed to me, I at least looked at it,

24   maybe thumbed through it, maybe read it

25   word-for-word, it just --

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    115

```
1    Q.      Is it fair to say that when you read reports,
2    you made yourself apprised of what was going on in
3    the investigations that your detectives were doing?
4    A.      Yes.
5    Q.      Particularly for major cases?
6    A.      Yes.
7    Q.      And the Wise rape investigation was a major
8    case, right?
9    A.      Yes.
10           MR. OWENS:  That's all.
11           MR. KASSON:  Anybody else?
12
13                    EXAMINATION
14   QUESTIONS BY MR. DOWD:
15   Q.      Just real quick.  Mr. Wilson, you came in in
16   1980, and I understand sometime shortly thereafter
17   the department, through the accreditation process,
18   came up with some, actually, general orders that then
19   kind of became the written policies of the
20   department; is that your understanding?
21   A.      Sir, I came in in 1990.  I'm sorry.
22           MR. OWENS:  We all wanted to say the same
23   thing.
24           THE WITNESS:  The year.
25           MR. KASSON:  You said 1980.
```

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    116

```
1    BY MR. DOWD:

2    Q.      I'm sorry, I know you came in in 1990.  And

3    subsequent to that time, around 1993, I think you

4    said as part of the accreditation process there had

5    been a set of policies and procedures basically

6    adopted by the department, correct?

7    A.      Yes, sir.

8    Q.      All right.  And that ended up being what I

9    think is now called the General Orders of Miami

10   Township; do you recall?

11   A.      I do not recall, sir.

12   Q.      All right.  Prior to that time when you came

13   in, you were referencing there were, in place, some

14   standing operating procedures within the department,

15   correct?

16   A.      There were.

17   Q.      All right.  And as you sit here today, can

18   you specifically recall all of the standing operating

19   procedures that were in effect in 1990 when you

20   arrived?

21   A.      I cannot, sir.

22   Q.      Okay.  So there may or may not have been

23   standing operating procedures with respect to the

24   detectives' retention of file material with respect

25   to how detectives are to handle their investigations
```

Transcript of Tim L. Wilson
Conducted on December 18, 2018                    117

1    in other matters, we just don't presently have them

2    in our possession?

3                MR. OWENS:  Objection.  Form.  It's

4    compound as well.  Go ahead.

5                THE WITNESS:  There may or may not have

6    been.

7                MR. DOWD:  That's all of the questions

8    I've got.  Thank you.

9                THE WITNESS:  Yes, sir.  Thank you.

10               MR. KASSON:  Anybody else?

11               MR. DOWD:  I would like a copy, e-tran;

12   electronic format is sufficient.

13               THE COURT REPORTER:  Jon, would you like

14   a copy?

15               MR. DETERS:  I don't think so at this

16   time.

17               MR. KAY:  Not at this time.  Thank you.

18               MR. KASSON:  I'll take a copy.

19               MR. OWENS:  Actually, we will order this.

20   Actually, only e-tran, no hard copy.  Regular time.

21               (WHEREUPON, the foregoing proceedings

22   were concluded at 12:00 P.M.)

23

24

25

```
1                    REPORTER'S CERTIFICATE

2


3    STATE OF TENNESSEE

4    COUNTY OF DAVIDSON

5              I, SANDRA ANDRYS, LCR, RPR, RMR, with

6    offices in Nashville, Tennessee, hereby certify that

7    I reported the foregoing videoconference deposition

8    of TIM L. WILSON by machine shorthand to the best of

9    my skills and abilities, and thereafter the same was

10   reduced to typewritten form by me.

11             I further certify that I am not related

12   to any of the parties named herein, nor their

13   counsel, and have no interest, financial or

14   otherwise, in the outcome of the proceedings.

15

16

17

18

19

20

21

22   _____
         SANDRA ANDRYS, LCR, RPR, RMR
23       Licensed Court Reporter (TN)
         Notary Public State of Tennessee
24
         My Notary Commission Expires:  6/26/22
25       LCR 583 - Expires:  6/30/2019
```

Transcript of Tim L. Wilson
Conducted on December 18, 2018

119

| A | | | |
|---|---|---|---|
| **aberdeen** | **active** | 55:23, 55:24, | **all** |
| 2:8 | 82:19, 83:8 | 63:11, 74:12, | 5:7, 5:9, 5:10, |
| **abilities** | **activities** | 74:15, 76:9, | 6:7, 6:14, 9:4, |
| 118:9 | 106:16 | 78:12, 78:14, | 9:5, 13:10, |
| **able** | **acts** | 78:16, 78:18, | 18:6, 20:1, |
| 26:21, 54:24, | 106:9 | 84:6, 84:9, | 22:9, 22:11, |
| 98:16, 105:5 | **actually** | 84:13, 86:17, | 22:13, 23:3, |
| **above** | 10:9, 12:8, | 87:15, 94:19, | 25:15, 28:9, |
| 52:4, 52:5, | 17:13, 24:13, | 100:7 | 30:1, 31:21, |
| 53:25, 63:2 | 34:23, 69:9, | **again** | 33:8, 33:23, |
| **absence** | 72:24, 79:5, | 10:19, 11:8, | 34:8, 34:21, |
| 30:25 | 82:22, 91:17, | 11:9, 45:22, | 37:21, 42:4, |
| **absolutely** | 92:13, 93:21, | 46:18, 55:9, | 46:11, 48:24, |
| 97:24 | 98:13, 115:18, | 57:10, 58:9, | 49:3, 49:10, |
| **accept** | 117:19, 117:20 | 82:22, 84:14, | 49:25, 50:5, |
| 55:6, 105:9 | **added** | 87:15, 92:4, | 50:14, 51:18, |
| **accepted** | 21:13, 21:17, | 93:7 | 55:24, 58:24, |
| 113:20 | 72:13 | **against** | 60:6, 60:18, |
| **access** | **additional** | 7:21, 7:25, | 62:3, 65:4, |
| 41:6 | 21:13, 22:17, | 16:10, 64:17, | 65:15, 65:20, |
| **accreditation** | 25:23, 57:1, | 88:15, 94:16, | 68:10, 68:14, |
| 52:23, 52:24, | 89:4 | 108:21, 109:1, | 69:11, 69:25, |
| 53:4, 96:3, | **address** | 109:9, 109:21, | 74:22, 75:1, |
| 96:5, 97:14, | 70:18, 107:18 | 113:24 | 75:16, 76:6, |
| 97:19, 98:3, | **adequate** | **age** | 76:15, 78:11, |
| 115:17, 116:4 | 87:8 | 18:7, 42:9 | 80:19, 80:22, |
| **accumulate** | **adjudicated** | **agency** | 82:5, 82:12, |
| 75:1 | 55:25 | 56:4 | 82:18, 83:19, |
| **accurate** | **administrative** | **ago** | 84:6, 86:16, |
| 11:21, 50:18, | 52:4 | 11:1, 11:3, | 87:15, 92:12, |
| 102:13 | **adopted** | 11:6, 37:19, | 92:18, 92:23, |
| **accusations** | 116:6 | 40:10, 40:13, | 93:10, 102:5, |
| 88:14 | **advance** | 88:7, 99:9, | 102:6, 102:12, |
| **accused** | 32:13, 32:17, | 113:6, 114:13 | 102:16, 103:5, |
| 35:22, 79:21 | 100:13 | **agree** | 104:2, 104:19, |
| **act** | **advertisement** | 10:14 | 105:23, 106:1, |
| 54:12, 109:14, | 17:23 | **agreed** | 106:5, 106:15, |
| 109:24 | **affairs** | 5:15 | 106:25, 107:5, |
| **acted** | 15:23, 15:25, | **ahead** | 107:15, 108:15, |
| 110:2 | 16:7, 16:15, | 9:22, 38:18, | 108:17, 109:4, |
| **acting** | 16:21, 18:21, | 45:22, 48:3, | 109:12, 110:10, |
| 40:23, 41:3, | 20:3, 51:8, | 71:7, 71:20, | 110:20, 111:9, |
| 107:9 | 89:23, 90:1 | 95:6, 100:19, | 111:14, 112:3, |
| **action** | **after** | 101:16, 102:21, | 112:23, 113:7, |
| 5:14, 8:17 | 13:22, 13:24, | 105:12, 117:4 | 115:10, 115:22, |
| **actions** | 19:7, 23:10, | **al** | 116:8, 116:12, |
| 106:8 | 35:4, 36:18, | 1:8 | 116:17, 116:18, |
| | 50:22, 51:16, | **album-type** | 117:7 |
| | | 40:20 | |

Transcript of Tim L. Wilson
Conducted on December 18, 2018

120

**allegation**
102:6, 102:13,
105:24
**allegations**
16:10, 88:19,
102:3
**alleged**
37:6, 108:18,
110:1
**allegedly**
34:6
**allegiance**
59:14
**allow**
76:6
**allowed**
64:22
**almost**
89:24
**along**
24:4, 36:11,
40:3, 102:8
**already**
63:5, 101:4
**also**
59:24, 67:9,
112:3
**andrys**
1:28, 5:15,
118:5, 118:23
**angel**
3:2, 6:6, 16:9,
17:5, 51:10,
51:11, 52:8,
52:18, 56:10,
57:15, 59:13,
59:15, 84:21,
85:10, 90:5,
90:10, 101:18,
102:8, 108:19
**another**
27:17, 34:4,
57:2, 57:14
**answer**
9:23, 10:18,
11:9, 13:4,
13:7, 13:9,
26:11, 26:22,

27:5, 32:6,
34:14, 38:18,
44:21, 45:22,
46:17, 48:4,
48:13, 48:17,
49:17, 49:21,
49:22, 50:16,
55:2, 61:24,
66:17, 71:8,
71:20, 82:11,
90:20, 99:3,
100:19, 102:21,
105:12
**answered**
11:9, 36:17,
45:21, 46:17
**answers**
25:15, 27:2,
34:24, 101:10
**any**
5:14, 7:14,
7:20, 7:22,
7:24, 8:18,
14:25, 15:3,
16:9, 16:10,
16:14, 20:19,
21:12, 21:17,
21:20, 22:21,
28:3, 28:7,
28:9, 28:16,
28:17, 28:21,
29:25, 32:4,
32:12, 32:15,
32:16, 33:2,
33:6, 33:14,
36:23, 37:7,
37:13, 38:11,
40:4, 40:5,
42:13, 42:20,
44:9, 44:25,
45:5, 47:18,
53:6, 53:19,
55:19, 61:7,
61:22, 62:10,
62:11, 64:15,
66:9, 66:11,
68:21, 69:3,
70:3, 70:8,

70:23, 73:10,
73:19, 74:5,
76:4, 76:10,
77:18, 77:22,
82:2, 83:22,
83:25, 84:8,
84:9, 84:12,
84:16, 84:20,
85:9, 95:3,
95:10, 95:11,
96:1, 97:4,
97:22, 98:19,
98:21, 98:25,
99:23, 100:7,
100:22, 101:12,
105:3, 106:16,
106:17, 107:5,
107:22, 108:1,
108:5, 108:25,
110:6, 110:7,
114:9, 118:12
**anybody**
30:14, 32:24,
33:11, 36:3,
39:22, 57:18,
66:6, 80:15,
89:25, 101:14,
106:20, 115:11,
117:10
**anyone**
6:10, 50:14,
109:7
**anything**
9:13, 9:18,
10:10, 10:14,
11:6, 11:11,
11:13, 11:16,
12:16, 12:21,
13:5, 18:23,
19:18, 20:13,
21:20, 23:1,
25:17, 31:13,
31:19, 32:8,
34:16, 34:20,
34:25, 35:1,
35:18, 36:2,
36:3, 36:8,
37:12, 52:17,

57:18, 57:20,
59:4, 59:18,
75:3, 78:4,
83:25, 86:6,
89:5, 94:14,
96:22, 97:23,
100:14, 100:24,
106:20, 111:3
**anytime**
55:3, 60:22,
92:10
**apologize**
31:22, 85:25
**appeal**
55:8
**appear**
72:22
**appearance**
5:10, 60:9,
60:11
**appeared**
2:21, 3:11,
3:24, 105:5
**appears**
92:19, 93:7,
105:6
**applied**
17:24, 56:1
**appreciate**
25:18
**apprised**
115:2
**approached**
8:13
**appropriate**
19:23, 42:1,
75:13
**approval**
73:16, 75:6
**approve**
75:12, 89:20
**approved**
107:21
**approving**
45:13
**area**
8:9, 8:14
**around**
15:15, 116:3

Transcript of Tim L. Wilson
Conducted on December 18, 2018

121

**arrange**
39:6
**array**
39:6, 43:15,
69:19, 92:3,
92:7
**arrays**
40:15
**arrest**
64:13, 64:18,
65:21, 66:14,
67:16, 70:12,
71:6, 71:16,
72:23, 72:24,
73:17, 73:21,
75:14
**arrested**
40:22, 70:24,
71:17
**arrests**
66:25, 79:6
**arrival**
102:25
**arrived**
21:14, 31:24,
63:12, 64:3,
68:8, 90:23,
97:1, 97:15,
97:19, 116:20
**arriving**
33:24
**ask**
12:25, 25:24,
26:6, 26:8,
27:12, 32:7,
34:16, 44:23,
47:1, 48:18,
62:4, 66:19,
67:12, 68:25,
91:7, 91:20,
107:22, 108:24
**asked**
11:8, 12:20,
43:14, 45:21,
46:17, 90:3
**asking**
10:3, 10:9,
10:23, 15:11,

49:3, 73:5,
101:7
**aspect**
20:1
**assaulted**
39:23
**assaults**
14:25
**assign**
20:15, 22:17,
46:5, 47:8,
47:20, 54:5,
78:7, 78:9
**assigned**
16:8, 20:13,
23:17, 33:25,
34:23, 35:2,
35:9, 46:5,
47:2, 47:13,
75:22, 78:5,
104:8, 104:9
**assigning**
22:23, 64:3,
68:15, 68:19,
103:13
**assignment**
47:6, 47:10,
47:15
**assist**
22:20
**assistance**
20:16, 22:16,
22:21, 40:8,
67:12
**assistant**
30:24
**associated**
17:17, 55:20,
60:18, 61:4
**assume**
30:6, 30:9,
48:5, 104:17,
105:3, 106:15
**assumes**
38:17
**attention**
55:12, 67:14,
103:21, 108:7,

109:6, 110:12
**attorney**
2:6, 2:15,
2:27, 3:5, 3:17,
8:24, 25:23,
49:16, 98:21,
100:13, 101:25,
114:14
**attorneys**
32:5, 32:13,
32:15, 32:17,
32:25, 33:17,
34:5, 49:10
**authored**
107:20, 107:23,
108:3
**authority**
34:1, 46:10,
66:12, 104:9
**authorized**
70:9
**available**
39:3, 40:18,
75:23, 91:25
**average**
53:25
**aware**
7:20, 7:24,
42:20, 45:5,
45:9, 58:6,
58:10, 58:15,
64:7, 69:3,
70:8, 78:10,
78:12, 79:8,
81:8, 83:13,
83:14, 88:1,
102:10, 110:6
**away**
90:10

**B**

**babysit**
114:12
**back**
10:1, 13:3,
13:20, 13:22,
13:24, 16:13,
18:20, 19:6,

19:7, 35:5,
35:14, 42:5,
57:7, 57:15,
58:5, 58:24,
65:4, 67:20,
76:24, 79:18,
80:5, 80:6,
80:16, 84:3,
86:3, 89:12,
90:18, 90:19,
91:18, 94:14,
111:24
**background**
12:23
**bad**
54:3, 54:6,
70:17, 70:22,
114:3
**badge**
38:4
**bailey**
62:14, 63:5,
107:21, 107:23,
108:3
**barbiere**
3:6
**based**
25:24
**basically**
30:24, 33:23,
36:6, 54:13,
63:13, 68:5,
68:6, 82:8,
111:5, 111:6,
116:5
**basis**
10:24, 87:4,
94:3
**bates**
65:6, 69:15,
91:3
**baymont**
5:6
**bear**
108:15
**became**
12:13, 56:13,
107:10, 115:19

Transcript of Tim L. Wilson
Conducted on December 18, 2018

122

**because**
13:14, 36:12,
42:5, 42:25,
46:4, 47:7,
47:19, 50:19,
54:4, 54:24,
60:8, 62:3,
72:23, 76:20,
78:7, 87:6
**become**
58:15, 73:24
**been**
6:18, 7:4, 7:7,
7:17, 7:21,
7:25, 10:19,
17:17, 21:18,
23:17, 25:1,
26:21, 30:19,
35:22, 40:22,
41:15, 42:6,
43:11, 43:19,
44:2, 44:14,
44:17, 47:23,
49:1, 51:1,
51:7, 51:9,
52:2, 52:5,
53:17, 55:4,
55:25, 58:17,
62:24, 63:19,
66:9, 69:5,
69:12, 71:25,
72:13, 73:6,
74:12, 74:15,
77:7, 77:8,
77:10, 77:12,
77:25, 78:16,
82:23, 85:14,
88:9, 91:2,
92:12, 92:25,
99:11, 101:1,
101:3, 101:9,
102:17, 116:5,
116:22, 117:6
**before**
7:5, 24:11,
24:19, 25:7,
25:14, 26:3,
26:21, 27:2,

27:25, 28:3,
36:17, 43:18,
44:4, 44:21,
46:5, 48:23,
48:25, 53:3,
53:7, 68:7,
68:21, 74:23,
74:24, 78:17,
90:10, 93:19,
96:3, 96:5,
97:14, 100:4,
102:18, 104:14,
105:18
**beginning**
23:11
**behalf**
1:17, 6:9
**behind**
8:10
**being**
7:15, 11:20,
12:4, 13:2,
13:16, 22:22,
30:8, 37:25,
38:1, 39:11,
42:22, 43:21,
49:13, 54:18,
56:21, 57:19,
64:13, 64:23,
65:21, 72:1,
72:15, 72:22,
74:1, 79:19,
79:21, 84:17,
106:6, 116:8
**believe**
8:12, 13:15,
15:9, 22:13,
47:2, 53:14,
55:16, 55:24,
56:3, 60:24,
63:7, 68:22,
69:23, 71:21,
72:18, 80:6,
95:22, 97:21,
110:17, 111:14
**believed**
64:16, 77:11
**below**
16:22, 63:3

**benefits**
14:20
**best**
40:19, 69:2,
69:6, 70:16,
101:11, 118:8
**between**
21:14, 23:9
**big**
42:11
**birth**
7:11
**birthday**
15:9
**bit**
45:15, 58:18,
59:14, 59:21
**blah**
98:17, 98:18
**blair**
80:10, 80:11,
80:12, 80:13,
80:18, 86:11
**block**
8:9
**bob**
30:19, 46:24,
79:9
**bonnie**
112:8, 112:13,
112:19
**book**
47:6, 47:11,
67:21, 67:25,
68:2, 69:5, 69:7
**booking**
41:12
**booklet**
16:20
**booklets**
96:12
**books**
40:21, 41:7
**both**
12:12, 17:21,
18:6, 23:21,
35:24, 36:10
**bottom**
65:5, 65:10,

72:9
**box**
69:22, 69:25,
97:23
**break**
61:18, 61:22,
61:25, 62:2,
99:11, 99:16,
101:7
**breaking**
61:18
**brief**
41:2
**bring**
14:23
**brought**
64:7, 68:5,
68:6
**bunch**
43:14
**bundle**
39:16, 75:4
**burke**
9:6, 79:9,
79:11
**burling**
30:19, 30:22,
46:25
**business**
82:13, 82:15,
82:18

**C**

**c-a-r-r**
21:8
**cabinets**
81:11
**cadet**
17:25
**cadets**
17:24, 18:2
**call**
15:10, 50:10,
57:10, 65:6,
68:23, 80:11,
80:13
**called**
6:18, 40:23,

Transcript of Tim L. Wilson
Conducted on December 18, 2018

123

41:1, 56:3,
56:15, 116:9
**calling**
18:15
**calls**
56:25, 68:16,
68:19
**came**
8:10, 13:20,
13:22, 19:6,
19:7, 40:8,
60:24, 103:21,
108:7, 115:15,
115:18, 115:21,
116:2, 116:12
**can**
6:4, 6:5, 6:8,
6:13, 9:21,
9:22, 10:15,
11:4, 11:5,
11:7, 11:9,
11:17, 18:23,
19:18, 21:3,
21:20, 21:21,
23:1, 25:25,
26:8, 27:19,
32:7, 36:8,
37:10, 37:19,
39:15, 40:19,
45:22, 46:17,
48:4, 48:5,
48:17, 50:8,
50:10, 50:13,
50:16, 52:15,
59:4, 60:22,
61:25, 66:17,
67:18, 70:16,
71:7, 71:19,
73:10, 73:20,
75:18, 75:20,
77:24, 84:25,
91:5, 91:18,
95:10, 96:2,
96:16, 98:21,
99:3, 100:14,
100:19, 101:15,
102:21, 105:12,
111:20, 111:21,

116:17
**can't**
11:10, 24:19,
47:23, 48:9,
48:12, 63:24,
78:14, 80:13,
86:14, 103:24
**cane**
56:2, 57:7,
60:25
**cannot**
50:17, 78:15,
113:12, 116:21
**capacities**
7:14
**captain**
15:10, 16:1,
16:9, 16:13,
17:2, 17:7,
17:11, 17:14,
17:15, 17:20,
19:4, 19:14,
35:3, 35:6,
35:11, 35:19,
36:14, 51:7,
52:6, 57:5,
57:6, 57:23,
58:23, 59:5,
67:3, 74:3,
89:15, 90:1,
90:4
**caption**
5:9
**card**
41:2
**cards**
81:19, 83:2
**carr**
21:8
**cars**
15:19
**case**
1:7, 7:10,
7:11, 14:18,
14:23, 16:8,
22:17, 23:16,
24:4, 24:11,
24:15, 24:17,

24:19, 24:20,
30:2, 33:15,
33:24, 34:24,
35:2, 35:20,
36:4, 37:6,
37:14, 37:24,
39:23, 45:24,
46:5, 46:8,
46:13, 46:23,
47:1, 47:6,
47:19, 51:1,
54:15, 54:25,
55:3, 55:13,
55:23, 55:24,
58:14, 63:11,
63:16, 63:17,
63:23, 63:24,
64:1, 67:25,
68:2, 68:15,
68:19, 68:25,
69:1, 69:8,
69:9, 73:15,
74:10, 74:12,
75:2, 75:4,
75:23, 76:7,
77:3, 78:12,
78:19, 78:21,
79:4, 79:17,
81:22, 82:3,
87:7, 89:12,
89:14, 90:21,
100:16, 102:9,
103:22, 104:7,
104:8, 104:9,
105:9, 107:20,
107:23, 111:22,
113:20, 115:8
**case's**
79:10
**cases**
16:11, 16:12,
20:13, 22:14,
22:18, 22:23,
37:16, 47:2,
47:13, 54:8,
54:18, 58:7,
58:11, 64:4,
64:7, 67:19,

78:5, 90:7,
103:10, 103:11,
103:13, 115:5
**caught**
63:22
**cause**
5:13, 70:12
**center**
2:29
**certain**
8:9, 42:7
**certainly**
36:20, 42:15,
55:2, 76:23,
102:25, 104:22,
106:16
**certificate**
118:1
**certify**
118:6, 118:11
**cetera**
5:10
**chain**
52:7
**chair**
17:1
**chance**
26:3, 26:9,
26:11, 65:18,
89:8
**change**
10:21, 19:8
**charge**
75:11
**charged**
74:12, 78:13,
78:14, 78:17,
78:18
**charges**
74:15, 74:23
**chart**
39:16
**cheaters**
14:21
**check**
24:24, 54:3,
54:6, 70:18,
70:22

Transcript of Tim L. Wilson
Conducted on December 18, 2018

124

| | | | |
|---|---|---|---|
| **chicago** | **closed** | 27:4, 48:14, | 44:14, 44:17 |
| 2:9 | 24:20, 46:23 | 101:9 | **conspiracy** |
| **chief** | **clothing** | **composite** | 34:6, 35:22, |
| 16:9, 17:2, | 80:1 | 92:19, 93:7 | 110:3 |
| 17:4, 17:13, | **coin** | **compound** | **constantly** |
| 17:22, 35:7, | 20:5 | 117:4 | 22:11 |
| 51:9, 52:8, | **columbus** | **computer** | **constitution** |
| 52:17, 56:10, | 2:30 | 23:16, 23:21, | 106:23, 106:24 |
| 57:3, 57:6, | **com** | 24:14, 29:2, | **constructing** |
| 57:9, 57:13, | 2:11, 2:20, | 29:14, 30:1, | 39:2, 40:9 |
| 57:14, 57:15, | 2:32, 3:10, 3:23 | 93:15, 93:20, | **contact** |
| 59:11, 59:13, | **combined** | 93:22 | 61:15 |
| 59:14, 59:15, | 56:3, 56:4 | **computerization** | **contacted** |
| 59:16, 60:8, | **come** | 81:14 | 19:7 |
| 84:21, 85:10, | 18:20, 29:17, | **computerized** | **contacts** |
| 89:15, 90:5, | 70:21, 70:25, | 23:14, 24:3 | 56:21 |
| 90:9, 93:9, | 71:4, 71:15, | **computers** | **contain** |
| 108:18 | 73:3, 73:5, | 29:17 | 105:6 |
| **circumstances** | 73:16, 91:22, | **conceivable** | **contest** |
| 24:8, 24:10, | 109:6, 110:11 | 103:1 | 62:2 |
| 37:22, 41:17, | **coming** | **concentrate** | **context** |
| 41:19, 42:7, | 84:5 | 39:10, 72:19 | 7:9, 61:10, |
| 45:5, 83:14 | **commented** | **concern** | 82:14 |
| **city** | 35:24 | 56:16, 83:18, | **continuous** |
| 1:8, 2:13, | **commission** | 83:23, 83:25 | 29:20 |
| 114:15, 114:16 | 118:27 | **concerning** | **contrary** |
| **civic** | **commit** | 16:9, 96:20, | 9:20, 67:6, |
| 2:29 | 107:8 | 98:1 | 107:9 |
| **civil** | **committed** | **concerns** | **control** |
| 5:8, 7:10, | 54:4 | 55:20 | 81:19 |
| 7:11, 16:11 | **common** | **concluded** | **conversation** |
| **clarify** | 29:13, 42:18, | 117:22 | 32:8, 34:11, |
| 66:19 | 77:1, 110:19 | **conduct** | 35:21, 43:6, |
| **classified** | **communicate** | 96:18, 109:13 | 49:17, 57:24, |
| 77:9 | 113:15 | **confirm** | 59:9, 64:20, |
| **clear** | **company** | 6:5 | 65:3 |
| 23:7, 24:18, | 15:19 | **conflicted** | **conversations** |
| 43:23, 44:22, | **complaint** | 11:18, 12:16, | 32:4, 33:2, |
| 45:16, 48:20, | 88:5, 102:3, | 13:5 | 60:24, 61:7, |
| 49:20, 87:25 | 102:7, 105:23, | **connection** | 64:15, 70:4, |
| **clerk** | 107:17, 108:18 | 105:25 | 73:19, 77:22, |
| 98:8, 98:13 | **complaints** | **connie** | 78:1, 82:2, |
| **cleveland** | 7:20, 7:24, | 112:8, 112:13, | 84:8, 84:12, |
| 3:21 | 14:18 | 112:19 | 84:16, 84:21, |
| **client** | **completed** | **considered** | 85:9 |
| 49:16 | 5:18, 89:14, | 22:9 | **convicted** |
| **close** | 90:24, 104:4 | **consistent** | 34:3, 86:24, |
| 39:15 | **completely** | 44:2, 44:6, | 87:2, 87:5, 87:6 |
| | 26:15, 27:3, | | |

Transcript of Tim L. Wilson
Conducted on December 18, 2018

125

| | | | |
|---|---|---|---|
| **conviction**<br>54:19, 55:8,<br>55:9, 55:14,<br>85:14, 85:20,<br>86:17, 87:14,<br>88:2, 88:9, 89:9<br>**convictions**<br>54:15, 54:25<br>**convince**<br>56:18, 89:5<br>**copies**<br>81:11, 93:3<br>**copy**<br>23:23, 74:18,<br>98:25, 117:11,<br>117:14, 117:18,<br>117:20<br>**corporal**<br>30:19, 30:22,<br>62:16, 62:20,<br>62:22, 63:1<br>**correct**<br>7:16, 11:23,<br>17:12, 20:3,<br>20:7, 24:20,<br>41:9, 41:12,<br>44:5, 44:20,<br>45:3, 45:18,<br>46:15, 46:25,<br>47:21, 47:22,<br>47:25, 49:8,<br>50:23, 53:4,<br>55:1, 55:17,<br>58:18, 58:21,<br>59:2, 63:6,<br>67:16, 67:22,<br>76:22, 77:16,<br>78:8, 78:13,<br>79:14, 81:3,<br>86:5, 86:18,<br>87:16, 88:3,<br>88:4, 88:19,<br>89:7, 89:10,<br>89:11, 90:8,<br>91:12, 91:15,<br>91:16, 93:16,<br>95:16, 99:21,<br>102:14, 102:15, | 103:22, 104:1,<br>104:20, 104:21,<br>105:2, 105:20,<br>105:22, 107:1,<br>108:10, 110:22,<br>111:1, 111:7,<br>112:4, 113:11,<br>114:7, 114:11,<br>114:19, 116:6,<br>116:15<br>**correctly**<br>87:3, 87:5<br>**could**<br>6:25, 22:20,<br>30:4, 30:6,<br>30:19, 40:14,<br>42:11, 44:22,<br>51:1, 51:7,<br>51:9, 69:8,<br>72:23, 77:7,<br>77:8, 77:11,<br>83:3, 90:20,<br>92:7, 98:19,<br>103:1, 103:17,<br>104:7, 105:8,<br>109:17<br>**couldn't**<br>36:21, 100:25<br>**counsel**<br>5:5, 34:19,<br>48:21, 50:6,<br>118:13<br>**county**<br>13:25, 14:2,<br>14:6, 14:9,<br>14:13, 14:16,<br>14:21, 56:2,<br>56:6, 56:7,<br>56:14, 61:1,<br>61:13, 110:2,<br>113:21, 118:4<br>**couple**<br>9:2, 21:13,<br>22:2, 37:15,<br>40:10, 56:15,<br>56:25, 62:19,<br>90:15, 98:7,<br>102:1, 113:3 | **course**<br>33:22, 34:11,<br>80:14, 88:22<br>**court**<br>1:1, 5:16,<br>49:7, 49:13,<br>75:13, 81:4,<br>81:5, 87:21,<br>98:16, 98:17,<br>117:13, 118:24<br>**court's**<br>87:22<br>**courtroom**<br>14:6, 14:9<br>**courts**<br>88:2, 98:9,<br>98:13<br>**cover**<br>102:2, 102:4<br>**cowboy**<br>60:17, 61:3<br>**create**<br>44:3, 45:7<br>**crime**<br>45:7, 72:25,<br>73:3, 77:4,<br>88:16<br>**crimes**<br>15:3, 70:16,<br>72:20<br>**criminal**<br>16:11, 74:11,<br>76:21, 77:20,<br>78:3, 84:9,<br>106:9, 106:12,<br>108:21, 109:1,<br>109:8, 109:14,<br>109:21, 109:23<br>**criticisms**<br>112:14, 112:20<br>**crossed**<br>31:7<br>**crossville**<br>5:6<br>**curious**<br>33:22<br>**currently**<br>103:16 | **custom**<br>111:10<br>**cut**<br>12:18<br><br>**D**<br><br>**daily**<br>22:15, 94:2<br>**databases**<br>40:11, 40:14,<br>40:17<br>**date**<br>15:15, 35:15,<br>40:1, 41:2,<br>47:14, 47:16,<br>57:25, 76:8,<br>76:10, 97:25,<br>98:1, 98:8,<br>98:10, 113:17<br>**dates**<br>21:25<br>**dave**<br>56:13, 56:15,<br>56:25, 57:2,<br>57:10, 57:11,<br>60:25<br>**david**<br>2:5, 6:8, 9:5,<br>31:15, 79:11<br>**david@loevy**<br>2:11<br>**davidson**<br>118:4<br>**day**<br>8:16, 10:20,<br>53:10, 97:11<br>**day-by-day**<br>74:1<br>**days**<br>11:3, 11:6,<br>19:6<br>**dayton**<br>2:18, 8:7,<br>74:20<br>**dead**<br>80:13<br>**deal**<br>42:11, 50:7 |

Transcript of Tim L. Wilson
Conducted on December 18, 2018

126

dean
1:5, 67:16,
70:5
deceased
21:2
december
1:19, 5:7
decide
103:17
decided
35:7
decision
73:20, 103:13
declare
88:2
defendant
2:13, 3:14,
7:17, 94:16,
107:16, 107:19,
110:2, 113:24,
113:25
defendants
1:9, 2:24, 3:1,
6:7, 33:3, 33:9,
76:21
defense
77:20, 78:3,
87:8, 106:3,
107:8
definitely
46:20, 59:2
denial
75:6
deny
64:25
dep
13:1
department
8:4, 8:19,
12:7, 13:23,
15:11, 15:13,
15:16, 15:24,
17:18, 17:23,
17:24, 18:24,
19:16, 20:2,
20:21, 31:2,
33:12, 39:4,
44:3, 44:7,

44:15, 44:18,
45:1, 51:13,
52:12, 53:7,
54:18, 55:10,
55:12, 56:6,
57:16, 57:18,
60:8, 60:15,
61:5, 62:16,
63:4, 63:12,
64:3, 66:7,
66:12, 66:24,
67:8, 68:4,
68:20, 69:4,
70:6, 70:9,
71:1, 72:6,
73:3, 73:6,
73:25, 81:8,
83:16, 84:6,
84:14, 90:24,
91:25, 92:20,
93:8, 93:15,
95:14, 95:18,
96:8, 96:15,
97:2, 97:11,
97:15, 102:18,
104:6, 104:18,
108:2, 108:18,
108:22, 109:6,
109:7, 109:10,
109:13, 109:20,
109:22, 110:11,
110:13, 110:18,
110:19, 111:11,
115:17, 115:20,
116:6, 116:14
departments
56:7, 67:7,
96:10, 96:11,
96:12
deposed
7:4, 7:7
deposition
1:15, 5:4,
5:12, 5:18, 7:9,
8:22, 9:14,
9:19, 10:4,
10:11, 10:17,
11:1, 11:17,

11:22, 25:2,
25:3, 25:12,
25:19, 26:15,
26:25, 28:1,
28:4, 28:10,
28:11, 28:25,
31:13, 31:19,
32:5, 32:9,
32:13, 32:17,
43:10, 43:12,
48:23, 48:25,
50:2, 61:23,
69:13, 118:7
depositions
8:23, 8:25,
31:12, 31:18,
100:12
describe
68:1
described
28:5
description
67:24
designated
70:15
desk
31:7, 69:7
despise
90:19
destroy
107:7, 110:3
destroyed
94:19, 106:2,
106:7
destroying
79:21
detail
14:7
details
72:1
detect
67:5
detective
15:12, 15:16,
16:2, 18:21,
20:6, 20:10,
21:1, 21:18,
22:12, 24:25,

29:23, 30:23,
31:1, 36:13,
37:5, 40:8,
40:21, 41:6,
42:1, 42:16,
43:12, 43:24,
44:8, 44:19,
45:1, 45:16,
45:20, 45:23,
47:3, 47:15,
47:19, 51:6,
51:25, 52:1,
52:3, 53:20,
53:23, 54:13,
55:16, 55:25,
56:16, 57:1,
58:4, 58:8,
58:12, 58:18,
59:21, 60:7,
62:23, 63:1,
63:2, 63:3,
63:5, 63:7,
67:8, 70:1,
70:4, 73:23,
74:18, 75:22,
78:22, 82:10,
89:13, 94:15,
95:13, 99:20,
99:22, 102:9,
102:17, 103:6,
110:18, 112:1,
113:13, 113:18
detective's
24:15
detectives
20:12, 20:16,
20:19, 21:13,
22:4, 23:15,
23:25, 29:3,
30:22, 31:9,
38:14, 38:22,
39:2, 40:14,
41:6, 45:6,
47:14, 64:4,
66:25, 67:5,
67:11, 70:10,
76:14, 77:1,
78:1, 79:3,

Transcript of Tim L. Wilson
Conducted on December 18, 2018

89:21, 95:11,
100:9, 103:7,
104:19, 105:18,
108:6, 110:20,
111:6, 113:14,
114:5, 115:3,
116:24, 116:25
**determination**
105:9
**deters**
3:4, 6:6, 6:11,
84:25, 85:4,
85:7, 101:15,
101:17, 117:15
**didn't**
13:7, 18:4,
22:10, 31:15,
31:22, 34:10,
34:19, 36:2,
36:3, 43:19,
46:16, 47:1,
47:8, 47:18,
47:20, 50:19,
58:1, 59:25,
60:3, 62:10,
62:11, 63:10,
63:21, 63:25,
70:11, 70:25,
71:5, 72:23,
77:15, 78:7,
90:5, 102:2,
105:16, 114:9,
114:12, 114:18
**died**
7:11
**different**
10:10, 27:5,
101:7
**differently**
44:24
**digital**
24:20
**dipietro**
3:1, 6:7, 21:9,
70:1, 82:10,
82:15, 83:1,
83:8, 83:11,
83:15, 84:1,

101:18
**direct**
25:12, 47:24,
48:13
**directing**
26:24
**direction**
86:11
**directly**
20:20, 38:10,
50:13, 56:13,
56:19, 63:10,
100:9
**director**
60:25
**directs**
25:7
**disagree**
11:11
**disagreed**
10:12, 11:7
**disagreeing**
10:16
**disciplinary**
8:16, 96:18
**disciplined**
8:3, 8:18
**disclose**
95:19, 110:3,
110:7, 110:14
**disclosure**
113:7
**discovery**
76:5, 76:7
**discuss**
82:18
**discussed**
31:18, 32:10,
101:4
**discussion**
12:14, 37:24,
62:8, 99:17,
100:22, 112:24
**disgruntled**
19:2, 19:4
**dispatched**
68:23
**dispatchers**
68:23, 69:1,

69:6
**disputed**
10:5
**district**
1:1, 1:2
**division**
1:3, 20:6,
20:10, 63:6,
81:20, 95:13
**document**
10:25, 22:24,
25:8, 25:10,
25:14, 25:25,
26:3, 26:12,
27:13, 28:24,
29:19, 30:5,
58:1, 65:18,
68:12, 72:2,
91:7, 92:16,
98:11, 113:10,
113:13, 114:23
**documentation**
39:1
**documented**
24:22
**documents**
26:21, 28:3,
28:7, 28:9,
28:17, 75:2,
75:17, 96:2,
98:17, 98:19,
100:11, 100:23
**doe**
41:3
**does**
9:6, 43:15,
65:24, 83:11,
83:18, 93:10
**doesn't**
83:18, 98:25
**doing**
24:25, 42:5,
47:24, 56:20,
61:12, 79:6,
103:19, 106:20,
115:3
**don't**
9:3, 9:16,

9:24, 10:20,
10:24, 19:4,
19:25, 21:17,
21:24, 24:13,
24:25, 25:9,
25:18, 28:16,
29:22, 32:6,
35:14, 35:24,
36:20, 37:4,
37:7, 37:9,
37:12, 37:13,
37:14, 37:16,
41:14, 41:15,
42:10, 42:18,
42:22, 43:4,
43:21, 46:8,
46:11, 47:2,
48:7, 52:21,
57:25, 61:6,
62:1, 63:7,
64:1, 65:1,
65:2, 66:2,
66:4, 66:5,
66:15, 66:18,
71:2, 71:17,
74:8, 78:17,
78:25, 81:21,
82:12, 82:17,
85:15, 86:2,
86:14, 87:18,
87:20, 87:24,
89:8, 90:18,
91:23, 92:1,
92:4, 93:21,
94:1, 95:22,
96:4, 96:20,
97:22, 98:6,
101:12, 103:19,
104:2, 104:12,
104:15, 104:25,
113:17, 117:1,
117:15
**done**
25:15, 25:16,
25:25, 29:2,
34:12, 67:6,
72:25, 76:20,
78:6, 79:2

Transcript of Tim L. Wilson
Conducted on December 18, 2018

128

| | | | |
|---|---|---|---|
| **dowd** | 101:6, 109:4, | 107:6 | **entire** |
| 2:14, 2:16, | 110:10, 111:9 | **electronic** | 25:10, 25:14, |
| 4:6, 4:14, 6:12, | **duties** | 117:12 | 30:5 |
| 12:15, 13:3, | 7:14, 14:15, | **else** | **entirety** |
| 13:10, 31:15, | 16:6, 20:9, | 6:10, 18:23, | 112:12, 112:18 |
| 31:21, 48:1, | 22:3, 22:15, | 19:18, 21:7, | **entry** |
| 59:24, 60:3, | 30:25 | 23:1, 30:13, | 65:12, 105:17 |
| 60:10, 69:14, | **duty** | 30:14, 31:13, | **essentially** |
| 69:17, 71:9, | 14:19, 14:22, | 32:24, 33:11, | 29:19 |
| 94:22, 99:2, | 30:10 | 35:18, 35:19, | **established** |
| 101:16, 101:20, | **E** | 36:8, 57:4, | 13:1, 46:22 |
| 101:24, 101:25, | **e-tran** | 59:4, 59:18, | **et** |
| 102:24, 105:13, | 117:11, 117:20 | 80:15, 88:16, | 1:8, 5:10 |
| 106:14, 107:4, | **each** | 98:12, 100:14, | **evaluate** |
| 107:14, 108:14, | 13:1, 104:23, | 101:14, 104:6, | 105:8 |
| 109:18, 111:2, | 105:17, 105:18 | 104:8, 115:11, | **even** |
| 111:13, 115:14, | **earlier** | 117:10 | 12:9, 19:4, |
| 116:1, 117:7, | 28:5, 46:22, | **employed** | 26:13, 30:21, |
| 117:11 | 61:21, 67:18, | 109:5 | 35:25, 37:15, |
| **down** | 79:13, 110:17, | **employee** | 59:25, 70:11, |
| 54:7, 65:13, | 111:24 | 19:3 | 71:16, 81:13, |
| 74:3, 90:12, | **easier** | **employees** | 89:22, 90:6, |
| 113:20 | 66:22 | 9:2, 9:5, 9:8 | 96:20, 97:19, |
| **downtown** | **edit** | **employment** | 110:21 |
| 74:20 | 30:6 | 98:20 | **event** |
| **drafted** | **edits** | **encompassed** | 105:4 |
| 13:16 | 30:4 | 107:17 | **ever** |
| **drawing** | **edowd@sdtlawyers** | **end** | 7:4, 7:17, |
| 92:19, 93:7 | 2:20 | 21:15, 24:5, | 7:25, 8:3, |
| **drive** | **edward** | 24:6, 24:7, | 19:15, 24:19, |
| 2:29 | 2:14, 17:22 | 24:11, 24:16, | 24:25, 42:18, |
| **dropping** | **effect** | 46:13 | 45:12, 52:15, |
| 74:20 | 116:19 | **ended** | 53:6, 55:19, |
| **drug** | **effectuate** | 116:8 | 60:17, 61:3, |
| 20:14, 21:2, | 66:25 | **endurance** | 61:7, 61:22, |
| 21:5, 21:6, | **effectuated** | 62:1 | 63:7, 63:15, |
| 56:5, 56:22 | 64:23 | **enforcement** | 65:2, 66:2, |
| **due** | **effectuating** | 106:21 | 66:4, 77:18, |
| 82:17 | 66:13 | **engage** | 79:8, 84:16, |
| **dues** | **eight** | 108:25 | 92:5, 94:1, |
| 83:3, 83:4 | 39:7, 39:8, | **engaged** | 94:24, 95:2, |
| **duly** | 52:13, 109:4, | 108:20, 109:7, | 96:25, 109:6, |
| 6:18 | 110:10 | 109:13, 109:20 | 110:11 |
| **during** | **either** | **ensure** | **every** |
| 11:19, 25:12, | 17:21, 23:19, | 22:18 | 31:10, 50:9, |
| 25:19, 26:15, | 23:20, 34:25, | **ensuring** | 75:24, 98:15, |
| 26:25, 40:19, | 57:11, 75:11, | 75:16 | 104:23, 105:17 |
| 61:22, 72:19, | | **entered** | **everybody** |
| | | 4:24, 15:14 | 114:2 |

Transcript of Tim L. Wilson
Conducted on December 18, 2018                                129

**everybody's**
41:13
**everyday**
96:19
**everything**
9:22, 9:25,
10:4, 10:7,
111:6, 113:22,
113:23, 114:1
**evidence**
5:13, 64:16,
75:2, 76:16,
79:6, 79:22,
80:16, 86:7,
88:1, 88:12,
89:4, 106:1,
106:2, 106:6,
107:6, 107:7,
110:7, 110:14,
110:20, 110:21
**evidently**
87:6
**exact**
35:15
**exactly**
19:3, 21:25,
50:18, 78:15,
108:11, 114:8
**examination**
4:3, 4:5, 4:8,
4:10, 4:13,
6:21, 101:23,
111:18, 113:1,
115:13
**example**
49:11
**except**
5:11, 97:24
**exculpatory**
76:15, 110:4,
110:7, 110:14,
110:22, 113:24
**excuse**
15:24, 16:18,
17:9, 20:25,
32:15, 40:12,
44:15, 66:10,
114:15

**exhibit**
25:2, 28:25,
46:14, 65:5,
68:11, 69:12,
69:14, 71:25,
91:3, 91:18,
92:13, 92:14,
93:1
**existed**
64:5, 68:7,
99:1
**expect**
104:22
**expectation**
113:14, 113:16,
114:6
**expected**
47:3, 47:16,
67:10, 111:5
**experience**
94:19
**experienced**
22:12
**expires**
118:27, 118:28
**express**
72:19, 83:22,
83:25
**extent**
64:5, 74:6,
74:7, 82:21
**extra**
59:17, 59:21
**eye**
58:3
**eyes**
35:8

---
**F**
---
**fabricate**
107:6
**fabricated**
106:1, 106:7
**facial**
39:13
**fact**
58:10, 58:15,
59:22, 106:5,

106:9, 106:21,
108:7, 109:12,
109:19, 109:23,
111:9
**factually**
102:13
**fail**
110:3
**failing**
110:13
**failure**
72:21, 110:7
**fair**
7:13, 31:1,
43:18, 53:1,
58:25, 59:20,
60:6, 62:10,
73:7, 76:22,
103:3, 105:14,
105:21, 106:17,
106:19, 107:11,
112:15, 112:21,
115:1
**fairborn**
66:7, 66:12
**fairly**
22:11
**fall**
62:21
**false**
88:19, 88:22,
106:3, 106:8,
107:9
**familiar**
9:6, 39:22,
43:16, 68:14,
68:18, 71:25,
73:24, 74:9,
92:16, 93:10,
93:12
**familiarize**
25:10
**familiarized**
27:22, 28:24
**far**
38:25, 51:6,
76:2, 94:8,
96:19, 100:2,

100:3, 103:8,
106:13, 112:8,
112:12, 112:18
**father**
60:8
**federal**
5:8, 106:24
**feel**
61:23, 62:4
**fees**
82:17
**fess**
80:10, 80:11,
80:12, 80:13,
80:18, 86:11
**few**
8:23, 19:6,
59:1, 82:23,
99:19, 100:11,
101:21, 111:23
**fewer**
67:7
**field**
40:23, 56:20,
67:5, 67:9,
67:11, 93:24,
94:1, 94:6,
94:11, 94:19,
94:24, 95:2,
95:11, 95:19,
95:23, 98:2
**figure**
114:10
**file**
23:16, 24:15,
24:20, 24:22,
29:20, 30:2,
34:5, 75:2,
75:10, 75:17,
76:16, 76:25,
77:2, 77:5,
77:6, 77:7,
77:8, 77:16,
81:11, 81:16,
81:22, 94:12,
97:25, 98:5,
98:6, 102:16,
103:2, 107:20,

Transcript of Tim L. Wilson
Conducted on December 18, 2018

130

107:23, 113:7,
113:21, 116:24
**filed**
7:25, 74:15,
74:23
**files**
81:10, 81:11,
81:19, 98:2,
106:17
**filing**
24:2
**fill**
19:19
**filled**
72:1
**filling**
19:22
**final**
104:13
**finalized**
54:15
**financial**
72:20, 72:25,
73:3, 118:13
**financial-type**
70:16
**find**
42:23
**finding**
86:2
**fine**
62:4, 67:25,
99:14
**finished**
23:19, 23:22,
31:6, 34:14
**first**
6:4, 6:18,
16:6, 17:20,
18:1, 20:2,
21:10, 21:13,
21:15, 21:24,
22:2, 22:9,
25:7, 36:16,
37:14, 37:19,
42:4, 57:17,
58:1, 58:7,
58:11, 58:13,

61:4, 63:12,
68:21, 85:13,
85:18, 102:6,
106:1, 106:5
**firsthand**
50:18
**fit**
18:20
**five**
20:12, 20:19,
27:14, 51:20,
62:7
**five-minute**
99:15
**fix**
38:19
**folder**
29:24
**folks**
6:3
**follow**
24:23
**following**
69:8
**follows**
6:19
**fop**
82:13, 82:15,
82:17, 82:19,
82:24, 83:2,
83:9, 83:20
**force**
62:17
**foregoing**
117:21, 118:7
**forgery**
54:4
**forget**
62:3
**forgot**
30:21
**form**
5:11, 38:16,
44:12, 50:6,
50:15, 71:9,
72:1, 72:2,
72:4, 72:5,
72:8, 72:12,

91:8, 99:2,
100:18, 102:19,
105:10, 106:10,
107:2, 107:12,
108:12, 109:15,
110:23, 112:5,
117:3, 118:10
**formal**
7:20, 7:24,
96:5
**formalities**
5:9
**format**
27:13, 29:4,
29:8, 96:6,
96:9, 117:12
**former**
60:8, 85:9,
90:9
**forms**
29:1, 91:12
**forthcoming**
101:9
**found**
34:5, 63:23,
63:24, 63:25,
84:20, 85:13,
86:16
**foundation**
48:1, 60:10,
71:10, 94:22,
95:4
**four**
51:20, 90:15
**frame**
34:7, 35:22,
36:1, 105:25
**franklin's**
3:19
**fraud**
14:14, 14:16,
15:4
**free**
61:23, 62:4
**fresh**
35:8
**friends**
17:17, 108:22,

109:2, 109:9,
109:22
**friendship**
82:9
**fritz**
18:18, 18:24,
19:2, 19:15,
35:4, 61:8,
61:16, 62:12,
100:2, 100:4,
102:17, 103:1,
107:21, 107:24,
108:4
**from**
8:13, 9:2,
11:5, 12:4,
13:2, 13:24,
14:18, 15:10,
16:7, 16:8,
17:15, 20:13,
23:13, 25:2,
28:17, 28:25,
33:11, 35:3,
37:19, 38:4,
39:3, 40:21,
43:6, 43:9,
49:10, 50:5,
52:13, 52:15,
56:25, 57:10,
64:6, 66:11,
67:3, 69:12,
75:7, 75:9,
79:9, 91:22,
97:14, 98:7,
98:11, 98:12,
98:13, 102:12,
107:20, 110:5,
111:4, 114:14,
114:15
**front**
10:25, 49:19
**full**
12:13
**funds**
14:22
**further**
118:11

**G**

**garage**
97:23

Transcript of Tim L. Wilson
Conducted on December 18, 2018

131

**gary**
36:11, 36:12,
36:17, 51:5,
51:13, 62:14,
62:15
**gave**
34:24, 49:6,
58:23
**general**
9:2, 16:14,
35:21, 38:5,
42:17, 59:9,
79:9, 90:4,
95:16, 96:10,
113:19, 115:18,
116:9
**generally**
16:8, 20:15,
22:22, 24:6,
68:4, 91:8
**generate**
24:1, 40:14
**generated**
75:25, 94:15
**generating**
92:6
**generically**
107:16
**generized**
23:14
**get**
10:20, 24:15,
24:23, 26:2,
26:18, 26:21,
39:14, 54:24,
55:8, 57:7,
61:17, 63:22,
67:24, 80:15,
99:10, 102:3,
103:7, 103:15,
113:4
**get-togethers**
82:17
**gets**
26:11, 90:21
**getting**
12:22, 35:10,
59:15, 79:22,

86:3, 86:8
**gillispie**
1:5, 35:23,
35:25, 36:1,
37:18, 38:2,
45:24, 47:6,
55:23, 55:24,
64:17, 64:21,
65:22, 67:16,
70:5, 73:21,
77:7, 77:12,
78:13, 84:13,
84:23, 85:11,
86:8, 86:12,
86:23, 87:5,
87:20, 88:24,
91:3, 92:14,
100:16, 103:21,
105:25
**gillispie's**
64:12, 85:14,
86:17, 88:2,
88:9, 106:3,
110:8
**girls**
80:2, 80:6,
80:7, 80:17
**give**
34:13, 69:1,
69:8, 74:5
**given**
19:21, 48:23,
48:25, 49:7,
59:22, 90:6,
94:16, 96:25,
104:24
**glanced**
9:1
**gm**
9:8, 84:9,
110:2
**go**
9:22, 14:5,
14:11, 15:15,
24:24, 38:18,
41:18, 45:22,
48:3, 57:2,
59:16, 65:4,

66:25, 67:5,
67:11, 67:13,
67:15, 70:25,
71:7, 71:19,
75:6, 75:8,
79:3, 82:25,
90:18, 91:18,
95:6, 100:19,
101:15, 101:16,
102:21, 103:12,
105:12, 105:16,
117:4
**goes**
65:16
**going**
25:3, 25:25,
26:2, 27:1,
34:15, 56:19,
57:12, 59:24,
61:12, 61:13,
62:3, 64:12,
66:19, 73:17,
74:19, 87:17,
89:12, 90:19,
91:2, 91:7,
99:11, 106:23,
111:24, 115:2
**gone**
13:15, 24:19,
86:7, 100:11,
100:12, 104:5,
104:14
**good**
6:23, 6:24,
18:19, 34:19,
54:13, 61:17,
61:19, 99:10,
99:12, 99:13,
111:25, 114:3
**good-looking**
69:23
**got**
16:18, 21:10,
29:16, 30:1,
34:4, 36:18,
46:6, 51:14,
54:15, 55:4,
56:16, 57:10,

58:1, 58:13,
65:4, 68:21,
80:22, 83:2,
85:16, 85:22,
85:24, 86:1,
86:13, 89:9,
100:7, 117:8
**governing**
16:15
**grade**
63:2
**grand**
75:11
**granddaughter**
7:10
**granted**
56:1
**gray**
3:1, 6:7,
33:10, 33:18,
79:14, 80:24,
81:2, 86:6,
101:17
**gray's**
25:3, 28:25
**great**
6:14, 25:1
**greetings**
61:11
**ground**
48:24
**guess**
17:14, 31:8,
35:21, 45:15,
46:12, 48:7,
48:11, 48:16,
114:15
**guessing**
48:8, 51:20,
52:22
**guilty**
88:25, 89:3
**guys**
58:24

**H**

**habit**
110:13

Transcript of Tim L. Wilson
Conducted on December 18, 2018

132

| | | | |
|---|---|---|---|
| **had**<br>6:12, 8:7,<br>16:3, 16:19,<br>17:17, 18:18,<br>19:5, 19:7,<br>19:21, 20:12,<br>20:14, 22:13,<br>23:17, 24:21,<br>28:18, 31:3,<br>32:7, 33:2,<br>33:24, 35:21,<br>37:16, 40:22,<br>41:3, 41:15,<br>43:7, 43:19,<br>49:11, 55:25,<br>56:25, 57:1,<br>58:8, 58:12,<br>58:17, 59:20,<br>60:7, 61:15,<br>63:5, 64:16,<br>65:17, 66:9,<br>66:12, 67:6,<br>67:7, 67:21,<br>70:5, 70:17,<br>70:18, 74:12,<br>74:15, 75:3,<br>75:16, 75:25,<br>76:20, 77:4,<br>77:10, 78:16,<br>79:5, 82:2,<br>82:9, 82:23,<br>82:25, 85:14,<br>86:7, 87:7,<br>90:2, 94:15,<br>97:14, 98:15,<br>100:12, 102:16,<br>106:16, 108:22,<br>109:2, 109:7,<br>109:10, 109:20,<br>109:23, 110:13,<br>110:17, 111:25,<br>112:3, 112:14,<br>114:3, 114:6,<br>114:12, 116:4<br>**hair**<br>39:13<br>**half**<br>23:10 | **halfway**<br>65:13<br>**hand**<br>25:1<br>**handed**<br>103:1, 114:23<br>**handle**<br>79:25, 116:25<br>**handled**<br>22:13, 36:4,<br>80:3<br>**handling**<br>112:13, 112:19<br>**handwritten**<br>23:13, 63:16,<br>64:5, 90:25,<br>93:19, 93:22,<br>94:2<br>**hang**<br>90:16<br>**happen**<br>57:24, 72:10,<br>94:5<br>**happened**<br>9:25, 15:8,<br>19:11, 46:24,<br>53:3, 56:11,<br>66:3, 66:4<br>**happening**<br>114:10<br>**hard**<br>81:10, 117:20<br>**harmed**<br>55:5<br>**has**<br>25:23, 71:24,<br>87:20, 100:22,<br>101:3<br>**haven't**<br>48:23, 100:17,<br>101:4<br>**having**<br>6:18, 7:24,<br>24:19, 37:13,<br>39:10, 44:9,<br>56:17, 64:20,<br>65:2, 67:19,<br>92:5 | **he's**<br>10:3, 26:2,<br>26:3, 27:1,<br>27:14, 54:2,<br>56:17, 56:19,<br>56:20, 56:21,<br>69:23, 83:10,<br>88:10, 89:3<br>**head**<br>8:11, 101:6,<br>110:18<br>**hear**<br>6:5, 6:9, 6:13,<br>13:7, 31:15,<br>31:22, 59:25,<br>60:3, 60:17,<br>61:3, 111:20<br>**heard**<br>42:25, 85:18,<br>89:5<br>**hearing**<br>5:12, 60:22<br>**held**<br>12:14, 62:8,<br>69:5, 99:17,<br>112:24<br>**hell**<br>35:24<br>**hello**<br>61:12<br>**help**<br>22:17<br>**helped**<br>103:13<br>**helpful**<br>101:1<br>**her**<br>33:23, 34:18<br>**here**<br>6:6, 6:8,<br>10:15, 10:19,<br>10:21, 27:14,<br>31:24, 37:3,<br>48:20, 50:9,<br>53:17, 65:5,<br>73:15, 74:4,<br>78:7, 78:15,<br>90:12, 101:25, | 102:5, 104:11,<br>108:16, 113:4,<br>116:17<br>**hereby**<br>118:6<br>**herein**<br>5:14, 118:12<br>**hesitate**<br>42:5<br>**hesitations**<br>42:13<br>**hey**<br>26:18, 27:5,<br>61:11<br>**hierarchy**<br>62:21<br>**high**<br>17:22, 18:4,<br>18:6, 18:8<br>**high-ranking**<br>108:19<br>**higher**<br>46:10, 62:24,<br>104:9<br>**highlighted**<br>72:10, 73:12<br>**him**<br>8:11, 13:17,<br>13:18, 17:16,<br>18:22, 20:15,<br>25:14, 26:6,<br>26:8, 26:10,<br>26:14, 26:24,<br>27:7, 27:10,<br>27:12, 30:21,<br>34:6, 34:7,<br>43:14, 44:3,<br>46:5, 47:8,<br>47:20, 48:11,<br>48:15, 48:16,<br>54:5, 54:6,<br>54:14, 54:24,<br>56:18, 56:23,<br>57:3, 57:7,<br>57:11, 57:12,<br>57:15, 73:21,<br>78:9, 79:16,<br>82:5, 82:12, |

Transcript of Tim L. Wilson
Conducted on December 18, 2018

133

83:3, 86:3,
87:6, 90:14,
112:20
**hire**
97:25, 98:8,
98:10
**hired**
14:12, 15:15,
15:21, 17:11,
17:13
**his**
12:16, 12:23,
13:5, 18:18,
19:6, 30:20,
30:23, 34:24,
36:6, 36:8,
38:10, 46:3,
47:16, 54:4,
54:8, 56:19,
60:8, 64:13,
64:17, 64:22,
67:4, 73:20,
79:18, 79:19,
82:8, 84:18,
85:20, 87:14
**homicides**
20:14
**honestly**
43:4, 71:2
**hour**
99:11
**hours**
15:19, 32:23
**house**
41:5, 64:13,
64:22
**housed**
40:21
**how**
7:7, 11:1,
11:18, 12:3,
12:17, 13:5,
13:23, 14:2,
14:8, 15:5,
16:15, 17:15,
29:9, 32:20,
32:22, 43:4,
46:8, 48:13,

51:18, 52:11,
53:17, 54:17,
61:11, 61:12,
61:13, 66:21,
68:1, 73:24,
74:4, 81:8,
81:19, 89:14,
90:14, 116:25
**however**
84:23, 85:11,
100:16
**hundreds**
104:18

**I**

**i'll**
56:23, 57:13,
117:18
**i've**
27:22, 33:9,
33:10, 42:25,
54:2, 56:16,
65:19, 72:3,
86:9, 111:3,
117:8
**id**
28:21
**idea**
68:6, 82:1,
97:9
**identification**
38:4, 38:14,
38:22, 39:19,
41:4
**identified**
39:24
**identify**
6:4
**illinois**
2:9
**imagine**
50:10
**immediate**
36:12, 51:6,
51:19
**immediately**
13:25
**implicated**
59:13

**important**
76:15
**impression**
53:23
**impressions**
53:19
**improper**
48:14
**in-person**
37:8
**inappropriate**
25:11, 26:16,
27:4
**incident**
24:14, 39:9,
64:6
**incidents**
68:16, 68:20,
104:23
**include**
41:8, 41:10,
41:11, 44:19,
45:2, 73:7
**included**
42:21, 42:24,
43:19, 43:21,
94:12
**including**
43:14, 108:19
**incoming**
73:23
**incorrect**
88:22
**independence**
55:20
**independent**
36:23, 54:12,
55:17, 56:17,
57:19
**independently**
54:12
**indicated**
98:7
**individual**
47:13, 79:8
**individually**
39:17, 110:2
**individuals**
70:10, 99:23,

103:14
**information**
12:23, 40:2,
89:15, 105:6,
108:7, 110:5
**initial**
63:16
**initially**
59:5, 64:2
**innocent**
88:11, 88:25
**instance**
72:14
**instead**
70:19
**instructing**
26:14
**instructions**
25:18
**intentionally**
107:6
**interact**
82:14
**interacting**
37:5
**interactions**
62:11
**interest**
39:12, 75:3,
90:2, 118:13
**interested**
15:12
**interfered**
112:17
**internal**
15:23, 15:25,
16:7, 16:12,
16:15, 16:21,
18:21, 20:2,
51:8, 89:23,
90:1
**internally**
19:22
**interrogation**
40:23
**interrogations**
70:4
**interrupt**
26:7, 34:10

Transcript of Tim L. Wilson
Conducted on December 18, 2018

134

| | | | |
|---|---|---|---|
| **interrupting**<br>26:5<br>**interviewed**<br>70:21<br>**interviews**<br>37:7, 70:3,<br>70:11<br>**into**<br>13:16, 13:20,<br>15:14, 19:7,<br>22:12, 24:15,<br>30:1, 32:9,<br>50:22, 57:7,<br>70:10, 70:25,<br>81:16, 93:22,<br>94:2, 101:6,<br>102:3<br>**intruding**<br>32:9<br>**investigate**<br>14:19, 14:22,<br>14:25, 15:25,<br>16:12, 20:16,<br>34:1, 55:5,<br>103:11<br>**investigated**<br>11:20, 34:2,<br>36:5, 55:13,<br>112:10<br>**investigating**<br>37:5, 56:21,<br>73:2, 103:9,<br>110:20<br>**investigation**<br>12:1, 16:23,<br>22:7, 23:18,<br>24:5, 24:12,<br>31:7, 35:8,<br>35:9, 36:16,<br>45:17, 45:24,<br>47:17, 47:20,<br>47:25, 50:14,<br>50:21, 53:3,<br>54:20, 55:3,<br>55:7, 56:5,<br>58:7, 58:11,<br>81:23, 84:9,<br>84:22, 85:10, | **91**:14, 94:25,<br>95:3, 95:12,<br>100:15, 105:5,<br>110:8, 112:14,<br>112:20, 115:7<br>**investigations**<br>16:16, 22:5,<br>56:22, 67:12,<br>79:3, 89:18,<br>90:6, 104:19,<br>112:4, 115:3,<br>116:25<br>**investigative**<br>46:4, 96:19<br>**investigator**<br>14:14, 14:16,<br>20:14, 21:5,<br>21:6, 53:24,<br>54:1, 54:3<br>**investigators**<br>56:4<br>**involve**<br>15:17<br>**involved**<br>42:22, 77:4,<br>81:2, 89:23,<br>90:1, 96:17,<br>104:18<br>**involvement**<br>79:19, 89:17<br>**involves**<br>49:15<br>**isn't**<br>112:10<br>**issue**<br>49:15<br>**issued**<br>72:22, 75:12,<br>75:14<br>**it's**<br>10:19, 25:11,<br>25:15, 25:16,<br>26:8, 27:4,<br>27:15, 34:10,<br>36:20, 37:1,<br>41:24, 42:18,<br>49:1, 49:16,<br>55:9, 56:3, | **56**:5, 60:1,<br>78:11, 99:9,<br>102:25, 103:24,<br>110:1, 110:24,<br>114:16, 117:3<br>**itself**<br>109:14, 109:24<br><br>**J**<br>**jdeters@smbplaw**<br>3:10<br>**jeff**<br>6:8, 111:20<br>**jeffrey**<br>3:16<br>**jeopardy**<br>34:17<br>**jim**<br>59:10, 59:11,<br>93:9<br>**jkay@mrrlaw**<br>3:23<br>**job**<br>20:1, 59:15,<br>100:9<br>**jogged**<br>101:3<br>**john**<br>3:1, 21:9,<br>41:3, 70:1, 83:1<br>**joined**<br>20:2, 20:21,<br>82:22, 82:24,<br>84:13<br>**joining**<br>82:25<br>**jon**<br>101:17, 117:13<br>**jonathan**<br>3:4<br>**jones**<br>66:6, 66:9,<br>66:11<br>**journal**<br>67:25<br>**judge**<br>49:13, 49:19,<br>50:10, 87:18 | **judge's**<br>87:23<br>**judges**<br>50:10<br>**jump**<br>9:13<br>**jumped**<br>9:16<br>**june**<br>15:6, 15:8,<br>15:9, 16:18,<br>18:14, 21:15,<br>23:9, 98:14<br>**jurisdiction**<br>75:13<br>**jury**<br>55:7, 75:11,<br>87:3, 87:6,<br>87:7, 87:8, 89:3<br>**just**<br>9:15, 12:4,<br>12:24, 13:3,<br>13:15, 15:18,<br>19:13, 22:15,<br>22:22, 23:7,<br>24:5, 24:18,<br>25:3, 26:14,<br>27:17, 31:21,<br>31:24, 34:15,<br>34:18, 36:17,<br>36:21, 37:15,<br>37:24, 38:7,<br>39:14, 39:21,<br>40:20, 41:2,<br>42:17, 43:23,<br>44:23, 45:15,<br>47:12, 49:11,<br>49:20, 50:2,<br>54:22, 62:7,<br>62:25, 64:25,<br>65:15, 65:16,<br>65:17, 66:21,<br>68:2, 69:15,<br>72:1, 77:3,<br>82:16, 82:22,<br>87:20, 91:6,<br>91:7, 91:8,<br>92:9, 98:6, |

Transcript of Tim L. Wilson
Conducted on December 18, 2018

135

98:11, 99:19,
100:2, 102:4,
103:24, 104:25,
105:4, 107:15,
107:18, 111:22,
113:3, 113:18,
113:19, 114:21,
114:25, 115:15,
117:1
**justice**
74:11
**justified**
64:17

**K**

**kasson**
2:26, 9:21,
10:3, 11:8,
25:6, 25:13,
26:2, 26:10,
26:20, 27:1,
27:7, 27:10,
27:16, 32:6,
38:16, 44:12,
45:19, 45:21,
46:16, 48:4,
48:7, 48:11,
48:15, 49:20,
49:25, 50:15,
60:1, 61:17,
66:15, 71:7,
71:19, 93:4,
99:3, 99:10,
99:15, 100:18,
101:14, 102:21,
105:12, 115:11,
115:25, 117:10,
117:18
**kay**
3:16, 4:9, 6:8,
59:23, 60:20,
95:4, 111:19,
111:20, 112:7,
112:23, 117:17
**keep**
18:9, 47:7,
58:3, 62:2,
80:24, 82:5,

82:12, 90:9,
94:8
**keith**
9:8
**kept**
41:13, 47:5,
67:21, 81:8
**key**
72:7
**kind**
16:10, 17:14,
29:20, 36:15,
40:11, 54:11,
59:14, 59:16,
70:24, 76:5,
108:15, 112:16,
115:19
**kkk**
8:7
**knew**
12:4, 13:1,
13:17, 58:3,
58:17, 61:14,
114:2
**know**
9:3, 9:11,
9:16, 10:24,
11:25, 12:3,
13:18, 17:15,
17:16, 19:3,
22:20, 29:17,
29:22, 30:1,
30:3, 35:1,
35:25, 36:3,
36:19, 36:20,
37:14, 38:8,
41:14, 42:10,
43:19, 46:11,
47:8, 48:6,
48:10, 49:16,
50:19, 56:19,
59:10, 62:15,
66:6, 69:3,
72:23, 76:2,
77:15, 78:17,
80:14, 81:4,
81:18, 81:21,
81:22, 86:15,

86:20, 87:18,
87:20, 87:24,
88:12, 88:14,
91:24, 92:17,
93:6, 93:21,
94:1, 94:8,
98:24, 100:3,
102:16, 102:23,
104:5, 106:13,
111:4, 113:17,
116:2
**knowing**
37:16
**knowingly**
107:6
**knowledge**
29:10, 37:10,
37:13, 50:18,
64:24, 68:9,
94:21, 101:11,
103:3, 106:16,
106:19, 108:1,
108:5, 109:11
**knowledgeable**
53:25
**known**
63:20
**knows**
27:2, 77:13
**korea**
13:24

**L**

**l-e-e**
7:3
**lab**
45:7, 88:16
**laid**
95:25
**last**
7:2, 35:16,
73:7, 73:11,
82:22, 82:24,
83:2, 83:9,
97:10, 108:13
**later**
12:13, 19:7,
34:4, 46:20,

49:19, 50:8,
55:23, 56:13,
78:16
**law**
2:6, 2:15,
2:27, 3:5, 3:17,
65:7, 106:21
**lawful**
71:4, 71:11,
71:14, 71:22
**laws**
106:24, 106:25,
107:1
**lawsuit**
7:18, 33:3,
33:4, 33:12,
33:15, 33:19,
34:5, 79:10,
79:14, 86:21,
88:6, 88:20
**lawyers**
87:19
**lcr**
1:28, 5:15,
118:5, 118:23,
118:28
**learn**
43:3, 43:6,
43:9
**learned**
43:2, 43:5,
50:21, 58:14,
58:20, 63:11,
86:21
**least**
37:14, 38:1,
64:10, 103:5,
103:6, 103:20,
104:3, 104:5,
105:5, 114:23
**leaving**
18:24, 19:9
**led**
52:17, 86:7,
88:1
**ledger**
47:12
**lee**
7:2, 7:3

Transcript of Tim L. Wilson
Conducted on December 18, 2018

136

**leeway**
59:21, 60:7
**left**
35:4, 35:6,
51:16, 52:7,
53:7, 63:5,
83:15, 97:11,
100:4, 102:18
**legally**
72:23
**less**
39:8
**lesser**
74:7
**let**
13:3, 27:10,
34:13, 35:5,
38:19, 42:4,
44:23, 56:18,
67:10, 71:24,
79:18, 107:22,
108:24, 111:4
**let's**
48:20, 48:24,
61:18, 65:4,
66:21, 87:25
**letter**
70:20, 72:20,
73:1, 73:5
**letterhead**
28:19, 92:21,
93:9
**letters**
73:11
**level**
55:20
**licensed**
118:24
**lieutenant**
51:5, 51:22,
51:23, 52:3,
52:4
**like**
11:21, 15:3,
23:6, 25:17,
29:19, 34:11,
36:4, 38:3,
39:11, 42:8,

42:10, 44:21,
50:6, 52:17,
55:3, 57:20,
58:23, 59:10,
61:11, 69:5,
72:3, 73:6,
73:15, 76:10,
78:1, 78:4,
79:22, 81:19,
85:1, 90:18,
91:18, 96:22,
97:23, 98:3,
102:2, 102:4,
103:10, 103:12,
106:20, 117:11,
117:13
**liked**
54:12
**line**
36:12, 40:3
**line-by-line**
105:16, 114:19
**lines**
72:9, 73:7,
73:12
**lineup**
28:21, 38:14,
39:3, 42:3,
42:14, 42:17,
42:21, 42:24,
43:1, 43:20,
43:22, 44:1,
44:4, 44:8,
44:20, 45:3,
45:8
**lineups**
37:8, 38:11
**little**
45:15, 58:18,
59:14, 59:21,
61:15, 89:19
**live**
90:12
**lived**
90:17
**local**
83:4, 106:25
**lodge**
83:7, 83:9,

83:10, 83:20
**lodged**
7:21
**lodges**
83:4
**loevy**
2:7
**log**
67:19, 69:1,
76:4
**logbook**
67:25
**logged**
67:22
**long**
11:1, 13:23,
14:2, 14:8,
15:5, 29:17,
32:20, 32:22,
46:9, 51:18,
52:11, 53:17,
61:23, 86:17
**look**
22:10, 23:24,
24:15, 25:8,
25:10, 25:14,
26:3, 26:11,
26:18, 26:21,
27:1, 27:10,
27:18, 38:3,
39:21, 65:17,
93:10
**looked**
8:23, 36:4,
42:10, 46:20,
114:23
**looks**
39:22
**loop**
84:3
**lot**
67:9
**lpa**
2:16, 2:28,
3:18

| M |

**machine**
118:8

**made**
30:4, 39:19,
44:8, 75:14,
87:8, 87:21,
88:15, 115:2
**main**
23:15, 54:4,
77:10
**mainly**
74:1
**maintained**
68:4, 69:7,
81:10, 81:19
**major**
55:3, 55:13,
58:7, 58:11,
73:15, 90:7,
115:5, 115:7
**make**
23:24, 44:21,
66:22, 73:17,
75:23, 102:4,
103:13, 105:4,
105:8
**making**
79:6
**male**
93:8
**man**
34:3, 69:23
**manager**
22:10
**mandatory**
111:8, 113:7
**manner**
74:9, 105:7
**manual**
96:21
**manuals**
96:11, 98:4
**many**
7:7
**marked**
25:2, 68:11,
69:12, 71:25,
91:3, 92:13,
92:25
**marvin**
2:24, 16:1,

Transcript of Tim L. Wilson
Conducted on December 18, 2018

137

17:7, 17:25,
33:10, 51:7,
52:6
**mason**
3:8
**material**
110:5, 113:7,
116:24
**matter**
27:11, 31:8,
90:4, 112:9
**matters**
117:1
**maundrell**
3:6
**max**
32:23
**may**
5:13, 5:17,
21:17, 27:17,
37:9, 39:18,
39:22, 39:23,
39:24, 41:1,
46:9, 46:10,
49:11, 63:25,
72:25, 75:11,
88:5, 103:17,
104:2, 104:12,
104:15, 104:24,
110:21, 112:16,
116:22, 117:5
**maybe**
24:21, 24:22,
37:15, 39:7,
85:2, 97:24,
114:24
**mazanec**
3:18
**mean**
25:16, 26:5,
26:7, 34:10,
62:1, 72:17,
75:8, 84:23
**meaning**
62:2
**means**
54:19
**meant**
85:22

**meet**
17:20, 18:4,
103:6
**meeting**
32:20, 32:22,
32:24, 100:13
**meetings**
32:12, 32:16,
82:16
**member**
82:23, 83:7
**members**
109:12, 109:19
**memo**
41:1
**memory**
9:15, 9:20,
10:24, 11:18,
12:17, 12:23,
13:5, 36:23,
37:2, 69:2,
69:6, 101:3
**mention**
30:21
**mentioned**
23:3, 40:10,
40:13, 62:19,
67:19
**mentions**
65:20
**met**
18:1, 18:2
**miami**
1:8, 2:13, 8:3,
8:19, 11:19,
12:5, 12:6,
12:17, 13:6,
13:12, 13:22,
15:11, 15:15,
15:23, 17:18,
17:22, 18:11,
18:20, 28:18,
28:19, 31:2,
33:12, 33:24,
35:10, 36:18,
45:6, 52:11,
57:7, 62:16,
66:24, 67:10,

68:16, 68:20,
69:4, 70:5,
70:8, 70:25,
72:5, 75:19,
83:15, 84:5,
84:14, 88:15,
90:23, 92:20,
93:8, 94:18,
95:13, 95:18,
96:7, 96:13,
98:1, 98:12,
98:15, 98:20,
98:24, 99:24,
100:8, 102:1,
108:2, 109:5,
110:12, 111:11,
114:15, 114:16,
116:9
**miamisburg**
98:9
**michael**
21:8
**micro**
22:10
**middle**
7:3
**might**
30:14, 34:12,
39:19, 42:6,
43:11, 69:5,
76:21
**military**
13:16, 13:20
**mind**
10:22, 19:8,
27:6, 37:19,
58:5
**mine**
68:5, 82:8
**minute**
27:18, 32:8
**minutes**
27:14, 40:10
**mischaracterizat-
ion**
110:24
**mischaracterized**
111:3

**misconduct**
16:11
**misdemeanors**
20:13
**misleading**
106:4
**missing**
86:7
**mistake**
87:14, 87:18,
89:9
**moment**
40:13, 65:9,
65:15, 113:6,
114:13
**monitor**
114:11
**montgomery**
14:6, 14:8,
14:12, 14:16,
14:21, 56:2,
56:6, 56:7,
56:14, 60:25,
113:21
**months**
21:16, 37:15
**moore**
3:14, 6:9,
9:14, 9:19,
11:14, 21:9,
33:25, 34:24,
35:2, 35:9,
36:17, 36:21,
36:24, 37:5,
38:10, 43:25,
44:8, 44:19,
45:2, 45:16,
47:3, 47:19,
47:25, 50:14,
51:1, 53:20,
53:23, 55:17,
56:1, 56:16,
57:2, 57:7,
57:15, 57:19,
58:4, 59:2,
59:6, 59:11,
59:15, 59:17,
59:20, 60:7,

Transcript of Tim L. Wilson
Conducted on December 18, 2018

138

60:18, 61:4,
63:10, 64:16,
64:21, 66:13,
67:15, 70:4,
73:20, 77:18,
77:23, 78:7,
78:22, 82:3,
84:17, 89:9,
92:2, 93:9,
102:9, 102:17,
103:2, 104:10,
105:24, 111:22,
111:25, 112:11,
113:16
**moore's**
9:1, 10:4,
10:16, 11:17,
43:9, 43:12,
45:23, 59:10,
94:24, 95:2,
112:13, 112:19
**more**
8:12, 19:23,
21:12, 39:8,
52:7, 56:25,
60:7, 61:11,
67:9, 90:4,
91:17, 91:20,
99:19, 101:12,
103:10, 113:3
**morning**
6:23, 6:24
**most**
32:20, 96:16
**mostly**
24:7, 24:16
**motors**
9:2, 38:5, 79:9
**move**
25:25
**moving**
93:15
**much**
11:21, 22:2,
23:22, 27:19,
80:25, 86:15,
87:18, 91:5
**mug**
39:4, 40:20,

41:7, 41:11,
41:13, 41:15
**multiple**
16:3, 55:4
**multitude**
39:3
**murders**
15:3
**must**
87:22, 96:1
**mute**
6:12, 85:4
**myself**
21:9, 22:9,
27:22, 100:2

---

**N**

**n-o-c-k**
21:4
**name**
6:25, 7:3,
39:25, 70:18,
76:25, 77:1,
77:3
**named**
7:17, 22:1,
33:3, 36:11,
66:6, 79:9,
88:16, 118:12
**names**
9:3, 39:20
**narcotics**
56:4
**nashville**
118:6
**naturally**
34:16
**nature**
110:22
**necessary**
78:25
**ned**
6:11, 101:20,
101:25
**need**
23:25, 61:22,
80:11, 91:6
**needed**
19:19, 20:17,

22:16, 22:17,
24:22, 40:8,
67:12, 67:14,
75:17
**needing**
57:19
**needs**
48:18, 56:18
**negotiations**
15:14, 15:17
**neither**
36:19
**never**
25:16, 45:14,
80:3, 80:4,
82:9, 89:24,
92:11, 94:19,
109:3
**new**
73:23, 101:6,
103:18
**newcomer**
60:14
**next**
65:17, 69:8
**nightstick**
8:10
**nock**
21:1, 21:3
**none**
4:24, 41:23,
82:6
**nor**
118:12
**normal**
34:11
**north**
2:8
**notary**
5:16, 98:15,
98:16, 118:25,
118:27
**note**
47:14
**notes**
93:19, 93:22,
93:24, 94:1,
94:6, 94:11,

94:19, 94:24,
95:2, 95:11,
95:19, 95:23,
96:1, 98:3,
108:15
**nothing**
10:15, 25:13,
39:8, 40:7,
97:24, 98:3,
98:4, 101:6
**notice**
5:9
**now**
11:22, 13:1,
18:9, 18:14,
20:18, 22:3,
26:7, 27:14,
28:24, 31:12,
40:4, 40:10,
41:17, 43:23,
50:12, 55:16,
57:17, 58:9,
63:9, 64:12,
65:5, 65:20,
67:18, 68:3,
69:11, 70:23,
72:9, 72:16,
73:23, 76:13,
83:10, 83:12,
84:20, 85:13,
86:1, 86:16,
88:8, 89:12,
90:9, 91:5,
92:17, 92:18,
95:16, 100:11,
101:2, 103:5,
105:23, 116:9
**number**
65:10, 68:25,
69:2, 69:8,
69:9, 69:10,
69:15, 69:22,
69:25, 92:13,
108:8
**numbers**
65:6, 65:7,
68:15, 68:19

---

**O**

**oath**
49:4, 49:6,

Transcript of Tim L. Wilson
Conducted on December 18, 2018

106:22, 107:10
**object**
49:11, 49:21,
59:24, 60:4,
60:10
**objection**
9:21, 11:8,
32:6, 38:16,
38:19, 44:12,
45:19, 46:16,
48:1, 49:18,
50:5, 50:9,
50:15, 59:23,
60:20, 66:15,
71:7, 71:9,
71:19, 94:22,
95:4, 99:2,
100:18, 102:19,
105:10, 106:10,
107:2, 107:12,
108:12, 109:15,
110:23, 112:5,
117:3
**objectionable**
27:4, 60:2
**objections**
5:11, 49:14,
50:7
**obligation**
113:25, 114:3
**observe**
22:15
**observed**
60:14
**obstructive**
25:17
**obviously**
39:12
**occasionally**
80:25
**occupied**
99:24
**occur**
106:6
**occurred**
33:24, 55:24
**off**
8:9, 8:16,

17:18, 30:8,
30:10, 74:20,
114:19
**off-the-record**
12:14, 62:8,
99:17, 112:24
**offer**
20:16
**office**
13:25, 14:3,
14:13, 14:17,
14:24, 15:1,
19:8, 22:19,
38:1, 40:2,
54:9, 55:6,
61:1, 61:14,
74:19, 75:10,
78:20, 78:22,
94:10, 94:13,
98:14, 103:22,
104:14, 105:19,
111:7, 113:22,
113:23
**officer**
7:15, 8:16,
12:5, 12:8,
12:9, 13:12,
13:17, 18:11,
25:3, 39:2,
40:7, 40:25,
41:24, 42:4,
42:6, 42:8,
42:16, 42:17,
44:10, 44:15,
62:15, 66:11,
68:24, 69:10,
79:20, 81:5,
83:13, 98:15,
106:21, 106:22,
107:5, 107:10
**officers**
8:8, 8:10,
13:2, 16:10,
22:12, 41:18,
41:21, 42:2,
42:14, 43:15,
44:20, 45:2,
54:18, 55:12,

73:16, 75:22,
76:14, 88:15,
93:19, 93:21,
94:18, 95:17,
107:16, 107:19,
108:2, 110:2,
114:7
**offices**
118:6
**official**
96:15
**officials**
108:19
**often**
54:2, 68:25,
70:19, 70:20,
90:14
**ohio**
1:2, 2:18,
2:30, 3:8, 3:21,
8:8, 14:6,
14:13, 14:21,
56:2, 74:20,
83:5, 83:7,
83:9, 90:17,
90:18, 90:19,
106:25, 113:21
**okay**
7:7, 11:4,
11:13, 12:20,
13:3, 13:10,
15:21, 16:6,
19:24, 21:12,
22:3, 26:1,
28:17, 30:3,
31:1, 31:23,
37:2, 43:3,
43:6, 43:13,
43:23, 47:18,
49:11, 49:19,
49:23, 50:2,
50:12, 50:21,
52:5, 57:13,
63:4, 65:11,
67:15, 69:17,
70:14, 72:9,
77:15, 79:8,
83:8, 83:14,

86:22, 87:10,
88:12, 88:18,
89:17, 90:14,
91:10, 93:4,
95:8, 95:25,
103:15, 103:20,
112:8, 113:15,
116:22
**old**
2:17
**once**
7:8, 23:19,
23:23, 30:5,
30:10, 46:23,
54:15, 54:25,
55:8, 65:17,
68:23, 89:12,
94:6
**one**
7:18, 8:9, 9:5,
9:8, 10:21,
17:11, 20:1,
34:25, 36:19,
39:9, 49:7,
51:2, 52:4,
52:7, 57:2,
58:7, 58:11,
61:23, 62:4,
63:2, 65:24,
68:17, 69:22,
73:6, 73:11,
73:12, 77:9,
84:17, 85:3,
86:14, 86:22,
91:17, 91:20,
96:21, 104:23,
104:24, 108:8
**ones**
63:16, 97:13,
97:18
**ongoing**
22:5, 22:6,
23:18, 35:22,
89:17
**only**
48:5, 52:7,
58:17, 78:9,
82:13, 86:9,

Transcript of Tim L. Wilson
Conducted on December 18, 2018

140

117:20
**onto**
53:10, 65:16
**open**
23:15, 24:22
**opened**
30:2
**opening**
24:14
**openly**
11:11
**operated**
12:17, 13:6
**operating**
16:19, 38:25,
96:6, 96:17,
97:1, 97:3,
97:17, 116:14,
116:18, 116:23
**operation**
96:20
**operations**
74:2
**opinion**
60:12, 73:9,
86:22, 86:25,
87:2, 87:4,
87:22, 87:23,
88:8, 88:14,
88:18, 88:24,
111:25
**opposed**
91:8
**order**
66:13, 70:10,
71:4, 71:15,
95:17, 117:19
**orders**
16:14, 16:15,
96:6, 96:11,
115:18, 116:9
**ordinances**
106:25
**organized**
39:16, 67:20
**orientation**
74:5
**original**
30:22, 63:22,

64:6, 81:22,
97:13, 97:17
**other**
8:18, 9:2,
13:2, 20:5,
28:7, 31:12,
31:17, 32:25,
33:3, 34:1,
42:13, 44:9,
50:3, 50:25,
53:6, 65:25,
67:7, 67:8,
73:10, 78:5,
86:14, 86:23,
88:15, 89:4,
96:1, 99:23,
100:8, 108:1,
108:19, 108:22,
109:2, 109:9,
109:22, 117:1
**otherwise**
89:6, 110:4,
110:14, 118:14
**our**
16:10, 31:7,
49:23, 100:22,
113:25, 117:2
**out**
9:13, 9:17,
10:11, 12:19,
17:14, 17:23,
21:18, 23:21,
31:5, 34:4,
41:25, 42:6,
42:23, 53:10,
56:20, 57:7,
57:11, 57:12,
58:3, 63:23,
63:24, 63:25,
66:25, 67:5,
67:9, 67:11,
70:20, 73:1,
73:4, 73:6,
74:18, 75:24,
83:5, 84:20,
85:14, 86:2,
86:16, 90:16,
95:23, 95:25,

97:25, 105:25,
113:4, 114:10
**outcome**
118:14
**outside**
7:18, 28:4,
28:10, 33:17
**outsider**
19:23
**over**
8:11, 8:23,
9:2, 18:21,
22:10, 27:18,
30:24, 35:20,
45:16, 51:8,
64:11, 75:17,
76:7, 76:15,
76:21, 77:20,
78:3, 80:16,
87:14, 93:15,
94:9, 94:12,
100:11, 100:12,
102:17, 103:5,
104:17, 114:3
**overall**
20:11
**overhaul**
52:16
**overlap**
19:15
**oversee**
38:10
**overseeing**
51:1, 104:19
**overturned**
85:14, 85:20,
86:18, 87:15,
88:3, 88:10,
88:13
**owed**
59:14
**owens**
2:5, 4:4, 4:11,
6:3, 6:10, 6:14,
6:22, 10:2,
10:8, 11:12,
12:20, 13:9,
13:11, 25:11,

25:16, 25:20,
26:5, 26:13,
26:23, 27:3,
27:9, 27:12,
27:19, 27:24,
31:17, 31:23,
32:1, 32:11,
38:19, 38:20,
44:13, 46:1,
46:21, 48:2,
48:9, 48:12,
48:17, 48:19,
50:1, 50:20,
60:5, 60:13,
60:21, 61:20,
62:7, 62:9,
66:20, 69:16,
69:18, 71:12,
71:23, 85:3,
85:6, 85:8,
90:20, 90:22,
93:2, 93:5,
94:23, 95:5,
99:5, 99:13,
99:18, 100:21,
101:12, 102:19,
105:10, 106:10,
107:2, 107:12,
108:12, 109:15,
110:23, 112:5,
113:2, 115:10,
115:22, 117:3,
117:19

**P**

**packs**
41:18
**page**
4:2, 4:22,
23:8, 25:4,
25:7, 25:8,
46:13, 65:9,
65:17, 86:1,
102:5
**paid**
55:12, 83:3
**pamphlet**
16:20

Transcript of Tim L. Wilson
Conducted on December 18, 2018

| | | | |
|---|---|---|---|
| **papers** | **people** | 38:3, 38:7, | 57:2, 57:14, |
| 85:1 | 14:19, 40:22, | 39:5, 40:1, 41:4 | 61:18, 61:22, |
| **paragraph** | 50:25, 51:3, | **photographic** | 62:4, 103:20, |
| 102:7, 105:24, | 67:7 | 28:21, 38:11, | 103:25, 113:19 |
| 107:15, 108:17, | **performed** | 42:2, 42:14, | **points** |
| 110:1 | 112:4 | 42:21, 42:24, | 103:12 |
| **part** | **period** | 44:1, 45:2, 45:8 | **polaroid** |
| 52:24, 72:12, | 11:19, 23:12, | **photographs** | 38:8, 41:1, |
| 76:19, 116:4 | 35:4, 35:6, | 39:3, 39:7, | 41:8, 41:10 |
| **part-time** | 40:19, 46:8, | 39:11, 39:14, | **police** |
| 12:4, 12:8, | 61:2, 62:18, | 41:18, 75:3 | 7:15, 7:22, |
| 12:9 | 78:19, 111:10 | **physical** | 7:25, 8:4, 8:19, |
| **participate** | **perjury** | 39:13, 42:9, | 12:5, 12:6, |
| 78:21 | 107:8 | 75:14, 81:16 | 15:11, 15:13, |
| **participated** | **permission** | **physically** | 15:16, 15:24, |
| 79:5 | 56:1 | 70:19, 74:1, | 17:13, 17:18, |
| **participation** | **person** | 74:19, 75:4, | 17:23, 17:24, |
| 79:18 | 21:20, 39:24, | 75:5 | 18:2, 28:13, |
| **particular** | 42:9, 42:10, | **picture** | 31:2, 33:12, |
| 29:24, 39:25, | 72:24, 72:25, | 69:19, 91:21, | 39:4, 41:17, |
| 68:15, 68:19, | 77:4, 77:11, | 91:24, 92:2, | 41:21, 42:2, |
| 72:14, 75:3, | 81:5, 92:20 | 92:5 | 42:4, 42:8, |
| 77:16, 78:12, | **personal** | **pictures** | 42:14, 42:16, |
| 104:7 | 17:17, 61:7, | 41:8, 42:2, | 42:17, 43:14, |
| **particularly** | 82:9 | 45:7, 92:7 | 44:19, 45:2, |
| 115:5 | **personally** | **piece** | 51:9, 52:12, |
| **parties** | 47:13, 77:15, | 75:25 | 55:10, 57:16, |
| 118:12 | 77:21, 108:24 | **pkasson@reminger** | 59:11, 59:15, |
| **passed** | **personnel** | 2:32 | 62:15, 62:16, |
| 90:10, 104:25 | 97:25, 98:5, | **place** | 66:7, 66:12, |
| **past** | 98:6, 98:10 | 69:4, 106:17, | 66:24, 68:20, |
| 22:14, 35:17, | **persons** | 116:13 | 69:4, 70:5, |
| 40:22 | 108:21, 109:1, | **placed** | 70:9, 70:10, |
| **pat** | 109:9, 109:22 | 81:16 | 71:1, 71:5, |
| 93:2 | **perspective** | **plaintiff** | 71:15, 72:6, |
| **patrick** | 54:23 | 1:6, 1:17, 2:4, | 73:3, 73:5, |
| 2:26 | **phone** | 5:5 | 83:11, 83:13, |
| **patrol** | 56:25 | **plate** | 83:15, 84:6, |
| 40:25, 53:11, | **photo** | 103:8, 103:16 | 84:14, 90:23, |
| 62:25 | 37:8, 39:2, | **played** | 92:20, 93:8, |
| **patrolman** | 40:11, 40:14, | 90:21 | 93:9, 95:13, |
| 68:24 | 40:15, 40:17, | **please** | 95:18, 96:7, |
| **patrolman's** | 40:20, 41:7, | 6:25, 31:16, | 96:10, 96:11, |
| 62:24 | 42:17, 43:1, | 44:22, 54:21, | 96:12, 97:11, |
| **pay** | 43:15, 69:19, | 98:19, 111:3 | 98:2, 107:10, |
| 15:18, 39:12, | 92:3, 92:7 | **plus** | 108:2, 109:5, |
| 63:2, 83:3 | **photograph** | 67:7 | 109:20, 110:12, |
| **pending** | 37:18, 37:23, | **point** | 111:11 |
| 26:14, 61:24 | | 33:6, 46:19, | |

Transcript of Tim L. Wilson
Conducted on December 18, 2018

142

policies
52:17, 52:25,
73:25, 115:19,
116:5
policy
31:9, 96:15
popped
101:6
portion
65:18
posed
48:14
position
15:5, 15:12,
18:15, 19:20,
19:22, 56:9,
56:12, 62:22,
99:24
positions
53:6
possession
94:9, 94:15,
96:22, 117:2
possible
42:19, 104:11
potential
50:25
powers
3:6
practice
29:13, 31:9,
42:18, 45:1,
63:19, 66:23,
68:7, 70:8,
75:18, 77:25,
93:18, 94:5,
110:19, 111:10,
113:19
practices
40:5, 44:2,
44:7, 44:15,
44:18, 73:24
prefer
103:11
prejudice
39:19
preparation
38:11

prepare
8:21, 28:10,
31:13, 31:19
prepared
37:25
present
32:24, 39:16,
40:1, 55:5,
55:7, 64:13,
65:21, 65:25,
70:3, 79:4
presented
22:19, 37:9,
64:10, 74:2,
87:7, 87:19,
88:1, 105:7
presenting
40:9, 54:8
presently
117:1
president
83:2, 83:10,
83:19
pretty
11:21, 22:2,
22:14, 23:22
previous
59:11
previously
25:2, 31:18,
68:11, 69:12,
71:24, 91:2,
92:13, 100:24
primary
39:5
print
23:21, 75:24
printed
23:23, 30:8,
30:10, 31:5,
74:18, 81:16
prior
13:16, 30:8,
33:24, 35:9,
37:16, 69:12,
79:10, 102:25,
110:24, 116:12
prison
34:4, 86:18

prisoner
81:4
privilege
49:15
probable
70:12
probably
10:19, 11:3,
35:14, 36:17,
39:8, 52:22,
53:25, 85:16,
97:11
problem
26:23, 26:24,
80:22
problems
55:19, 56:17,
108:23, 109:2,
109:10, 109:23
procedure
5:8, 16:19,
24:23, 38:25,
72:16
procedures
38:14, 38:22,
96:7, 96:18,
96:20, 97:1,
97:3, 97:18,
116:5, 116:14,
116:19, 116:23
proceeding
5:14
proceedings
117:21, 118:14
process
23:6, 38:13,
38:17, 38:21,
52:24, 53:4,
68:15, 68:18,
74:14, 74:23,
75:15, 82:25,
86:3, 97:19,
108:20, 108:25,
109:8, 109:21,
115:17, 116:4
production
76:5
professional
62:11, 105:7

program
29:19
promoted
22:12, 56:8
promotion
56:9
promotions
21:19
property
79:20, 81:2,
81:6, 86:10
prosecuted
36:5
prosecution
36:25, 84:18,
110:5
prosecutions
108:21, 109:1,
109:8, 109:21
prosecutor
74:21, 75:5,
75:16, 75:24,
76:8, 76:10,
79:4, 94:17,
105:8, 110:15,
110:21
prosecutor's
14:13, 14:17,
14:23, 15:1,
22:19, 38:1,
40:2, 54:9,
55:6, 74:19,
75:5, 75:10,
76:1, 78:19,
78:22, 94:10,
94:13, 104:14,
105:19, 111:7,
113:22, 113:23
prosecutors
74:11, 76:16,
77:20, 78:3,
113:21, 114:4
protect
8:9
protester
8:15
protesters
8:14

Transcript of Tim L. Wilson
Conducted on December 18, 2018

143

| | | | |
|---|---|---|---|
| **proud** | 87:13, 88:23, | 13:7, 84:23, | 23:1, 23:12, |
| 54:14, 54:24, | 91:17, 92:22, | 100:15 | 24:19, 24:25, |
| 55:9 | 101:7, 102:20, | **raskin** | 36:8, 37:10, |
| **provide** | 105:11, 105:17, | 3:18 | 37:20, 38:9, |
| 66:10, 66:13, | 106:11, 108:13, | **reached** | 38:24, 39:1, |
| 75:24, 89:14, | 109:16, 110:24 | 17:14 | 39:7, 40:15, |
| 107:8, 110:14, | **questioned** | **read** | 40:20, 45:13, |
| 110:20, 111:6, | 26:3 | 5:13, 8:23, | 52:15, 53:12, |
| 113:25 | **questioning** | 8:25, 9:1, 9:13, | 59:4, 65:1, |
| **provided** | 27:15, 114:14 | 10:16, 10:19, | 66:2, 67:21, |
| 106:3 | **questions** | 10:20, 11:1, | 70:17, 73:20, |
| **providing** | 5:11, 6:22, | 11:13, 11:16, | 77:24, 78:25, |
| 106:8 | 12:22, 12:25, | 11:22, 25:9, | 84:19, 85:17, |
| **public** | 25:15, 25:24, | 27:22, 31:12, | 91:23, 92:1, |
| 5:16, 118:25 | 43:14, 49:3, | 43:18, 63:15, | 92:4, 92:5, |
| **publicly** | 91:8, 99:19, | 63:22, 64:4, | 92:8, 92:11, |
| 90:21 | 101:13, 101:18, | 88:5, 114:24, | 95:10, 96:2, |
| **pull** | 101:21, 101:24, | 115:1 | 96:4, 100:15, |
| 57:6 | 111:14, 111:19, | **reading** | 100:25, 103:19, |
| **punctual** | 111:23, 113:2, | 5:18, 10:11, | 103:25, 104:2, |
| 54:9 | 113:3, 115:14, | 11:5, 43:9, | 104:12, 104:22, |
| **purposes** | 117:7 | 43:13 | 104:25, 113:8, |
| 5:7, 92:6 | **quick** | **ready** | 116:10, 116:11, |
| **pursuant** | 115:15 | 27:16, 69:7 | 116:18 |
| 91:13 | **quite** | **real** | **recalled** |
| **pursue** | 47:9, 59:1, | 37:13, 115:15 | 13:4, 57:15 |
| 73:21 | 78:10, 82:23 | **realize** | **receipts** |
| **put** | _____ R _____ | 80:12 | 75:2 |
| 17:23, 30:5, | **race** | **really** | **received** |
| 35:8, 39:15, | 39:12 | 21:24, 23:7, | 8:16, 14:18, |
| 42:15, 67:18, | **rally** | 27:12, 36:19, | 15:10, 23:23, |
| 108:8 | 8:7 | 37:12, 37:20, | 30:12, 56:24, |
| **putting** | **rank** | 40:7, 43:23, | 68:23, 97:18 |
| 42:14 | 62:20, 62:24, | 87:25, 102:2, | **receiving** |
| _____ Q _____ | 62:25 | 105:4 | 14:20, 46:3 |
| **question** | **ranking** | **reason** | **recent** |
| 10:18, 12:15, | 62:19 | 26:7, 35:25, | 32:20 |
| 13:4, 13:8, | **rape** | 40:24, 76:19 | **receptive** |
| 26:6, 26:13, | 12:1, 33:23, | **reasons** | 54:10 |
| 27:13, 27:23, | 36:24, 45:17, | 41:14 | **recognize** |
| 29:5, 31:16, | 45:23, 50:22, | **reassigning** | 25:5, 68:11 |
| 48:13, 48:14, | 58:7, 58:10, | 102:9 | **recognized** |
| 48:18, 49:15, | 73:15, 112:9, | **recall** | 55:10 |
| 49:17, 50:6, | 112:14, 112:19, | 8:20, 9:3, | **recollection** |
| 50:12, 59:25, | 115:7 | 10:15, 11:5, | 65:24, 100:23 |
| 61:24, 61:25, | **rapes** | 11:7, 11:15, | **record** |
| 66:16, 84:25, | 11:20, 12:18, | 11:17, 19:18, | 7:1, 90:21, |
| | | 20:19, 21:21, | 107:19 |

Transcript of Tim L. Wilson
Conducted on December 18, 2018

recordings
37:8
records
22:25, 24:2,
24:24, 79:20,
81:3, 81:6,
81:8, 81:11,
81:20
recovering
79:6
recreationally
90:16
redone
52:25
reduced
118:10
refer
39:20, 69:14,
84:24, 85:11,
100:16
referencing
116:13
referred
68:2, 76:25,
98:11
refers
107:16
refresh
9:15, 65:24
refreshed
100:23
regional
45:7, 56:6
registered
83:5
regular
117:20
reign
113:18
related
7:14, 7:25,
49:15, 86:7,
98:20, 118:11
relates
59:6, 77:19,
78:2
relating
7:22

relationship
12:24, 22:4,
82:9
relative
35:20
released
86:10
remember
9:22, 9:25,
10:4, 10:7,
18:23, 19:4,
21:25, 24:14,
29:18, 36:21,
37:5, 37:7,
37:12, 37:13,
37:16, 37:17,
37:21, 37:24,
38:2, 38:6,
38:7, 41:15,
42:22, 43:4,
43:13, 43:21,
46:8, 52:21,
57:25, 60:22,
64:1, 64:12,
64:20, 65:2,
66:5, 71:2,
72:15, 72:21,
74:8, 80:1,
84:5, 85:15,
86:2, 96:16,
96:21, 104:15,
113:12
reminger
2:28
remove
107:22
removed
107:20
removing
108:3
repeat
7:23, 44:22,
54:21, 68:17,
84:25, 109:17,
112:16
replaced
19:10
report
16:13, 17:1,

23:16, 23:18,
23:20, 23:24,
24:1, 24:25,
29:15, 30:12,
30:15, 31:3,
31:10, 67:25,
68:2, 68:25,
69:9, 69:10,
74:17, 89:25,
94:2, 104:3,
104:13
reported
1:28, 77:4,
108:9, 118:7
reporter
5:16, 117:13,
118:24
reporter's
118:1
reporting
36:22
reports
14:18, 20:15,
22:23, 22:24,
23:4, 23:13,
23:14, 24:3,
24:4, 24:11,
28:13, 28:15,
28:22, 29:1,
45:18, 46:4,
46:10, 46:11,
46:14, 46:24,
47:3, 47:5,
47:7, 63:16,
63:22, 64:5,
67:22, 74:10,
75:1, 76:9,
81:15, 89:20,
90:6, 90:24,
93:16, 94:6,
94:20, 96:20,
98:2, 105:17,
107:20, 107:23,
108:3, 114:18,
115:1
represent
111:22
represented
48:21

representing
6:6, 34:19
represents
102:1
request
80:7
requested
22:21, 69:10
requesting
70:21
requests
70:23
required
47:15, 76:14
requiring
95:17
reserve
12:5, 12:9,
12:11, 13:12,
13:17, 18:11
reserved
5:12
reserves
13:2
resignation
18:19, 19:6
resolve
49:14, 49:18,
50:8
resources
103:18
respect
7:15, 12:22,
47:19, 93:18,
94:5, 110:8,
116:23, 116:24
responded
68:24
response
36:6, 36:9,
114:14
responsibilities
54:5
responsibility
75:23, 76:2
responsible
30:15, 47:24,
102:8

Transcript of Tim L. Wilson
Conducted on December 18, 2018

| | | | |
|---|---|---|---|
| **result**<br>7:11, 7:21,<br>54:19, 72:22<br>**resulted**<br>55:14<br>**retain**<br>95:18<br>**retained**<br>95:24, 96:1,<br>97:13, 97:17<br>**retention**<br>116:24<br>**retire**<br>53:15<br>**retired**<br>97:20<br>**retirement**<br>15:19, 98:1<br>**return**<br>47:16, 98:17<br>**returned**<br>80:7<br>**returning**<br>13:24<br>**review**<br>22:24, 23:4,<br>23:24, 24:4,<br>24:9, 24:10,<br>27:25, 28:3,<br>28:7, 28:9,<br>28:17, 28:21,<br>30:11, 30:15,<br>40:5, 44:10,<br>65:16, 65:18,<br>75:6, 76:1,<br>90:5, 91:6,<br>92:22, 94:24,<br>95:2, 95:10,<br>98:21, 100:22,<br>104:13, 104:23,<br>104:25, 105:6,<br>114:18<br>**reviewed**<br>31:3, 45:17,<br>46:13, 46:23,<br>65:19, 91:13,<br>94:17, 104:5,<br>104:12, 104:15 | **reviewing**<br>38:13, 38:21,<br>95:11, 104:16,<br>105:3<br>**rick**<br>9:1, 12:24,<br>13:13, 13:17,<br>84:8, 84:13,<br>84:17<br>**rid**<br>79:22, 80:16<br>**rigging**<br>108:21, 108:25,<br>109:8, 109:21<br>**right**<br>6:14, 9:5,<br>10:23, 13:10,<br>15:9, 15:14,<br>15:25, 16:4,<br>18:6, 20:1,<br>23:3, 26:7,<br>31:21, 32:10,<br>33:8, 34:8,<br>34:21, 35:4,<br>35:6, 36:18,<br>37:21, 46:22,<br>47:4, 48:21,<br>48:24, 49:1,<br>49:3, 49:10,<br>49:14, 49:18,<br>49:25, 50:5,<br>51:18, 60:6,<br>63:12, 65:4,<br>65:15, 65:20,<br>66:10, 68:10,<br>68:14, 69:11,<br>69:25, 73:4,<br>74:22, 76:6,<br>76:17, 76:22,<br>78:11, 81:7,<br>81:13, 86:4,<br>86:16, 89:6,<br>90:7, 92:12,<br>92:18, 93:23,<br>94:4, 100:4,<br>100:5, 102:12,<br>102:16, 103:5,<br>104:2, 104:17, | 105:23, 106:5,<br>106:15, 107:5,<br>107:15, 108:15,<br>108:17, 109:4,<br>109:12, 110:10,<br>111:9, 112:3,<br>112:10, 112:12,<br>114:4, 115:8,<br>116:8, 116:12,<br>116:17<br>**rmr**<br>1:28, 5:16,<br>118:5, 118:23<br>**road**<br>3:7, 3:20,<br>53:10, 53:11<br>**robert**<br>79:9<br>**roger**<br>1:5, 35:22,<br>35:25, 36:1,<br>37:18, 38:2<br>**role**<br>30:20, 30:23,<br>51:19<br>**roles**<br>16:3<br>**room**<br>79:20, 81:2,<br>81:3<br>**roughly**<br>53:12<br>**routine**<br>73:1, 73:4,<br>73:7, 73:9,<br>110:13<br>**row**<br>3:19<br>**rpr**<br>1:28, 5:16,<br>118:5, 118:23<br>**rubber**<br>114:21, 114:22<br>**ruffling**<br>85:1<br>**rule**<br>45:1, 49:23,<br>49:25 | **ruled**<br>87:19<br>**rules**<br>5:8, 48:24<br>**ruling**<br>87:9, 87:21<br>**run**<br>15:23, 15:24<br>**rundown**<br>58:24<br>**ryder**<br>3:18<br><br>**S**<br><br>**said**<br>5:12, 5:13,<br>9:22, 10:4,<br>11:14, 18:18,<br>19:2, 19:5,<br>19:8, 19:9,<br>19:21, 20:18,<br>22:9, 31:17,<br>33:9, 34:18,<br>36:10, 36:21,<br>47:10, 54:2,<br>56:16, 56:23,<br>57:2, 57:9,<br>57:11, 57:13,<br>59:12, 61:21,<br>79:21, 79:24,<br>80:1, 80:3,<br>80:5, 80:6,<br>80:8, 80:10,<br>80:12, 80:14,<br>80:15, 80:18,<br>80:19, 80:20,<br>80:21, 86:9,<br>86:10, 89:3,<br>102:7, 113:10,<br>115:25, 116:4<br>**same**<br>12:21, 12:25,<br>13:13, 23:8,<br>24:23, 36:6,<br>46:12, 49:7,<br>50:3, 62:17,<br>63:1, 71:19,<br>82:11, 86:1, |

Transcript of Tim L. Wilson
Conducted on December 18, 2018

146

| | | | |
|---|---|---|---|
| 102:5, 114:9, 115:22, 118:9 | schroeder 3:6 | 64:22, 79:6 | september 52:13 |
| sandra 1:28, 5:15, 118:5, 118:23 | scothorn 2:24, 15:10, 16:1, 16:9, 17:7, 17:8, 17:9, 17:11, 17:14, 17:15, 17:20, 17:25, 18:9, 18:11, 18:14, 19:5, 19:14, 19:19, 33:18, 34:22, 35:3, 35:11, 35:20, 36:2, 36:14, 36:21, 43:7, 51:8, 52:6, 57:23, 58:21, 58:23, 59:5, 67:4, 74:3, 80:25, 90:2, 90:5, 102:8 | second 55:25, 85:22, 86:3, 86:8, 86:13 | sergeant 15:16, 16:2, 20:6, 20:9, 30:23, 31:4, 40:6, 51:24, 51:25, 52:1, 53:11, 63:3, 66:6, 66:9, 66:10, 66:11, 66:24, 67:8, 73:23, 95:12, 99:20, 99:22, 113:14, 113:18 |
| save 23:21 | | section 16:2, 18:21, 21:18, 22:13, 24:2, 36:13, 40:21, 41:6, 51:6, 62:23, 63:8, 81:12, 103:6 | |
| saw 9:4, 9:18, 41:3, 67:13, 72:20, 80:4, 97:10 | | | |
| say 7:13, 10:21, 11:10, 19:24, 21:5, 21:14, 22:19, 24:13, 24:16, 24:24, 26:18, 31:1, 31:11, 32:8, 34:15, 39:21, 42:5, 43:18, 53:1, 56:8, 57:18, 58:9, 58:25, 59:20, 60:6, 62:10, 63:24, 73:8, 74:3, 76:6, 78:14, 84:22, 86:14, 87:17, 87:20, 89:23, 103:3, 105:14, 106:18, 106:19, 107:11, 114:2, 114:22, 115:1, 115:22 | | securing 54:19 | sergeant's 15:12, 62:25 |
| | | security 14:7 | series 12:25 |
| | | see 39:22, 48:9, 65:5, 65:7, 65:12, 65:20, 65:23, 66:21, 69:19, 69:20, 72:9, 89:22, 89:24, 89:25, 90:3, 91:18 | serious 15:3, 20:13 |
| | | | served 110:11 |
| | | | set 34:6, 96:25, 105:24, 116:5 |
| | scothorn's 35:7 | | setup 29:20 |
| | scott 3:14, 6:9, 9:1, 21:9, 33:10, 33:25, 34:24, 35:2, 35:9, 36:16, 36:23, 38:10, 50:13, 53:19, 53:23, 57:7, 59:10, 59:17, 59:20, 60:6, 60:18, 61:4, 64:15, 64:21, 66:13, 67:15, 73:19, 77:18, 77:22, 82:2, 84:17, 89:9, 92:2, 94:24, 95:2, 111:22, 111:25, 112:11, 112:13, 112:18, 113:16 | seeing 72:21 | seven 104:17 |
| | | seemed 11:21 | several 13:15 |
| | | seen 42:6, 72:3, 73:11 | sexual 14:25 |
| | | seldom 89:24 | she 33:22, 34:15 |
| saying 9:24, 27:5, 38:2, 41:2, 73:2, 78:6, 96:14, 101:2 | | send 24:1, 57:3, 70:20, 73:1, 73:4, 75:11 | sheriff 56:14 |
| says 65:10 | | sending 70:19 | sheriff's 13:25, 14:2, 56:6, 61:1, 61:14 |
| scattered 108:16 | | sent 8:24, 34:3, 38:1, 74:18, 83:3 | shift 53:11, 81:14 |
| school 17:22, 18:4, 18:7, 18:8 | search 22:21, 37:11, | separate 29:24 | shirt 92:6 |
| | | separately 39:16 | short 61:11 |

Transcript of Tim L. Wilson
Conducted on December 18, 2018

147

**shorthand**
118:8
**shortly**
115:16
**shot**
40:20, 41:13
**shots**
39:4, 41:11,
41:12, 41:16
**should**
55:10, 61:21,
64:21, 88:3,
88:9
**shoulder**
22:11
**show**
68:10, 69:11,
71:17, 71:24,
91:2, 92:12,
92:25
**showed**
37:17, 37:22,
38:3, 44:4,
54:10, 96:14,
113:23
**showing**
44:4
**shown**
44:9
**sic**
23:14
**side**
8:14, 16:7,
20:5, 67:19
**sign**
39:25, 98:17
**signature-w6evx**
118:19
**signed**
80:5, 80:6,
83:20, 114:19
**significant**
22:14
**signing**
5:18
**similar**
39:11, 42:8,
42:10, 72:3,

72:4
**simple**
27:13
**simply**
39:21, 104:12
**since**
10:20, 29:18,
60:3
**sir**
6:23, 16:5,
17:10, 18:3,
18:5, 21:6,
21:23, 22:8,
25:5, 25:21,
27:21, 28:2,
29:6, 29:22,
32:3, 48:20,
48:22, 49:2,
49:9, 49:12,
49:24, 50:4,
52:10, 52:21,
65:7, 65:12,
67:19, 68:12,
69:16, 71:13,
71:24, 74:16,
74:25, 81:21,
84:4, 87:1,
87:12, 88:21,
89:13, 91:5,
92:16, 93:25,
97:24, 102:11,
102:15, 102:16,
102:22, 103:4,
103:23, 104:1,
104:21, 105:2,
105:15, 105:22,
106:13, 107:3,
107:13, 107:16,
107:22, 107:25,
108:5, 108:6,
108:11, 108:20,
108:24, 109:3,
109:11, 109:17,
110:6, 110:9,
110:16, 111:1,
111:8, 111:12,
111:16, 111:21,
112:16, 112:22,

113:3, 113:5,
114:17, 115:21,
116:7, 116:11,
116:21, 117:9
**sisters**
11:20, 12:1,
12:18, 36:24,
77:6, 81:23,
85:10
**sit**
10:19, 74:3,
104:11, 116:17
**sit-down**
37:7
**sitting**
10:15, 27:14,
37:3
**situations**
74:2
**six**
39:7, 39:8,
41:18
**skills**
118:9
**skim**
64:11
**slightly**
44:23, 83:21
**socialville-fost-
er**
3:7
**solely**
76:1
**solon**
3:20
**some**
12:22, 19:21,
22:13, 25:23,
29:19, 30:21,
31:4, 34:5,
34:13, 40:11,
41:14, 41:15,
46:19, 47:9,
48:24, 57:14,
73:16, 76:8,
78:10, 81:14,
81:15, 88:7,
90:2, 90:24,

91:7, 95:25,
96:10, 96:11,
102:4, 103:7,
103:15, 103:20,
113:19, 115:18,
116:13
**somebody**
16:22, 19:13,
34:12, 39:14,
40:23, 57:3,
71:4, 71:15,
73:5, 73:14,
104:6, 104:8
**someone**
30:6, 70:17,
70:19, 73:2
**someone's**
87:23
**something**
10:9, 27:8,
29:23, 45:12,
50:8, 54:17,
55:9, 55:11,
58:20, 64:25,
67:13, 68:3,
72:13, 74:7,
79:2, 79:22,
87:24, 97:25,
104:4
**sometime**
36:16, 50:22,
63:11, 78:16,
115:16
**sometimes**
23:25, 24:1,
34:11, 39:6
**someway**
34:4
**somewhat**
55:17
**somewhere**
36:11, 40:2,
61:1, 87:24,
98:12
**son**
59:10
**sop**
29:11, 38:24,

Transcript of Tim L. Wilson
Conducted on December 18, 2018

148

95:17, 95:20,
95:22, 95:23,
95:25, 96:4
**sops**
52:17, 52:25,
98:3, 98:25
**sorry**
6:12, 15:6,
34:8, 51:11,
63:3, 85:1,
93:2, 112:18,
115:21, 116:2
**sort**
16:3, 29:25,
41:11, 52:16,
54:17, 55:11,
58:23, 74:5,
76:4, 90:4, 91:6
**sorts**
12:21
**sound**
9:6, 43:16
**sounded**
85:1
**sounds**
58:23
**source**
39:5
**southern**
1:2
**space**
34:13
**speak**
35:19, 90:14
**special**
16:15, 39:12
**specific**
11:11, 24:14,
47:15
**specifically**
15:22, 45:12,
70:15, 92:3,
95:23, 116:18
**spell**
6:25, 21:3
**spelled**
95:23
**spent**
86:17

**spoke**
58:21, 79:13
**spoken**
33:8, 33:9,
33:10, 33:11,
33:14, 33:18
**squad**
8:8, 56:5
**staff**
22:1
**stamp**
91:3, 114:21,
114:22
**stand**
26:18
**standard**
16:19, 38:25,
72:5, 72:7,
72:8, 72:15,
96:6, 96:17,
96:25, 97:3,
97:17
**standardization**
29:8, 29:11
**standing**
116:14, 116:18,
116:23
**stapleton**
9:9, 9:11
**start**
25:4, 34:12,
92:14
**started**
30:2, 50:22,
57:17, 58:21,
61:4, 64:3,
84:6, 84:10
**starting**
25:8, 59:6
**starts**
65:13
**state**
5:17, 6:25,
14:21, 83:4,
106:25, 118:3,
118:25
**stated**
111:25, 112:3

**statement**
5:10, 112:15,
112:21
**states**
1:1, 106:24,
107:19
**station**
70:11, 71:5,
71:16, 83:11
**stay**
13:23, 57:9,
64:22
**stayed**
13:19
**step**
52:4, 59:17,
63:2, 76:24
**steps**
75:18, 83:22,
114:10
**steve**
18:18, 18:24,
19:2, 19:15,
33:10, 61:8,
61:15, 62:12,
86:6, 86:10,
100:2
**steven**
3:1, 79:14
**still**
13:21, 83:5,
83:8, 90:24
**stop**
8:11, 50:9,
108:8
**storage**
97:23
**story**
9:16, 58:24
**street**
2:8, 2:17,
42:6, 62:23
**strictly**
15:4
**strike**
24:9, 28:8,
30:13, 35:18,
40:12, 43:15,

44:16, 66:10,
90:20, 91:11,
93:13
**strong**
103:12
**struck**
8:15, 9:19
**structure**
38:6, 39:13,
42:9, 91:6
**struggling**
57:19
**stuck**
10:11
**stuff**
47:18
**subject**
93:8
**submit**
31:10
**submitted**
22:23, 31:2,
46:9, 46:11,
74:10
**subsequent**
57:10, 76:10,
116:3
**subsequently**
86:18
**substance**
91:9
**successful**
54:19
**such**
41:2, 96:4,
96:21, 106:16,
108:25, 109:13
**sued**
85:16
**sufficient**
105:6, 117:12
**suggested**
57:6
**suggestions**
23:24
**suit**
88:17
**suite**
2:8, 2:17,

| | | | |
|---|---|---|---|
| 2:29, 3:7 | 46:14, 67:22, | 76:10 | 18:14, 33:21, |
| **summaries** | 93:15, 94:6, | **systematic** | 47:23, 48:11, |
| 31:6 | 94:20 | 108:20, 108:25, | 49:21, 49:22, |
| **summer** | **supplements** | 109:8, 109:20 | 50:13, 50:17, |
| 35:14, 35:16, | 98:2, 107:23 | | 57:3, 57:13, |
| 35:17, 35:20 | **supposed** | **T** | 60:22, 75:18, |
| **supervise** | 94:11 | **t-i-m-m-y** | 80:15 |
| 20:15, 63:10, | **suppressed** | 7:3 | **telling** |
| 67:4, 77:18, | 110:4 | **tail** | 25:14, 26:10, |
| 77:21, 100:9 | **sups** | 54:7 | 48:15 |
| **supervised** | 67:20 | **take** | **template** |
| 20:20, 50:13, | **surdyk** | 18:21, 27:19, | 29:25 |
| 56:13, 78:2 | 2:16 | 29:2, 30:24, | **tendered** |
| **supervising** | **sure** | 41:1, 57:11, | 18:18, 19:6, |
| 22:4, 58:25, | 27:16, 27:25, | 57:12, 61:18, | 76:9 |
| 89:14, 91:14 | 29:12, 39:7, | 61:23, 61:25, | **tennessee** |
| **supervision** | 44:21, 46:3, | 62:2, 62:7, | 5:7, 5:17, |
| 16:1, 20:11, | 46:19, 48:6, | 65:9, 65:15, | 53:17, 90:17, |
| 20:17, 43:24, | 51:4, 55:15, | 75:5, 76:24, | 118:3, 118:6, |
| 47:24, 54:11, | 60:1, 66:21, | 91:5, 92:2, | 118:25 |
| 57:20 | 70:23, 77:8, | 99:15, 103:18, | **term** |
| **supervisor** | 97:22, 99:13, | 106:22, 108:9, | 61:3 |
| 8:8, 14:7, | 102:5, 104:13, | 114:9, 117:18 | **testified** |
| 14:9, 14:19, | 105:4 | **taken** | 6:19, 55:16, |
| 16:22, 31:4, | **surprised** | 1:17, 5:5, | 79:13, 110:17, |
| 31:10, 36:13, | 42:23, 43:1, | 75:13, 83:22, | 113:6, 114:13 |
| 45:16, 51:6, | 43:2, 98:24, | 92:5 | **testify** |
| 51:7, 51:8, | 99:4 | **taking** | 46:17, 78:15 |
| 51:19, 53:11, | **suspect** | 78:21, 106:17 | **testimony** |
| 56:19, 67:3, | 39:9, 39:11, | **talk** | 11:22, 24:18, |
| 71:3, 73:14, | 39:15, 41:24, | 23:25, 34:21, | 50:3, 54:23, |
| 76:6, 76:13, | 77:10, 77:11 | 48:24, 56:23, | 63:9, 78:11, |
| 108:6, 108:9 | **suspect's** | 57:3, 79:16, | 102:12, 106:4, |
| **supervisors** | 107:8 | 81:1, 82:16, | 106:8, 107:9, |
| 67:4, 100:8 | **suspicious** | 86:6 | 110:25, 111:5, |
| **supplement** | 40:24, 41:3 | **talked** | 111:24, 112:9 |
| 24:21, 24:23 | **swear** | 15:18, 15:19, | **th** |
| **supplemental** | 5:17 | 34:23, 34:25, | 98:14 |
| 23:17, 23:20, | **switched** | 57:5, 79:17, | **than** |
| 46:4, 47:3, | 23:13 | 79:19, 80:23, | 27:5, 31:12, |
| 47:5, 47:7, | **sworn** | 86:9 | 31:17, 32:25, |
| 47:16, 47:17, | 6:19, 98:8, | **talking** | 34:1, 39:8, |
| 74:10, 74:17, | 98:14, 98:16, | 23:9, 56:22, | 46:10, 62:24, |
| 76:8, 81:15, | 106:22 | 92:9, 92:10, | 104:9 |
| 107:20, 108:3 | **system** | 93:24 | **thank** |
| **supplementary** | 15:20, 74:11, | **talks** | 13:10, 27:21, |
| 24:11, 28:15, | 75:7, 75:9, | 56:24, 57:1 | 32:2, 51:12, |
| 29:1, 45:18, | 76:4, 76:5, | **tell** | 52:9, 62:6, |
| | | 11:5, 16:6, | |

Transcript of Tim L. Wilson
Conducted on December 18, 2018

69:17, 70:2,
75:21, 85:7,
98:23, 111:13,
111:16, 112:23,
117:8, 117:9,
117:17
**thanks**
31:21
**that's**
10:4, 12:16,
17:25, 19:13,
19:14, 26:15,
35:11, 36:7,
36:19, 37:18,
37:19, 39:14,
40:23, 41:5,
41:24, 42:16,
48:8, 48:14,
49:23, 49:25,
50:8, 55:4,
58:20, 59:19,
60:14, 68:7,
69:23, 80:20,
80:22, 90:8,
93:4, 103:23,
104:1, 104:21,
105:2, 105:20,
105:22, 111:14,
112:12, 112:23,
115:10, 117:7
**theft**
14:14, 14:15,
15:4
**their**
9:3, 22:10,
22:18, 30:2,
31:6, 39:25,
67:11, 69:7,
71:6, 75:1,
75:23, 76:1,
76:22, 78:3,
80:7, 87:8,
89:17, 93:19,
94:9, 94:19,
94:20, 95:19,
103:8, 103:16,
116:25, 118:12
**them**
9:3, 16:12,

20:17, 22:16,
22:18, 22:20,
22:22, 22:23,
24:4, 39:18,
41:14, 44:3,
44:18, 46:20,
59:1, 64:11,
69:1, 70:12,
70:20, 70:21,
78:5, 79:4,
80:3, 80:4,
93:20, 93:22,
94:8, 94:9,
97:10, 97:22,
98:21, 112:14,
114:12, 114:19,
114:21, 117:1
**themselves**
6:4, 74:2,
106:8
**then**
12:13, 12:18,
13:17, 14:5,
17:1, 27:10,
44:8, 49:17,
52:2, 52:5,
56:11, 57:5,
61:25, 62:2,
65:17, 74:17,
75:6, 79:21,
81:16, 83:6,
91:7, 94:14,
100:7, 104:2,
113:3, 115:18
**there's**
25:13, 26:6,
26:13, 49:13,
50:5, 50:9,
61:23, 89:8,
102:6, 105:23
**thereafter**
115:16, 118:9
**thereon**
5:14
**these**
22:4, 73:11,
91:11, 91:12,
104:19, 105:17,

105:18, 106:17
**they**
6:7, 8:24,
13:1, 19:7,
19:9, 19:19,
19:21, 19:22,
20:17, 22:5,
22:6, 22:11,
22:13, 22:16,
22:21, 22:23,
23:13, 23:16,
23:17, 23:19,
23:20, 23:22,
26:21, 29:2,
30:1, 31:5,
39:6, 39:10,
39:12, 39:15,
39:18, 39:20,
39:21, 39:24,
41:10, 41:11,
41:23, 41:25,
55:6, 55:7,
64:5, 67:12,
68:23, 68:25,
69:8, 70:11,
70:24, 70:25,
71:17, 73:17,
75:1, 75:4,
75:25, 76:3,
78:2, 78:4,
78:19, 80:11,
80:13, 81:10,
87:21, 88:19,
88:22, 89:20,
89:22, 89:23,
89:25, 90:2,
90:3, 93:20,
94:8, 96:14,
101:1, 103:8,
105:8, 105:18,
106:1, 106:9,
106:12, 107:10,
108:22, 109:1,
109:9, 109:22,
114:3, 114:11
**thing**
10:21, 15:20,
25:9, 26:19,

36:7, 37:17,
37:19, 39:21,
86:9, 91:20,
115:23
**things**
11:18, 12:17,
13:6, 16:7,
26:14, 29:14,
30:5, 40:20,
50:6, 59:10,
77:19, 98:7,
101:3, 102:2,
104:24
**think**
9:4, 12:15,
13:14, 13:17,
13:19, 13:21,
19:25, 20:11,
21:10, 21:17,
29:13, 30:21,
32:7, 32:23,
34:12, 37:25,
42:18, 51:2,
53:14, 54:14,
55:2, 61:6,
65:16, 66:2,
66:4, 71:3,
71:14, 72:8,
73:10, 83:1,
83:10, 86:12,
86:21, 87:13,
87:17, 89:8,
98:15, 101:12,
112:3, 114:12,
116:3, 116:9,
117:15
**thinking**
22:1, 67:4,
87:5, 94:14,
95:7
**third**
8:13, 25:4
**this**
7:18, 13:14,
18:15, 25:12,
25:24, 27:3,
27:5, 27:18,
29:1, 29:13,

Transcript of Tim L. Wilson
Conducted on December 18, 2018

33:3, 33:12,
33:14, 33:19,
33:23, 35:8,
35:17, 35:20,
36:11, 36:16,
36:24, 37:6,
38:2, 42:25,
47:19, 47:25,
50:14, 54:15,
54:25, 55:24,
61:21, 62:1,
62:4, 65:20,
65:24, 66:13,
68:12, 69:5,
69:19, 70:22,
72:1, 72:3,
72:5, 72:13,
72:15, 72:20,
73:6, 73:12,
73:15, 74:4,
76:7, 76:8,
77:6, 77:16,
78:7, 78:12,
79:10, 79:14,
79:17, 82:3,
84:21, 84:22,
88:6, 90:21,
91:3, 92:9,
92:22, 93:6,
93:10, 94:25,
96:14, 99:13,
101:17, 101:18,
101:20, 111:22,
117:15, 117:17,
117:19
**thomas**
3:2, 52:8
**thorough**
53:24, 54:8,
112:4
**those**
8:23, 12:21,
21:15, 21:22,
21:24, 40:5,
40:17, 41:7,
41:8, 46:11,
50:7, 56:24,
65:6, 70:23,

72:12, 76:9,
81:15, 87:15,
88:18, 97:8,
102:4, 104:23,
104:24, 106:8
**though**
59:2, 81:14
**thought**
8:15, 11:14,
18:19, 19:21,
19:22, 36:15,
46:12, 46:22,
54:18, 54:23,
59:16, 67:14,
70:17, 85:22,
87:22, 112:9
**thoughts**
62:3
**threat**
70:24, 71:17
**three**
11:3, 11:5,
51:2, 90:15
**through**
14:20, 52:22,
75:7, 75:8,
83:1, 86:21,
97:19, 105:16,
114:24, 115:17
**throughout**
113:18
**thumbed**
114:24
**tie**
92:6
**tim**
1:16, 2:24,
5:4, 6:17, 7:2,
69:24, 113:13,
118:8
**time**
8:13, 11:19,
11:25, 12:13,
12:18, 13:6,
13:13, 17:4,
20:18, 21:10,
23:7, 23:12,
25:15, 27:15,

27:19, 30:4,
30:16, 30:23,
31:9, 32:16,
35:4, 35:6,
38:24, 40:1,
40:19, 42:20,
44:19, 46:8,
46:20, 47:9,
47:14, 49:10,
50:9, 51:10,
55:25, 58:18,
61:1, 62:17,
62:21, 63:20,
68:17, 68:21,
73:10, 75:19,
78:10, 78:18,
81:13, 85:13,
85:18, 86:17,
87:8, 88:7,
91:5, 92:9,
97:10, 99:10,
99:12, 99:13,
101:19, 103:17,
103:20, 103:25,
111:10, 111:14,
113:11, 113:19,
114:9, 116:3,
116:12, 117:16,
117:17, 117:20
**timely**
22:20
**times**
7:7, 8:12,
8:18, 13:15,
56:15, 62:20,
77:9, 90:15
**timmy**
7:3
**title**
51:21
**tn**
118:24
**today**
8:22, 10:15,
28:1, 28:4,
28:6, 28:11,
31:14, 31:20,
32:5, 32:13,

32:14, 32:18,
33:5, 37:3,
43:1, 48:20,
49:6, 63:9,
67:18, 78:15,
81:24, 100:11,
100:17, 100:22,
101:4, 101:10,
104:11, 116:17
**together**
62:17
**told**
8:11, 9:15,
18:23, 19:5,
19:13, 19:14,
19:19, 33:23,
34:18, 35:11,
36:2, 57:14,
59:5, 59:9,
80:8, 80:21,
100:17, 100:24
**tom**
16:9, 17:4,
51:10, 51:11,
56:10, 59:15
**too**
61:21, 90:12
**took**
41:4, 46:9,
68:24, 78:19,
103:5, 107:10,
113:22
**topic**
77:23, 97:4
**totally**
25:11
**touched**
80:4
**township**
1:8, 2:13, 8:4,
8:19, 11:19,
12:5, 12:6,
12:17, 13:6,
13:13, 13:22,
15:11, 15:15,
15:23, 17:18,
17:22, 18:12,
18:20, 28:18,

Transcript of Tim L. Wilson
Conducted on December 18, 2018

152

28:19, 31:2,
33:12, 33:25,
35:10, 36:19,
45:6, 52:11,
57:8, 61:13,
62:16, 66:24,
67:10, 68:16,
68:20, 69:4,
70:5, 70:9,
70:25, 72:6,
75:19, 83:15,
84:6, 84:14,
88:16, 90:23,
92:20, 93:8,
94:18, 95:13,
95:18, 96:7,
96:13, 98:1,
98:12, 98:15,
98:20, 98:25,
99:24, 100:8,
102:1, 108:2,
109:5, 110:12,
111:11, 114:16,
116:10
**track**
47:5, 47:7,
54:7
**tracking**
76:5
**transcribed**
94:2
**transcript**
9:19, 11:2
**transcripts**
28:5, 28:10
**transfer**
56:2
**transferred**
53:10, 56:9,
56:12
**transfers**
21:18, 21:25
**transmit**
98:19
**transport**
81:5
**trapped**
10:21

**trial**
5:14, 26:17,
34:2, 37:25,
76:22, 85:23,
86:3, 86:8,
86:13
**trick**
27:7
**true**
36:20, 103:23,
112:1, 114:20
**truthful**
50:18, 101:10,
101:11
**truthfully**
10:18
**try**
39:14, 58:3,
87:25, 103:15
**trying**
25:17, 27:7,
34:6, 39:18,
54:22, 56:18
**turn**
65:9, 76:15,
77:20, 80:16,
94:9, 114:3
**turned**
75:17, 76:7,
76:21, 78:2,
87:14, 94:12,
102:17
**turner**
2:16
**twenty**
53:18
**twice**
34:2, 34:3,
54:16, 54:25,
87:3, 87:9, 89:3
**twins**
84:23
**two**
8:12, 10:20,
14:10, 16:3,
21:22, 21:24,
32:23, 72:9,
73:7, 73:11,

88:1, 108:9
**two-hour**
100:13
**type**
15:20, 29:1,
29:4, 39:21,
49:16, 54:2,
72:20, 73:16,
96:2, 103:10
**typed**
45:18, 93:20,
93:21
**types**
96:1
**typewritten**
118:10
**typical**
66:23, 72:12
**typically**
79:3, 90:6,
91:13
**typing**
81:15

---
**U**
---

**ugly**
114:4
**ultimately**
88:10
**unaware**
46:7, 102:22
**under**
5:8, 15:25,
41:17, 41:19,
42:7, 49:3,
77:9, 86:11
**undercover**
20:14, 42:16
**underlying**
64:4
**undermine**
107:7
**undermined**
106:3
**underneath**
36:14, 62:25
**understand**
49:4, 49:6,

49:24, 50:3,
54:22, 62:6,
63:9, 66:16,
66:18, 87:11,
93:14, 102:12,
104:3, 106:15,
115:16
**understanding**
35:3, 67:3,
87:3, 103:7,
103:15, 103:24,
111:4, 115:20
**understood**
44:3, 44:18,
76:13, 76:19
**unfair**
86:12
**uniform**
41:23, 41:25
**uniformed**
41:24
**unit**
56:2
**united**
1:1, 106:24
**unlawfully**
106:2, 107:7
**unless**
40:7, 41:23,
46:24, 49:14,
50:9, 79:5,
89:22, 89:25,
90:2
**unlike**
49:13
**until**
14:4, 14:10,
15:6, 23:10,
26:11, 52:13,
78:12, 97:19
**untrue**
11:14
**uphold**
106:23
**upon**
25:24, 80:7
**use**
40:14, 42:2,

Transcript of Tim L. Wilson
Conducted on December 18, 2018

153

| | | | |
|---|---|---|---|
| 77:1, 92:3, 96:10, 96:11, 96:12, 96:14 | **voluntary** 12:9 | **warrants** 22:21, 37:11, 98:17 | **went** 13:19, 13:25, 14:6, 34:2, 52:22, 82:8, 104:8, 105:18, 113:20 |

**used**
5:13, 40:11, 41:18, 42:12, 45:6, 45:7, 72:6, 92:7, 96:8

**voluntary**
12:9

**vore**
56:13, 56:15, 56:25, 57:10, 57:11, 60:25

**vs**
1:7

**warrants**
22:21, 37:11, 98:17

**warren**
13:25, 14:2, 61:13

**wasn't**
7:13, 56:8, 76:20, 78:9, 85:4

**went**
13:19, 13:25, 14:6, 34:2, 52:22, 82:8, 104:8, 105:18, 113:20

**weren't**
30:16, 90:5, 103:2

**usually**
74:19, 77:3

---

**V**

**vague**
37:1, 37:2, 37:4

**vaguely**
37:4, 68:22

**valley**
45:6

**very**
37:1, 53:24, 54:11, 54:14, 61:11, 61:15, 89:19, 89:24, 101:11, 104:7, 106:19, 112:4

**via**
2:21, 3:11, 3:24

**vice**
83:1, 83:19

**victim**
39:17, 39:20, 39:25

**victims**
37:6, 37:9, 39:17, 44:5, 44:9, 55:4

**video**
6:4

**videoconference**
1:15, 2:21, 3:11, 3:24, 5:4, 118:7

**violate**
76:22

**violated**
44:25

---

**W**

**w-i-l-s-o-n**
7:2

**waived**
5:10, 5:19

**walked**
19:5

**walter**
21:1

**want**
6:4, 10:20, 19:8, 23:7, 24:24, 25:1, 25:6, 25:7, 25:9, 26:8, 27:20, 42:15, 43:23, 45:15, 48:15, 50:11, 54:6, 68:10, 69:11, 84:3, 84:24, 85:11, 92:12, 92:25, 93:2, 93:12, 100:16, 107:18

**wanted**
26:6, 27:12, 34:15, 67:20, 91:20, 115:22

**wants**
25:24

**ward**
17:22

**warning**
70:24

**warrant**
64:22, 70:12, 71:5, 71:16, 72:22, 75:12, 75:14, 79:7

**wasting**
27:14

**way**
7:22, 24:4, 27:5, 29:14, 29:18, 43:24, 50:2, 54:14, 63:1, 65:24, 77:18, 82:8, 86:14, 86:22, 94:14, 98:21

**we'll**
49:18, 62:7, 92:14, 99:15, 113:4

**weeks**
37:14

**welcome**
32:3

**welfare**
14:14, 14:15, 14:20, 14:22, 15:4

**well**
6:11, 9:15, 11:23, 13:18, 17:13, 26:2, 27:1, 32:2, 36:4, 36:5, 37:4, 41:23, 48:7, 54:11, 59:2, 59:9, 66:21, 72:18, 74:15, 75:10, 76:24, 80:5, 80:8, 81:10, 104:7, 112:10, 117:4

**western**
1:3

**what's**
19:1, 20:23, 25:1, 27:11, 37:2, 38:3, 69:11, 91:2, 92:12, 92:25

**whatever**
39:23, 76:15, 99:11, 99:14

**when**
9:13, 10:16, 12:7, 13:19, 13:20, 17:20, 17:25, 18:12, 19:11, 20:1, 20:20, 21:10, 21:14, 22:4, 22:6, 24:3, 25:25, 26:8, 29:2, 29:14, 31:1, 31:5, 34:12, 35:13, 37:22, 43:2, 43:3, 43:4, 47:10, 48:13, 49:20, 51:13, 52:20, 57:17, 57:24, 58:1, 58:13, 58:14, 58:20, 58:21, 59:5, 61:4, 61:17, 63:4, 63:23, 63:24, 63:25, 64:2, 64:22, 67:20, 68:21, 69:14, 78:4, 78:15,

Transcript of Tim L. Wilson
Conducted on December 18, 2018

78:19, 84:22,
85:13, 85:16,
85:22, 90:23,
96:13, 97:1,
97:10, 97:14,
97:18, 99:10,
103:5, 104:3,
106:22, 107:10,
113:15, 113:17,
113:20, 115:1,
116:12, 116:19
**whenever**
20:17, 61:18
**where**
14:5, 14:11,
29:23, 43:13,
55:4, 56:19,
62:20, 69:3,
69:5, 69:8,
72:20, 77:10,
81:22, 91:21,
97:8, 98:14,
103:12
**whereas**
76:9
**whereupon**
117:21
**whether**
10:3, 10:10,
11:6, 12:16,
12:20, 13:4,
29:18, 30:3,
32:7, 49:16,
49:18, 50:12,
55:12, 58:6,
62:22, 64:21,
65:25, 71:3,
81:18, 86:23,
88:8, 88:10,
88:23, 88:24,
105:9, 106:7,
114:10
**which**
8:25, 10:10,
11:19, 43:24,
45:6, 47:1,
74:9, 77:8,
83:15, 91:21,

92:14, 98:7,
98:11
**whichever**
97:18
**while**
14:25, 49:1,
52:16, 95:12,
110:18
**who**
6:3, 16:22,
17:11, 20:20,
20:25, 21:1,
21:7, 30:13,
30:14, 30:18,
33:8, 33:18,
34:23, 35:2,
36:21, 38:2,
40:22, 47:23,
48:5, 50:13,
50:18, 50:25,
56:13, 56:20,
57:22, 69:10,
69:22, 69:25,
77:13, 80:8,
83:1, 87:18,
99:23, 100:8,
103:17, 107:5
**whoever**
22:25, 88:16
**whole**
25:9, 26:19
**whom**
108:21, 109:1,
109:9, 109:22
**whose**
100:8
**why**
18:15, 19:3,
19:18, 19:24,
36:10, 50:10,
63:21, 66:4,
67:2, 78:24,
82:7, 88:13,
91:24, 99:8
**widely**
113:20
**wife**
33:20, 33:21

**will**
49:17, 49:21,
50:7, 57:9,
72:22, 117:19
**williams**
36:11, 36:12,
36:17, 51:5,
51:13, 51:18
**wilson**
1:16, 2:24,
5:5, 6:17, 7:2,
7:4, 69:24,
77:5, 101:25,
111:13, 113:13,
115:15, 118:8
**wise**
11:20, 12:1,
12:18, 13:7,
36:24, 45:17,
50:22, 53:3,
58:6, 58:10,
63:11, 63:17,
77:6, 77:8,
77:12, 81:23,
84:23, 85:10,
100:15, 103:21,
112:9, 112:13,
112:19, 115:7
**withheld**
106:2, 106:7,
110:4
**withhold**
107:7
**within**
21:13, 62:21,
104:6, 107:17,
109:7, 116:14
**without**
39:18, 44:4,
44:9, 72:1
**witness**
5:17, 5:19,
6:18, 9:24,
10:6, 11:10,
25:12, 25:18,
27:17, 27:21,
31:24, 45:20,
45:23, 46:19,

48:5, 48:13,
49:24, 50:17,
60:11, 66:18,
71:11, 71:21,
99:4, 99:14,
100:20, 101:21,
102:22, 106:12,
107:3, 107:13,
109:17, 111:1,
111:16, 112:6,
115:24, 117:5,
117:9
**witnesses**
26:20, 33:14,
84:18
**wolfe**
9:1, 11:23,
11:25, 12:3,
12:4, 12:22,
12:24, 13:13,
84:3, 84:5,
84:9, 84:13,
84:17, 105:24
**wolfe's**
12:25
**won't**
49:22, 56:8,
89:23
**wonder**
36:10
**wondering**
11:4, 31:8,
63:15, 75:15,
81:7, 94:4
**word**
9:16, 15:24,
29:19, 60:17,
72:7
**word-for-word**
114:25
**worded**
72:16
**wording**
72:16
**words**
35:7
**work**
7:22, 8:1,

Transcript of Tim L. Wilson
Conducted on December 18, 2018

155

29:9, 30:2,
54:10, 75:25,
83:11, 103:18
**worked**
11:18, 16:16,
29:14, 36:13,
43:25, 62:17,
77:10, 81:6
**working**
14:8, 22:5,
22:6, 29:15,
36:24, 46:7,
73:14
**works**
50:2
**wouldn't**
26:18, 42:15,
43:1, 50:11,
54:6, 73:4,
78:6, 89:16,
89:22, 104:22,
114:22
**wrapped**
8:11, 22:18
**writing**
94:20
**writings**
72:3
**written**
16:14, 29:11,
38:24, 38:25,
47:12, 52:25,
70:17, 76:9,
89:20, 89:25,
94:7, 95:22,
113:10, 113:12,
115:19
**wrong**
25:13, 34:16,
34:20, 34:25,
35:1, 36:3,
36:4, 49:19,
67:24
**wrongfully**
86:24
**wrote**
54:3, 54:6
**wyndham**
5:6

**X**
**x's**
24:25

**Y**
**yankee**
2:17
**yeah**
16:18, 30:7,
44:23, 61:21,
64:9, 77:14,
99:6, 100:1,
109:19
**year**
23:10, 52:21,
82:22, 82:24,
83:2, 83:9,
90:15, 115:24
**years**
14:10, 17:19,
21:14, 21:22,
21:24, 22:2,
26:20, 34:4,
37:19, 51:20,
52:14, 53:12,
53:18, 82:23,
87:15, 99:9,
104:17, 109:4,
110:10
**yellow**
72:10, 73:12
**yesterday**
32:21
**you'd**
91:18, 105:3
**you-all**
85:3
**young**
59:21, 60:7
**your**
6:25, 7:14,
7:22, 7:25,
8:21, 9:20,
10:24, 11:18,
14:15, 16:6,
20:1, 20:9,
22:3, 24:18,

25:23, 26:8,
27:23, 27:25,
28:3, 28:11,
29:4, 30:10,
31:13, 31:19,
32:4, 32:12,
32:13, 32:17,
32:25, 33:17,
33:21, 34:14,
38:13, 38:22,
43:24, 51:19,
54:6, 54:7,
54:20, 54:23,
55:6, 57:3,
63:9, 63:19,
65:24, 71:13,
72:22, 73:15,
77:25, 78:11,
87:4, 88:18,
91:21, 92:5,
94:18, 98:5,
98:20, 98:21,
100:13, 100:23,
101:3, 101:6,
101:10, 102:12,
102:25, 103:7,
103:11, 103:21,
108:7, 108:9,
109:6, 110:12,
111:4, 111:5,
111:14, 111:24,
111:25, 112:9,
114:7, 115:3,
115:20
**yours**
68:3
**yourself**
16:24, 25:10,
28:25, 65:21,
108:20, 115:2

**0**
**00**
117:22

**1**
**10**
92:13, 93:1

**100**
2:8, 3:19
**101**
4:6
**11**
92:14
**111**
4:9
**113**
4:11
**115**
4:14
**12**
68:11, 69:14,
117:22
**127**
5:6
**13**
1:7
**14**
1:18
**15**
15:10, 91:3
**16**
69:12, 91:18
**18**
1:19, 5:7,
21:15
**19**
98:14
**1968**
17:21
**1969**
17:21
**1972**
13:16
**1975**
13:23, 14:1
**1980**
115:16, 115:25
**1986**
14:5
**1988**
14:10, 14:11,
14:12, 14:17
**1989**
15:6, 16:16
**1990**
15:6, 15:7,

Transcript of Tim L. Wilson
Conducted on December 18, 2018                                    156

| | | | |
|---|---|---|---|
| 15:8, 15:10, | 34:4, 37:19 | **4** | **75** |
| 16:17, 16:18, | **200** | **4038** | 13:20, 14:4 |
| 17:4, 18:14, | 2:29, 3:7 | 5:6 | **77** |
| 20:10, 21:15, | **2013** | **416** | 110:1 |
| 23:9, 29:3, | 85:16 | 1:7 | **7906** |
| 29:18, 29:21, | **2018** | **4249** | 3:22 |
| 30:4, 31:3, | 1:19, 5:7 | 3:9 | **8** |
| 38:15, 38:22, | **2019** | **43** | **800** |
| 40:18, 42:1, | 118:28 | 102:7 | 2:29 |
| 43:25, 44:25, | **21** | **43215** | **8163** |
| 52:13, 66:24, | 71:25 | 2:30 | 2:17 |
| 68:16, 70:9, | **22** | **440** | **86** |
| 71:3, 72:6, | 118:27 | 3:22 | 14:4 |
| 73:24, 75:19, | **222** | **44139** | **9** |
| 76:11, 76:14, | 2:19 | 3:21 | **9** |
| 76:24, 81:9, | **232** | **45** | 1:18 |
| 84:14, 89:13, | 2:31 | 105:24 | **90** |
| 92:23, 93:14, | **2333** | **45040** | 10:1 |
| 95:17, 96:2, | 2:19 | 3:8 | **91** |
| 96:13, 97:2, | **2418** | **45458** | 96:2 |
| 99:1, 99:23, | 2:31 | 2:18 | **9117** |
| 99:25, 115:21, | **243** | **49** | 69:15 |
| 116:2, 116:19 | 2:10 | 107:15 | **937** |
| **1991** | **248** | **5** | 2:19 |
| 29:3, 29:21, | 3:22 | **50** | |
| 30:4, 31:3, | **26** | 17:19 | |
| 38:15, 38:23, | 118:27 | **513** | |
| 40:18, 42:1, | **27** | 3:9 | |
| 76:11, 76:25, | 26:20 | **5300** | |
| 81:9, 86:3, | **3** | 3:7 | |
| 86:13, 89:13, | **30** | **583** | |
| 92:23, 93:14, | 99:9, 118:28 | 118:28 | |
| 95:17 | **311** | **5900** | |
| **1992** | 2:8 | 2:10 | |
| 21:15, 23:11 | **312** | **6** | |
| **1993** | 2:10 | **60607** | |
| 52:22, 116:3 | **34305** | 2:9 | |
| **1994** | 3:20 | **614** | |
| 52:22 | **35050** | 2:31 | |
| **1997** | 92:15 | **7** | |
| 53:14 | **35106** | **707** | |
| **1998** | 65:10, 65:11 | 3:9 | |
| 52:13, 53:7, | **35166** | **74** | |
| 53:15, 97:12 | 91:4 | 108:17 | |
| **2** | **35173** | | |
| **20** | 91:4 | | |
| 1:19, 5:7, | **3:-cv** | | |
| | 1:7 | | |