# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| ROGER DEAN GILLISPIE, | : | Case No. 3:13-cv-416 |
| | : | |
| Plaintiff, | : | District Judge Thomas M. Rose |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| | : | |
| MIAMI TOWNSHIP, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

# ORDER

After losing his father in a horrific car accident, Dr. Benjamin Miller—one of Plaintiff Roger Dean Gillispie's expert witnesses—was unable to complete his report by the expert disclosure deadline, May 31, 2019. Plaintiff now seeks leave of the Court to disclose Dr. Miller's report.

This matter is presently before the Court upon Plaintiff's Motion for Leave to Disclose Additional Expert Report (Doc. #283), Defendant Matthew Scott Moore's Brief in Opposition (Doc. #287), Defendant Miami Township, Ohio's Brief Response in Opposition (Doc. #288), and Plaintiff's Reply (Doc. #291).

This case began in December 2013 and has undergone several significant scheduling changes. Six months after it began United States Magistrate Judge Michael R. Merz stayed the case. (Doc. #74). In December 2017, the stay was lifted. (Doc. #s 115-16). In February 2018, United States District Judge Thomas M. Rose issued the preliminary pretrial order. (Doc. #129). Under that order, the parties' primary expert

disclosures were due December 3, 2018.  However, upon the parties' joint motions, the

Court extended that deadline twice—moving it to February 28, 2019 and then April 15,

2019.  (Doc. #161); (Doc. #164).  In April 2019, the Court entered an Agreed Modified

Pre-Trial Order and the deadline was pushed back further to May 31—the deadline

presently at issue.  (Doc. #186).  Notably, in December 2019, Judge Rose vacated all the

remaining dates in the scheduling order and indicated he would issue a new scheduling

order if appropriate once he ruled on the pending motions for summary judgment.  (Doc.

#285).

Shortly before the primary expert disclosure deadline, on May 28, 2019, Dr.

Benjamin Miller called Plaintiff's counsel, David Owens, to inform him that he would be

unable to complete his report on time.  As indicated above, Dr. Miller had suffered a

sudden and unexpected loss:  his father burned to death in a car accident.  (Doc. #283,

*PageID* #s 10664, 10666-67); (Doc. #291, *PageID* #s 10769-70).  Dr. Miller estimated

that he would need approximately two more weeks to complete his report.  (Doc. #291,

*PageID* #s 10769-70).  Based on Dr. Miller's estimate, Mr. Owens contacted Defendants

to request two additional weeks to disclose Dr. Miller's report.  (Doc. #283, *PageID* #s

10687, 10673).  Defendants agreed to the extension.  *Id.* at 10674-77.  On May 31, 2019,

Plaintiff disclosed two experts with reports and noted that Dr. Miller's report, CV, and

other materials were forthcoming as the parties had agreed.  *Id.* at 10682.

Unfortunately, Dr. Miller was not able to get the report finished in two weeks.

Indeed, he did not complete the report until August 26, 2019.  (Doc. #291, *PageID*

#10771).  Plaintiff emailed the report to Defendants the next day.  (Doc. #283, *PageID*

#10678).  Defendants objected to this late submission and requested he withdraw it.  *Id.*
at 10679.  The next day, Plaintiff urged cooperation, explaining that he was happy to
complete Dr. Miller's deposition at Defendants' convenience.  Further, he asked
Defendants to identify any potential prejudice they might have incurred from the late
disclosure so that he could address it.  *Id.* at 10680.  Defendants protested.  They pointed
out that they had heard nothing about Dr. Miller from Plaintiff after the agreed two-week
extension.  *Id.* at 10681.  Further, Defendants indicated that there was no need for a
teleconference to convince one another about the merits of the motion "so let's just brief
it and let the court decide."  *Id.* at 10681.  Shortly thereafter, Plaintiff filed the Motion for
Leave to Disclose Additional Expert Report that is presently before the Court.

Plaintiff asserts that he should be permitted to disclose Dr. Miller's report out of
time under Fed. R. Civ. P. 16(4)(b) and/or Fed. R. Civ. P. 37(c).

Under Fed. R. Civ. P. 16(b)(4), "A schedule may be modified only for good cause
and with the judge's consent."  "The primary measure of Rule 16's 'good cause' standard
is the moving party's diligence in attempting to meet the case management order's
requirements."  *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (citations and
internal quotation marks omitted); *see also Leary v. Daeschner*, 349 F.3d 888, 906 (6th
Cir. 2003) ("a court choosing to modify the schedule upon a showing of good cause, may
do so only 'if it cannot reasonably be met despite the diligence of the party seeking the
extension.'") (quoting Fed. R. Civ. P. 16, 1983 advisory committee's notes) (other
citation omitted).  "Another important consideration … is whether the opposing party
will suffer prejudice by virtue of the amendment."  *Leary*, 349 F.3d at 906 (citing *Inge,*

281 F.3d at 625); *see Commerce Benefits Grp., Inc. v. McKesson Corp.,* 326 F. App'x 369, 377 (6th Cir. 2009). "The focus is, however, 'primarily upon the diligence of the movant; the absence of prejudice to the opposing party is not equivalent to a showing of good cause.'" *DiLuzio v. Vill. of Yorkville, Ohio*, No. 2:11-CV-1102, 2013 WL 3353890, at *3 (S.D. Ohio July 3, 2013) (quoting *Ortiz v. Karnes,* 2:06–cv–562, 2010 WL 2991501, at *1 (S.D. Ohio July 26, 2010)) (citing *Tschantz v. McCann,* 160 F.R.D. 568, 571 (N.D. Ind. 1995)).

Plaintiff was diligent in attempting to meet the case management deadlines. Importantly, Dr. Miller "understood his expert report was required to be disclosed on May 31, 2019." (Doc. #291, *PageID* #10769). After receiving the necessary paperwork, Dr. Miller conducted a forensic interview with Plaintiff on May 6, 2019. *Id.* During the rest of the month, Dr. Miller was in contact with Mr. Owens, Plaintiff's counsel, regarding his examination and disclosure deadline. *Id.*

Although Mr. Owens was also dealing with his own father's unexpected death and had to travel to Nigeria for the funeral (from May 16, 2019 to May 28, 2019), he "was committed to ensuring the expert disclosures were made on May 31, and even spoke with experts while traveling to and from the funeral in Nigeria." (Doc. #283, *PageID* #10687). To that end, Plaintiff produced two timely expert reports by the May 31, 2019 deadline. *Id.* at 10668, 10682-85.

However, because of Dr. Miller's father's unexpected death a few days before the disclosure deadline, Plaintiff was not able to provide his report in accordance with the scheduling order. After hearing from Dr. Miller, Plaintiff's counsel immediately notified

Defendants and—based on Dr. Miller's estimate—requested a two-week extension to the expert disclose deadline. *Id.* at 10673. As Plaintiff points out, he had no way of knowing that Dr. Miller would not produce his report by the end of the two-week deadline.

Dr. Miller originally thought he would need "roughly two additional weeks" to complete his report. This would give him enough time to sit Shiva (in mourning with his family) for one week and then complete the report. But, understandably, his father's death impacted him far more severely than he initially anticipated:

> Unfortunately, I was not able to complete the report in that period of time. Between June, July, and August, due to the immense pain and resultant psychological dysfunction, I failed to meet the required report deadlines. In particular, I had recently started my own private practice, and the psychological distress which I experienced following the unexpected and tragic loss of my father at such a young age, led to unexpected and unpredicted paralysis. My father was a third-generation small business owner and had been hands-on guiding me through the difficult and confusing process, so his loss was also immensely detrimental in a practical sense. Indeed, in terms of practical difficulty, I also became responsible in a large part for settling my father's personal and professional affairs, including the sale/transfer of his multiple businesses, as well as ensuring my widowed mother's financial and emotional future.

(Doc. #291, *PageID* #10770).[1]

Plaintiff nonetheless remained diligent in his efforts to obtain the report as quickly as possible. Mr. Owens called and e-mailed Dr. Miller several times between May 31

---

[1] *See* Katherine M. Keyes, Ph.D., et al., *The Burden of Loss: Unexpected Death of a Loved One and Psychiatric Disorders Across the Life Course in a National Study*, 171 AM. J. PSYCHIATRY 864 (2014) ("Although any death of a loved one can be emotionally devastating, unexpected deaths provoke especially strong responses, as there is less time to prepare for and adapt to the death.") (citations omitted).

and August 26, 2019.[2]  (Doc. #283, *PageID* #s 10668, 10687-88); (Doc. #291, *PageID* #s

10770-71).  Further, Mr. Owens informed Dr. Miller that he needed to complete the

report or they would have to find a new expert.  However, Dr. Miller "strongly implored"

Mr. Owens to allow him to complete the report because another examination "could be

triggering or traumatizing" and "would be harmful and burdensome to Mr. Gillispie …."

(Doc. #291, *PageID* #s 10770-71).  Plaintiff reasonably accepted his opinion and did not

attempt to find a new expert.

Defendants Moore and Miami Township maintain that Plaintiff was not diligent

because he did not keep Defendants informed of the status of Dr. Miller's report.  (Doc.

#287, *PageID* #10713); (Doc. #288, *PageID* #10719).  And, if Plaintiff's counsel erred in

his handling of Dr. Miller's report, it was in his failure to keep Defendants (as well as the

Court) apprised of its status.  However, in these circumstances, the delay was not

surprising.  Although Plaintiff's counsel should have kept Defendants apprised of the

report's status, the delay is reasonably attributed to the understandable impact of Dr.

Miller's sudden loss of his father rather than any contumacious conduct by counsel.

Defendant Moore contends that Plaintiff "failed to act with diligence in seeking an

extension of the report deadline even after the report had been produced and Plaintiff was

notified that the Defendants objected to the untimely report."  (Doc. #287, *PageID*

---

[2] Defendants Moore and Miami Township question Plaintiff's counsel's lack of detail regarding his phone calls and emails to Dr. Miller.  Their argument lacks merit.  Mr. Owens explained that he did not include the e-mails because they are privileged.  (Doc. #291, *PageID* #10760).  Further, he admitted that he did not keep a log of all the times he attempted to call Dr. Miller.  (Doc. #283, *PageID* #s 10687-88). Nevertheless, Defendants did not identify and the Court is not otherwise aware of any reason to question the truthfulness of Mr. Owens' sworn affidavit.

#10713). In contrast, Plaintiff criticizes the length of time it took Defendants to object to the report and then respond to Plaintiff's e-mail. (Doc. #291, *PageID* #s 10762-63). A short review of the timeline is helpful to understanding the parties' positions. *See* Doc. #283, *PageID* #s 10673-81.

On August 27, 2019, Plaintiff sent Dr. Miller's report to Defendants. Two weeks later, on September 10, 2019, Defendants objected to the report and asked Plaintiff to withdraw it. They cautioned that if Plaintiff did not withdraw it, they would move to strike it. The next day, Plaintiff responded. He offered to confer with Defendants and schedule Dr. Miller's deposition at Defendants' convenience. He also asked Defendants to identify any potential prejudice they might incur so that it could be addressed. Over six weeks later, on October 24, 2019, Defendants responded, indicating that there was no need for a teleconference and that they should brief the issue and allow the Court to decide. Less than three weeks later, on November 14, 2020, Plaintiff filed the motion presently before the Court.

Defendants focus on the length of time between their objection to the report and Plaintiff's filing of the motion. But, that is not the relevant time period. After Defendants objected, Plaintiff clearly hoped to resolve the issue with Defendants before involving the Court. And, given that Defendants warned that they would move to strike the report if he did not withdraw it and that Defendants did not move to strike the report, Plaintiff reasonably waited to hear from Defendants before filing the present motion. In sum, although the disclosure of Dr. Miller's report was much later than anticipated by anyone, Plaintiff was diligent in his attempt to meet the expert disclosure deadline.

Plaintiff's diligence is not the only consideration when determining whether there is good cause; "A district court should also consider possible prejudice to the party opposing the modification." *Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 830 (6th Cir. 2005) (citing *Inge,* 281 F.3d at 625).

Defendants Moore and Miami Township argue that Defendants will suffer significant prejudice if Plaintiff's Motion is granted. According to Defendant Moore, "Should this request be granted, Defendants would likely need to seek leave to identify an expert to rebut the opinions of Dr. Miller, an independent medical examination would need to be scheduled, an expert report prepared, and expert depositions conducted- all well after the close of discovery and filing of dispositive motions." (Doc. #287, *PageID* #10714); *see* Doc. #288, *PageID* #10720).

Defendants are correct that if the Court allows disclosure of Dr. Miller's report, additional discovery will likely be needed. However, this does not amount to prejudice. Regardless of whether Plaintiff produced Dr. Miller's report two weeks late or three months late, Defendants would need to conduct the same discovery. *See Andretti*, 426 F.3d at 830 ("There is no indication of prejudice, however, because there is no indication that the outcome of the motion would have been different had Borla filed it before the deadline.").

Importantly, as Plaintiff correctly points out, because Dr. Miller is a damages witness, his testimony was not integral to any issue related to liability which was briefed at summary judgment. Indeed, Plaintiff suggests that "one might argue that deferring discovery about a damages-only expert until after the dispositive motions were filed is

actually beneficial for the parties here, as attorneys flew all over the county [including Florida, Ohio, California, New York, and Rhode Island] in August and September, by agreement, to facilitate the completion of six expert depositions related to liability issues." (Doc. #283, *PageID* #10669). It is not clear—nor necessary to determine— whether the delay was "beneficial" to either party as Plaintiff suggests. However, Plaintiff's failure to disclose Dr. Miller's report did not prejudice Defendants' ability to litigate the liability issues at the summary judgment stage.

Further, at the time the report was disclosed, there was six months until trial, allowing the parties adequate time to complete their expert discovery. And, significantly, as it stands at the present time, the scheduling order has been vacated pending resolution on the motions for summary judgment—allowing Defendants even more time to identify a rebuttal expert and schedule depositions. Given this significant period of time, Defendants will not suffer prejudice if Dr. Miller's report is disclosed because they have adequate time to find a rebuttal expert witness and depose both experts.

In light of Plaintiff's diligence and the lack of prejudice to Defendants, there is good cause, as required by Rule 16(b)(4), to modify the scheduling order to allow for limited discovery related to Dr. Miller's report (including possible rebuttal witnesses and depositions).

Plaintiff contends that, "[e]ven if this Court were not to consider Rule 16, the report should be separately permitted under Rule 37." (Doc. #283, *PageID* #10670). Because there is good cause to amend the scheduling order to allow for limited expert

discovery related to Dr. Miller, there is no need to delve into Plaintiff's alternative

reliance on Rule 37(c).

## IT IS THEREFORE ORDERED THAT:

1.      Plaintiff's Motion for Leave to Disclose Additional Expert Report (Doc. #283) is GRANTED;

2.      The deadline for Defendants' rebuttal expert disclosures is extended to May 1, 2020; and

3.      The deadline for discovery related to Dr. Miller's report and any rebuttal expert witness is extended to May 27, 2020.

April 2, 2020                                  *s/Sharon L. Ovington*
                                                Sharon L. Ovington
                                                United States Magistrate Judge