**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| ROGER DEAN GILLISPIE, | : | CASE NO. 3:13-CV-416 |
| | : | |
| Plaintiff, | : | Judge Thomas M. Rose |
| | : | |
| v. | : | |
| | : | **DEFENDANT, MIAMI TOWNSHIP,** |
| THE CITY OF MIAMI TOWNSHIP, *et al.,* | : | **OHIO'S RESPONSE IN OPPOSITION** |
| | : | **TO PLAINTIFF'S MOTION FOR** |
| Defendants. | : | **LEAVE TO CONDUCT ADDITIONAL** |
| | : | **LIMITED DISCOVERY AND FOR** |
| | : | **LEAVE TO FILE MOTION FOR** |
| | : | **RECONSIDERATION OF THE** |
| | : | **COURT'S MOTION FOR SUMMARY** |
| | : | **JUDGMENT DECISION (Doc. 312)** |

Now comes Defendant, Miami Township, Ohio (the "Township"), and hereby files its response in opposition to Plaintiff's Motion for Leave to Conduct Additional Limited Discovery and, in the alternative, for Leave to File Motion for Reconsideration of the Court's Motion for Summary Judgment Decision ("Motion for Leave") (Doc. 12). The reasons that this Court should deny Plaintiff the requested relief are set forth in the following Memorandum.[1]

Respectfully submitted,

/s/ Christopher T. Herman
Edward J. Dowd (0018681)
Dawn M. Frick (0069068)
Christopher T. Herman (0076894)
SURDYK, DOWD & TURNER, CO., L.P.A
8163 Old Yankee Street, Suite C
Dayton, Ohio 45458
(937) 222-2333 || (937) 222-1970 (fax)
edowd@sdtlawyers.com
dfrick@sdtlawyers.com
cherman@sdtlawyers.com
*Trial Attorneys for Defendant, Miami Township, Ohio*

---

[1] The Township hereby incorporates the arguments in Defendant Moore's and Defendant Wolfe's responses to Plaintiff's Motion for Leave.

1

**MEMORANDUM**

**I.     Introduction**

This Court must deny Plaintiff's request to conduct additional discovery because the very narrow subject matter of the released grand jury transcript, which did not concern police policies and procedures, will have no impact on the *Monell* claims against the Township. Thus, since the sought after discovery will have no impact on those claims, this Court need not and must not reconsider its decision granting the Township summary judgment.

Relevant to the present issue before this Court, Plaintiff's First Amended Complaint asserted five *Monell* claims against the Township under 42 U.S.C. 1983 for suppression of exculpatory evidence (Count I); suggestive identification (Count II); fabricated evidence (Count III); malicious prosecution (Count IV); and destruction of exculpatory evidence (Count V). (Am. Compl., Doc. 18, generally.)[2] The Township moved this Court for summary judgment on each of the *Monell* claims (Township Motion for Summary Judgment, Doc. 260, PageID 8432-8447), Plaintiff opposed the motion (Plaintiff's Omnibus Response in Opposition to Motion for Summary Judgment, Doc. 278, PageID 10510-10520), and the Township filed a reply brief (Township Reply in Support of Motion for Summary Judgment, Doc. 282, PageID 10573-10596). As Plaintiff correctly notes in his Motion for Leave, this Court granted the Township summary judgment on each of the five *Monell* claims, finding no merit to his failure to train and ratification theories. (Plaintiff's Motion for Leave, Doc. 312, PageID 11012; Entry and Order, Doc. 298, PageID 10897-10901, 10907-10909.)[3]

---

[2] Plaintiff also asserted a state law indemnification claim (Count IX) against the Township, but it is not relevant to the subject matter of the grand jury testimony released by the state court.
[3] Plaintiff does not include that this Court also found no merit to his failure to supervise theory. (See Doc. 298, PageID 10901-10907.)

Now that Plaintiff has prevailed in state court on the very limited release of portions of Defendant Scott Moore's ("Moore") grand jury testimony, he believes this opens the door in this Court to revisit discovery related to the Township. As explained below, the limited discovery, if permitted, is not relevant to the *Monell* claims and will not affect this Court's analysis of those claims against the Township. Plaintiff's motion must be denied.

## II. Law and Argument

### A. Plaintiff cannot demonstrate good cause for reopening discovery against the Township.

Plaintiff's counsel, prone to exaggeration and hyperbole, claims that the grand jury transcripts provided "bombshell after bombshell" revelation that broadly support each of Plaintiff's claims against Moore; provide new evidence about Defendant Rick Wolfe's ("Wolfe") involvement with Township officers; and potentially reveal the identity of the person who created one of the composite sketches in the criminal investigation. (Doc. 312, PageID 11010.) While that shock and awe may or may not be true as it relates to Moore and Wolfe, viewed through the lens of the claims against the Township, the revelations lack all explosiveness, miss their target, and detonate with the shock value of a whoopee cushion.

As Plaintiff correctly indicates, courts consider five factors for demonstrating good cause to reopen discovery: (1) whether the movant has demonstrated good cause for reopening discovery; (2) whether the need for additional discovery was precipitated by the neglect of the movant or by the party opposing the motion to reopen; (3) the specificity of the discovery that is sought; (4) the relevance of the discovery being sought; and (5) whether the party opposing the motion to reopen discovery will be prejudiced. *U.S. Diamond & Gold v. Julius Klein Diamonds LLC*, No. C-3-06-371, 2008 WL 2977891, at *11 (S.D. Ohio July 29, 2008) (citing *Morgan v. Gandalf, Ltd.,* 165 Fed.Appx. 425, 431 (6th Cir.2006). Here, the Township will focus on factors 2, 3, 4, and 5.

First, Plaintiff does not specify the subject matter of the discovery he seeks other than to identify witnesses he wants to depose (Moore, Wolfe, former Patrolman Gray, and a Township representative) and to request the opportunity to serve requests for admission. Depositions and requests for admission only describe his methodology, which is insufficient to allow this Court to determine the reasonableness of reopening discovery. Nevertheless, two sought after areas of discovery are not relevant to the claims against the Township. One discrete, yet irrelevant, discovery matter described in Plaintiff's motion concerns Moore's grand jury testimony that a composite was prepared by Patrolman Gray. This is a red herring because the composite sketches were constructed in August of 1988, long before Moore was assigned to the case, and there was evidence that perhaps one of the composite sketches was on a bulletin board at work and some GM employees thought Gillispie resembled the sketch. Thus, Moore had no influence on any GM employees who brought Gillispie to the attention of the Township.

The day after the Best Products rapes, the twins went to the Township's police department and initially met with Officer Robert Burling. Shortly thereafter, Det. Bailey was assigned to investigate the rapes. (Bailey Dep., Doc. 222, PageID 4785-86). On August 22, 1988, Det. Bailey interviewed B.W. and C.W., and accompanied them to the scene of the crimes to search for evidence. (Bailey Trial II Tr., Doc. 231-1, PageID 6217, 6223-25.) Back at the station, Bailey showed the twins books of photographs of potential suspects, none of whom were identified as the perpetrator. (Supp. Hrg., Doc. 231-3, PageID 6368, 6410.) A composite image of the perpetrator was created based on the description given by B.W. and C.W. (C.W. Dep., Doc. 219, PageID 4214; Supp. Hrg., Doc. 231-3, PageID 6391.) Separately, S.C. also aided in the production of another composite with Montgomery County Sheriff's Office Detective Matheny at the MTPD. (S.C. Offense Report, Doc. 163-1, PageID 2552; S.C. Dep., Doc. 220, PageID 4299.)

Plaintiff learned all of this prior to summary judgment briefing and could have deposed Detective Matheny and Detective Bailey to ask if they knew who created the composites. In fact, the parties deposed Bailey in this case on April 5, 2019, and he was asked if he recalled who at the department was trained in creating composites. He indicated Officers McCoy, Moore, Burling (who took the initial report from the twins), and possibly one or two more officers did composites. (Bailey Dep., Doc. 222, PageID 4920.) Plaintiff already had information in the case to determine who created the composites, and even deposed Patrolman Gray, asking him questions about departmental policies and procedures. (Gray Dep., Doc. 275, generally.) Plaintiff's perceived need for additional discovery is precipitated by his own neglect and tunnel vision, and there is no reason he could not explore these issues before the close of discovery.

Notwithstanding the discovery of the creator of the composite sketches, the identity of that person is immaterial to the issues Plaintiff raised in regard to the photo arrays and identification procedures. Indeed, there is a disconnect of nearly two years from the time the composites were created in August 1988 until Moore prepared and showed the photo arrays to Gillispie's victims on July 16, 1990, July 17, 1990, and August 28, 1990. (Doc. 170-4, PageID 3822, 3825, 3828.)

The only other discrete, and equally irrelevant, discovery matter described in Plaintiff's motion concerns Moore showing Plaintiff's and other GM employee ID badges and a composite sketch to Chief Angel and another detective soon after he took over the case. Plaintiff suggests that deceased Chief Angel ratified constitutionally infirm photo lineups/arrays, but, again, there is a disconnect in that argument. The grand jury transcripts indicate that Detective Moore placed Plaintiff's ID badge on a desk with several others and asked Angel and an unidentified detective to pick out the badge that resembled the perpetrator sketches created two years earlier. There is nothing unconstitutional about this – he merely showed pictures to his peers and asked if they saw

a similarity. Multiple perspectives from his peers would be helpful for Moore to determine whether he was following a good lead or not. At that time, Moore had not yet created the photo arrays that he showed to the victims months later. Accordingly, the specificity and relevance of discovery sought by Plaintiff is wholly disconnected and has no relevance to Plaintiff's *Monell* claims that this Court dismissed against the Township.

Concerning the fifth factor for demonstrating good cause, the Township *will be* prejudiced if Plaintiff is permitted to reopen discovery. Plaintiff's discovery quest is an exercise in futility because the subject matter has no bearing on the *Monell* claims. Further, there is no witness that the Township could produce for deposition. Chief Angel passed away during the pendency of the case and there are no other officers or command staff who can testify about any policies and procedures in place for the time period 1988 to 1990. The Township undertook an exhaustive search to discover any representative that could provide information regarding those policies and procedures and, in fact, produced said witness during discovery. Plaintiff already deposed the Township's representative, and no reopening of discovery should be permitted.

Plaintiff has simply failed to demonstrate that good cause exists to conduct additional discovery against the Township. Indeed, the very limited nature of the grand jury testimony released is noteworthy. Following extensive briefing in the state trial and appellate courts, the Second District Court of Appeals significantly pared down the scope of the trial court's original disclosure ruling by disallowing the release of any part of the victims' grand jury transcripts. However, Plaintiff convinced the Second District to disclose very limited portions of Moore's grand jury testimony, which addressed "(1) the timing of his involvement with the rape investigation (May or June 1990); (2) his interaction with Richard Wolfe regarding employee identification cards and a composite sketch; (3) his possession of campground receipts related to

6

an alibi defense; and (4) his comments to one of the victims during her review of a photo array and his statement seemingly acknowledging that Gillispie's photograph did not precisely match the perpetrator's hair color as reported by the victims." (See Second District Nov. 24, 2021 Opinion, Doc. 312-2, PageID 11047.) These four discrete areas have no relevance to discovery that would relate to the Township's policies and procedures for *Brady* material, administering photo lineups, training its officers, or identifying officials who ratified any alleged illegal actions or wrongdoing. The same can be said as it relates to the recent finding that Plaintiff is a wrongfully imprisoned individual. Accordingly, this Court must deny Plaintiff's request to conduct additional limited discovery.

### B. Plaintiff waived his right to seek relief from this Court's decision granting the Township summary judgment.

Plaintiff moves this Court for leave to file a motion to reconsider this Court's summary judgment decision based upon newly obtained, yet factually irrelevant, limited grand jury testimony, and a state court finding that Plaintiff is a wrongfully imprisoned individual. This Court must deny Plaintiff's request because a motion to reconsider is not the appropriate vehicle for attacking this Court's summary judgment decision.

First, if Plaintiff's reconsideration request is viewed through the lens of Federal Rule 60(b), such a request is premature because the Court's September 21, 2020 Decision and Order (Doc. 298) is not a final judgment or order. Plaintiff suggests that this Court can modify its Decision under Federal Rule 54(b) (Doc. 312, PageID 11023), but that also would not be the appropriate vehicle since Plaintiff already knew the substance of the grand jury transcripts three months before this Court's rulings (see subsection (1) below). Instead, courts contemplating a motion to reconsider or vacate a prior holding may properly be treated under Rule 59(e) as a motion to alter or amend a judgment. "District Courts have inherent power to reconsider interlocutory orders and

reopen any part of a case before entry of a final judgment. A district court may modify, or even rescind, such interlocutory orders." *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir.1991) (citations omitted); *see also Kelly v. City of Fort Thomas*, 610 F.Supp.2d 759, 779 (E.D.Ky.2009) (citing *id.*) (granting defendants' motion to reconsider denial of summary judgment). "Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 Fed.Appx. 949, 2004 U.S.App. LEXIS 2067, at ——26———27, 2004 WL 237651 (6th Cir. Feb.6, 2004) (citing *Reich v. Hall Holding Co.,* 990 F.Supp. 955, 965 (N.D.Ohio 1998)).

Since Federal Rule 59(e) is the appropriate mechanism for Plaintiff's requested relief, Plaintiff had 28 days after this Court's September 21, 2020 entry of judgment to file his motion to alter or amend the judgment. See Fed.R.Civ.P. 59(e). That deadline expired on October 19, 2020, and because Plaintiff failed to timely seek such relief, he has waived that right.

A waiver is a voluntary and intentional surrender or relinquishment of a known right. *Stratton v. Portfolio Recovery Associates, LLC*, 770 F.3d 443, 447 (6th Cir.2014); *Medical Protective Company v. Center for Advanced Spine Technologies*, Case No. 1:14-cv-5, 2015 WL 5582248, *2 (S.D. Ohio Sept. 23, 2015). Plaintiff voluntarily relinquished his right to seek relief under Federal Rule 59(e) to alter or amend the summary judgment decision based upon the then as-yet-to-be-released grand jury testimony and the then as-yet-to-be-decided outcome of his lawsuit to be declared a wrongfully imprisoned individual. The timing of certain filings by Plaintiff in this Court and state court demonstrate that he could have and should have sought Rule 59(e) relief.

1. <u>The Grand Jury Evidence</u>

On February 4, 2019, Plaintiff filed a motion to permit disclosure of grand jury testimony in this Court. (See Doc. 163.) Thereafter, on May 1, 2019 the magistrate judge assigned to the matter issued a report and recommendation to deny the motion without prejudice, recommending that the state court was better suited to determine the issue. (See Doc. 191.) Twenty-eight days later, on May 29, 2019, Plaintiff filed an identical motion to permit disclosure of testimony in the Montgomery County Common Pleas Court. On September 16, 2019, the Township and Moore filed their respective motions for summary judgment (Doc. 257 and 260) and the motions were fully-briefed by November 12, 2019 (Doc. 281 and 282). While those motions were pending, in the state court proceedings, the trial judge held a hearing on June 4, 2020 and allowed Plaintiff's counsel and defense counsel to read the entirety of the victims' and Moore's grand jury testimony before arguing whether the court should grant Plaintiff's motion to disclose the testimony. *At that time, Plaintiff and his attorney knew the "bombshell after bombshell" of evidence that would support Plaintiff's claims*. The very next day, on June 5, 2020, Plaintiff could have filed a motion under Rule 56(d) asking the Court to defer consideration of the motion or to allow additional time to take discovery until such time as the state court ruled on his motion to disclose grand jury testimony. Plaintiff did not seek such recourse and three months later, this Court issued its September 21, 2020 Entry and Order granting the Township and Defendant Wolfe's motions for summary judgment. *Plaintiff knew the substance of the grand jury testimony when his claims against the Township and Wolfe were dismissed, yet he voluntarily and intentionally surrendered his right to move this Court on or before October 19, 2020 to alter or amend its decision*. Accordingly, this Court must find that Plaintiff has voluntarily waived his right to present such evidence in reconsideration of its Entry and Order.

9

      2.    <u>Plaintiff has not been found innocent, but he has been declared a wrongfully imprisoned individual</u>

On March 29, 2019, Plaintiff filed an action in the Montgomery County Common Pleas Court to have himself declared a wrongfully imprisoned individual. This was nearly six months prior to the Township and Moore filing their motions for summary judgment. The state trial court eventually found for Plaintiff, declaring him a wrongfully imprisoned individual on November 19, 2021.[4] Plaintiff initially achieved success when this Court granted his writ of habeas corpus on December 15, 2011. *See Gillispie v. Timmerman-Cooper*, 835 F.Supp.2d 482 (S.D. Ohio 2011). He further achieved success when the state trial court initially granted his request to disclose all of the grand jury transcripts from his criminal case. On September 21, 2020, he successfully defended against Defendant Moore's motion for summary judgment. Based upon those successful outcomes, Plaintiff could have and should have preserved his right on October 19, 2020 to have this Court alter or amend its summary judgment decision. However, he waived that right and should be denied such relief.

Assuming *arguendo* this Court does not find that he waived his right, Plaintiff still cannot prevail on his malicious prosecution claim because a finding that he was a wrongfully imprisoned individual is not the equivalent of a finding of innocence to prevail on such a claim. The Sixth Circuit has indicated that the mere fact that a case was dismissed against a defendant does not necessarily mean that it was "resolved in a defendant's favor" for the purposes of a claim for malicious prosecution. In *N. Aliakbarkhananfjeh v. Schramm*, 194 F.3d 1311 (6th Cir.1999), the Sixth Circuit noted that, "[i]n addition to Ohio law, a number of federal cases also hold that a plaintiff must plead and prove in a claim for malicious prosecution under § 1983 that criminal

---

[4] The State of Ohio filed a Notice of Appeal on December 16, 2021. The matter is pending in the Second District Court of Appeals, Case No. CA 29338.

proceedings were concluded in a manner indicative of a factual finding in favor of the accused." *Id.* at *3 (citing *Torres v. McLaughlin*, 163 F.3d 169 (3d Cir.1998)); *Washington v. Summerville*, 127 F.3d 552 (7th Cir.1997), *cert. denied,* 118 S.Ct. 1515 (1998). Similarly, in *Ohnemus v. Thompson*, 594 Fed.Appx. 864 (6th Cir.2014), a criminal charge was dismissed upon the defendant's payment of restitution and the defendant brought a claim for malicious prosecution. *Id.* at 866. Upon review of the lower court's dismissal of the claim, the Sixth Circuit held that "[t]he termination must go to the merits of the accused's professed innocence for the dismissal to be 'favorable' to him." *Id.* at 867 (citing *Alcorn v. Gordon*, 762 S.W.2d 809, 812 (Ky. Ct.App. 1988)). Further, "[o]nly where dismissal indicates that the accused may be innocent of the charges, have Kentucky courts found that the termination of the proceedings were favorable to the party bringing a malicious prosecution claim." *Id.* Based upon this reasoning, the Court noted that the dismissal of the criminal complaint in *Ohnemus* was based on Plaintiff's payment of restitution and did not suggest that he was innocent of the charges. *Id.* The Court further held that "in determining whether a dismissal is a termination in favor of the accused, the court is not to consider whether the plaintiff is actually innocent of the charges, but rather, whether the dismissal of the proceedings established his innocence." *Id.* at 868 (citing Restatement (Second) of Torts § 658 cmt. c (1977)). The Sixth Circuit held that payment of restitution is inconsistent with innocence and, therefore, the dismissal did not constitute a termination in favor of Plaintiff. *Id.* Similarly here, the declaration that Plaintiff is a wrongfully imprisoned individual did not establish Plaintiff's innocence and therefore, Plaintiff cannot satisfy the element that the criminal proceeding resolved in his favor. *See Haddad v. Department of Rehabilitation and Correction*, 10th Dist. Franklin No. 01AP-1130, 2002-Ohio-2813, ¶¶18-20. More importantly, Plaintiff's three victims steadfastly maintain that he raped them and that he is not innocent.

Simply put, Plaintiff has not been adjudicated innocent. For this and all of the foregoing reasons, this Court must deny Plaintiff's request for leave to file a motion to reconsider the summary judgment ruling in favor of the Township.

## III. Conclusion

Based upon the foregoing, the Township respectfully requests that this Honorable Court deny Plaintiff's request to conduct further discovery and to reconsider its decision granting the Township summary judgment.

Respectfully submitted,

/s/ Christopher T. Herman
Edward J. Dowd (0018681)
Dawn M. Frick (0069068)
Christopher T. Herman (0076894)
SURDYK, DOWD & TURNER, CO., L.P.A
8163 Old Yankee Street, Suite C
Dayton, Ohio 45458
(937) 222-2333 || (937) 222-1970 (fax)
edowd@sdtlawyers.com
dfrick@sdtlawyers.com
cherman@sdtlawyers.com
*Trial Attorneys for Defendant, Miami Township, Ohio*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court on March 24, 2022, using the CM/ECF system, which will send notification of such filing to all CM/ECF participants.

/s/ Christopher T. Herman
Christopher T. Herman (0076894)