**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| ROGER DEAN GILLISPIE, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:13-cv-416 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| THE CITY OF MIAMI TOWNSHIP, *et al.*, | : | |
| | : | |
| Defendants. | : | |

---

**ENTRY AND ORDER GRANTING, IN PART, AND DENYING, IN PART,
DEFENDANT MOORE'S MOTION IN LIMINE NO. 2 (DOC. NO. 325);
GRANTING, IN PART, AND DENYING, IN PART, DEFENDANT MOORE'S
MOTION IN LIMINE NO. 3 (DOC. NO. 326); AND, DENYING PLAINTIFF'S
MOTION IN LIMINE NO. 6 (DOC. NO. 340)**

---

This case is before the Court on three related motions *in limine*: (1) the motion filed by

Defendant, Matthew Scott Moore ("Moore"), titled "Defendant Moore's Motion In Limine No. 2

– To Preclude Evidence or Testimony Relating to Articles About Plaintiff's Incarceration, Release

and Artwork Made or Prepared in Jail" (Doc. No. 325); (2) the motion filed by Moore titled

"Defendant Moore's Motion In Limine No. 3 – To Exclude Testimony Regarding the

Determination That Plaintiff Was Wrongfully Imprisoned Under R.C. § 2743.48 and That Such

Determination Constitutes a Finding of Innocence or Any Reference to Habeas Corpus" (Doc. No.

326); and (3) the motion filed by the Plaintiff, Roger Dean Gillispie ("Gillispie"), titled "Plaintiff's

Motion *In Limine* No. 6 to Exclude Argument or Suggestion that No Court has Declared Gillispie

Innocent and to Admit Evidence that Gillispie Has Been Declared a Wrongfully Convicted

Individual Under Ohio Law" (Doc. No. 340).  The three motions are fully briefed and ripe for

decision.  (*See* Doc. Nos. 325, 326, 340, 349, 353, 354, 360, 361, 365.)  For the reasons discussed

1

below, the Court (1) **GRANTS, IN PART, AND DENIES, IN PART,** Moore's Motion In Limine

No. 2 (Doc. No. 325); and (2) **GRANTS, IN PART, AND DENIES, IN PART,** Moore's Motion

In Limine No. 3 (Doc. No. 326); and (3) **DENIES** Gillispie's Motion In Limine No. 6 (Doc. No.

340).

## I.     BACKGROUND

The Court assumes that the parties are familiar with the general background of this case

and will not delve into its extensive history in great detail.

### A.     Indictment, Convictions, Federal Court *Habeas Corpus* Order, State Court Orders Regarding Vacation of Gillispie's Conviction, and this Lawsuit

On October 4, 1990, the Montgomery County Grand Jury returned an indictment charging

Gillispie with counts of rape, kidnapping, gross sexual imposition, and aggravated robbery.  (*See*

Doc. No. 163-9 at PageID 2610-19.)  The charges stemmed from two separate sexual assaults in

August of 1988, one on August 5 and the other on August 20.  *See State v. Gillispie*, 2009-Ohio-

3640, 2009 Ohio App. LEXIS 3107, 2009 WL 2197052, at *1 (Ohio Ct. App. 2009).  In February

of 1991, Gillispie was convicted by a jury of nine counts of rape, three counts of kidnapping, three

counts of gross sexual imposition, and one count of aggravated robbery.  *Id.*  After being granted

a new trial based on hair analysis conducted after the first trial, Gillispie was tried again in June

1991, and a second jury found Gillispie guilty of all charges.  *See id.* at *3.  The trial court

sentenced Gillispie accordingly, and he began serving a lengthy term of incarceration.  *See id.* at

*1, 3-4.

On February 13, 2008, Gillispie filed in state court a second petition for post-conviction

relief or, in the alternative, a motion for a new trial.  *See Gillispie*, 2009 WL 2197052, at *6.  After

reviewing the trial court's denial of that petition and motion, an Ohio court of appeals concluded

that additional evidence regarding an alternative suspect required a hearing on whether a new trial

was warranted.  *See id.* at \*24, 27.  In 2010, the trial court held that hearing and subsequently denied the motion; Gillispie appealed that decision.  *State v. Gillispie*, 2012-Ohio-1656, 2012 Ohio App. LEXIS 1453, 2012 WL 1264496, at \*5 (Ohio Ct. App. 2012), *amended on reconsideration by State v. Gillispie*, 985 N.E.2d 145, 2012-Ohio-2942 (Ohio Ct. App. 2012) (deleting paragraph 45 from original opinion).

While that appeal was pending, Magistrate Judge Michael R. Merz issued a Decision and Order Granting Conditional Writ of Habeas Corpus (the "Habeas Order") in federal court on December 15, 2011.  *Gillispie v. Timmerman-Cooper*, 835 F. Supp. 2d 482 (S.D. Ohio 2011).  In the Habeas Order, Judge Merz found that the State had violated Gillispie's right to due process and made the following conclusion:

> [T]he Court finds that Mr. Gillispie was denied his right to due process pursuant to the Fourteenth Amendment as interpreted in *Brady*, to be apprised of all material exculpatory and impeachment information which the State holds.
>
> Accordingly, the Petition for Writ of Habeas Corpus is granted. The State of Ohio is ordered to release Petitioner from custody unless he is again convicted at a trial commencing not later than July 1, 2012.

*Id.* at 510.  The State appealed the Habeas Order to the Sixth Circuit Court of Appeals.  (Doc. No. 65 in *Gillispie v. Warden*, Case No. 3:09-cv-471 (S.D. Ohio).)

Back in state court, the Ohio court of appeals considered the appeal of the trial court's order denying Gillispie's motion for a new trial following the hearing that the appellate court had ordered.  On April 13, 2012, based on evidence regarding the alternative suspect, it reversed the trial court's ruling.[1]  *Gillispie*, 2012 WL 1264496, at \*1.  The appeals court vacated Gillispie's conviction and sentence and remanded for a new trial.  *Id.* at \*12 ("the order of the trial court denying Gillispie's motion for a new trial is Reversed.  Gillispie's conviction and sentences are

---

[1] *See also State v. Gillispie*, 2016-Ohio-7688, 65 N.E.3d 791, 796 (Ohio Ct. App. 2016) (the appellate court "reversed the trial court's ruling on Gillispie's motion for a new trial based on an alternative suspect").

Vacated, and this cause is Remanded for a new trial"). On November 7, 2012, the Ohio Supreme Court denied the State leave to appeal that decision. *State v. Gillispie*, 977 N.E.2d 694, 2012-Ohio-5149 (Table) (Ohio Nov. 7, 2012). The State then moved to dismiss its federal appeal of the Habeas Order. (*See* Doc. No. 93 in *Gillispie v. Warden*, Case No. 3:09-cv-471 (S.D. Ohio).) That appeal was dismissed on November 27, 2012. (*Id.*)

On January 18, 2013, Gillispie filed a motion in the state trial court to compel discovery of alleged supplemental police reports or to dismiss the indictment with prejudice (Doc. No. 230-2). *See State v. Gillispie*, 2016-Ohio-7688, 65 N.E.3d 791, 797 (Ohio Ct. App. 2016). On November 30, 2015, the trial court granted the motion to dismiss the indictment due to the State not having produced the supplemental police reports to Gillispie (Doc. No. 230-3). *Id.* at 798, 800. The Ohio court of appeals affirmed. *Id.* at 808 ("[i]n light of the State's statement that it cannot produce the supplemental police reports, as required by the [federal] district court, the trial court did not abuse its discretion in dismissing the indictment against Gillispie"). (Moore testified in this case that the supplemental police reports never existed. (Doc. No. 298 at PageID 10854 (citing Doc. No. 170 at PageID 3397)).)

Gillispie initiated this lawsuit in 2013, bringing claims against Moore (a detective who investigated the sexual assaults) and a host of other defendants.[2] (Doc. No. 1.) According to Gillispie, he is innocent of the crimes for which he was indicted and could not have committed them because he was with a group of friends on August 5, 1988 and in Kentucky on August 20, 1988. *See Gillispie*, 2009 WL 2197052, at *3. He alleges that he has always asserted that he is innocent of the crimes, and he spent over 20 years incarcerated as an innocent man. (Doc. No. 18 at PageID 77, 93.)

---

[2] No claims remain pending against any of the other defendants. (*See* Doc. No. 278; Doc. No. 302.)

4

On September 21, 2020, this Court issued an order ruling on various motions (the "MSJ Order"). (Doc. No. 298.) Among numerous other things, the Court ruled that Moore was not entitled to summary judgment on five claims brought against him pursuant to 42 U.S.C. § 1983 ("Section 1983"), i.e., the five claims proceeding to trial. (Id.) However, the MSJ Order also dismissed, among other claims, a claim against Moore for malicious prosecution under Ohio state law because Gillispie had indicated that he would voluntarily dismiss that claim and he did not address the claim substantively in the briefing. (Id. at PageID 10883.) In each of the five remaining Section 1983 claims against Moore, Gillispie alleges that he was falsely convicted for a crime of which he was innocent. (Doc. No. 18 at PageID 94, 95, 96, 97, 98.)

## B. Ohio's "Wrongfully Imprisoned Individual" Statute

Ohio has a "wrongful-imprisonment statute" (Ohio Rev. Code § 2743.48) that provides "a two-step process to compensate those who have been wrongfully imprisoned." *Doss v. State*, 135 Ohio St. 3d 211, 2012-Ohio-5678, 985 N.E.2d 1229, 1232 (Ohio 2012). The statute essentially allows a person who is declared a "wrongfully imprisoned individual" to obtain remedial compensation from the State. *See* Ohio Rev. Code § 2743.48(B), (D). "The first step is an action in the common pleas court seeking a preliminary factual determination of a wrongful imprisonment; the second step is an action in the Court of Claims to recover money damages." *Doss*, 985 N.E.2d at 1232.

Specifically, the statute provides that "a 'wrongfully imprisoned individual' means an individual who satisfies each of the following:

(1) The individual was charged with a violation of a section of the Revised Code by an indictment or information, and the violation charged was an aggravated felony, felony, or misdemeanor.

(2) The individual was found guilty of, but did not plead guilty to, the particular charge or a lesser-included offense by the court or jury involved, and the offense of

which the individual was found guilty was an aggravated felony, felony, or misdemeanor.

(3) The individual was sentenced to an indefinite or definite term of imprisonment in a state correctional institution for the offense of which the individual was found guilty.

(4) The individual's conviction was vacated, dismissed, or reversed on appeal and all of the following apply:

 (a) No criminal proceeding is pending against the individual for any act associated with that conviction.

 (b) The prosecuting attorney in the case, within one year after the date of the vacating, dismissal, or reversal, has not sought any further appeal of right or upon leave of court, provided that this division does not limit or affect the seeking of any such appeal after the expiration of that one-year period as described in division (C)(3) of this section.

 (c) The prosecuting attorney, city director of law, village solicitor, or other chief legal officer of a municipal corporation, within one year after the date of the vacating, dismissal, or reversal, has not brought a criminal proceeding against the individual for any act associated with that conviction, provided that this division does not limit or affect the bringing of any such proceeding after the expiration of that one-year period as described in division (C)(3) of this section.

(5) Subsequent to sentencing or during or subsequent to imprisonment, an error in procedure was discovered that occurred prior to, during, or after sentencing, that involved a violation of the Brady Rule which violated the individual's rights to a fair trial under the Ohio Constitution or the United States Constitution, and that resulted in the individual's release, or it was determined by the court of common pleas in the county where the underlying criminal action was initiated either that the offense of which the individual was found guilty, including all lesser-included offenses, was not committed by the individual or that no offense was committed by any person. In addition to any other application of the provisions of this division regarding an error in procedure that occurred prior to, during, or after sentencing, as those provisions exist on and after the effective date of this amendment, if an individual had a claim dismissed, has a claim pending, or did not file a claim because the state of the law in effect prior to the effective date of this amendment barred the claim or made the claim appear to be futile, those provisions apply with respect to the individual and the claim and, on or after that effective date, the individual may file a claim and obtain the benefit of those provisions.

Ohio Rev. Code § 2743.48(A).

 Significantly, as the Ohio Supreme Court explained, "[t]he fifth factor of R.C. 2743.48(A)

6

may be fulfilled in one of two ways: (1) subsequent to sentencing and during or subsequent to imprisonment, 'an error in procedure resulted in the individual's release' or (2) the charged offense (and any lesser included offense) was not committed by the individual or no crime was committed at all (actual innocence)." *Doss*, 985 N.E.2d at 1233 (quoting Ohio Rev. Code. § 2743.48(A)(5)) (emphasis added).[3]  Therefore, innocence is not necessarily a requirement to obtain relief under the statute.  *See* Ohio Rev. Code § 2743.48(A); *Nelson v. State*, 2009-Ohio-3231, 915 N.E.2d 729, 732 (Ohio Ct. App. 2009) (the statute "provides an alternative to the actual-innocence requirement: the person seeking wrongful-imprisonment status need establish only that an error in procedure resulted in his or her release").  This appears to contrast with requirements under similar statutes in other states.  *See, e.g., Sanford v. Russell*, 531 F. Supp. 3d 1221, 1223 (E.D. Mich. 2021) (an "entry of judgment in favor of the plaintiff and awarding him compensation … was required [under Michigan's Wrongful Imprisonment Compensation Act] to be supported by an affirmative finding of his innocence based on new evidence"); *Harris v. City of Chicago*, No. 14 C 4391, 2018 WL 2183992, at \*2-3 (N.D. Ill. May 11, 2018) (explaining that, for plaintiff to obtain a Certificate of Innocence under an Illinois statute, she had to prove by a preponderance of the evidence that, among other things, she "is innocent of the offenses charged in the indictment or information or … her acts or omissions charged in the indictment or information did not constitute a felony or misdemeanor against the State").

## C.  State Court Order Declaring Gillispie a "Wrongfully Imprisoned Individual"

On November 19, 2021, Ohio's Court of Common Pleas for Montgomery County issued

---

[3] The Court recognizes that Ohio Rev. Code. § 2743.48(A)(5) was revised after the Ohio Supreme Court issued its ruling in *Doss*, but those revisions do not affect the Court's analysis on the particular issues addressed in this order. When the Ohio Supreme Court decided *Doss* on December 6, 2012, subsection (A)(5) stated:  "(5) Subsequent to sentencing and during or subsequent to imprisonment, an error in procedure resulted in the individual's release, or it was determined by the court of common pleas in the county where the underlying criminal action was initiated that the charged offense, including all lesser-included offenses, either was not committed by the individual or was not committed by any person."

an order Declaring Plaintiff a Wrongfully Imprisoned Individual (the "Wrongful Imprisonment Order"). (Doc. No. 326-1.) The Wrongful Imprisonment Order corresponds with the first step of the two-step process (discussed above) for Gillispie to seek compensation from the State pursuant to Ohio Rev. Code § 2743.48. It concludes that "Gillispie meets the requirements of R. C. 2743.48" and "finds and declares Mr. Gillispie to be a wrongfully imprisoned individual pursuant to R.C. 2743.48." (Doc. No. 326-1 at PageID 11452.)

The Wrongful Imprisonment Order makes no finding whatsoever regarding whether Gillispie is actually innocent of the crimes for which he was indicted.[4] This corresponds with the Wrongful Imprisonment Order finding that Gillispie fulfilled the fifth factor of Ohio Rev. Code § 2743.48(A) in the first of the two ways set forth above: that "an error in procedure was discovered that occurred prior to, during, or after sentencing, that involved a violation of the Brady Rule which violated the individual's rights to a fair trial under the Ohio Constitution or the United States Constitution, and that resulted in the individual's release." Ohio Rev. Code § 2743.48(A)(5). More specifically, the Wrongful Imprisonment Order found that "[t]here are no genuine issues of material fact as it relates to Mr. Gillispie's release from a state correctional institution as a result of a violation of the *Brady* rule," so "Gillispie meets the requirements of subsection (A)(5)" of the statute." (Doc. No. 326-1 at PageID 11451.)

In fact, the Wrongful Imprisonment Order goes so far as to specifically <u>excise</u> from its recitation of Ohio Rev. Code § 2743.48(A)'s text the language regarding the second way to meet the fifth requirement for being declared a wrongfully imprisoned individual—the way that the Ohio Supreme Court described as "actual innocence." *Doss*, 985 N.E.2d at 1233. More specifically, the Wrongful Imprisonment Order uses ellipses to intentionally omit the phrase in

---

[4] Nor does it find that Gillispie was actually guilty of any of the crimes, obviously.

8

Ohio Rev. Code § 2743.48(A)(5) that states "or it was determined by the court of common pleas in the county where the underlying criminal action was initiated either that the offense of which the individual was found guilty, including all lesser-included offenses, was not committed by the individual or that no offense was committed by any person." (*See* Doc. No. 326-1 at PageID 11444.)

## II.     ANALYSIS

### A.  Legal Standards for Addressing Motions *In Limine*

District courts adjudicate motions in limine under their "inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984). "The purpose of a motion *in limine* is to allow a court to rule on issues pertaining to evidence prior to trial to avoid delay and ensure an evenhanded and expedient trial." *In re E.I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 348 F. Supp. 3d 698, 721 (S.D. Ohio 2016). Courts should exclude evidence pursuant to a motion in limine "only when evidence is clearly inadmissible on all potential grounds." *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). The Sixth Circuit advises that the "better practice" is to address questions regarding the admissibility of broad categories of evidence "as they arise." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). Courts are "almost always better situated during the actual trial to assess the value and utility of evidence." *In re E.I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 348 F. Supp. 3d at 721.

Denial of a motion in limine does not necessarily mean the evidence that is the subject of the motion will be admissible at trial. *Ind. Ins. Co.*, 326 F. Supp. 2d at 846. This is because "[a] ruling on a motion in limine is no more than a preliminary, or advisory, opinion that falls entirely within the discretion of the district court." *U.S. v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994). The district court may change its ruling on the motion in limine, whether prior to trial or at trial, "where

sufficient facts have developed to warrant the change." *Id.*

### B. Federal Rules of Evidence 401, 402, and 403

The Federal Rules of Evidence provide that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Relevant evidence is admissible unless any of the following provides otherwise: the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court. Irrelevant evidence is not admissible." Fed. R. Evid. 402.

Even if evidence is relevant, it may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Thus, "Rule 403 provides a balancing test for excluding relevant evidence." *United States v. Asher*, 910 F.3d 854, 860 (6th Cir. 2018). A court may, for example, find that relevant evidence should be excluded when it has little probative value and there would be a substantial risk of unfair prejudice, confusion of the issues, and/or any of the other dangers listed in Rule 403. *Journey Acquisition-II, L.P. v. EQT Prod. Co.*, 830 F.3d 444, 459-60 (6th Cir. 2016); *see also United States v. Hazelwood*, 979 F.3d 398, 412 (6th Cir. 2020) ("[u]nfair prejudice" is defined "as the undue tendency to suggest a decision based on improper considerations").

In making the Rule 403 determination, "[c]ourts must also consider the availability of other means of proof." *Asher*, 910 F.3d at 861; *see also* Fed. R. Evid. 403 advisory committee's note to 1972 proposed rules (the rule calls "for balancing the probative value of and need for the evidence against the harm likely to result from its admission"). "[T]he existence of an alternative means of proof—even one with substantially the same or greater probative value but a lower danger of unfair

prejudice—does not require exclusion of more prejudicial evidence." *Asher*, 910 F.3d at 861 (internal quotation marks omitted). However, a court "must discount the value of the item first offered and exclude it if its discounted probative value is substantially outweighed by unfairly prejudicial risk." *Id.* at 861-63 (internal quotation marks omitted) (where "the probative value of the evidence is modest due to alternative methods of proof, courts must be especially careful not to allow that evidence to reach the jury if the evidence is unduly prejudicial").

### C. Requirements for Some of Gillispie's Claims Against Moore

Gillispie's remaining claims against Moore are all claims pursuant to Section 1983. (Doc. No. 298 at PageID 10836, 10932-33.) Section 1983 "created a species of federal tort liability for individuals to sue state and local officers for deprivations of constitutional rights." *Thompson v. Clark*, 212 L. Ed. 2d 382, 142 S. Ct. 1332, 1336-37 (2022). "A § 1983 claim must satisfy two elements: 1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995). Gillispie alleges that he "suffered actual damages, pain and suffering, lost wages, and other damages as a direct and proximate result" of each of the alleged Section 1983 violations. (Doc. No. 18 at PageID 94-98.) He seeks an award of compensatory damages, costs, and attorneys' fees, along with punitive damages. (*Id.* at PageID 101.)

One of Gillispie's five remaining claims is that Moore violated his due process rights by suppressing exculpatory evidence. (Doc. No. 298 at PageID 10850-58.) Gillispie alleges that he "was deprived of his right to a fair trial and was falsely convicted for a crime of which he was innocent." (Doc. No. 18 at PageID 94.) "In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), the Supreme Court held 'that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'"

*Jackson v. City of Cleveland*, 925 F.3d 793, 813-14 (6th Cir. 2019).  The Sixth Circuit has held that "police can commit a constitutional deprivation analogous to that recognized in *Brady* by withholding or suppressing exculpatory material."  *Id.* (internal quotation marks omitted).

Another of Gillispie's five remaining claims is that Moore violated his Fourth Amendment rights through malicious prosecution.  (Doc. No. 298 at PageID 10836, 10932-33.)  As explained in the MSJ Order, "[t]o succeed on a malicious prosecution claim under § 1983, the plaintiff must establish that (1) a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor."  (*Id.* at PageID 10871 (citing *Miller v. Maddox*, 866 F.3d 386, 389 (6th Cir. 2017) and *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010)).)  Regarding the fourth requirement, in the MSJ Order, this Court rejected the argument that Gillispie cannot establish that the criminal proceeding was resolved in his favor because Judge Merz's federal *habeas corpus* decision (the Habeas Order) did not establish Gillispie's innocence.[5]  (Doc. No. 298 at PageID 10873-75.)  After this Court issued the MSJ Order, the Supreme Court further clarified that, "[t]o demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction."  *Thompson*, 142 S. Ct. at 1335.  Therefore, as recognized in the Court's MSJ Order, Gillispie does not need to prove that he is innocent of the crimes for

---

[5] The Court explained: "Judge Merz granted Gillispie a conditional writ of habeas corpus (and the Sixth Circuit dismissed the State's appeal of that decision), the Ohio appeals court vacated Gillispie's conviction and sentence and remanded for a new trial, and the Ohio trial court subsequently dismissed the indictment against Gillispie.  Those decisions were favorable to Gillispie, Gillispie's prior criminal conviction and sentence were rendered invalid, and dismissal of the indictment was the ultimate termination or resolution of the criminal proceedings against Gillispie. Therefore, the Court disagrees with the … argument that Gillispie cannot establish the fourth element of his § 1983 malicious prosecution claim."  (Doc. No. 298 at PageID 10875 (internal citations omitted).)

which he was charged in order to prevail on his malicious prosecution claim against Moore.[6]

Thus, "[t]he jury in a case like this need not decide the plaintiff's innocence but instead is asked to determine whether one or more of the defendants violated his federal constitutional … rights in the manner alleged." *Patrick v. City of Chicago*, 974 F.3d 824, 833 (7th Cir. 2020) (involving several Section 1983 claims brought by a plaintiff who had been convicted of a double murder, was sentenced to life in prison, had his conviction vacated, and was released). However, the Sixth Circuit Court of Appeals has recognized that innocence may be relevant to a malicious prosecution claim and to the issue of damages. *Ayers v. City of Cleveland*, 773 F.3d 161, 169 (6th Cir. 2014). In *Ayers*, the plaintiff spent twelve years in prison based on a murder conviction that was later overturned; he was freed after a federal district court granted his petition for a writ of habeas corpus, finding that the detectives leading the investigation had violated his Sixth Amendment right to counsel. *Id.* at 162-63. The plaintiff brought Section 1983 claims against detectives, alleging, among other things, that they withheld exculpatory evidence (a *Brady* violation), fabricated false evidence, and participated in malicious prosecution. *Id.* The Sixth Circuit held that, in addition to being relevant to plaintiff's malicious prosecution claim by rebutting testimony that he had confessed to the murder, "[e]vidence concerning [plaintiff's] innocence is also relevant to the issue of damages." *Id.* at 169; *see also Parish v. City of Elkhart*, 702 F.3d 997, 999 (7th Cir. 2012) ("[a] jury that believed the plaintiff was guilty of the crime would award lower damages because the imprisonment is attributable to the person's own actions as well as the civil defendants' misbehavior and even a fair prosecution and trial may well have

---

[6] As explained in the MSJ Order, the requirements for a claim of malicious prosecution <u>under Ohio state law</u> are different. (Doc. No. 298 at PageID 10923-26.) One of the requirements for a claim of malicious prosecution under Ohio state law is "termination of the prosecution in favor of the accused," but "the Ohio Supreme Court has held that '[a] proceeding is terminated in favor of the accused only when its final disposition indicates that the accused is innocent.'" (*Id.* (quoting *Ash v. Ash*, 72 Ohio St. 3d 520, 651 N.E.2d 945, 947 (Ohio 1995)).) There no longer is a claim for malicious prosecution under Ohio state law in this case.

resulted in the person's imprisonment"); *Sanford*, 531 F. Supp. 3d at 1224 ("[i]t is well settled that evidence of innocence is relevant to both liability and damages in any wrongful prosecution case where the factual premise of actual innocence remains in dispute"). However, even if such evidence is relevant, it "may nevertheless be excluded" pursuant to Rule 403. *Ayers*, 773 F.3d at 169.

### D. Moore's Motion in Limine No. 2

In Moore's Motion in Limine No. 2, he asks that the Court "exclude any evidence or testimony regarding Plaintiff's incarceration, release or artwork made or prepared during his time in jail or articles and publications discussing the same." (Doc. No. 325 at PageID 11371.) The Court denies (without prejudice) Moore's request, except with respect to the articles and publications. The Court grants Moore's request to exclude evidence or testimony regarding articles or publications that discuss Gillispie's incarceration, release, or artwork made or prepared during his time in jail.

Much of Moore's request is to bar broad categories of evidence. At least some evidence or testimony regarding Gillispie's incarceration is directly relevant to one of the requirements for his Section 1983 malicious prosecution claim: establishing that, as a consequence of a legal proceeding, he suffered a deprivation of liberty apart from the initial seizure. *Miller*, 866 F.3d at 389; *Sykes*, 625 F.3d at 308-09. Additionally, evidence regarding Gillispie's incarceration, release, or artwork may be relevant to damages. Moore ignores this when he tries to support his broad request by arguing that "all remaining claims against [him] *precede* Plaintiff's period of incarceration." (Doc. No. 325 at PageID 11374 (emphasis in original).) Although specific evidence from those three categories might ultimately be found inadmissible at trial, the Court will not exclude all such evidence pursuant to Moore's motion in limine. *Sperberg*, 519 F.2d at 712; *Ind. Ins. Co.*, 326 F. Supp. 2d at 846.

14

Articles and publications discussing Gillispie's incarceration, release, or artwork made during his time in jail present a different situation.  Moore argues that such evidence is irrelevant, is unfairly prejudicial, confuses the issues, and misleads the jury.  (*See* Doc. No. 325.)  As Moore points out, "the articles contain written commentary containing terms such as 'victory over prison,' 'exoneration,' 'freeing Ohioans convicted of crimes they didn't commit,' and 'Judge Susan Solle declared his innocence,'" in addition to "contain[ing] inaccurate statements and mischaracterizations regarding the reasons surrounding Plaintiff's release from custody."  (Doc. No. 325 at PageID 11372.)  For example, one article states that "in July 2017, the Ohio Supreme Court exonerated Gillispie and stopped all the harassment."  (Doc. No. 325-1 at PageID 11381.)  In addition to the article citing no authority for that statement, it simply is not true that the Ohio Supreme Court exonerated Gillispie.  *See State v. Gillispie*, 78 N.E. 3d 909 (Table), 2017-Ohio-6964 (Ohio July 26, 2017) (Ohio Supreme Court simply not accepting for review an appeal of the 2016 Ohio Court of Appeals decision); *see also State v. Gillipsie*, 65 N.E.3d 791, 2016-Ohio-7688 (Ohio Ct. App. 2016) (not exonerating Gillispie; affirming trial court's judgment where, "[i]n light of the State's statement that it cannot produce the supplemental police reports, as required by the district court, the trial court did not abuse its discretion in dismissing the indictment against Gillispie").  As another example, a different article states:  "During two decades of incarceration for crimes he did not commit, Gillispie—raised in rural Ohio by working-class parents who went into tremendous debt to fund the fight for his release—built an entire series of miniature establishments that collectively evoke a sense of small-town nostalgia, including a movie theater (whose marquee advertises *I Walked With a Zombie*) and a series of shops bearing his childhood nickname: *Spitz's Burger Shack, Spitz's Scoop City*."  (Doc. No. 325-2 at PageID 11384.)  The same article, which is titled "The Breathtaking Ingenuity of Incarcerated Artists," is not only about

Gillispie but other individuals too. (Doc. No. 325-2.) Another article references Gillispie's Ohio court of claims lawsuit (i.e., step two of the Ohio Rev. Code § 2743.48 process, in accordance with the Wrongful Imprisonment Order) as being "a multi-million dollar lawsuit." (Doc. No. 325-5 at PageID 11432.)

Additionally, the parties' briefing has not provided reason to believe that anything discussed in articles or publications that is relevant (and not misleading) would be unavailable through other means of proof at the trial. *Asher*, 910 F.3d at 861-63. Setting aside additional concerns involving hearsay and other potential obstacles to their admission, the Court bars evidence or testimony regarding articles and publications discussing Gillispie's incarceration, release, or artwork during his time in jail. Such articles and publications have little probative value, and their probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury. Fed. R. Evid. 403; *Journey Acquisition-II, L.P.*, 830 F.3d at 459-60.

### E. **Moore's Motion in Limine No. 3**

In Moore's Motion in Limine No. 3, he asks that the Court (1) "exclude any evidence or testimony that [Gillispie] was deemed by the Montgomery County Common Pleas Court to be a wrongfully imprisoned individual under O.R.C. § 2743.48"; (2) "exclude any testimony that the finding of the Montgomery County Pleas Court establishes [Gillispie's] innocence as it relates to the criminal accusations against him"; and (3) "limit any reference to the *Habeas Corpus* ruling to simply indicate Mr. Gillispie was granted a new trial, without elaboration as to reasoning or reference to *Habeas Corpus* or the federal court making the ruling." (Doc. No. 326 at PageID 11433.) The Court denies Moore's first and third requests (without prejudice), but grants his second request.

16

### (1) First request

Regarding the first request, Moore argues that evidence relating to the Wrongful Imprisonment Order "is irrelevant to the issues to be tried in this case," which only involves the Section 1983 claims against Moore. (Doc. No. 326 at PageID 11434.) The Court disagrees. At the least, portions of the Wrongful Imprisonment Order are relevant to three of the four requirements for Gillispie's Section 1983 malicious prosecution claim: a criminal prosecution was initiated against Gillispie; as a consequence of a legal proceeding, Gillispie suffered a deprivation of liberty apart from the initial seizure; and, the criminal proceeding was resolved in Gillispie's favor. *Miller*, 866 F.3d at 389; *Sykes*, 625 F.3d at 308-09; *see also Thompson*, 142 S. Ct. at 1335; *cf. Patrick*, 974 F.3d at 832-33 ("certificate of innocence" issued pursuant to Illinois statute was "directly relevant to an element [of a malicious-prosecution claim under Illinois state law] on which he bore the burden of proof: that the prosecution against him was terminated in a manner indicative of innocence").

Moore also argues that evidence relating to the Wrongful Imprisonment Order should be barred pursuant to Rule 403 because it "would have no probative value and only prejudicial value." (Doc. No. 326 at PageID 11434.) The Court disagrees that any such evidence has no probative value, for the reasons just discussed. Essentially, the arguments Moore makes in his motion are focused on the second element of a Section 1983 claim (causation) and ignore the first element (deprivation of a Constitutional right). *Ellison*, 48 F.3d at 194. Also, the fact that other evidence may be introduced bearing on the same issues does not automatically render evidence regarding the Wrongful Imprisonment Order inadmissible under Rule 403. *See United States v. Love*, 254 F. App'x 511, 518-19 (6th Cir. 2007) ("[t]he fact that another piece of evidence speaking to an element of the offense has already been introduced does not render a later piece of evidence

needlessly cumulative").  At this time, it is unknown what will be introduced or admitted at trial

or what will be stipulated to by the parties.

On the other hand, Moore does bring up legitimate concerns regarding reference to or use

of the Wrongful Imprisonment Order—particularly regarding confusing the issues and any use of

a judge's factual findings or legal analysis contained within the order.[7]  *See, e.g., Patrick*, 974 F.3d

at 833 (despite ultimately affirming the district court's decision to admit a "certificate of

innocence," discussing "important limits to the probative value of [plaintiff's] certificate of

innocence," including a risk of unfair prejudice and confusing the issues); *Hurt v. Vantlin*, No.

3:14-cv-92-JMS-MPB, 2019 WL 6828153, at *3 (S.D. Ind. Dec. 13, 2019) (finding that, while the

fact that a plaintiff ultimately did not go to trial because the charges against her were dismissed

was relevant to her civil claim, evidence of why the charges were dismissed would not be

admissible because it could mislead the jurors; precluding such evidence on Rule 403 grounds

because the probative value was substantially outweighed by the risk of prejudicial effect the

evidence could have); *Harris*, 2018 WL 2183992, at *9 (finding that "[t]he danger of potential

juror confusion in admitting the Seventh Circuit's discussion [in a prior order granting plaintiff a

---

[7] The Court recognizes similar concerns regarding analysis and findings within other underlying orders in this case, such as the Habeas Order.  *See Hurt v. Vantlin*, No. 3:14-cv-92-JMS-MPB, 2019 WL 6828153, at *3 (S.D. Ind. Dec. 13, 2019) (finding that a state court's denial of a motion to suppress a plaintiff's confession was not admissible at trial "given that the jury in this case will consider the very issue of the legality of [a plaintiff's] confession"); *Harris*, 2018 WL 2183992, at *9 (finding that "[t]he danger of potential juror confusion in admitting the Seventh Circuit's discussion [in a prior order granting plaintiff a writ of *habeas corpus*] about false confessions substantially outweighed Harris' counsel probing into this complicated constitutional analysis made on federal habeas review").  This also includes hearsay concerns.  *See, e.g., U.S. v. Stinson*, 674 F.3d 1196, 1210 (9th Cir. 2011) ("A prior judgment is hearsay to the extent that it is offered to prove the truth of the matters asserted in the judgment, but it is not hearsay to the extent that it is offered as legally operative verbal conduct that determined the rights and duties of the parties.  In *Boulware*, we held that a prior judgment determining the ownership of assets was not hearsay in a tax prosecution to the extent it was offered not for its truth but merely to establish its legal effect.  On the other hand, in *United States v. Sine* … we held that a prior court order was hearsay when findings from the order were used to cross-examine a witness, since the purpose was for the jury to agree with the prior judge's findings.  In this case, the order granting the habeas petition was inadmissible hearsay because it was offered for its truth.") (internal quotation marks and citations omitted; alterations adopted); *Nipper v. Snipes*, 7 F.3d 415, 416-18 (4th Cir. 1993) (judge's order that included findings of fact was hearsay evidence that was not admissible unless it fell within one of the hearsay exceptions).

writ of *habeas corpus*] about false confessions substantially outweighed Harris' counsel probing into this complicated constitutional analysis made on federal habeas review"); *Nipper v. Snipes*, 7 F.3d 415, 418 (4th Cir. 1993) ("judicial findings of fact present a rare case where, by virtue of their having been made by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice"; despite giving limiting instructions, district court erred in allowing a prior order to be read to the jury that "repeatedly referred to factual findings of fraud on the part of [defendant] as well as finding that his conduct amounted to a breach of fiduciary duty, and that he failed to disclose serious financial irregularities") (internal quotation marks omitted). The issue here is a close one, even at this early, motion in limine stage. It could be affected by what other evidence ends up being presented. *Ayers*, 910 F.3d at 861-63. However, at this time, the Court is only addressing the relatively broad request made in Moore's motion, considering the standards for ruling on a motion in limine and what is currently known to the Court. Therefore, based on the arguments made by the parties in the briefing, the Court denies, without prejudice, Moore's request to exclude any evidence or testimony that Gillispie was deemed by the Montgomery County Common Pleas Court to be a wrongfully imprisoned individual under Ohio Rev. Code § 2743.48.

The Court also notes that, in his motion, Moore identifies ways he can attack evidence related to the Wrongful Imprisonment Order, such as pointing out that Moore was not a party to the "wrongfully imprisoned individual" proceeding and that its purpose and findings were limited to consideration of whether the requirements of a particular state statute had been met. *See Harris*, 2018 WL 2183992, at *6 (during trial, defense counsel attacked "certificate of innocence" that made no findings regarding defendant). Additionally, Gillispie points out that other courts have dealt with the admissibility of similar documents through the use of limiting instructions (Doc.

No. 354 at PageID 12572). *See Patrick*, 974 F.3d at 833; *Enoch v. Hamilton Cnty. Sheriff*, --- F. Supp. 3d ---, 2022 WL 614687, at *8 (S.D. Ohio Mar. 2, 2022) (prohibiting parties from discussing a probable cause finding by the appellate court in their voir dire or opening statements, and explaining that any evidence that may be presented on the issue would be evaluated in the context of trial and subject to an appropriate limiting instruction); *Harris*, 2018 WL 2183992, at *4-5 (using jury instructions to explain the effect of a "certificate of innocence"); *see also id.* at *9-10 (the parties had agreed to a stipulation regarding the prior habeas decision); *Howard v. City of Durham*, No. 1:17cv477, 2021 WL 5086379, at *2 (M.D.N.C. Nov. 2, 2021) (in an action alleging that defendants fabricated and suppressed evidence to obtain plaintiff's conviction, parties intended to offer a proposed summary of an order granting a new trial that could be provided to the jury, not the text of the order); *Kluppelberg v. Burge*, 84 F. Supp. 3d 741, 745 (N.D. Ill. 2015) (court suggesting that "[t]he parties should stipulate that the [underlying criminal] proceedings were terminated in [plaintiff's] favor"). Although the parties certainly may want to consider possible stipulations and jury instructions well before the trial starts, these sorts of considerations are not currently before the Court. Instead, at this time, the Court merely denies, without prejudice, Moore's first request in his Motion in Limine No. 3.

### (2) Second request

The Court grants Moore's request to bar any testimony that the Wrongful Imprisonment Order establishes Gillispie's innocence as it relates to the criminal accusations against him.[8] As shown above, the Wrongful Imprisonment Order does not establish Gillispie's innocence. This is true regardless of whether Gillispie has the ability to obtain some type of a declaration of

---

[8] Additionally, as Gillispie concedes in his response, he "should not" and must not "argue that the Wrongful [Imprisonment] Order *proves* that Moore committed certain actions." (Doc. No. 354 at PageID 12572 (emphasis in original).)

innocence.  (*See* Doc. No. 354 at PageID 12567-68 (Gillispie arguing that "[n]either state or federal remedies available to Gillispie could have *possibly* involved him being 'declared innocent' by a Court") (emphasis in original).)  The Wrongful Imprisonment Order does not directly address the issue of innocence; it did not need to do so in order to declare him a "wrongfully imprisoned individual" under Ohio Rev. Code § 2743.48.[9]  (*See* Doc. No. 326-1.)  Testimony that the Wrongful Imprisonment Order establishes Gillispie's innocence as it relates to the criminal accusations against him would be false, mislead the jury, and—at least with respect to the issue of damages— unduly prejudice Moore.  Therefore, it must be barred.  Fed. R. Evid. 402, 403.

### (3) Third request

Regarding the third request, Moore never fleshes out his argument concerning the *habeas corpus* ruling (the Habeas Order).  (*See* Doc. No. 236.)  As Gillispie points out in his response brief, Moore provides zero argument or basis for his request in the motion.  (Doc. No. 354 at PageID 12574-75.)  Although Moore may eventually be able to successfully argue against the admission of part or all of the Habeas Order (and certain testimony or other evidence related to that ruling), the Court will not bar any evidence based on the bald request in Moore's motion.[10] *See El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009) ("[i]ssues adverted to in a perfunctory

---

[9] Therefore, the Wrongful Imprisonment Order is not truly "evidence concerning [the plaintiff's] innocence." *Ayers*, 773 F.3d at 169.  Despite Gillispie's arguments, the Court is not convinced that the Wrongful Imprisonment Order is "evidence of innocence" that would be "relevant to both liability and damages in any wrongful prosecution case where the factual premise of actual innocence remains in dispute." *Sanford*, 531 F. Supp. 3d at 1224; *see also Harris*, 2018 WL 2183992, at *3 (certificate that, to be issued, underlined required plaintiff to prove that she "is innocent of the offenses charged" was relevant to demonstrate the underlying criminal proceedings were terminated in her favor as well as to her damages claim if the defendants argued that she committed the crime); *Hurt*, 2019 WL 6828153, at *3-4 (finding that underlined the fact plaintiff was acquitted of the underlying murder and robbery charges "is part of the story of what took place in this case, and not knowing [plaintiff's] ultimate fate would make it impossible for the jury to determine damages should they find liability").
[10] *See Harris*, 2018 WL 2183992, at *9 ("it was the jury's role to decide whether the Defendant Officers coerced [plaintiff's] confession—not the federal habeas court's role"); *Howard*, 2021 WL 5086379, at *2 n. 4 (in an action alleging that defendants fabricated and suppressed evidence to obtain plaintiff's conviction, reference to the textual findings in the underlying order that granted plaintiff a new trial would be unwarranted under Rule 403 because "the judge's decision makes findings on the very evidence that is to be presented in the present case"; instead, the parties agreed to offer a proposed summary of the order that could be provided to the jury).

manner, unaccompanied by some effort at developed argumentation, are deemed waived," and "[i]t is not sufficient for a party to mention a possible argument in a skeletal way, leaving the court to put flesh on its bones") (internal quotation marks omitted; alteration adopted). Therefore, Moore's third request in his Motion in Limine No. 3 is denied, without prejudice.

### F. <u>Gillispie's Motion in Limine No. 6</u>

In Gillispie's Motion in Limine No. 6, Gillispie says that the Court "should admit evidence showing that Gillispie has been declared a Wrongfully Convicted Individual under Ohio Law." (Doc. No. 340 at PageID 12446.) The Court addressed this topic in the previous section. The Court is not admitting such evidence by way of this order, but it is not barring such evidence either. Gillispie also asks the Court to "exclude argument or suggestion that no Court has declared Gillispie innocent." (*Id*.) As explained below, the Court denies this request, without prejudice.

Pleadings and briefing by both parties indicate that whether Gillispie is actually innocent of the crimes for which he was charged remains in question, and both parties acknowledge that whether Gillispie is innocent may be relevant to his damages. (*See, e.g.,* Doc. No. 18 at PageID 77, 93-98; Doc. No. 349 at PageID 12535-36.) In his response, Moore points out that Gillispie acknowledged during his deposition that no order from any court had declared him innocent of the crimes for which he was charged or explicitly said that he is innocent (Doc. No. 349 at PageID 12535 (citing Doc. No. 168 at PageID 3230)).[11] Gillispie argues that being declared "actually innocent" is an "avenue for relief [that] was not available to him," so allowing argument or

---

[11] Gillispie complains that, in the MSJ Order, the Court relied on Moore's argument that "no court has declared Gillispie innocent." (Doc. No. 340 at PageID 12446.) The Court points out that, as shown in Gillispie's own citation to "Dkt. 298 at 89-91," the Court did so in the context of addressing Gillispie's now-dismissed claim for malicious prosecution <u>under Ohio state law</u>. As explained above (and in the MSJ Order), what is necessary to establish the "termination of the prosecution in favor of the accused" element of a malicious prosecution claim under Ohio state law is different from what is necessary under federal law. (*See* Doc. No. 298 at PageID 10873-75, 10924 ("the Ohio Supreme Court held that '[a] proceeding is terminated in favor of the accused only when its final disposition indicates that the accused is innocent." *Ash v. Ash*, 72 Ohio St. 3d 520, 651 N.E.2d 945, 947 (Ohio 1995)).)

suggestion that no Court has declared Gillispie innocent confuses the issues.[12]  (Doc. No. 340 at PageID 12447.)

To the extent that Gillispie introduces evidence concerning the Wrongfully Imprisoned Order, Moore should be permitted to attack such evidence.  This includes that Moore can elicit testimony or argue about what the Wrongfully Imprisoned Order did not do, including that it did not declare him innocent of the crimes for which he was indicted.  *See Harris*, 2018 WL 2183992, at \*6, 10 (during trial, defense counsel "attack[ed]" the "certificate of innocence" that made no findings regarding defendant; also, overruling objection to admitting into evidence an admission made during discovery that no court had found plaintiff's confession was coerced).  Additionally, if Gillispie attempts to introduce evidence of his innocence, Moore should be able to introduce evidence of his guilt.  *Kluppelberg*, 84 F. Supp. 3d at 747 ("evidence that [plaintiff] did commit the crime may also be admitted because it may be necessary for the jury to decide whether Kluppelberg likely committed the crime in order to decide whether the alleged wrongdoing of the defendant caused him injury and, if so, the extent of damages").  However, Moore cannot argue that Gillispie is guilty <u>because</u> no court has declared him innocent.

Perhaps without him realizing it, Gillispie's request is quite broad.  Gillispie asks the Court to bar Moore from even suggesting that Gillispie has not been declared innocent; yet, if Gillispie

---

[12] The Court must clarify an assertion made by Gillispie in his response.  He argues that "a separate declaration of 'innocence' would be both redundant and beyond the statutory language" of Ohio Rev. Code § 2743.48.  (Doc. No. 365 at PageID 12655-56.)  As shown in the section above discussing Ohio's Wrongfully Imprisoned Individual statute, a declaration of innocence—to the extent that one could ever be obtained—would not necessarily be redundant of a declaration that someone is a "wrongfully imprisoned individual."  Again, although someone who is declared a wrongfully imprisoned individual may actually be innocent, it is not a requirement to be deemed a "wrongfully imprisoned individual" under the statute.  *Doss*, 985 N.E.2d at 1233 ("[t]he fifth factor of R.C. 2743.48(A) may be fulfilled in one of two ways: (1) subsequent to sentencing and during or subsequent to imprisonment, 'an error in procedure resulted in the individual's release' <u>or</u> (2) the charged offense (and any lesser included offense) was not committed by the individual or no crime was committed at all (actual innocence)") (quoting Ohio Rev. Code. § 2743.48(A)(5)) (emphasis added); *Nelson*, 915 N.E.2d at 732 (the statute "provides an alternative to the actual-innocence requirement: the person seeking wrongful-imprisonment status need establish only that an error in procedure resulted in his or her release").  Here, as shown above, Gillispie's Wrongful Imprisonment Order relied on the first option to satisfy the fifth factor of the statute, not the second option.

introduces evidence to establish his innocence, any evidence or argument by Moore in response arguably would at least "suggest" that Gillispie has not been declared innocent. It seemingly would present the same overarching concerns about providing a fair trial discussed in *Parish*, but with the parties' positions reversed. *Parish*, 702 F.3d at 999-1000 (district court erred in refusing to allow plaintiff to present evidence that he was not guilty of the underlying offense, while "effectively stack[ing]" the deck against him by simultaneously allowing the defendant to present significant evidence of his guilt). In that sense, the Court agrees with Moore's argument that Gillispie "cannot have it both ways." (Doc. No. 349 at PageID 12534.) Moreover, if Gillispie is allowed to present evidence that he has been declared a "wrongfully imprisoned individual," allowing Moore to present evidence or argue that the declaration does not mean that Gillispie is necessarily innocent of the crimes may actually provide clarity for the jury, not confuse the jury. The Court denies, without prejudice, Gillispie's request that the Court "exclude argument or suggestion that no Court has declared Gillispie innocent."

### III.   <u>CONCLUSION</u>

For the reasons stated above, the Court (1) **GRANTS, IN PART, AND DENIES, IN PART,** Moore's Motion In Limine No. 2 (Doc. No. 325); (2) **GRANTS, IN PART, AND DENIES, IN PART,** Moore's Motion In Limine No. 3 (Doc. No. 326); and (3) **DENIES** Gillispie's Motion In Limine No. 6 (Doc. No. 340). The Court excludes evidence or testimony regarding articles or publications that discuss Gillispie's incarceration, release, or artwork made or prepared during his time in jail, but otherwise denies (without prejudice) Moore's Motion in Limine No. 2 (Doc. No. 325). Additionally, the Court excludes any testimony that the finding of the Montgomery County Common Pleas Court establishes Gillispie's innocence as it relates to the criminal accusations against him, but otherwise denies (without prejudice) Moore's Motion in

24

Limine No. 3 (Doc. No. 326).  Finally, the Court denies (without prejudice) Gillispie's Motion in

Limine No. 6 (Doc. No. 340), but specifies that Moore is barred from arguing that Gillispie is

guilty of the criminal accusations against him because no court has declared him innocent.

   **DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, October 4, 2022.

         s/Thomas M. Rose

       _____

         THOMAS M. ROSE
       UNITED STATES DISTRICT JUDGE