UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| ROGER DEAN GILLISPIE, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:13-cv-416 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| THE CITY OF MIAMI TOWNSHIP, *et al.*, | : | |
| | : | |
| Defendants. | : | |

---

ENTRY AND ORDER DENYING DEFENDANT MATTHEW SCOTT
MOORE'S SECOND MOTION FOR JUDGMENT ON THE PLEADINGS (DOC.
NO. 376) AND DENYING, AS MOOT, PLAINTIFF'S MOTION TO STRIKE
(DOC. NO. 378)

---

This case is before the Court on the Second Motion for Judgment on the Pleadings (Doc.

No. 376) (the "Motion"), filed by Defendant Matthew Scott Moore ("Moore").  Plaintiff, Roger

Dean Gillispie ("Gillispie"), filed a response in opposition to the Motion (Doc. No. 384), and

Moore filed a reply in support of the Motion (Doc. No. 396).  The Motion is ripe for review and

decision.  For the reasons discussed below, the Court **DENIES** the Motion (Doc. No. 376).

I.      ANALYSIS

In the Motion, Moore asks that the Court enter an order dismissing all of Gillispie's claims

against him pursuant to Federal Rule of Civil Procedure 12(c).  (Doc. No. 376 at PageID 12744.)

Moore argues that, "for good cause, based on very recent procedural developments under [Ohio

Revised Code §] 2743.48, and pursuant to the [Sixth] Circuit's *en banc* decision in *Wilson v. Beebe*,

770 F.2d 578 (6th Cir. 1985), Plaintiff's Amended Complaint fails to state a claim upon which

relief can be granted and that Defendant Moore is entitled to judgment on the pleadings as a matter

of law."  (*Id.* at PageID 12745.)

1

### A. Timing of the Motion

The Court first addresses a preliminary issue: whether Moore may move for judgment on the pleadings at this very late stage of the case.

### 1) Background

The history of this nearly decade-long case is extensive, and the Court assumes that the parties are familiar with it. Gillispie commenced this action in 2013. (Doc. No. 1.) In early 2014, he filed his Amended Complaint, which remains the operable complaint. (Doc. No. 18.) After a stay, Moore filed his first motion for judgment on the pleadings on February 8, 2018. (Doc. No. 121.) On February 28, 2018, the Court entered a Preliminary Pretrial Conference Order following a Rule 16 preliminary pretrial conference. (Doc. No. 129.) That order indicated that the deadline for filing motions directed to the pleadings (including motions for judgment on the pleadings) had passed. (*Id.* at PageID 2175.) Moore later filed a motion for summary judgment on September 16, 2019. (Doc. No. 257.) This was several months after the most recent set of revisions to Ohio Rev. Code § 2743.48—the statute that Moore relies on for arguing that he should now be granted judgment on the pleadings.

On September 21, 2020, the Court ruled on various motions for summary judgment. (Doc. No. 298.) The result was that the only remaining claims are five claims made against Moore pursuant to 42 U.S.C. § 1983 ("Section 1983"). (Doc. No. 298 at PageID 10836, 10932-33.) Section 1983 "created a species of federal tort liability for individuals to sue state and local officers for deprivations of constitutional rights." *Thompson v. Clark*, 212 L. Ed. 2d 382, 142 S. Ct. 1332, 1336-37 (2022). Gillispie titles these claims in his Complaint: Suppression of Exculpatory Material; Suggestive Identification; Fabricated Evidence; Malicious Prosecution; and Destruction of Exculpatory Evidence. (Doc. No. 18 at PageID 94-97.) As a broad overview of Gillispie's claims, he alleges that Moore—who was a police detective—engaged in various police misconduct

2

that "framed [Gillispie] for a series of sexual assaults that he did not commit," resulting in Gillispie being "deprived of his right to a fair trial," "wrongfully convict[ed]," and spending "over 20 years incarcerated as an innocent man." (*Id.* at PageID 77, 94-96, 98.)

On November 19, 2021, more than a year after the Court issued its ruling on Moore's motion for summary judgment (Doc. No. 298), Ohio's Court of Common Pleas for Montgomery County issued a "Decision, Order, and Entry … Declaring Plaintiff [Gillispie] a Wrongfully Imprisoned Individual," pursuant to Ohio Rev. Code § 2743.48. (Doc. No. 326-1.) At the absolute latest, Moore was aware of this state court order on February 17, 2022, when Gillispie discussed it in a motion filed in this case and attached a copy to that motion.[1] (Doc. No. 312; Doc. No. 312-2.)

On May 2, 2022, this Court entered an order setting the Final Pretrial Conference in this matter for October 13, 2022 and trial to commence on November 7, 2022. (Doc. No. 322.) On September 30, 2022, less than a month-and-a-half before the scheduled start of trial, Moore filed the Motion. (Doc. No. 376; *see also* Doc. No. 379 (order ruling on motions *in limine* involving the "Wrongfully Imprisoned Individual" order).)

### 2) Application of law

Under Federal Rule of Civil Procedure 12, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Additionally, Federal Rule of Civil Procedure 16 provides that a scheduling order must limit the time to file motions, and such "[a] schedule may be modified only for good cause and

---

[1] Gillispie asserts that Moore knew that Gillispie was seeking such an order by March of 2021. (Doc. No. 378 at PageID 12771 ("After the act [Ohio Rev. Code § 2743.48] was amended, Gillispie sought a declaration that he was a Wrongfully Incarcerated Individual in 2019. By March of 2021, Moore's counsel knew … about the pending state-court action, as the issue was raised during lengthy oral arguments concerning the grand jury minutes before Judge Dankof.").) Gillispie also points out that it was raised during the January 26, 2022 status conference held in this case. (Doc. No. 384 at PageID 12845.) Moore does not dispute any of these assertions in his reply brief. (Doc. No. 396.)

with the judge's consent."  Fed. R. Civ. P. 16(b)(3)(A), (4).

Here, as set forth above, the deadline in the Court's scheduling order to file a motion for judgment on the pleadings passed in February of 2018.  (Doc. No. 129 at PageID 2175.)  Therefore, before the Court can address the merits of the Motion, it must first determine whether Moore has demonstrated "good cause" to excuse its untimely filing.  Fed. R. Civ. P. 16(b)(4).  That determination "requires consideration of [the movant's] diligence and the risk of prejudice to [the opposing party]."  *Davidson v. Arlington Cmty. Schs. Bd. of Ed.*, 847 F. App'x 304, 311-12 (6th Cir. 2021); *see also Leary v. Daeschner*, 349 F.3d 888, 907-08 (6th Cir. 2003) ("modification is permitted under Rule 16 if [the movant] can demonstrate good cause for their failure to comply with the original schedule, by showing that despite their diligence they could not meet the original deadline," and, "in addition to Rule 16's explicit good cause requirement, we hold that a determination of the potential prejudice to the nonmovant also is required when a district court decides whether or not to amend a scheduling order") (internal quotation marks omitted); *Birge v. Dollar Gen. Corp.*, No. 04-2531 B, 2006 WL 133480, at *1 (W.D. Tenn. Jan. 12, 2006) ("[b]ecause a court's scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded … without peril, a movant must demonstrate the reasons for the tardiness of his motion justify a departure from the rules set by the court in its scheduling order") (internal quotation marks omitted).  "The linchpin of Rule 16(b)'s good cause standard is the diligence of the party seeking to deviate from the scheduling order's deadlines."  *Birge*, 2006 WL 133480, at *1 (denying motion for judgment on the pleadings because it was filed out of time without good cause).

In the Motion, Moore acknowledges that the deadline for filing motions for judgment on the pleading passed years ago and that, "once a scheduling order deadline passes, a party must demonstrate good cause under … Rule 16(b) for failure to adhere to the deadline."  (Doc. No. 376

at PageID 12747.) He argues that good cause exists for the Court to consider the Motion. (*Id.* at PageID 12748.) The Court disagrees that good cause exists here.

First, regarding Moore's diligence, the deadline for filing motions for judgment on the pleadings passed more than four-and-a-half-years before Moore filed the Motion. The basis of the Motion is that the Sixth Circuit's 1985 decision in *Wilson* "follows the premise that there is no cause of action under § 1983 for the random, unauthorized acts of a state official which deprive a person of procedural due process if the State provides an adequate post-deprivation remedy" (Doc. No. 376 at PageID 12752). *See also Wilson*, 770 F.2d at 580 ("The Supreme Court held in *Parratt* that there is no cause of action under § 1983 for the random, unauthorized acts of a state official which deprive a person of property if the state provides an adequate post-deprivation remedy"). The alleged "adequate post-deprivation remedy" here is Ohio Rev. Code § 2743.48. (Doc. No. 376 at PageID 12749.) However, the Section 1983 claims against Moore have not changed since 2014 (Doc. No. 18), and the State has provided that remedy for many years. The statute itself was "added to the Revised Code in 1986" (*Doss v. State*, 2012-Ohio-5678, 985 N.E.2d 1229, 1232 (Ohio 2012)), and the current version has been in effect since March 22, 2019. Ohio Rev. Code § 2743.48. Moreover, even assuming that the proper start of the time frame for considering whether Moore was diligent in filing the Motion is when Gillispie began pursuing the alleged remedy (2019), or when Gillispie was declared a "wrongfully imprisoned individual" under the statute (November 2021), or even when Moore knew of that declaration (February 2022 at the latest), that was several months before Moore filed the Motion. The Court does not believe that such a delay demonstrates diligence. *Winter Enterprises, LLC v. West Bend Mut. Ins. Co.*, No. 1:17-cv-360, 2019 WL 3413907, at *2-3 (S.D. Ohio July 29, 2019) (dismissing motion for judgment on the pleadings as untimely, where the motion was filed approximately two months away from trial after

5

having already filed a motion for summary judgment).

Moore attempts to defend the tardiness by explaining that "Plaintiff was not declared a wrongfully imprisoned individual until November 19, 2021, long after the scheduling order deadlines had passed and a year after the Court had ruled on the motions for summary judgment." (Doc. No. 376 at PageID 12749.) Even so, again, that was over ten months (315 days) before Moore filed the Motion. Moore's other argument to defend the Motion's tardiness is that Gillispie, "pursuant to the remedies afforded him under [Ohio Rev. Code] § 2743.48(D) and (E), reached a monetary settlement with the State of Ohio as announced on September 28, 2022." (Doc. No. 376 at PageID 12746, 12749.) However, the Court is not convinced that this alleged settlement[2] is the proper triggering event that would finally allow Moore to bring a motion that argues *Wilson* now bars all of the Section 1983 claims against him. Again, if the premise of the Motion is that "the State provides an adequate post-deprivation remedy" (Doc. No. 376 at PageID 12752 (emphasis added)), the State provided the alleged remedy (Ohio Rev. Code § 2743.48) on March 22, 2019 (at the latest) when its current version went into effect. That was years before Moore filed the Motion. In short, the Court finds that Moore was not diligent.

Second, regarding the risk of prejudice to the opposing party, there is a substantial risk of prejudice to Gillispie if the Court modified the schedule to allow consideration of the Motion and granted it, given that the Motion seeks judgment for Moore on all claims brought against him by Gillispie (and, thus, seeks to end this case).[3] *Cf. Leary*, 349 F.3d at 908 ("[o]bviously [the opposing party] would suffer prejudice if the district court permitted the Plaintiffs to file a second amended

---

[2] Although the Court does not believe that whether or not there actually is a settlement matters for purposes of deciding the Motion, Gillispie asserts that the settlement is only "tentative." (Doc. No. 384 at PageID 12845.)

[3] Gillispie does argue that, if the Court were to grant the Motion, the "appropriate next step is amendment of the Complaint, not dismissal as a matter of law," which Gillispie says would necessitate additional discovery and delay the trial (thus also prejudicing Gillispie). (*See* Doc. No. 384 at PageID 12847, 12855-56.) Given the decision in this Order, the Court need not address this argument.

complaint which essentially transformed the original due process claims into new claims for breach of the CBA").

The Court does not find "good cause" to modify its schedule to allow the untimely Motion, which also risks delaying the trial that is scheduled to begin in two weeks.  Fed. R. Civ. P. 16(b)(4).  Therefore, the Court denies the Motion.  *Leary*, 349 F.3d at 908-909 (affirming denial of motion for leave to amend complaint, despite the fact that Rule 15 states that leave to amend shall be freely given, where the deadline to amend  the pleadings had passed and movant was "obviously aware of the basis of the claim for many months, but nonetheless failed to pursue the claim until after it was brought to their attention" by another party's final summary judgment motion) (internal quotation marks omitted).

### B.  Merits of Moore's Argument

Even if there was "good cause" to modify the scheduling order and allow the Motion (Fed. R. Civ. P. 16(b)(4)), and the Court found that Moore moved for judgment on the pleadings "early enough not to delay trial" (Fed. R. Civ. P. 12(c)), the Court would deny the Motion on its merits.[4] The Court first sets forth the applicable standards for considering a motion for judgment on the pleadings and then addresses the merits of the Motion.

### 1)  Standard of Review on Motion for Judgment on the Pleadings

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  Courts apply the same analysis to motions for judgment on the pleadings under Rule 12(c) as they apply to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n*, 623 F.3d

---

[4] Moore states in his reply brief that, "[s]eemingly, Moore could have filed a Motion for Judgment as a Matter of Law at trial on these issues," but felt that "would actually be more disruptive of the trial" and filing the Motion at issue was "the better course."  (Doc. No. 396 at PageID 13748.)

281, 284 (6th Cir. 2010). The Sixth Circuit "has applied the now familiar pleadings requirements

in *Twombly* and *Iqbal* to Rule 12(c) motions." *Patterson v. Novartis Pharms. Corp.*, 451 F. App'x

495, 497 (6th Cir. 2011).

When a party moves for judgment on the pleadings, "[a]ll well-pleaded material allegations

of the pleadings of the opposing party must be taken as true, and the motion may be granted only

if the moving party is nevertheless clearly entitled to judgment as a matter of law." *Hindel v.*

*Husted*, 875 F.3d 344, 346 (6th Cir. 2017) (internal quotation marks omitted). However, the court

"need not accept as true legal conclusions or unwarranted factual inferences." *JPMorgan Chase*

*Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007).

"To survive a Rule 12(c) motion, a complaint must contain direct or inferential allegations

respecting all the material elements under some viable legal theory." *Hindel*, 875 F.3d at 346-47

(internal quotation marks omitted), citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("a

complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face," and "[a] claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged" (internal quotation marks omitted)). "[T]he plaintiff must provide the grounds for its

entitlement to relief, and that 'requires more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action.'" *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010)

(internal citation omitted), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A

plaintiff falls short if [the plaintiff] pleads facts 'merely consistent with a defendant's liability' or

if the alleged facts do not 'permit the court to infer more than the mere possibility of misconduct.'"

*Id.*, quoting *Iqbal*, 556 U.S. at 678-79; *see also Twombly*, 550 U.S. at 557 (a complaint will not

withstand a motion to dismiss if it offers only "naked assertion[s]" without "further factual

enhancement").

In addressing a motion for judgment on the pleadings, a court considers the pleadings and any written instruments attached as exhibits to the pleadings.  *See* Fed. R. Civ. P. 7(a); Fed. R. Civ P. 10(c); Fed. R. Civ. P. 12(c).  Although allegations in the complaint are the primary focus in assessing a Rule 12(c) motion, a court may also take into account "matters of public record, orders, [and] items appearing in the record of the case."  *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008).  Additionally, a court may consider exhibits attached to a motion for judgment on the pleadings "so long as they are referred to in the Complaint and are central to the claims contained therein."  *Brent v. Wayne Cnty. Dept. of Human Servs.*, 901 F.3d 656, 695 (6th Cir. 2018).

### 2)  Application of law

In *Wilson*, which is the primary case relied on by Moore in the Motion, the plaintiff "was grievously injured when the service revolver of the defendant," "a Michigan state police officer, discharged as [the defendant] was attempting to handcuff [the plaintiff] after placing him under arrest."  *Wilson*, 770 F.2d at 580.  The Sixth Circuit Court of Appeals explained that, in *Parratt v. Taylor*, 451 U.S. 527 (1981), "the Supreme Court established a limitation on the availability of § 1983 in procedural due process cases."  *Wilson*, 770 F.2d at 583.  Therefore, the *Parratt* doctrine is only potentially applicable in procedural due process cases.[5]  As additional clarification, the Sixth Circuit has explained that "*Parratt* is not applicable to claims based on a right, privilege, or immunity secured by the Constitution or federal laws other than the due process clause of the fourteenth amendment."  *Watts v. Burkhart*, 854 F.2d 839, 842 (6th Cir. 1988).  Thus, "*Parratt* is

---

[5] The Sixth Circuit also described the premise of *Parratt*:  in that case, "the plaintiff was deprived of personal property [some hobby materials] by the negligent 'random and unauthorized' acts of prison employees and not by actions taken pursuant to some established state procedure," so "there was no opportunity for a predeprivation hearing and the availability of a meaningful postdeprivation hearing satisfied the requirement of procedural due process."  *Wilson*, 770 F.2d at 583 (quoting *Parratt*, 451 U.S. at 541).

9

not applicable to claims based on substantive rights protected by the Constitution." *Id.* (concluding that the district court erred in dismissing plaintiff's equal protection claim because of *Parratt*).

The Sixth Circuit in *Wilson* explained application of the *Parratt* doctrine. "The first question in assessing the applicability of *Parratt v. Taylor* to a procedural due process claim … is whether the state had an opportunity to anticipate and control the conduct of the wrongdoer." *Wilson*, 770 F.2d at 584. "This depends on whether the tortfeasor has acted randomly and without authorization or pursuant to established procedures." *Id.* "If the act is found to be random and unauthorized, the second question in assessing the applicability of *Parratt v. Taylor* is whether there is an adequate postdeprivation proceeding which satisfies the requirements of procedural due process." *Id.* (concluding, in that case, that "the procedural due process claim … may not be maintained under § 1983 because the Michigan postdeprivation remedy is adequate").

In cases similar to the one here that involve plaintiffs who have been incarcerated, had their convictions set aside, and then sue state officials for fabricating evidence, destroying evidence, malicious prosecution, and/or other similar alleged misconduct, courts generally have found the *Parrott* doctrine broadly inapplicable. *See, e.g., Armstrong v. Daily*, 786 F.3d 529, 538-46 (7th Cir. 2015) (involving plaintiff's claims that "defendants deprived him of his liberty without due process of law by acting in bad faith to cause the loss or destruction of exculpatory evidence"; explaining that "it comes as no surprise that *Parratt*'s application has been rejected in the rare wrongful conviction cases where defendants have raised it"); *Castellano v. Fragozo*, 352 F.3d 939, 942 (5th Cir.) (*en banc*) ("[w]e hold that a state's manufacturing of evidence and knowing use of that evidence along with perjured testimony to obtain a wrongful conviction deprives a defendant of his long recognized right to a fair trial secured by the Due Process Clause, a deprivation of a right not reached by the *Parratt* doctrine"); *Avery v. City of Milwaukee*, 847 F.3d 433, 441 (7th

10

Cir. 2017) (the claims of a plaintiff who alleges "he was wrongfully *convicted* of a crime in a trial tainted by falsified evidence, known perjury, or the deliberate destruction of exculpatory evidence" are "grounded in the due process guarantee of fundamental fairness in criminal prosecutions" that has "long been recognized" and "[t]he *Parratt* doctrine … doesn't apply in this context") (emphasis in original).   The Seventh Circuit said that it viewed the argument that the *Parratt* doctrine would apply to such cases as "profoundly mistaken" and a misreading of the doctrine.[6] *Armstrong*, 786 F.3d at 539.  In fact, it said:  "No court has accepted the defendants' argument that the *Parratt* analysis applies when the plaintiff is alleging that wrongful conduct corrupted fair fact-finding in the criminal justice system."  *Id.* at 541.

Additionally, the Sixth Circuit has specifically identified at least some of Moore's alleged actions as violations of substantive rights protected by the Constitution, therefore making the *Parratt* doctrine inapplicable.  *See, e.g., Spurlock v. Satterfield*, 167 F.3d 995, 1006 (6th Cir. 1999) ("fabricating probable cause, thereby effectuating a seizure, would violate a suspect's clearly established Fourth Amendment right to be free from unreasonable seizures"); *Miller v. Maddox*, 866 F.3d 386, 389 (6th Cir. 2017) ("[a] plaintiff may bring a malicious prosecution claim under the Fourth Amendment based on a defendant officer's wrongful investigation, prosecution, conviction, and incarceration of a plaintiff").   The Sixth Circuit has explained: "[w]here the claimed deprivation is of a right secured by the Bill of Rights, here by the fourth amendment, a plaintiff may maintain an action under § 1983 irrespective of whether there is an adequate state

---

[6] The Seventh Circuit further explained some of the evolution of the *Parratt* doctrine.  In *Parratt*, the Supreme Court "held that state officials did not violate a prisoner's procedural due process rights by negligently losing his personal property because their actions could be remedied through a state tort suit—all the process constitutionally due for the officials' random and unauthorized acts."  *Armstrong*, 786 F.3d at 539.  "*Hudson v. Palmer* extended this reasoning to intentional deprivations of property," and "in *Zinermon v. Burch*, the Court concluded that the *Parratt/Hudson* rationale also extends to random and unauthorized deprivations of liberty."  *Id.*  "*Parratt* was overruled in part by *Daniels* …, which held that purely negligent conduct could not deprive an individual of life, liberty, or property in violation of the Fourteenth Amendment."  *Id.* at n. 2.

11

procedure for vindication of his rights." *Dugan v. Brooks*, 818 F.2d 513, 517 (6th Cir. 1987).

The decision in *Wilson* does not convince the Court otherwise. Neither does another Sixth Circuit decision relied on by Moore: *Braley v. City of Pontiac*, 906 F.2d 220 (6th Cir. 1990). The lawsuit in *Braley* stemmed from an incident where the plaintiff was driving his car, he was cut off by a police car changing lanes, and he pursued the police car and signaled the officer to pull over by flashing his lights and sounding his horn. *Id.* at 222. The police officer pulled over to allow the plaintiff to pass so that he (the police officer) could then stop the plaintiff for driving with his high beams on, and the plaintiff and officer got into a heated verbal exchange. *Id.* The plaintiff informed the officer that he intended to file a citizen's complaint and asked for the officer's badge number, the officer refused and asked to see plaintiff's driver's license, and plaintiff refused. *Id.* The officer then arrested plaintiff, plaintiff was charged with operating a motor vehicle without a license and obstructing and hindering a police officer in the performance of his duties, and plaintiff was found not guilty on the two charges by a jury. *Id.*

The plaintiff in *Braley* filed suit in federal court against police officers and the city, alleging violation of Section 1983 as well as pendent state claims of malicious prosecution and false arrest and imprisonment. *Braley*, 906 F.2d at 222. The federal court dismissed the pendent state claims without prejudice, the plaintiff filed suit in state court based on those state claims, and, following a trial in state court, the jury returned a verdict in plaintiff's favor on the claims of false arrest and imprisonment and malicious prosecution for bringing the charge of obstructing an officer in the performance of his duty (and awarded him $20,000). *Id.* Following the jury verdict in the state case, the defendant filed a motion for summary judgment in the still-pending federal case on the ground that plaintiff had an adequate remedy in state court. *Id.* The district court granted the motion, and the Sixth Circuit Court of Appeals affirmed "[b]ecause [the defendant] has received

12

substantial satisfaction of his claims in state court." *Id.*

The Sixth Circuit found that the plaintiff in *Bailey* "seeks in federal court to vindicate constitutional rights that have already been vindicated in state court." *Braley*, 906 F.2d at 223. Citing *Parrott*, the Sixth Circuit explained that "[t]he general doctrine of the supplemental nature of § 1983 … does not mean that a plaintiff who makes out a constitutional claim will get two vindications of that claim." *Id.* The court further explained that, "[i]nsofar as these claims [that the police officers falsely arrested and imprisoned him and maliciously prosecuted him] state constitutional violations, the violations were addressed at the state trial and remedied by the award of $20,000." *Id.* at 224. The court went on to find that the plaintiff's "state tort action provided him with adequate procedural due process by post-deprivation redress. It addressed all the allegations on which the constitutional claim was based." *Id.* at 225. The court also said that "[t]he Supreme Court has not spoken on whether a claim of malicious prosecution will support a § 1983 action for violation of a constitutional guarantee." *Id.* at 226. The court summarized:

> [Plaintiff] was prosecuted for driving without a license and interfering with a police officer in the performance of his duty. The prosecution for driving without a license cannot form the basis of a constitutional claim because [plaintiff's] failure to produce his license on demand established probable cause for arrest and prosecution. … [Plaintiff's] prosecution for interfering with a police officer in the performance of his duties was not based on his exercise of a specific constitutional right. … [Plaintiff] was attempting to air a grievance with an officer over a traffic incident. [Plaintiff's] efforts to express his consternation to [defendant officer], while perhaps understandable under the circumstances, cannot properly be characterized as an attempt to protect a constitutional guarantee. Therefore, his arrest and prosecution for those efforts—while they could and did form the basis of a successful tort action for malicious prosecution—cannot form the basis of a § 1983 claim for deprivation of rights secured by the Constitution.

*Id.* at 227.

The situation here is distinguishable from *Bailey* on numerous fronts. For example, while the facts in *Braley* clearly established that the officer had probable cause for arresting and prosecuting the plaintiff, that is not the case here based on the allegations. (*See, e.g.,* Doc. No. 18

13

at PageID 87 (alleging that, "though he had no probable cause, Defendant Moore created unduly suggestive photo line-ups for the [victims] to view"), PageID 97 (alleging that Moore instigated and continued the prosecution of Gillispie without probable cause and acting out of malice).) As another example, the constitutional violations allegedly committed by Moore "were [not] addressed at [a] state trial." *Braley*, 906 F.2d at 224; *see also Gillispie v. City of Miami Twp.*, No. 3:13-cv-416, 2022 WL 4922659 (S.D. Ohio Oct. 4, 2022). Furthermore, since the time that *Braley* was decided in 1990, the Supreme Court <u>has</u> found that a claim of malicious prosecution will support a Section 1983 action for violation of a constitutional guarantee. *Thompson*, 142 S. Ct. at 1337 (explaining that "[t]his Court's precedents recognize" "a Fourth Amendment claim under § 1983 for malicious prosecution") (citing, among other cases, *Manuel v. Joliet*, 580 U.S. 357 (2017), *Albright v. Oliver*, 510 U.S. 266 (1994) (plurality opinion), and *Sykes v. Anderson*, 605 F.3d 294, 308-09 (6th Cir. 2010)).

The Court finds that Moore would not be entitled to judgment on the pleadings based on *Parratt*, *Wilson*, *Braley*, or the other cases and arguments on which he relies in his Motion, even if the Court were to decide the Motion on its merits. Taking "[a]ll well-pleaded material allegations of the pleadings of" Gillispie as true, Moore is <u>not</u> "nevertheless clearly entitled to judgment as a matter of law." *Hindel* 875 F.3d at 346.

## II.     CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant Matthew Scott Moore's Second Motion for Judgment on the Pleadings (Doc. No. 376). Given this outcome, the Court also **DENIES, AS MOOT,** Gillispie's related Motion to Strike Untimely and Meritless Motion for Judgment on the Pleadings and For Expedited Briefing (Doc. No. 378), in which Gillispie asked that Moore's Motion be stricken.

**DONE** and **ORDERED** in Dayton, Ohio, this Monday, October 24, 2022.

s/Thomas M. Rose

_____

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE