## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | |
|---|---|
| ROGER DEAN GILLISPIE, : | |
| : | |
| Plaintiff, : | Case No. 3:13-cv-416 |
| : | |
| v. : | Judge Thomas M. Rose |
| : | |
| THE CITY OF MIAMI TOWNSHIP, *et al.*, : | |
| : | |
| Defendants. : | |

---

### ENTRY AND ORDER DENYING DEFENDANT MATTHEW SCOTT MOORE'S MOTION TO TRIFURCATE TRIAL (DOC. NO. 401)

---

This case is before the Court on the Motion to Trifurcate Trial (Doc. No. 401) (the "Motion"), filed by Defendant Matthew Scott Moore ("Moore") on October 14, 2022. Plaintiff, Roger Dean Gillispie ("Gillispie"), filed a response in opposition to the Motion (Doc. No. 419); Intervenor Miami Township Board of Trustees (the "Township") also filed an opposition to the Motion (Doc. No. 414); and, Moore filed a reply in support of the Motion (Doc. No. 430). The Motion is ripe for review and decision. For the reasons discussed below, the Court **DENIES** the Motion.

### I.  BACKGROUND

The history of this nearly decade-long action is extensive, and the Court assumes that the parties are familiar with it. In the main case, five claims brought by Gillispie against Moore pursuant to 42 U.S.C. § 1983 ("Section 1983") remain pending. (Doc. No. 18; Doc. No. 298 at PageID 10836, 10932-33.) Gillispie titles these remaining claims against Moore as: Suppression of Exculpatory Material; Suggestive Identification; Fabricated Evidence; Malicious Prosecution; and Destruction of Exculpatory Evidence. (Doc. No. 18 at PageID 94-97.) Section 1983 "created

1

a species of federal tort liability for individuals to sue state and local officers for deprivations of constitutional rights." *Thompson v. Clark*, 212 L. Ed. 2d 382, 142 S. Ct. 1332, 1336-37 (2022). As a broad overview of Gillispie's claims, he alleges that Moore—who was a police detective—engaged in various acts of police misconduct that "framed [Gillispie] for a series of sexual assaults that he did not commit," resulting in Gillispie being "deprived of his right to a fair trial," "wrongfully convict[ed]," and spending "over 20 years incarcerated as an innocent man." (Doc. No. 18 at PageID 77, 94-96, 98.) Gillispie alleges that he "suffered actual damages, pain and suffering, lost wages, and other damages as a direct and proximate result" of each of the alleged Section 1983 violations. (*Id.* at PageID 94-98.) He seeks an award of compensatory damages, costs, and attorneys' fees, along with punitive damages. (*Id.* at PageID 101.)

Additionally, the Township filed an Intervenor Complaint for Declaratory Judgment. (Doc. No. 397.) The Township alleges that, at all relevant times, Moore was a member of the Miami Township Police Department and employed by Miami Township. (*Id.* at PageID 13758.) The Township seeks a declaratory judgment that it does not owe a duty to defend or a duty to indemnify Moore in connection with the claims asserted against him in the main case.[1] (*Id.* at PageID 13763.) The crux of the Township's sole claim is that Moore's alleged acts or omissions that serve as the basis for the claims asserted against him in the main case either were not taken in good faith or were outside the scope of his employment. (*Id.*)

II. **ANALYSIS**

In the Motion, Moore asks the Court to "trifurcate the trial currently scheduled to begin November 7, 2022, into three phases: being a liability phase, a damages phase, if necessary and then the intervention issues, if necessary." (Doc. No. 401 at PageID 13780.) Moore argues that

---

[1] In his reply, Moore asserts that the duty to defend is no longer at issue. (Doc. No. 430 at PageID 14768-69.)

doing so "would enable the Court to dispose of the case in a way that advances judicial efficiency and is fair to all parties." (*Id.*) Moore also argues that he would be prejudiced without trifurcation of the trial because "Plaintiff's evidence related to damages will involve evidence that would be presented to elicit sympathy from the jury" and because allowing "the Township to participate during the liability phase given that there are five pending claims against Defendant Moore and given that the Township has primarily been on the sidelines since the Court's order on summary judgment would confuse and mislead the jury … as he would have to simultaneously defend against claims from a third-party that were not anticipated until October 11, 2022." (*Id.* at PageID 13782, 13786.)

In response, Gillispie first argues that Moore's request to trifurcate the trial is untimely. (Doc. No. 419 at PageID 14386.) Gillispie also argues that bifurcation of liability and damages is "functionally impossible" because "the issues substantially overlap." (*Id.* at PageID 14386-88.) Gillispie asserts that, for example, the issue of whether he is innocent of the sexual assaults is a core issue that overlaps between liability and damages. (*Id.* at PageID 14386.) Additionally, Gillispie argues that he will be prejudiced by bifurcation of those issues and that trifurcation will not serve judicial economy, but instead "will inevitably cause delay, arguments, and other problems related to the difficult (and impossible) prospect of trying to separate 'damages' from 'liability' that are likely to slow the pace of trial." (*Id.* at PageID 14388-90, 14392-93.)

The Township asks that the Court deny the Motion to the extent that it asks the Court "to exclude the Township from participating in the liability phase of the case." (Doc. No. 414 at PageID 14087.) The Township argues that "[s]uch an extreme and prejudicial measure does not promote judicial efficiency, is unfair to the Township, and any verdict against Defendant Moore would not bind the Township." (*Id.* at PageID 14088.) The Township also points out that Moore

3

did not oppose its motion to intervene. (Doc. No. 392 at PageID 13686.)

### A. Legal Standards

Federal Rule of Civil Procedure 42(b) addresses bifurcating (or trifurcating) a trial: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial." Fed. R. Civ. P. 42(b). "Rule 42(b) is sweeping in its terms and allows the court, in its discretion, to grant a separate trial of any kind of issue in any kind of case." *In re Benedectin Litigation*, 857 F.2d 290, 308 (6th Cir. 1988). Yet, bifurcation or trifurcation of trial is not the norm. *Id.* at 307 ("[t]he piecemeal trial of separate issues in a single suit is not to be the usual course" and "should be resorted to only in the exercise of informed discretion when the court believes that separation will achieve the purposes of the rule") (internal quotation marks omitted). "The principle purpose of the rule is to enable the trial judge to dispose of a case in a way that both advances judicial efficiency and is fair to the parties." *Id.* at 307.

"The language of Rule 42(b) places the decision to bifurcate [or trifurcate] within the discretion of the district court." *Saxion v. Titan-C-Manufacturing, Inc.*, 86 F.3d 553, 556 (6th Cir. 1996); *see also In re Benedectin Litigation*, 857 F.2d at 307 (addressing decision to trifurcate trial; explaining that "[t]he decision whether to try issues separately is within the sound discretion of the court"). "In deciding whether one trial or separate trials will best serve the convenience of the parties and the court, avoid prejudice, and minimize expense and delay, the major consideration is directed toward the choice most likely to result in a just final disposition of the litigation." *In re Benedectin Litigation*, 857 F.2d at 307-08. However, only one of the three criteria set forth in Rule 42(b)—furthering convenience, avoiding prejudice, or being conducive to expedition and economy—must be met to justify bifurcation. *Saxion*, 86 F.3d at 556. Ultimately, "[a] decision

ordering bifurcation [or trifurcation] is dependent on the facts and circumstances of each case." *Id.*; *see also In re Benedectin Litigation*, 857 F.2d at 307 ("courts have adopted a case-by-case approach" to deciding whether to order separate trials, and the "same test applies to whether the decision is to try only one or more than one issue separately"). The Sixth Circuit has explained that "many courts have upheld cases bifurcated between liability and damages because the evidence pertinent to the two issues is wholly unrelated, and as a logical matter, liability must be resolved before the question of damages." *In re Benedectin Litigation*, 857 F.2d at 309.

### B. Application

The Court finds that trifurcation (or any bifurcation) of the upcoming trial is not warranted in this case. As an initial matter, regarding Gillispie's argument that the Motion is untimely, the Court does not find that the timing of the Motion necessarily calls for its denial. 9A Charles Alan Wright and Arthur H. Miller, Federal Practice and Procedure § 2388 (3d ed.) ("[t]he motion [to bifurcate or trifurcate] is not subject to any particular time constraint and properly may be made at a pretrial conference"); *see also Saxion*, 86 F.3d at 556 (Rule 42(b) "clearly suggests that a court may bifurcate a trial on its own motion"). Plus, concerns of prejudice to Gillispie due to the Motion's alleged tardiness are allayed by the Court's ultimate denial of the Motion in this Order. *See In re Beverly Hills Fire Litigation*, 695 F.2d 207, 216 n. 13 (despite "admit[ting] some sympathy" with the plaintiff's argument in opposing bifurcation that it was prejudiced by the lateness of a decision to bifurcate the proceedings, any prejudice was outweighed by other considerations and, "[i]n any event, it is not likely to recur").

Turning to the merits of the Motion, the Court agrees with Gillispie that testimony and other evidence relating to each of the three proposed phases will likely overlap. This favors denying the Motion. 9A Charles Alan Wright and Arthur H. Miller, Federal Practice and Procedure § 2390 (3d ed.) (bifurcation of liability from damages "has been denied when the

5

evidence on the two subjects is overlapping or the liability and damages issues are so intertwined that efficiency will not be achieved or confusion may result from any attempt at separation"). Here, the "evidence pertinent to the two issues is" not "wholly unrelated" regardless of which two of the three issues relevant here—liability, damages, and potential indemnification—are considered. *In re Benedectin Litigation*, 857 F.2d at 309. In fact, Moore acknowledges that "all three issues … share some common evidence." (Doc. No. 401 at PageID 13784.)

While there are some examples of evidence that would fall only into one category (e.g., the portions of Gillispie's anticipated testimony regarding the effects of his incarceration), the Court could not draw clear lines that would distinguish between the evidence relevant to the liability issues versus the evidence relevant to the damages issues versus the evidence relevant to the intervenor issues. Instead, there is significant overlap. Some anticipated evidence falls into two (or even all three) of those subjects. *Weimer v. Honda of Am. Mfg., Inc.*, No. 2:06-cv-844, 2008 WL 4346790, at *2 (S.D. Ohio Sept. 18, 2008) (denying motion to bifurcate the trial where "[t]he issues of liability and damages are sufficiently intertwined such that bifurcation would likely lead to duplication of testimony and an inability to segregate into clear trial 'phases' the issues and evidence relevant to each phase," and, "although Plaintiff argues that the determination of Defendant's 'good faith' is a question only for the Court to decide separately, this determination is in fact related to the findings of the jury").

For example, testimony and other evidence regarding the alleged supplemental police reports is likely to relate to issues of liability, damages, and potential indemnification. *See Trentham v. Hidden Mountain Resorts, Inc.*, No. 3:08-cv-23, 2010 WL 148166, at *3 (E.D. Tenn. Jan. 11, 2010) (denying motion to bifurcate where "the issue of cancer, when [plaintiff] was first diagnosed with it, how it affects her life, how it affected her work, and what HMR knew about it,

6

among other issues, are likely to relate to both the issue of liability and the issue of damages"). Evidence regarding the existence of the supplemental police reports and their alleged contents would be relevant to the liability determination for (at least) Gillispie's first claim: Suppression of Exculpatory Material.[2]  *See, e.g., Brooks v. Tennessee*, 626 F.3d 878, 892 (6th Cir. 2010) ("[t]he standard for *Brady* materiality [is that] suppressed evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different").  Such evidence would also relate to Gillispie's innocence (or lack thereof) and, therefore, be relevant to damages.  *Ayers v. City of Cleveland*, 773 F.3d 161, 169 (6th Cir. 2014) (holding that, in a Section 1983 claim, "[e]vidence concerning [plaintiff's] innocence is also relevant to the issue of damages"); *see also Parish v. City of Elkhart*, 702 F.3d 997, 999 (7th Cir. 2012) ("[a] jury that believed the plaintiff was guilty of the crime would award lower damages because the imprisonment is attributable to the person's own actions as well as the civil defendants' misbehavior and even a fair prosecution and trial may well have resulted in the person's imprisonment").  As the Court explained in its earlier order ruling on various motions for summary judgment, "[b]ased on Gillispie's evidence, the supplemental reports could form a basis for exonerating Gillispie that would have been readily apparent." (Doc. No. 298 at PageID 10878.) Finally, such evidence may also relate to issues concerning whether Moore's alleged acts or omissions concerning those alleged supplemental police reports were taken in good faith and within the scope of his employment and, therefore, be relevant to the intervenor issues.

Additionally, although trifurcating the trial into the three proposed phases seemingly would serve judicial economy if there would be a finding of no liability in proposed phase one (thus,

---

[2] The Court's earlier order ruling on various motions for summary judgment provides much more discussion regarding the alleged supplemental police reports and how evidence regarding the existence of the supplemental police reports and their alleged contents could be relevant to liability for a number of Gillispie's claims.  (*See* Doc. No. 298 at PageID 10835-83.)

disposing of the need to proceed to proposed phases two or three), trifurcation will not necessarily serve judicial economy. A finding of no liability in proposed phase one obviously is not guaranteed. Furthermore, given the overlap in evidence discussed above, the proposed phases could result in the same evidence and the same witnesses being presented on two (or three) separate occasions. Also, some witnesses (including out-of-state witnesses) could testify at two or all three proposed phases. (*See* Doc. No. 414 at PageID 14089; Doc. No. 419 at PageID 14383 (asserting that there are numerous witnesses whose testimony will be relevant to damages and also to liability for one or more claims, some of whom are from out-of-state).) This would not be convenient or efficient for the witnesses, the parties, or the Court, and it could potentially lengthen the trial and burden all involved. This too favors denying the Motion. *Lokai v. Mac Tools Inc.*, No. 2:05-cv-925, 2007 WL 1666025, at *7 (S.D. Ohio June 5, 2007) (denying motion to bifurcate where "some witnesses may have to testify at both trials" so the court found "that the interests of expedition and economy would be served best by a single trial").

Finally, Moore's concerns can be addressed both through counsel's argument and limiting instructions. *Equal Emp. Opportunity Comm'n v. Wal-Mart Stores, Inc.*, 38 F.4th 651, 660 (7th Cir. 2022) ("[w]hen there is substantial overlap in the facts, evidence, and witnesses, and when the court gives limiting instructions to the jury, the balance favors a unified trial," and "[a] district court's clear instructions to a jury to view potentially emotionally charged evidence only in assessing damages but not liability is a factor weighing against any need for a bifurcated trial"); *Lokai*, 2007 WL 1666025, at *6 (relying on anticipated jury instructions to address defendant's argument that "they will be prejudiced by having the jury determine both liability and damages because the jury may determine liability on the basis of sympathy arising from the presentation of evidence on damages"); *Weimer*, 2008 WL 4346790, at *2 ("capable counsel are involved who

8

will no doubt be able to present clear argument to the jury so as to alleviate any possible confusion or prejudice," and "[t]he jury will also receive the benefit of proper and adequate instruction from this Court that will aid them in appropriately determining the issues of liability and any potential damages; this can include appropriate limiting instructions during trial as requested").

Based on the facts and circumstances in this case, the Court finds that it should not deviate from the usual course of a single trial. The Court does not find that trifurcating the trial, as proposed by Moore, necessarily would further convenience, avoid prejudice, or be conducive to expedition and economy. Fed. R. Civ. P. 42(b); *Allied Erecting and Dismantling Co., Inc. v. U.S. Steel Corp.*, No. 4:12-cv-1390, 2015 WL 1843236, at *6 (N.D. Ohio Apr. 22, 2015) ("[h]ere, bifurcating would not serve judicial economy, nor would it eliminate the predictable complexity of the case" because, "the liability and damages evidence is not wholly unrelated" and "some of the same witnesses will undoubtedly be called to testify during both [proposed] phases"). Instead, a just disposition and fairness to the parties is better achieved through a single trial. Therefore, the Court will not trifurcate the trial in this case. Fed. R. Civ. P. 42(b); *In re Benedectin Litigation*, 857 F.2d at 307.

### III.  CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant Matthew Scott Moore's Motion to Trifurcate Trial (Doc. No. 401).

**DONE** and **ORDERED** in Dayton, Ohio, this Friday, October 28, 2022.

s/Thomas M. Rose

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE