UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| ROGER DEAN GILLISPIE, : | |
| : | |
| Plaintiff, : | Case No. 3:13-cv-416 |
| : | |
| v. : | Judge Thomas M. Rose |
| : | |
| THE CITY OF MIAMI TOWNSHIP, *et al.*, : | |
| : | |
| Defendants. : | |

---

**ENTRY AND ORDER GRANTING DEFENDANT'S MOTION IN LIMINE NO.
4 (DOC. NO. 327), AS MODIFIED BY THE PARTIES' NOTICE (DOC. NO. 412)**

---

This matter is before the Court on a single issue in "Defendant Matthew Scott Moore's Motion in Limine No. 4" (Doc. No. 327), filed by Defendant Matthew Scott Moore ("Moore"). Plaintiff, Roger Dean Gillispie ("Gillispie"), initially filed a response in opposition to the motion that informed the Court that the parties were in "the process of conferring about the motion, which may reduce the issues that require this Court's involvement." (Doc. No. 355.) The parties subsequently filed a Notice, informing the Court that they "have reached agreement on various points related to the motion that would eliminate the need for the Court to address all but one remaining question." (Doc. No. 412.) That one remaining question concerns the admissibility of polygraph-related evidence. (*Id.*; *see also* Doc. No. 327 at PageID 11457.) The parties then filed additional briefing on that issue: Gillispie filed a Response in Opposition (Doc. No. 427), and Moore filed a Reply (Doc. No. 435). The motion is fully briefed and ripe for decision. For the reasons discussed below, the Court **GRANTS** Defendant Matthew Scott Moore's Motion In Limine No. 4 (Doc. No. 327), such that the Court excludes evidence or testimony relating to any polygraph examination taken by Gillispie.

1

I.   **BACKGROUND**

The Court assumes that the parties are familiar with the general background of this case and will not delve into its extensive history. For additional background, see *Gillispie v. City of Miami Twp.*, No. 3:13-cv-416, 2020 WL 5629677 (S.D. Ohio Sept. 21, 2020) (order ruling on summary judgment motions) and *Gillispie v. City of Miami Twp.*, No. 3:13-cv-416, 2022 WL 4922659 (S.D. Ohio Oct. 4, 2022) (order ruling on three other motions in limine). Gillispie's remaining claims against Moore are all claims pursuant to 42 U.S.C. § 1983 ("Section 1983"). (Doc. No. 298 at PageID 10836, 10932-33.) Gillispie titles these remaining claims against Moore as: Suppression of Exculpatory Material; Suggestive Identification; Fabricated Evidence; Malicious Prosecution; and Destruction of Exculpatory Evidence. (Doc. No. 18 at PageID 94-97.) As a broad overview of Gillispie's claims, he alleges that Moore—who was a police detective—engaged in various acts of police misconduct that "framed [Gillispie] for a series of sexual assaults that he did not commit," resulting in Gillispie being "deprived of his right to a fair trial," "wrongfully convict[ed]," and spending "over 20 years incarcerated as an innocent man." (*Id.* at PageID 77, 94-96, 98.)

Section 1983 "created a species of federal tort liability for individuals to sue state and local officers for deprivations of constitutional rights." *Thompson v. Clark*, 212 L. Ed. 2d 382, 142 S. Ct. 1332, 1336-37 (2022). "A § 1983 claim must satisfy two elements: 1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995). Gillispie alleges that he "suffered actual damages, pain and suffering, lost wages, and other damages as a direct and proximate result" of each of the alleged Section 1983 violations. (Doc. No. 18 at PageID 94-98.) He seeks an award of compensatory damages, costs, and attorneys' fees, along with punitive damages. (*Id.* at PageID 101.) Trial is scheduled to begin on November 7,

2022. (Doc. No. 322.)

During his deposition in this civil action, Gillispie testified that he had made a request, to Moore, to take a polygraph examination during the time Moore was investigating the sexual assaults. (Doc. No. 168 at PageID 3188; Doc. No. 221 at PageID 4486-89.) Separately, Steven Fritz ("Fritz") testified during his deposition in this civil action that he had set up a polygraph examination of Gillispie while Fritz was "working for a private investigation company" called Area Wide, which, at the time, had been hired by Gillispie's criminal defense to investigate Gillispie's criminal case. (Doc. No. 221 at PageID 4488, 4491, 4540, 4542; Doc. No. 427 at PageID 14731.) According to Fritz, at Fritz's request, Gillispie took a polygraph examination, it lasted several hours, and the polygraph operator told Fritz "He didn't do it"—presumably meaning that, based on the results of the polygraph examination, he believed that Gillispie did not commit the sexual assaults. (Doc. No. 221 at PageID 4488-89.) Fritz also discussed the polygraph examination in an affidavit submitted in this civil action. (Doc. No. 221-4 at PageID 4628 (Fritz stating that Gillispie "passed" the polygraph that Fritz had hired a polygraphist to conduct).)

**II. ANALYSIS**

**A. Legal Standards for Addressing Motions *In Limine***

District courts adjudicate motions in limine under their "inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984). "The purpose of a motion *in limine* is to allow a court to rule on issues pertaining to evidence prior to trial to avoid delay and ensure an evenhanded and expedient trial." *In re E.I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 348 F. Supp. 3d 698, 721 (S.D. Ohio 2016). Courts should exclude evidence pursuant to a motion in limine "only when evidence is clearly inadmissible on all potential grounds." *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). The Sixth Circuit Court of Appeals advises that the "better practice" is to address questions regarding the admissibility of

broad categories of evidence "as they arise." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). Courts are "almost always better situated during the actual trial to assess the value and utility of evidence." *In re E.I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 348 F. Supp. 3d at 721.

Denial of a motion in limine does not necessarily mean the evidence that is the subject of the motion will be admissible at trial. *Ind. Ins. Co.*, 326 F. Supp. 2d at 846. This is because "[a] ruling on a motion in limine is no more than a preliminary, or advisory, opinion that falls entirely within the discretion of the district court." *U.S. v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994). The district court may change its ruling on the motion in limine, whether prior to trial or at trial, "where sufficient facts have developed to warrant the change." *Id.*

### B. Federal Rules of Evidence 401, 402, and 403

The Federal Rules of Evidence provide that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Relevant evidence is admissible unless any of the following provides otherwise: the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court. Irrelevant evidence is not admissible." Fed. R. Evid. 402.

Even if evidence is relevant, it may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Thus, "Rule 403 provides a balancing test for excluding relevant evidence." *United States v. Asher*, 910 F.3d 854, 860 (6th Cir. 2018). A court may, for example, find that relevant evidence should be excluded when it has little probative value and there would be a

substantial risk of unfair prejudice, confusion of the issues, and/or any of the other dangers listed in Rule 403. *Journey Acquisition-II, L.P. v. EQT Prod. Co.*, 830 F.3d 444, 459-60 (6th Cir. 2016); *see also United States v. Hazelwood*, 979 F.3d 398, 412 (6th Cir. 2020) ("[u]nfair prejudice" is defined "as the undue tendency to suggest a decision based on improper considerations").

In making the Rule 403 determination, "[c]ourts must also consider the availability of other means of proof." *Asher*, 910 F.3d at 861; *see also* Fed. R. Evid. 403 advisory committee's note to 1972 proposed rules (the rule calls "for balancing the probative value of and need for the evidence against the harm likely to result from its admission"). "[T]he existence of an alternative means of proof—even one with substantially the same or greater probative value but a lower danger of unfair prejudice—does not require exclusion of more prejudicial evidence." *Asher*, 910 F.3d at 861 (internal quotation marks omitted). However, a court "must discount the value of the item first offered and exclude it if its discounted probative value is substantially outweighed by unfairly prejudicial risk." *Id.* at 861-63 (internal quotation marks omitted) (where "the probative value of the evidence is modest due to alternative methods of proof, courts must be especially careful not to allow that evidence to reach the jury if the evidence is unduly prejudicial").

C. **The Single Remaining Request in Moore's Motion in Limine No. 4**

In Moore's Motion in Limine No. 4, he asks the Court to exclude "[e]vidence relating to any polygraph examination taken by Plaintiff." (Doc. No. 327 at PageID 11457.) Gillispie opposes the request and argues that polygraph evidence is relevant and "there is no serious risk of unfair prejudice or juror confusion in this case." (Doc. No. 427.) Gillispie references two separate categories of evidence involving polygraph testing that he indicates may arise at trial: (1) Gillispie testifying that he asked Moore to take a polygraph examination; and (2) Fritz, while working for a private investigation company, helped to administer a polygraph examination on Gillispie, who allegedly passed the exam. (Doc. No. 427 at PageID 14731-32.) In his reply, Moore argues that

5

"the alleged private polygraph administered by Fritz" was administered as a "private polygraph to Plaintiff" and "[a]ny reference to the polygraph and the result would be extremely prejudicial to Defendant Moore and far outweigh any probative value regarding Fritz' state of mind." (Doc. No. 435 at PageID 15079-80.)

"In considering the admissibility of polygraph related evidence, [the Sixth] circuit has decreed a two step analysis." *Wolfel v. Holbrook*, 823 F.2d 970, 972 (6th Cir. 1987). "First, the trial court must determine if the proffered evidence is relevant." *Id.* "Second, if the court concludes that the proffered evidence is relevant, it must balance the probative value of the evidence against the hazard of unfair prejudice and/or confusion which could mislead the jury." *Id.* Specifically regarding the results of a polygraph examination, "[g]enerally, in the absence of an agreement and/or stipulation between the parties to the contrary, results of polygraph examinations are inadmissible into evidence." *Id.*; *see also Barnier v. Szentmiklosi*, 810 F.2d 594, 596 (6th Cir. 1987) ("[g]enerally, the use of polygraph results to prove a party's innocence is prohibited"). "Under certain limited circumstances, however, the fact that such a test was taken may be relevant and admissible for purposes other than establishing the truth or falsity of a disputed fact." *Barnier*, 810 F.2d at 596 (citing *Murphy v. Cincinnati Ins. Co.*, 772 F.2d 273 (6th Cir. 1985)).

Regarding the first category of evidence referenced in Gillispie's opposition (i.e., Gillispie testifying that he made a request, to Moore, to take a polygraph examination), Gillispie argues that the evidence goes to the credibility of both Gillispie and Moore because it "demonstrat[es] his confidence in his innocence" and Moore "wrote a police report essentially accusing Mr. Gillispie of dodging him, refusing to be forthcoming, and acting as if he had something to hide." (Doc. No. 427 at PageID 14731.)

Willingness to submit to a polygraph examination can, in certain instances, be relevant and admissible. *Murphy*, 772 F.2d at 277 (in a case brought by a policyholder against an insurance company for bad faith refusal to pay an insurance claim, holding that the district court did not abuse its discretion in permitting plaintiff-insured's testimony of his willingness to submit to a polygraph examination, where the testimony was relevant because it "reflected upon his credibility and the defendant[-insurer]'s motive in refusing the claim" for insurance coverage and the defendant was permitted to present evidence to discount or discredit plaintiff's willingness to submit to a polygraph examination). "[A]dmissibility turns on the relationship of the proffered evidence to other facts of the case, regardless of whether the results of polygraph tests are admissible." *Id.* Thus, "in limited circumstances, evidence of a party's willingness to submit to a polygraph may, within the discretion of the trial court, become admissible if it is relevant to the proof developed by the probative evidence." *Wolfel*, 823 F.2d at 972 (in a Section 1983 action, reversing the trial court's decision to allow the plaintiff to testify that he had volunteered to submit to a polygraph examination and took an examination, where the relevance of plaintiff's willingness to submit to the polygraph examination was "marginal at best" given that it was offered for the purpose of supporting his credibility, "there was no agreement or stipulation between the parties that the results of the examination, whatever they might reflect, would be admissible in subsequent litigation and hence, [plaintiff] had no adverse interest at stake to cloak his willingness with credibility," and plaintiff's "refusal to respond to control questions negated his offer to submit to the test because it induced inconclusive results").

However, Moore never raised this category of evidence in the motion and never addresses it in the briefing. (*See* Doc. Nos. 327, 412, 435.) In other words, Moore has not moved for it to be barred at trial. Therefore, the Court will not make a ruling on this category of evidence at this

motion *in limine* stage.

Regarding the second category of evidence (i.e., evidence relating to Gillispie's polygraph examination that Fritz had set up while working for a private investigation company hired by Gillispie's criminal defense), it fails the two-part analysis from *Wolfel*. Therefore, it will be barred at trial. The Sixth Circuit has expressed a "long-held opinion that the results of a polygraph are inherently unreliable." *United States v. Thomas*, 167 F.3d 299, 308 (6th Cir. 1999); *see also Wolfel*, 823 F.2d at 974 (stating in 1987 that "general skepticism … pervades the scientific community concerning the reliability of polygraph examination"). More important to the specific issue presented, the Sixth Circuit has "repeatedly held that unilaterally obtained polygraph evidence is almost never admissible under Federal Rule of Evidence 403." *Thomas*, 167 F.3d at 308-09 (admitting the results of the polygraph would have violated the principles of Federal Rule of Evidence 403, where the defendant "took a private polygraph test administered by an examiner hired by his family[] and did not inform the government of his test results until after he had taken the examination").

In *Barnier*, a Section 1983 case, the Sixth Circuit held that the district court's admission of evidence that the plaintiffs took a polygraph examination (sometimes colloquially known as a lie detector test) was reversible error. *Barnier*, 810 F.2d at 597. In that case, the plaintiffs had privately arranged for, and submitted to, a polygraph examination; the defendants (who were police officers) did not know about it, let alone encourage or agree to it. *Id.* at 596-97. The Sixth Circuit "doubt[ed] that the evidence of the polygraph was properly admissible for any purpose" and explained that the "district court should not have admitted this evidence under Federal Rule of Evidence 403." *Id.* at 597.

Here, as in *Thomas* and *Barnier*, the polygraph examination was privately administered.

8

(Doc. No. 221 at PageID 4488, 4491, 4540, 4542.)  There is no evidence that Moore even knew about it.  Thus, evidence regarding the polygraph examination constitutes "unilaterally obtained polygraph evidence" that the Sixth Circuit has explained "is almost never admissible under Federal Rule of Evidence 403."  *Thomas*, 167 F.3d at 308-09.  The Court finds that the evidence has (limited) relevance, but its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, and/or misleading the jury.  Fed. R. Evid. 403; *Barnier*, 810 F.2d at 596-97; *Thomas*, 167 F.3d at 308-09; *Wolfel*, 823 F.2d at 975.  Therefore, at trial, any evidence or testimony relating to the polygraph examination taken by Gillispie—including, but not limited to, the fact that Gillispie took a polygraph examination, its results, statements regarding the examination, any argument that the polygraph examination should have been admitted into evidence at the criminal trial, etc.—is barred.[1]

### III.  CONCLUSION

For the reasons stated above, the Court **GRANTS** the sole remaining request in Moore's Motion In Limine No. 4 (Doc. No. 327), as modified by the parties' Notice (Doc. No. 412).  The Court bars any evidence or testimony relating to any polygraph examination taken by Gillispie.  The Court clarifies that, because Moore did not raise or address the issue in the motion's briefing, it does not make any ruling regarding the limited category of evidence that Gillispie made a request, to Moore, to take a polygraph examination (and Moore did not have Gillispie take a polygraph examination).

---

[1] Gillispie's cited cases are distinguishable, either factually, legally (including because they do not involve federal law), or both.  For example, *Noonan v. Cnty. of Oakland*, 683 F. App'x 455, 462-63 (6th Cir. 2017) involved whether a detective was entitled to qualified immunity at the summary judgment stage.  The Sixth Circuit in *Noonan* held that the detective was entitled to qualified immunity because, as a matter of law, the plaintiff "did not suffer a deprivation of liberty" despite being called in by the police for questioning, undergoing a polygraph exam, hiring a criminal defense attorney, and having his car impounded for months.  *Id.*  As another example, as shown above, *Murphy* did not involve the taking of a polygraph examination or its results.  *Murphy*, 772 F.2d at 277.

**DONE** and **ORDERED** in Dayton, Ohio, this Wednesday, November 2, 2022.

s/Thomas M. Rose

_____

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE
