```
 1                  IN THE UNITED STATES DISTRICT COURT
                    FOR THE SOUTHERN DISTRICT OF OHIO
 2                             AT DAYTON

 3   _____
                                        )
     ROGER DEAN GILLISPIE,              )
 4                                      )
                      Plaintiff,        ) CASE NO. 3:13-cv-416-TMR
 5                                      )
                   -vs-                 )
 6                                      )
     THE CITY OF MIAMI TOWNSHIP, ET AL.,) FINAL PRETRIAL
 7                                      )
                   Defendants.          )
 8   _____)
                        TRANSCRIPT OF PROCEEDINGS
 9              THE HONORABLE THOMAS M. ROSE,
            UNITED STATES DISTRICT JUDGE, PRESIDING
10              THURSDAY, OCTOBER 13, 2022
                        DAYTON, OH
11
     For the Plaintiff:       MICHAEL KANOVITZ, ESQ.
12                            DAVID B. OWENS, ESQ.
                              MEGAN C. PORTER, ESQ.
13                            Loevy & Loevy
                              311 N. Aberdeen Street
14                            3rd Floor
                              Chicago, IL  60607
15
     For the Defendant        JOHN T. McLANDRICH, ESQ.
16   Matthew Scott Moore:     DAVID J. SIPUSIC, ESQ.
                              Mazanec, Raskin & Ryder Co., LPA
17                            3305 Solon Road
                              100 Franklin's Row
18                            Cleveland, OH  44139

19   For the Intervenor       DAWN M. FRICK ESQ.
     Miami Township:          CHRISTOPHER T. HERMAN, ESQ.
20                            Surdyk, Down & Turner Co., LLP
                              8163 Old Yankee Street
21                            Suite C
                              Dayton, OH  45458
22
           Proceedings recorded by mechanical stenography,
23   transcript produced by computer.
                     Mary A. Schweinhagen, RDR, CRR
24               Federal Official Court Reporter
                      200 West Second Street
25                     Dayton, OH  45402
                     *** *** *** ***
```

1    **ALSO PRESENT:**

2    Courtroom Deputy:  Elizabeth Penski

3    Law Clerks:  Michael Mayer, Callum Morris

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        P-R-O-C-E-E-D-I-N-G-S                    1:34 P.M.

2            THE COURT:  We're not in session.  We are on the

3     record just because we are going to need the record -- we may

4     need the record to remember what all we deal with and what we

5     agree on.  So it appears to be a little formal.  But I usually

6     hold these in my conference room, but I thought since there

7     are so many attorneys involved it might be a little crowded in

8     there.

9        I know you've introduced yourselves to Ms. Penski.  This

10    is Michael Mayer and Callum Morris, and Caitlin is our extern.

11    So she's here to observe.  And these are the guys that are the

12    brain trust.  So I think we all know and you have all met

13    Ms. Penski.

14        So, counsel, you've definitely given the Court a lot to

15    consider, and I just want to run over the procedure from this

16    point in time forward, along with the pretrial order and some

17    of the questions that I have.  Basically, I'm going to utilize

18    this just to ask my questions and clarify some things on my

19    part with regard to some of the issues that have been raised.

20        So for the -- what I would indicate is we are now here at

21    the final pretrial.  We are set for trial on November the 7th.

22    I have no reason to believe that we won't go forward then.

23    We've been pretty much able to clear our calendar.  So there

24    should be no problems with proceeding at that point in time.

25        Now, counsel, I've been told through papers that you

1    anticipate that this trial will go seven to ten days.  Really?

2           MR. KANOVITZ:  From plaintiff's side, I do think it

3    could go that long.

4           THE COURT:  Well, no.  I'm just saying the other way

5    around.

6           MR. KANOVITZ:  Oh, I see.

7           THE COURT:  It doesn't -- and I am not one to make

8    sense out of anything right here, but it doesn't seem like,

9    with the number of witnesses that are being proposed and the

10   number of issues that are being proposed, there is any way to

11   try this within seven to ten days.

12          MR. KANOVITZ:  One could hope for two weeks, but it

13   could easily spill over into a third.

14          THE COURT:  Well, we'll get into some witnesses

15   here, or we will get into the number of witnesses.  We are not

16   going to go trudging through witnesses.  But I just want to be

17   as realistic as I can with regard to the trial schedule

18   because, obviously, we have other things going on, and I want

19   to make sure everyone has the opportunity to present what they

20   need to present.  But I also -- I need to have some realistic

21   timelines with regard to that.

22      Counsel, do you have any thought about it?

23          MR. McLANDRICH:  Well, I think that the case is more

24   complicated from the plaintiff's side than it is from our

25   side.  You know, they've got 285, whatever it is, exhibits.  I

5

1    know they probably don't plan on using them all, but, you

2    know, our list is probably a fourth maybe, or less than that.

3           THE COURT:  And that's assuming they are all going

4    to be admitted.

5           MR. McLANDRICH:  Right, exactly.  And I intend to be

6    fairly quick with witnesses.  I notice there is a lot of Kevin

7    Cobb in there, and I understand they feel they need to prove

8    Mr. Gillespie's innocence, but from the exhibits, it seems as

9    if they plan on putting on the criminal case against Kevin

10   Cobb.  You know, I don't know exactly what they envision, but

11   the length of the trial will not be driven by defendants.

12          THE COURT:  Any response to that?

13          MR. KANOVITZ:  Well, we do intend to put on evidence

14   of Mr. Gillespie's innocence.  There will be alibi witnesses.

15          THE COURT:  Is innocence an issue here?

16          MR. KANOVITZ:  If they are going to say he's guilty,

17   it certainly is an issue.

18          THE COURT:  I don't know whether they are going to

19   say he's guilty.

20          MR. KANOVITZ:  I suspect that they are not going to

21   agree that he is innocent, but, I mean --

22          THE COURT:  I imagine, aren't the words "wrongfully

23   convicted"; isn't that it?

24          MR. McLANDRICH:  So from our perspective, you know,

25   I haven't made all the trial decisions, if you will, but I

*Mary A. Schweinhagen, RDR, CRR  (937) 512-1604*

```
 1    don't know whether he is guilty or not.  And I think that's

 2    how --

 3              THE COURT:  There you go.

 4              MR. McLANDRICH:  -- the case is going to go to the

 5    jury.

 6              MR. KANOVITZ:  I believe that --

 7              THE COURT:  Who's made the determination that he's

 8    innocent?

 9              MR. KANOVITZ:  He's got to prove his innocence.

10    It's relative to his damages.

11              THE COURT:  Well, so in which action -- in what part

12    of the action is that relevant?  He's wrongfully convicted.

13    He's imprisoned.  You've stipulated basically everything that

14    is contained within those court proceedings with regard to

15    that, my understanding is, from reading your pretrial.

16              MR. KANOVITZ:  His innocence is, of course, relevant

17    to his damages.  It is also relevant to the false

18    identification claim because the expert is going to say that,

19    assuming you find that he is innocent, then there had to be

20    more here than meets the eye because you could not get a false

21    identification from three separate witnesses based upon the

22    diversity of fillers we see here.

23              THE COURT:  I understand.  Who found him innocent?

24              MR. KANOVITZ:  He's going to be proving to this jury

25    his innocence.
```

1       THE COURT: So you are proposing to try a criminal

2 case here in front of them?

3       MR. KANOVITZ: Not, not -- we don't have to retry

4 his whole criminal case, but when he is on the stand, he is

5 going to talk about the fact that he is innocent. He is going

6 to talk about the pain of being in prison as an innocent

7 person, the anger that you go through.

8       THE COURT: All right. Well, okay. I understand.

9     Counsel, what I would ask is, as we go through this, I

10 need to bring to your attention the Court's Dayton General

11 Order 1201, and I need you to pay close attention to that

12 civility thing, the order on civility and professionalism. I

13 am not, I am not here for your entertainment. I am not here

14 and this Court's not here for any kind of foolery. I am here

15 to hear your claims. I am here, this Court's here to hear the

16 defenses, and the Court is here to administer justice. I am

17 not here for attacks or arguments, sniping; I'm not here for

18 that. So consider yourself warned.

19     So seven to ten days, huh? Okay. We are going to have a

20 jury of eight. It can go to the jury as long as we have at

21 least six. So understanding that you are saying it's going to

22 take seven to ten days, maybe bleed over into a third week, I

23 believe that's a sufficient number of jurors. Anybody have

24 any problem with that?

25       MR. KANOVITZ: Not from plaintiff, Judge.

1          MR. McLANDRICH:  No, sir.

2          THE COURT:  And, of course, as you are all aware,

3     each side has preemptory challenges, three preemptory

4     challenges, and we'll basically entertain those challenges for

5     cause.  Usually, the way I pick my jury is the fact that we

6     will bring everyone in here.  We will seat the first -- we

7     will seat the first eight.  The Court will have some

8     questions.  The Court will then turn the questioning over to

9     counsel.

10         My only real rule is that we aren't redundant in our

11    questioning.  We don't ask what someone else has asked.  We

12    don't argue the law at that point in time to anybody.  And

13    other than that, I don't put too many restrictions on you

14    until I believe that I need to put restrictions on you.  So I

15    let you pretty much choose your jury.

16         Once we have completed the questioning, it's important

17    during that questioning that you identify everybody, make sure

18    you are familiar with everybody, because I remove the jury.

19    And that's when we exercise our challenges for cause and our

20    peremptory challenges.

21         So what happens is we start out with eight.  And then

22    challenges for cause, if we excuse them, we move up.  They

23    will all be numbered back there initially, so you will know

24    who's next, who's next, who's next, who's next.  So as people

25    are excused, either because of challenge or because

```
 1   peremptory, then that person, you can perceive in your mind

 2   that person taking that person's place.

 3       Questions?

 4           MR. KANOVITZ:  Yeah.  So you put eight in the box?

 5           THE COURT:  Right.

 6           MR. KANOVITZ:  If we're going to exercise any

 7   peremptory against any of those eight, we have to do it at

 8   that time?

 9           THE COURT:  Well, we do the challenges for cause.

10           MR. KANOVITZ:  Okay.

11           THE COURT:  And once we do the challenges -- and the

12   challenges for cause will go to the entire panel now -- I'm

13   sorry.  I should have said that at the beginning -- to the

14   entire panel, prospective panel.  Once we are done with that,

15   then we have -- then with regard to those sitting in the eight

16   or what you -- what will now be sitting in the eight, that's

17   when you will exercise your peremptory challenges.

18           MR. KANOVITZ:  Okay.

19           THE COURT:  One, one; one, one; one, one.

20           MR. KANOVITZ:  And then we just keep putting more

21   people in the box?

22           THE COURT:  As you excuse people, that person then

23   will move in.  Now, I am saying that.  You are not going to

24   see that happen, but you are going to say, "We are excusing

25   Juror Number 8."  Saying nobody's knocked out because of
```

1    cause, you are saying, "We excuse Juror Number 8," you know

2    that Juror Number 9 is going to take Juror Number 8's place.

3            MR. KANOVITZ:  Got it.

4            THE COURT:  Next person, Juror Number 10, will take

5    that juror number.

6        Any questions?  Yes.

7            MR. OWENS:  Thank you, Your Honor.  Does the Court

8    use any jury surveys in advance?

9            THE COURT:  There are questionnaires that will be

10   here usually the Wednesday before.

11           MR. OWENS:  Okay.

12           THE COURT:  So whatever that is.

13           MR. OWENS:  And we can pick them up then?

14           THE COURTROOM DEPUTY:  Counsel, when you drop off

15   your exhibits -- sometimes you will drop them off -- you can

16   go to 7, go to 712, ask for James Tosto, and he should have

17   them ready for you.

18           MR. OWENS:  Thank you.

19           THE COURT:  So once we exercise all the challenges

20   for cause, the peremptory challenges, and we have a jury, then

21   we will call the entire panel back up here.  I will excuse

22   those that have not been selected.  We will then empanel the

23   jury for your case.

24       The Court at that point in time will do some initial

25   instructions.  We'll swear them in, do some initial

```
1    instructions.  We will move right on to then your opening

2    statements.  Sometimes I regret saying this.  I don't put any

3    time limits on that opening statement, but -- well, I don't.

4            MR. KANOVITZ:  Will the preliminary instructions

5    include some guidance on the law that applies, or is it more

6    just about procedure?

7            THE COURT:  It will be about procedure.  Well, I

8    will deal with some -- I will deal with some law, but it's a

9    very general law.  It's not applied to your -- it really

10   wouldn't -- I could give that in about any civil case.

11           MR. KANOVITZ:  Okay.

12           THE COURT:  Anybody have a question about that?

13   Yes, Ms. Frick?

14           MS. FRICK:  Your Honor, and you may be sort of still

15   figuring this out as well, but --

16           THE COURT:  I am figuring out a lot.

17           MS. FRICK:  In terms of peremptories, one, and jury

18   selection, are we involved at all; and, two, in opening, can

19   we give any opening?  And I don't know in terms of jury

20   because I don't know if you are going to let the jury decide

21   any factors that we've laid out or if you are going to save

22   that for yourself.  Or if, again, we can give any kind of

23   opening.

24           THE COURT:  My initial thought is, Ms. Frick, that I

25   thought that we had, I think, your motion to intervene as well
```

```
 1    as the Court's order on the motion to intervene laid out

 2    certain parameters --

 3              MS. FRICK:  Sure.

 4              THE COURT:  -- with regard to the participation.  At

 5    this point in time, my inclination is no with regard to

 6    selection of jurors.

 7              MS. FRICK:  Okay.

 8              THE COURT:  But like you said, I'm still figuring it

 9    out.  But at this point in time, no.

10              MS. FRICK:  Okay.

11              THE COURT:  All right.

12              MR. McLANDRICH:  Your Honor, if I might?

13              THE COURT:  Sure.

14              MR. McLANDRICH:  Has the motion -- has the

15    intervenor's complaint been deemed filed at this point on the

16    docket?

17              THE COURT:  I haven't seen it.

18              MS. FRICK:  It will be filed today.  I was just sort

19    of waiting for this in case anything came up that -- I don't

20    know.  I just waited till after this.  But it will be filed

21    today.

22              MR. McLANDRICH:  I am just in my head contemplating,

23    you know, answer, motion practice potentially with respect to

24    the intervenor's complaint, bifurcation with respect to the

25    intervenor's complaint, you know, things that are spinning off
```

1   of that.

2          THE COURT:  I know.  I've been thinking about them

3   too.

4          MR. McLANDRICH:  Yeah.  Whether, frankly, the

5   version of 2744.07 that's currently in effect applies to the

6   determination of that intervention complaint versus the law

7   that might have been in effect in 1990, 1988, you know, so

8   forth.

9          THE COURT:  Well, counsel, here's what we'll do.  I

10  mean, as soon as it is filed, we will try to issue -- we'll

11  have to do some type of an expedited process because,

12  obviously, we're getting close.  And the Court has a number of

13  different issues to have to deal with with regard to the --

14  with regard to the process.  And so as soon as -- as soon as

15  that is filed, we will put on some type of an order of some

16  guidance with regard to responses and things like that.  How's

17  that sound?

18         MR. McLANDRICH:  I think that's fine, Your Honor.

19  It's certainly a good start.  I mean, there's other obvious

20  issues that surround this, and, you know, I don't want to

21  raise them when the Court's not ready for them, but at some

22  point they are certainly going to merit discussion.  I mean,

23  I've got substantial concern about plaintiff examining

24  Defendant Moore during the liability phase of this trial.

25         THE COURT:  I understand that, yeah.

```
1         MR. McLANDRICH:  And so that, you know, again, I

2   don't know when the Court would envision having that dialogue,

3   but it's just something I want to make sure that I raise

4   before it skips out of my mind and it doesn't get raised

5   today.

6         THE COURT:  Well, we'll -- and that goes, of course,

7   also to the fact that there has been a -- there has been some

8   indication or some mention of bifurcation.

9         MR. McLANDRICH:  It's our intention to file a

10  motion.  I apologize it hasn't been filed yet, but it will get

11  filed shortly.

12        THE COURT:  All right.  Well, obviously, you see,

13  there is a number of things that are being filed and a number

14  of things worth looking at, and so we'll deal with them as

15  quickly as we can.  But I think that plays right into

16  everything too.  So whether or not we do the liability and the

17  damage together or we bifurcate those, or do we bifurcate it

18  even as a further bifurcation.

19        MR. McLANDRICH:  Agreed.  And, frankly, one of the

20  thoughts I have had over the last two days on this issue is so

21  in the current version of the statute, it talks about there

22  being a hearing by the Court on the issue of the duty to

23  defend and indemnify.  It seems to me that there might be a

24  substantial advantage to that issue being decided first,

25  before any of the other issues are decided.
```

1          MS. FRICK:  Your Honor, if I may.  I think that only

2   applies in the event that we decline to cover the defense.

3   And at this point we haven't.

4          MR. McLANDRICH:  I don't think -- I don't agree with

5   that, but we can have that dialog at a further time.

6          THE COURT:  Well, and you two probably know more

7   about that right now than I do, but I am more than happy to

8   look at it.  But it sounds like to me we are going to have a

9   complaint filed.

10         MS. FRICK:  Yes, Your Honor.

11         THE COURT:  We are going to have a motion to

12   bifurcate.

13         MR. McLANDRICH:  Yes, sir.

14         THE COURT:  And the Court will be putting on some

15   type of direction with regard to responding to the complaint.

16   Probably with regard to the motions too.

17         MR. McLANDRICH:  Thank you.

18         THE COURT:  Just a couple housekeeping things with

19   regard, I am inclined that we will continue to refer to the

20   victims, these three victims by their initials when we go to

21   trial.  Is there any big objection to that?

22         MR. McLANDRICH:  No.

23         MR. KANOVITZ:  No.

24         THE COURT:  I know some pleadings have initials,

25   some pleadings have names.  I just -- I would prefer to do

1       that.

2           The other thing is a correction.  On page 3 of your --

3       well, the proposed final pretrial report, as well as the

4       revised final pretrial report, it does indicate that the

5       sexual assault of S.C. occurred on August the 5th of 2020.  I

6       am assuming that that should be 1988.  Correct?

7                   MR. OWENS:  Yes, Judge.

8                   THE COURT:  I don't want to be putting out an order

9       that has something different.

10                  MR. OWENS:  Thank you.

11                  THE COURT:  Okay.  We have proposed -- oh, the other

12      thing I need is counsel for plaintiff, if you can, you need to

13      email us a Word version.  I thought that was in the order, in

14      our general order, but you need to file a Word version of the

15      final pretrial order or the proposed final pretrial order so

16      we can make whatever changes we are going to make.

17                  MR. KANOVITZ:  We'll do that, Judge.

18                  THE COURT:  Now, the parties in the pretrial report

19      have proposed stipulations that do address the habeas order in

20      2011, the 2012 Ohio court order, the 2017 court order, as well

21      as the 2021 declaration of wrongful imprisonment.  But I also

22      notice that in addition -- I'm assuming those stipulations are

23      still there, right?  I mean, parties are ready to stipulate to

24      that?

25                  MR. McLANDRICH:  Yes, I would think so, Your Honor.

1    If we put it in the final pretrial, I would say yes.

2            THE COURT: But I also notice that there is a number

3    of exhibits that identify a number of the court documents from

4    those early actions that involve Mr. Gillespie, including but

5    not limited to a host of transcripts of the earlier cases, the

6    2021 order declaring Mr. Gillespie wrongfully incarcerated,

7    the federal habeas petition, the Court's opinion in the *State*

8    *of Ohio versus Gillespie* on 2012 Ohio 2942, and another state

9    court opinion, an order granting Gillespie a motion to dismiss

10   indictment, as well as a motion to dismiss indictment, and a

11   number of other documents.

12       Are you actually considering offering those?

13           MR. KANOVITZ: I believe that it would be highly

14   unlikely that they would become relevant. That said, there is

15   this potential fight over what is really the meaning, you

16   know, of the fact that he wasn't adjudged innocent, and we

17   would need to prove that that doesn't mean that there was a

18   finding that he's not innocent, and that, you know, basically

19   he was disadvantaged by the lack of the DNA evidence, which is

20   the only route that he had available to him with which to get

21   an order that he was actually innocent.

22       So, I mean, I'm sorry to cut you off, Your Honor.

23           THE COURT: No, no. You didn't cut me off. I

24   haven't started yet.

25           MR. KANOVITZ: But to summarize, hopefully things

1    don't go that direction, but we want to be prepared if they

2    do.

3            MR. McLANDRICH:  I'm not sure what any of that

4    meant, Your Honor.

5            THE COURT:  What I said?

6            MR. McLANDRICH:  No, what he said.  I understood

7    exactly what you said.  I don't understand the point he is

8    making.  I mean, the statute speaks for itself with respect to

9    what it means to be a wrongfully convicted person.  What it

10   means is that there was a procedural defect, and that's what

11   occurred in Mr. Gillespie's case with respect to his trial,

12   and his conviction was therefore vacated.  That's what we

13   know.  That's what happened.

14           MR. KANOVITZ:  I'm sorry, Judge.  So two things.

15   One is the basis on which his conviction is overturned is

16   obviously relevant to malicious prosecution, and even though

17   the statute --

18           THE COURT:  Well, you got that -- don't you have

19   that in the stipulations?

20           MR. KANOVITZ:  That would be -- I'm sorry, Your

21   Honor.

22           MR. OWENS:  Your Honor, I think, so the prospective

23   is -- and I understand the Court's concern about not

24   duplicating the proceedings, but the manner in which I think

25   that this will -- evidence will come in is the stipulations

1  provide a very high level, this happened, this happened --

2           THE COURT:  Right.

3           MR. OWENS:  -- but the jury doesn't have an

4  understanding of what happened.  And I tried to explain this

5  to counsel for Moore earlier this week is so, for example,

6  when a witness -- and most of this stuff will come in through

7  the post-conviction attorney who will say we did this, then

8  this happened, and here was the basis.  If that attorney needs

9  that for those exhibits, I have marked them for identification

10 so he can say this is this and to refresh his recollection,

11 because there was a long litigation.

12     So it's not our intention to offer every single one of

13 these in terms of substantive evidence.  And the way I think,

14 just having practiced all over the country at this point, I

15 think some -- there is maybe two different ideas of what's

16 going on with the exhibit list happening.  On one hand, I want

17 to just make sure that anything that we might use --

18          THE COURT:  I think that is totally clear, Counsel.

19 Or anybody that even imaginally knows about anything, I

20 assume.  Because I don't know how many witnesses you've got.

21          MR. OWENS:  Certainly.  And so as a follow-up to

22 that, the conversation that we had with counsel for Mr. Moore

23 as it relates to these issues is that we wanted to provide the

24 jury at the outset with here's just generally the arc of what

25 happened, you know, from the beginning to the end, but,

1    obviously, the jury is going to need the meat on the bones.

2        So, for example, this doesn't have anything about what

3    the trial evidence was, and, of course, you know, there were

4    identifications made at trial.  This doesn't have the basis

5    for which Mr. Gillespie's conviction was overturned by two

6    separate courts.

7        THE COURT:  So I understand all that.  I understand

8    what you're saying.  So the relevance of the documents, the

9    orders by the Court, the opinions by the Court, what does that

10   do for him?

11       MR. OWENS:  The jury should know the basis for

12   which -- and it will assist in the testimony of witnesses

13   likely to testify about those matters.  So, for example,

14   Mr. Godsey, probably, I know he is familiar with the case but

15   may not have encyclopedic knowledge of all of these documents,

16   and it is there to assist our -- his examination.

17       THE COURT:  But the documents you are stipulating --

18   I mean, basically the results of everything is being -- okay.

19   You are going to attempt to enter those?

20       MR. OWENS:  We may use them with Mr. Godsey, yes,

21   Your Honor.

22       THE COURT:  All right.

23       MR. McLANDRICH:  So, Your Honor, I mean, we did have

24   some of this conversation.  It doesn't mean I agreed to it,

25   right, just to be clear.

```
 1              THE COURT:  No.  I understand.  Nobody's agreeing to

 2    anything.

 3              MR. McLANDRICH:  Just to be clear on the record.

 4              THE COURT:  I am just trying to find out what I am

 5    being faced with.  I am not telling you how I am going to rule

 6    either.

 7              MR. McLANDRICH:  Right.

 8              THE COURT:  But like I said, I'll try to give you

 9    every opportunity to do what you think you can do, but --

10              MR. McLANDRICH:  But, for instance, with respect to

11    Mr. Godsey, there's a couple of issues.  One, they've got him

12    down as an expert, which --

13              THE COURT:  I understand.  We are going to get to

14    the experts in just a second.

15              MR. McLANDRICH:  But even from a factual standpoint,

16    and at the risk of sounding flippant, what does it matter what

17    the history of the litigation was with respect to his efforts

18    to become an exonerated person?  That does nothing to prove or

19    make more likely that Detective Moore did or didn't engage in

20    some violation of a constitutional right.  It's just

21    completely irrelevant and prejudicial and --

22              THE COURT:  Well, but maybe there could be some

23    differences between -- between -- maybe.  I'm not saying there

24    is -- maybe a difference between liability and damages and

25    things there, maybe.  Maybe.
```

1          MR. McLANDRICH:  Okay.  Setting that aside for a

2   moment.

3          THE COURT:  Okay.

4          MR. McLANDRICH:  The idea that the opinion of Judge

5   Merz could come into evidence is to me extremely disturbing

6   given that it's got no binding precedential value against

7   Mr. Moore and can only be --

8          THE COURT:  Counsel, the only thing that's been said

9   is that they may try to --

10         MR. McLANDRICH:  Okay.  Premature perhaps.

11         THE COURT:  I don't know if it's premature.  I

12  understand what your position is.

13         MR. McLANDRICH:  Thank you.

14         THE COURT:  Well, I guess this next -- my next

15  question is -- maybe it's already been answered -- but

16  assuming that the stipulations 1 through 8 are -- which

17  basically, I think, relate to the requirements of

18  Mr. Gillespie's malicious prosecution claim, I guess you've

19  explained to me why you believe, in a roundabout way, why you

20  believe that Stipulation 9 is -- provides anything further.

21  But I understand what you are saying now, I guess.

22         MR. KANOVITZ:  May I ask a related question?

23         THE COURT:  Sure.

24         MR. KANOVITZ:  When you read the statement of the

25  case to the jury, will you include the stipulated facts, or is

1    that something we should bring up during trial?

2          THE COURT:  They'll be -- we can -- we'll determine

3    that.  The stipulations, if there are actually -- if there are

4    stipulations, which I understand there are, or at least that's

5    what the final, proposed final pretrial report and its changes

6    still allege, or still put forth, the Court will -- I will

7    most likely read the -- any stipulations to the jury.

8          MR. KANOVITZ:  Thank you.  That answers my question.

9    Sorry.

10          THE COURT:  Well, I guess I didn't -- maybe you did

11    want to -- but allowing, if I allow these stipulations, if we

12    put these stipulations, specifically 1 through 8, what is --

13    can you explain the reason then to allow the Stipulation

14    Number 9 about the 2021 wrongfully convicted imprisonment?

15          MR. OWENS:  Sure, Your Honor.  This is David Owens,

16    since we are on the record, just to make it clear.

17      So I think there is a number of things.  One, as my

18    co-counsel mentioned, I think this is relevant to the issue of

19    the malicious prosecution claim.  I think that it's relevant

20    to Mr. Gillespie's --

21          THE COURT:  Don't you have the -- basically, didn't

22    those other stipulations through 8 do it?

23          MR. OWENS:  I do.  But in a case -- and we're

24    hearing something new from Mr. Moore today, is that they may

25    not necessarily question Mr. Gillespie's guilt or innocence.

1  Now, if they were to concede it outright, then we would be in

2  a different --

3          THE COURT:  Wait a minute.  I didn't hear that.

4          MR. McLANDRICH:  No.

5          THE COURT:  You are basically saying guilt or

6  innocence -- guilt or innocence, you believe, is not relevant.

7          MR. McLANDRICH:  No.  I do agree with him in one

8  respect.

9          THE COURT:  All right.

10         MR. McLANDRICH:  I think that his guilt or innocence

11  is relevant to damages.  But the idea that I'm going to get up

12  there and say "This guy's guilty," I don't agree with that.

13  What I am going to say is "Two juries found him guilty."

14  Certainly we know that.

15         THE COURT:  I doubt seriously whether anyone is

16  going to get up and say that.

17         MR. McLANDRICH:  The evidence may convince the jury

18  that he's guilty, but I don't know whether he is guilty or

19  innocent.

20         MR. OWENS:  So there's -- well, go ahead.

21         MR. KANOVITZ:  So the question of guilt and

22  innocence is going to be very much in the jury's mind based

23  upon how I hear counsel saying the evidence might come in and

24  the arguments might come in and --

25         THE COURT:  So if I bifurcate this --

```
1              MR. KANOVITZ:  I still believe that on the witness

2    identification, the manipulation of the identification claim,

3    proving his innocence is relevant to proof of the manipulation

4    on the identification.  And, you know, if they raise the

5    motion, we'll present that to you in the context --

6              THE COURT:  I'm not following.  I -- well, okay.

7              MR. KANOVITZ:  If you want.  So there is an expert

8    on eyewitness identifications who will opine that if he is

9    innocent, you would not get three separate people falsely

10   identifying him unless there was contamination coming into the

11   identification process.

12             THE COURT:  So the opinion's going to be that this

13   lineup, this expert's opinion on this lineup is determinative

14   of whether he is guilty or not?

15             MR. KANOVITZ:  No, no, no.  Not at all.  The

16   question of his innocence will be for the jury.  But the

17   expert's opinion is if he is innocent, this didn't happen

18   absent contamination of the identification procedure.

19             MR. OWENS:  Your Honor, if I may.  So I think as far

20   as the identification claim goes, like there is a question,

21   was Mr. Gillespie misidentified or not, is he guilty or is he

22   innocent.

23             THE COURT:  Right.

24             MR. OWENS:  And so if the jury is convinced that the

25   three victims made a misidentification, that supports an
```

1    inference that the evidence was unreliable and that it was the

2    result of undue suggestion in violation of the constitution.

3         THE COURT:  And, therefore, he was improperly

4    convicted and imprisoned.

5         MR. OWENS:  It's circumstantial evidence to -- that

6    provides substantive -- you know, so Mr. Gillespie's fair

7    trial, right, you know, to not have unreliable

8    identifications.

9         THE COURT:  Right.

10        MR. OWENS:  And if a jury says -- if a jury believes

11   "Hey, wait, this guy is really innocent and -- but three

12   different people identified him and said that that was the

13   person," now, there may be some innocent explanations for that

14   that the jury could credit.  The jury could also credit our

15   argument and use this as circumstantial evidence saying that

16   probably didn't happen via chance.  It was the same person who

17   did all of the identifications and says he did them in the

18   same manner and other evidence.

19        THE COURT:  I'm following your reasoning, Counsel.

20   I really am.  I am not trying to cut you off, but I do follow

21   you.  I do follow you.  I understand what you're saying.

22        Moving on to the contested issues of fact.  Number 3 on

23   page 5 talks about whether plaintiff's claim for suppression

24   of exculpatory evidence includes allegations about Moore's

25   failure to disclose evidence of his own alleged misconduct in

1    how he obtained the witness identification, created the photo

2    array.  I guess that's what we're talking about here.  So

3    basically, there is a question of what?  Explain that to me.

4            MR. OWENS:  Yes, Your Honor.  So the conversation

5    that I had with Mr. McLandrich, and I hope I characterize it

6    correctly, is that it was our understanding, as we put in our

7    summary judgment brief, that part of *Brady* claim includes an

8    officer's failure to disclose their own conduct during the

9    course of their actions.

10       And Mr. McLandrich raised the issue, isn't that just the

11   same thing as saying the photo array is itself suggestive, or

12   something like that.  It was our position and in the briefing

13   that we filed and a number of cases cited that an officer's

14   failure to disclose their own misconduct is itself part of the

15   due process.

16           THE COURT:  So not only misconduct but the failure

17   to disclose his misconduct.

18           MR. OWENS:  Correct.

19           THE COURT:  Okay.  Defendant.

20           MR. McLANDRICH:  Yes, sir.

21           THE COURT:  The additional contested issue of law

22   that you state on page 6, I think that talks about nominal

23   damages and things, and, of course, obviously, this depends on

24   how we proceed or how I decide I'm going to do this.  How are

25   you going to proceed?  Is that something that's going to be

1   raised through a proposed jury instruction?  Is that what

2   we're going to do?

3           MR. McLANDRICH:  Yeah, a jury interrogatory.  You

4   know, it's *Carey versus Piphus*, right; if he would have been

5   convicted notwithstanding the procedural defect, then the

6   procedural defect isn't the proximate cause of the

7   incarceration.  Therefore, it's a nominal damage.

8           THE COURT:  I just wondered how that was going to go

9   about.  I just need to know how you guys are going to go.

10  That's what I need to know.  I need to anticipate what's

11  happening here.

12      Now, page 6, the second additional contested issue of

13  law, is that the same issue that is now pending before the

14  Court on the --

15          MR. McLANDRICH:  Yes, sir, the motion of judgment in

16  the final pleadings.

17          THE COURT:  All right.  Then, of course, like you

18  say, your fourth question or your fourth possible issue is the

19  bifurcation.  And you are planning to file it?  Is plaintiff

20  objecting to the bifurcation?

21          MR. KANOVITZ:  We are, Your Honor.

22          MS. FRICK:  Your Honor, if I may, as well.  I am not

23  sure what they mean by the Township's liability unless they

24  are meaning liability as to indemnification, because

25  liability, we've been dismissed.

1          THE COURT:  I assume -- my assumption is that they

2     mean liability with regard to the -- well, I assume they are

3     talking about subrogation.  Who wants to answer that question?

4          MR. McLANDRICH:  I didn't draft it, but I am sure it

5     means the indemnification issue.

6          THE COURT:  The indemnification, I'm sorry.  Yes.

7          MR. OWENS:  Thanks.

8          THE COURT:  And you are indicating that that's

9     coming down the road, right?

10         MR. McLANDRICH:  Yes.  There is a draft ready for me

11    to review, and I will make the edits, and we will get it

12    filed.

13         THE COURT:  I'm on the edge of my chair.

14         MR. McLANDRICH:  I can only imagine.  Thank you.

15         THE COURT:  Aren't you, fellas?

16      If that is filed, there is going to need to be -- I am

17    going to have to accelerate briefing schedule on that,

18    everyone.  I mean, it's going to have to happen.  I'd ask you

19    what you need, but I am not going to pay any attention to

20    that.

21      And I guess everyone has talked -- I'm not necessarily

22    looking to the plaintiffs because they may not have -- but I

23    assume everyone has considered possibly further bifurcation of

24    certain damages and things such as that, and just an inquiry.

25         MR. KANOVITZ:  Your Honor, are you referring to

1    punitive damages?

2           THE COURT:  Well, I could be referring to -- I could

3    be -- yes, I could be.

4           MR. KANOVITZ:  Because there is a pretty good

5    possibility that we will be dismissing our punitive damages

6    claim before trial.  That's something we've been discussing

7    today.

8           THE COURT:  I wondered about that.

9           MR. KANOVITZ:  Fair enough.

10          MS. FRICK:  Your Honor, to the extent that becomes

11   an issue, we may ask, if there is any kind of Mary Carter

12   agreement or something like that, we may look into whether

13   that is something that needs to be disclosed to us.

14          MR. KANOVITZ:  There is no Marys; there is no

15   Carters.

16          MR. McLANDRICH:  There is no agreements of any kind.

17          THE COURT:  That address your concern, Ms. Frick?

18          MS. FRICK:  I think so.

19          MR. OWENS:  Your Honor?

20          THE COURT:  What?  I'm sorry.

21          MR. OWENS:  I apologize.

22          THE COURT:  No, no.  You don't need to apologize.

23          MR. OWENS:  I understand the Court's goal here is to

24   understand what's coming down the pike, and I want to try to

25   reduce the number of things that I have to file, frankly.

1      So we intend to raise objections as to the timeliness of

2  any motion to bifurcate.

3          THE COURT: I think you have already done that,

4  haven't you?

5          MR. OWENS: It's in the pretrial order, yes. I

6  guess the question I have is, as opposed to filing a separate

7  motion --

8          THE COURT: Couldn't you file a response as to the

9  motion to bifurcate?

10         MR. OWENS: Yes, Your Honor.

11         THE COURT: I'm sorry. You were going to say that,

12  weren't you?

13         MR. OWENS: That was going to be it, but just to

14  understand we're all on the same page about it being self-

15  contained within that response.

16         THE COURT: And I understand plaintiff has some

17  over-arching objections as to some things that were submitted

18  after a deadline or something like that, but I think that can

19  be laid at the feet of everybody here.

20      All right. Some of these may have been answered. You've

21  already indicated to me that you intend to call the witnesses

22  that are on your call or that you will call, or I don't know

23  what your language was, that you plan to call, but then the

24  other plethora of witnesses are what?

25         MR. KANOVITZ: I mean, frankly, they are floating

1    around out there.

2         THE COURT:  There are a plethora, right?

3         MR. KANOVITZ:  Our intention will be -- and

4    obviously, this will be communicated to the other side -- that

5    as we are able to get closer to trial and get more focused,

6    there is people I am sure we will be able to cut before day

7    one.

8         THE COURT:  Are you talking about your may call or

9    are you talking about -- to be real honest, both sides have

10   may-call people.  And so I understand those.  I'm more

11   concerned with what -- I'm more concerned about what you plan

12   to call during this trial that's only going to take seven to

13   ten days.  That's what I'm concerned about.  And if those

14   could be narrowed -- I am not saying you should -- I am just

15   saying if those could be narrowed, we need to know.

16     And I would encourage exchange here.  Let everybody know

17   what's going to be done, to the best of your ability.

18        MR. KANOVITZ:  So I think it could result in us

19   cutting will-call witnesses as well as may-call witnesses.

20        THE COURT:  Okay.

21        MR. KANOVITZ:  And, obviously, if we cut a will-call

22   and they want to put them on their list, you know, so be it.

23        THE COURT:  You don't care, do you?

24        MR. McLANDRICH:  Well, I mean, you know, it's a

25   hypothetical that I can only address when it becomes a

1    reality.  I mean, you know, I have got the people on my list

2    that I intend on calling.  If they drop somebody, like I

3    have --

4            THE COURT:  Counsel, that's a privilege you have.

5    I've got to -- I've got to imagine what's going to happen.

6            MR. McLANDRICH:  I appreciate that.

7            THE COURT:  I understand where you're at.  I

8    understand where you're going.  I'm just trying to get some

9    parameters here.

10        I know one of your witnesses is deceased.

11           MR. McLANDRICH:  Officer Gray.

12           THE COURT:  I don't know.  Is that --

13           MR. MAYER:  It's Kevin Cobb.

14           MR. KANOVITZ:  I think we are going to have a hard

15   time getting him under subpoena.

16           THE COURT:  You probably are.

17        Go ahead.

18           MR. OWENS:  Yes, Your Honor.  So I do believe

19   evidence will come in concerning Mr. Cobb from -- as part of

20   the post-conviction process from 2012, Mr. Cobb was

21   interviewed as part of that process, I think it will be maybe,

22   and so I wanted to make sure as an abundance of caution that

23   counsel knew that we might be trying to elicit some of that,

24   some of the statements that Mr. Cobb made during the post-

25   conviction process.  It's just I was trying to put everything

1    out there so no one's surprised.

2        And then just for completion, there are some deceased

3    witnesses who testified at the original criminal proceeding,

4    and there is another witness who was deposed in this case who

5    has passed away subsequently, Mr. Gray.  So there is no

6    other -- that's the intended nature for any witnesses who are

7    deceased, will fall into those categories.

8            THE COURT:  I know that Mr. -- what's his name,

9    Cobb? -- Cobb will be referred to.  I'm assuming I'm not going

10   to hear testimony from Mr. Cobb.

11           MR. OWENS:  Correct.

12           MR. KANOVITZ:  But there may be a circumstance where

13   his statements could be read to the jury as a hearsay

14   declarant, and I think that's just all we are trying to stake

15   out.

16           THE COURT:  Okay.  Ten experts.  Those, I assume --

17   okay.  Talk to me.  What if -- I assume there's been, at least

18   for some of them, been expert reports provided?

19           MR. OWENS:  Yes, Your Honor.

20           THE COURT:  And I'm assuming, this is basically just

21   my assumption, is that there are some that you are classifying

22   as experts that do not have expert reports?

23           MR. OWENS:  That's right, Your Honor, and those are

24   the ones to which Mr. Moore objects.

25           THE COURT:  Mr. Moore objects to that?

1          MR. McLANDRICH:  Yes, sir, Your Honor.

2          THE COURT:  Is that just a general objection to the

3     individual, or is it objection that you would object to those

4     folks qualified to offer anything other than factual

5     testimony?

6          MR. McLANDRICH:  Well, with respect to

7     Mr. Lieberman, Mr. Godsey, Mr. Petro, I certainly object to

8     them offering anything other than factual testimony.

9          THE COURT:  Right.

10         MR. McLANDRICH:  And, frankly, I don't know that

11    they have, other than Mr. Lieberman, relevant factual

12    testimony.  Mr. Lieberman was the criminal defense lawyer for

13    Mr. Gillespie.

14         THE COURT:  I am well aware of that.

15         MR. McLANDRICH:  The last four, I guess, are being

16    sort of characterized by plaintiff's counsel as some sort of

17    treating physician.  We have no records for these individuals.

18    And a treating physician isn't an expert; you know, they are

19    to a degree, but they are not in the same manner as an expert,

20    you know, in terms of offering prognosis and so forth and so

21    on.  There is a limit to what a treating can do.  But, in any

22    event, we have no records for these people, although I think

23    we may have like a letter for Susan Perry Dyer or something,

24    but I don't have any records for those other three.

25         And with respect to the first three, who are all

1   attorneys, the rule is clear, as well as the --

2           THE COURT:  Now you are back to Mr. Lieberman.

3           MR. McLANDRICH:  Mr. Lieberman and Mr. Godsey and

4   Mr. Petro.  With respect to those three, the rule's clear, as

5   well as your final pretrial order, that if there is no report,

6   there is no testimony.

7           THE COURT:  All right.  I'll deal with it.

8   Anything?

9           MR. OWENS:  We just disagree.

10          THE COURT:  I know you do.

11          MR. OWENS:  And they have been provided records,

12  some of which were sought and produced during discovery.

13          THE COURT:  Well, those --

14          MR. OWENS:  And, Your Honor --

15          THE COURT:  Go ahead.

16          MR. OWENS:  Sorry, Judge.

17          THE COURT:  No.  Go ahead.

18          MR. OWENS:  Some of the exhibits that counsel's

19  claiming not to have are on our witness -- or excuse me -- on

20  our exhibit list as it pertains to the medical treaters.

21          THE COURT:  Do they have them?

22          MR. OWENS:  They were produced like seven years ago.

23          MR. McLANDRICH:  So just to be clear, no medical

24  records were produced to us.  As I understand it, what I've

25  been able to reconstruct -- and I am sort of new guy on the

```
 1    file.  If I'm wrong, I apologize.  But what I understand
 2    happened is codefendant got a medical authorization for
 3    records.  Records were produced to codefendant pursuant to
 4    that authorization.  They sent copies to plaintiff with a
 5    letter that says "I'm not sending these to any of the other
 6    defendants.  If you want to send them, Mr. Plaintiff, go
 7    ahead."
 8        They weren't sent to us.  To the extent they are in the
 9    however many thousands of pages of exhibits, I haven't seen
10    them yet.  If they are in there, god bless.  To me, that seems
11    to be a day late, a dollar, you know, a dollar short.
12              THE COURT:  Okay.
13              MS. FRICK:  I mean, we only had an authorization for
14    us.
15              THE COURT:  It sounds like to me you were pretty
16    clear about that.
17              MS. FRICK:  Well, it wasn't quite worded that way,
18    but --
19              THE COURT:  All right.  Well, I mean, I guess I am
20    going to have to deal with it.  These are things that I am
21    going to -- now, I have some motions in front of me right now
22    that we are dealing with with regard to some of these
23    individuals.  But what I can't resolve now, I will just have
24    to resolve at trial.  And if I allow a witness, I allow a
25    witness; and if I don't, I don't.  Or if I limit a witness to
```

1   certain types of testimony, that's what he's going -- he or

2   she is going to be limited to.  That's not out of the

3   ordinary.  That's my life.

4       There are no -- this is kind of a funny question.  There

5   are no joint exhibits, right?

6           MR. McLANDRICH:  We had proposed some, and they just

7   chose, I think, for, frankly, convenience to do their own.

8           THE COURT:  Okay.  All I am trying to do is find out

9   if I am missing something.

10          MR. OWENS:  That's right.  There may be some

11  redundant exhibits that are on both lists, and I am sure

12  during the trial we'll --

13          THE COURT:  Well, there are redundant exhibits.

14  There are redundant witnesses and things like that.

15  Everybody's trying, you know, everybody's trying to do their

16  thing.

17      Previously, in a prior pretrial report, the parties

18  stated -- as a matter of fact, I think it was maybe several

19  times -- that there was no anticipation of testimony by

20  deposition.  Now, all of a sudden last night, I have, I think,

21  two people that are going to be presented by deposition?

22          MR. OWENS:  Yes, Your Honor.  So the Court -- as the

23  Court knows, it's been issuing a number of rulings about a

24  variety of matters, and in particular, Mr. Wilson is one that

25  we have now designated in light of potential issues related to

```
1    the Township's involvement in the case, which, of course, is
2    something that's still involving -- excuse me -- still
3    evolving.
4         And then with respect to Mr. Gray, it's been brought to
5    my attention that he had passed away.  We would have
6    potentially designated that earlier.  We provided that to the
7    other side.  And again, Mr. Gray also relates specifically to
8    issues that came up as a result of the Court's rulings on
9    motions in limine and in light of the ruling with respect to
10   the Township.
11              THE COURT:  Have the depositions been filed?
12              MR. OWENS:  They have.  They were filed in summary
13   judgment.
14              THE COURT:  All right.  And the designations?
15              MR. OWENS:  We've served them to the other side,
16   yes.
17              THE COURT:  When?
18              MR. OWENS:  Some were last week.  The ones for
19   Wilson were yesterday.
20              MR. McLANDRICH:  I, frankly, haven't had a chance to
21   review or react to either one of those yet, Your Honor.
22              MS. FRICK:  Your Honor, I guess to the extent that
23   they involve our involvement, I think I'd like to see them.
24              THE COURT:  It sounds like to me that one does.
25              MS. FRICK:  I haven't seen anything.
```

1        THE COURT: Right?

2        MR. OWENS: Sure.

3        MR. McLANDRICH: Your Honor, we may have an issue of

4   having to present one or more of our experts by hopefully live

5   video; if not, perhaps by trial depo.

6        THE COURT: Okay. Well, what's the status of the

7   Motion in Limine Number 4, defendant's motion in limine?

8   Well, and the reason I ask that is because we've held off on

9   it.

10       MR. OWENS: So at this point, Your Honor, on behalf

11   of plaintiff, I feel like we have a general agreement about

12   what's -- things that would be in and out. From our

13   perspective, the easiest thing to do would be to withdraw the

14   motion; and if any disputes come up about things that were

15   potentially contained in that motion, they would be things

16   that would be addressed at trial.

17       THE COURT: Counsel, are you able to address that?

18       MR. McLANDRICH: I do --

19       THE COURT: It's your motion.

20       MR. McLANDRICH: I think we do have basic agreement.

21   I mean, I was frankly trying to remember by number what it

22   was.

23       THE COURT: There is a lot of numbers.

24       MR. McLANDRICH: There are plenty of numbers. And I

25   think it had to do with the scope of what would come in

1    regarding the finding of being a wrongfully convicted person.

2          MR. OWENS:  It was the one about limiting the

3    evidence that -- for what Merz granted and the affidavits, the

4    polygraph, all that stuff.  He already ruled on the other one.

5          THE COURT:  Well, here's my dilemma:  My dilemma is

6    we are trying to get these things done so you guys know what's

7    happening before -- you need to know what the rules are before

8    you walk on the field.  And so I am trying to get them done.

9    We've held off on that one because you were in discussions,

10   and it's unclear to the Court with what has, if anything, been

11   resolved.  I either need the -- I guess I need a resolution.

12         MR. OWENS:  Can I make a proposal, Your Honor?

13         THE COURT:  You may.

14         MR. OWENS:  If it might assist the Court.  We have

15   to confer later about the joint statement of the case, which

16   is due tomorrow.

17         THE COURT:  Right.

18         MR. OWENS:  Why don't I propose that we address this

19   issue as well, and we will file some kind of notice with

20   respect to this motion after we have that conference.

21         THE COURT:  Counsel?

22         MR. McLANDRICH:  That's fine, Your Honor.

23         THE COURT:  Now, if you thought the other was a

24   little amusing, how about settlement?

25         MR. McLANDRICH:  So just, as the Court may or may

1    not be aware, one of the carriers already has a rule granting

2    it a declaratory judgment that it has no duty to defend or

3    indemnify.  That carrier had the largest coverage limit.

4        There is two other carriers.  They both now have

5    declaratory judgment actions pending.  One was part of the

6    original declaratory judgment case; the other just recently

7    filed.  So those carriers are not participating in settlement

8    discussions in any meaningful fashion, as you might imagine.

9        The Township, by virtue of its motion to intervene, is

10   obviously expressing its intention with respect to indemnity.

11   It likewise is not offering any substantial contribution

12   towards a settlement effort, which was one of the reasons that

13   it seemed to me that it might be appropriate to resolve the

14   intervention indemnity piece before proceeding with the rest

15   of the case, because that would provide clarity to everyone.

16   I can see why the Township wouldn't want to do that, but that

17   was the reason that that thought came to my mind.

18       But so we are -- there are offer and demand, but they are

19   leagues and leagues apart.

20       MR. KANOVITZ:  Just to be clear, they are not

21   leagues apart because we are being unreasonable.  There's

22   just -- there is a reasonable settlement to be had, there is

23   just not money to pay for it.  Nobody's putting anything on

24   the table to speak of.

25       It's a shame that the insurers are, you know, saying

1    count me out, and, you know, the Township has its position.

2    So there is no pockets to fund the settlement, or no willing

3    pockets.

4              THE COURT:  All right.  It's already been indicated

5    there is a joint statement due tomorrow.  There is also

6    proposed jury instructions due tomorrow.

7        I thought maybe it would be appropriate or helpful for me

8    to modify a little the order to maybe get more useful filings

9    to the Court.  What I was thinking was if we can have -- if

10   plaintiff does file and send an email copy in Word format of

11   its proposed jury instructions to the defendant and the

12   Township, and, of course, to the chambers, then the Township

13   would file and send an email copy of the Word format of the

14   proposed jury instructions and interrogatories, which must be

15   only in the discrete issues, lack of good faith and scope of

16   employment, consistent with 2744.07, to the plaintiff and the

17   defendant.  And then the defendant sends an email copy of a

18   red line, in Word format, of the plaintiff's proposed

19   instructions, which would indicate the portions of the

20   plaintiff's instructions to which it objects, and includes any

21   proposed additional instructions to plaintiff and the

22   Township.

23       The defendant then must file a clean copy of that red

24   line, therefore, not including any red lines but instead

25   accepting -- and I am going to put this in an order -- all of

44

1    its red line proposal changes as its own full set of proposed

2    jury instructions.

3        Also, plaintiff and defendant must send an email copy of

4    the red line in Word format of the Township's proposed items

5    to the Township and each other and to the chamber's email

6    address.

7        Then, finally, plaintiff must send a copy in Word format

8    of a red line of any proposed additional instructions of the

9    defendant which indicates the portions the defendant

10   instructions -- the defendant's instructions to which it

11   objects.

12       I am going to put that all in a -- it's fairly confusing

13   when I read it.  But we thought about it, and this would make

14   it better able to deal with jury instructions in this case.

15       Now, I understand, I understand there are still some

16   issues here, there are still some things to deal with, and I

17   understand all that.  But we need to start at some point in

18   time.  So, basically, what it's saying, plaintiff, over to

19   defendant Township.  They contribute, and it's back and forth,

20   but I'll lay it all out.

21           MR. KANOVITZ:  That makes sense to us, vis-a-vis the

22   main case.  We don't really completely understand what the

23   Township is going to be asking the jury to decide.  So we'd

24   rather -- if Your Honor would let us be in the position of

25   responding to what they are proposing since we don't know what

1    to propose.

2              THE COURT:  I think you will be given that.

3              MR. MAYER:  Yes, that is true.  And I think it's

4    going to be three phases.  The first is the plaintiff's jury

5    instructions, and the same day the Township's.  That's

6    tomorrow.

7              MR. KANOVITZ:  On the main case?

8              MR. MAYER:  On the main case.  And then the -- I

9    don't know if Judge is going to set the deadline -- but

10   probably a week later, it would then be the defendant's turn

11   to respond to what the plaintiffs propose, and for both the

12   plaintiff and defendants to respond to what the Township has

13   proposed.

14        And then the last would be -- because the defendant will

15   also put in any additional instructions they have, the

16   plaintiff would, a week after that, respond to those

17   additional instructions.

18        So it's similar to a dep designation.  You have

19   designated this.  Send it over to the other side.  They put in

20   their objections and their additional designations, and then

21   you respond to those additional designations.

22              MR. KANOVITZ:  If we disagree with the support that

23   the defendants are providing for their proposed instructions,

24   can we then also respond to address the case law that they are

25   relying upon?

1              MR. MAYER:  Sure.  And that's going to be in part of

2    the proposed jury instructions, will be each -- every single

3    instruction will have to have some kind of cited authority,

4    whether it's pattern jury instructions or some other

5    authority.  It could be a statue or something like that.  And

6    if there is disagreements about those, you can put that, you

7    know, in the papers there.

8              MR. KANOVITZ:  Fair enough.  Thank you.

9              MR. McLANDRICH:  Just one sort of point of inquiry,

10   clarification that's in my mind on this.

11             MR. MAYER:  One other thing.  This is just a

12   proposed jury instruction.  Of course, there is going to be an

13   actual charging conference at the trial.

14             THE COURT:  We are just trying to get parameters.

15             MR. McLANDRICH:  Sure.

16             THE COURT:  Go ahead.

17             MR. McLANDRICH:  With respect to the intervention

18   and the declaratory judgment, so I've not litigated a lot of

19   declaratory judgment, but my understanding is that declaratory

20   judgment is question of law for the Court.  The Court can

21   choose to have an advisory jury with respect to certain

22   factual issues that underlie the ultimate legal determination

23   that the Court has to make on the declaratory judgment.  So I

24   just wanted to sort of throw that out there while we're

25   talking about jury instructions, because there seems to be

```
 1    some sort of notion that the declaratory judgment is going to

 2    the jury.  And I think that issue of what facts are for the

 3    jury to decide relevant to the Court's legal determination of

 4    the declaratory judgment is where that sort of rubber starts

 5    to hit the road.  So I wanted to at least raise that issue.

 6              THE COURT:  I don't think that was what the Court's

 7    inclination was at all.

 8              MS. FRICK:  That really wasn't our inclination

 9    either.

10              THE COURT:  That the jury is going to get involved.

11              MS. FRICK:  I think they will see when we send what

12    we've prepared that that's not the route we were going.

13              THE COURT:  Okay.

14              MR. KANOVITZ:  We'll see what they send and then ask

15    them questions.

16              THE COURT:  I understand.

17         And if anybody, if any of the parties have -- this is a

18    unique case in some ways, and if anyone has dealt with this

19    type of a scenario before, I think -- I don't know.  You

20    fellows may have, but if you've got samples of other jury

21    instructions that have been proposed in some cases such as

22    that, if you can exchange those with other counsel and the

23    Court.

24              MR. KANOVITZ:  What we can dig up.

25              MR. McLANDRICH:  So there is one other issue I guess
```

1    I just, as I am sitting here, feel like I need to just say it;

2    so if you don't mind, I will.

3            THE COURT:  Go ahead.

4            MR. McLANDRICH:  With respect to the intervention,

5    now that it's happened, Mr. Moore got outside counsel with

6    respect to the issue of whether -- once upon a time, as I

7    think it's been recited in one of the pleadings, there was

8    some dialog between plaintiff and defendants where plaintiff

9    had indicated they might not pursue punitive damages if

10   Mr. Moore agreed to seek indemnity against the Township.

11       When the insurer that was paying for the defense got a

12   declaration that they didn't have to defend any longer, the

13   defense that I am providing is now being paid for by the

14   Township, okay?  So at that point I felt compelled that

15   Mr. Moore should have separate counsel for this question that

16   was raised by the plaintiff.

17       I don't get the impression that that private attorney --

18   because I don't think Mr. Moore can pay for him -- has an

19   intention to defend Mr. Moore with respect to this

20   intervention that has now happened.  That may fall to me.

21   That seems to me to put me in a position of needing -- in an

22   abundance of caution, not wanting to have bad things happen to

23   myself or my law firm -- get a conflict waiver from the

24   Township with respect to representing Mr. Moore and for

25   Mr. Moore with respect to defense of this intervenor's

 1    complaint.

 2         And so after today, you know, I'm going to set about

 3    trying to get that.  If either one of them declines to give me

 4    that, I'm in a precarious position that I don't know, frankly,

 5    where that leaves me, but I just don't want it to be a

 6    surprise if I raise it later on and why didn't you raise it

 7    then.  So I just wanted to at least get it on people's radars

 8    that I am feeling like I am needing a conflict waiver if I'm

 9    the one that's going to have to represent him on this

10    intervention complaint.

11              THE COURT:  Okay.  I didn't anticipate that one.

12              MR. McLANDRICH:  You know, I've got the person who's

13    paying me who I am now adverse to.

14              MS. FRICK:  Well, as of right now, the common pleas

15    court has stayed that issue and is saying no, insurance

16    companies, you need to keep paying him.

17              MR. McLANDRICH:  They have.

18              MS. FRICK:  But whether they will or not is another

19    story.

20              THE COURT:  That's another question.  Then I guess I

21    will just move to that.  I'm glad you brought it up.  I need

22    to know the status of them, and I think you have already told

23    me the status, someone has told me the status of all the

24    declaratory judgment actions that are now --

25              MR. McLANDRICH:  Yes.

*Mary A. Schweinhagen, RDR, CRR  (937) 512-1604*

1      THE COURT:  -- that were done or are now pending.

2      MR. McLANDRICH:  The trial court did put a stay on

3  of its order in the declaratory judgment action ordering that

4  the defense continue to be paid for.

5      There is now -- I just received it, I want to say,

6  yesterday -- been a, quote-unquote, emergency motion filed

7  with the court of appeals by coverage counsel for that carrier

8  asking that that stay be vacated.  And I'm getting, you know,

9  frankly, directives from both sides that the other should be

10  paying.

11      MS. FRICK:  We have consistently said if the

12  insurance company isn't going to pay, we will.  We have never

13  come off that.

14      MR. McLANDRICH:  And that's a true fact.  I don't

15  dispute that.  And I'm sure they will live up to that

16  obligation.  But I think it's that very willingness to live up

17  to that obligation that puts me in this potential conflict

18  issue.

19      And I am happy to do the work, Your Honor.  I just don't

20  want somebody, if something unpleasant happens to someone down

21  the road, pointing their finger at me saying, "You were

22  conflicted.  You couldn't do that," and suing me for

23  malpractice.  And so I am feeling like I need a conflict

24  waiver.  And if I don't have it, then I got to make decisions

25  and to ultimately maybe have to ask the Court for relief, and

```
 1    maybe the Court will have to make the decisions.  I don't

 2    know.  I'm feeling my way along.  I just don't want to

 3    surprise anybody by not raising it in a timely fashion.  So I

 4    am raising it now.

 5              THE COURT:  Ms. Frick, anything on that?

 6              MS. FRICK:  No.  I think that's a fair concern on

 7    his part.  I do.  Again, I think we are all kind of wading

 8    into this a little bit, not quite sure where all these things

 9    go.  So I don't necessarily think that's a problem.

10        First, we've really -- it's come up.  So we haven't

11    addressed that issue between the two of us, but I understand

12    his position.

13              THE COURT:  All right.  Well --

14              MS. FRICK:  I can't speak on whether they would

15    waive at this minute but --

16              MR. McLANDRICH:  I invited separate counsel to come

17    today, and he respectfully declined.  And I don't think he has

18    any intention of filing an appearance in this case, and I

19    can't sort of hardly blame him.  And Mr. Moore doesn't have

20    the money to pay him.  And so, you know, I'm Mr. Moore's

21    counsel, and, you know, it's a classic in for a penny, in for

22    a pound.

23              THE COURT:  Yes.

24              MR. McLANDRICH:  So I don't know if I get to say --

25    that I get to say, well, gees, Mr. Moore, I don't represent
```

1    you on the motion to intervene or the intervenor's complaint.

2    I only represent you on the liability case.

3        I think I'm in for a penny, in for a pound, and therefore

4    want to proceed in a cautious, prudent, appropriate fashion,

5    and these are, frankly, unchartered waters.

6            THE COURT:  I understand, counsel.  And I guess,

7    it's not much comfort, but would you keep me advised of that?

8            MR. McLANDRICH:  Of course, Your Honor.

9            MR. OWENS:  Your Honor, can I ask a clarification

10   question?  A moment ago before this little surprise happened

11   you mentioned that jury instructions from other analogous

12   situations might be helpful for the Court.  Were you referring

13   to sort of the constitutional claims in the case or the

14   specific issue of the Township's intervention.

15           THE COURT:  I was talking about the -- why we are

16   here, not necessarily the intervention.

17           MR. OWENS:  Sure.  We will provide examples.

18           THE COURT:  Well, provide them to them now.  I mean,

19   provide it to everybody if you are going to provide it.

20           MR. OWENS:  Sure.

21           THE COURT:  I think I've indicated to you that we

22   are working on these motions.  Hopefully, we'll be providing

23   them out as timely as we can.  I think we've issued six.

24       There's been some clarification that we're going to be

25   apprised with regard to defense motion 4, so we will just keep

```
 1    working.
 2         I don't have anything else.
 3         Counsel for plaintiffs?
 4              MR. KANOVITZ:  Nothing from plaintiffs, Judge.
 5              MR. McLANDRICH:  No, sir, Your Honor.
 6              THE COURT:  You provided a lot.
 7         Ms. Frick?
 8              MS. FRICK:  No, Your Honor.
 9              THE COURT:  Hold on a second.
10         (Pause.)
11              THE COURT:  One final question.  The intervention,
12    is there any -- I know we've talked about state court cases,
13    but is there any duplicative action in the state court of this
14    intervention and the Township's duty to indemnify?
15              MS. FRICK:  No, Your Honor.
16              MR. McLANDRICH:  I agree with that.
17              THE COURT:  Well, counsel, obviously, this is, for
18    most of us, I guess this is a new experience, but, you know,
19    we'll make it.  We'll continue to work.
20         I'm asking you folks to -- and we'll get you an
21    understandable process with regard to the jury instructions.
22    I know that me reading it onto the record was fairly
23    confusing.  We will get that to you as quickly as possible,
24    and we will be waiting on your explanation or resolution or
25    whatever of that motion in limine.
```

1 As far as I'm concerned, discovery at this point in time

2 is closed, if it wasn't closed before, but it's closed now.

3   MR. KANOVITZ:  I have thought of one question,

4 Judge.

5   THE COURT:  Sure.

6   MR. KANOVITZ:  Final instructions are what they are,

7 but will we have a sense of how the Court expects to resolve

8 disputes of law and the instructions before we start the

9 trial?

10   THE COURT:  I don't know that.  I don't know whether

11 it will be before we start the trial.  We will try to get it

12 to you as quickly as we can.  Obviously, the final jury

13 instructions are not going to be determined until during.  We

14 will do that during the trial.

15 What my goal, my objective is, as it is in all cases, is

16 to try to give counsel for the parties some idea of what the

17 parameters are; and, obviously, that would entail, you know,

18 we'd have to indicate where we're at on certain instructions.

19 I don't know whether that's a good answer for you or not.

20   MR. KANOVITZ:  That's good enough.

21   THE COURT:  Counsel, anything else?

22   MR. McLANDRICH:  No, sir.

23   THE COURT:  Well, thank you for all being here.

24 We'll proceed with caution.

25  (Concluded at 2:57 p.m.)

1                    CERTIFICATE OF REPORTER

2

3          I, Mary A. Schweinhagen, Federal Official Realtime

4    Court Reporter, in and for the United States District Court

5    for the Southern District of Ohio, do hereby certify that

6    pursuant to Section 753, Title 28, United States Code that the

7    foregoing is a true and correct transcript of the

8    stenographically reported proceedings held in the

9    above-entitled matter and that the transcript page format is

10   in conformance with the regulations of the Judicial Conference

11   of the United States.

12

13   s/Mary A. Schweinhagen

14   _____ 20th of December, 2023

15   MARY A. SCHWEINHAGEN, RDR, CRR
     FEDERAL OFFICIAL COURT REPORTER

16

17

18

19

20

21

22

23

24

25